# EXHIBIT A



**National Union Fire Insurance Company of Pittsburgh, Pa.**

A capital stock company

POLICY NUMBER: 01-351-34-64          REPLACEMENT OF POLICY NUMBER: 00-245-04-86

### MISCELLANEOUS PROFESSIONAL LIABILITY POLICY

**NOTICE: This is a claims made policy. Except to such extent as may otherwise be provided herein, the coverage of this policy is limited to liability for only those claims that are first made against you and reported in writing to us during the policy period. Please read the Policy Carefully and discuss the coverage thereunder with your insurance agent or broker.**

**The Limit of Liability available to pay judgments or settlements shall be reduced by claim expenses. further note that amounts incurred for claim expenses shall be applied against the retention.**

### DECLARATIONS

*Item 1.*     ***Named insured***:        *FIDELITY NATIONAL FINANCIAL INC*

              *Address:*              *CORPORATE RISK MANAGEMENT DEPARTMENT*
                                      *c/o FIDELITY NATIONAL INFORMATION SERVICES*
                                      *4905 BELFORD RD, UNIT 110*
                                      *JACKSONVILLE, FL  32256*

*Item 2.*     ***Policy period***: From   November 18, 2009   to   November 18, 2010
              *at 12:01 A.M. standard time at the address of the **insured** as stated above.*

*Item 3.*     Limits of Liability (inclusive of **claim expenses**)

              *$15,000,000*          *each **wrongful act***
              *$15,000,000*          *aggregate*

*Item 4.*     *Retention: $5,000,000 each **wrongful act***

77008 (04/02)                    1

© Chartis Inc. All rights reserved.

Item 5.    Premium:  $2,700,000 + $27,000 Florida Surcharge

Item 6.    **Professional services**:   See Endorsement 1.

Item 7.    **Retroactive date**:    Full Prior Acts

Item 8.    Name and Address of Insurer (in the box checked above)

National Union Fire Insurance Co. of Pittsburgh, Pa.
175 Water Street
New York, NY  10038

© Chartis Inc. All rights reserved.

**IN WITNESS WHEREOF,** the **Insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and its duly authorized representative.

| **PRESIDENT** | **SECRETARY** |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | National Union Fire Insurance Company of Pittsburgh, Pa. |

**AUTHORIZED REPRESENTATIVE**

| **COUNTERSIGNED AT** | **DATE** | **COUNTERSIGNATURE** |
|---|---|---|

*WILLIS OF NEW YORK INC*
*200 LIBERTY STREET, 7TH FL*
*1 WORLD FINANCIAL CENTER*
*NEW YORK, NY 10281*

*7224954*

77008 (04/02)                                   3

© Chartis Inc. All rights reserved.

## FLORIDA ADDENDUM TO THE DECLARATIONS

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

**Chartis**
**175 Water Street**
**New York, NY 10038**
**(212) 458-5000**

74825 (8/09)



**National Union Fire Insurance Company of Pittsburgh, Pa.**®

A capital stock company

## Miscellaneous Professional Liability Policy

In consideration of the premium charged, and in reliance upon the statements in the application(s) attached hereto and made a part hereof, and subject to the Limits of Liability set forth in the Declarations and the terms and conditions contained herein, **we** agree as follows:

**I.    INSURING AGREEMENTS**

**A.    ERRORS AND OMISSIONS**

**We** shall pay on **your** behalf those amounts, in excess of the retention, **you** are legally obligated to pay as **damages** resulting from a **claim** first made against **you** and reported to **us** during the **policy period** or Extended Reporting Period (if applicable) for **your wrongful act** in rendering or failing to render **professional services** for others, but only if such **wrongful act** first occurs on or after the **retroactive date** and prior to the end of the **policy period**.

**B.    DEFENSE**

**1. We** have the right and duty to defend a **suit** brought against **you** alleging a **wrongful act** even if the **suit** is groundless, false or fraudulent.  **We** have the right, with **your** written consent, which consent shall not be unreasonably withheld, to settle any **suit** if **we** believe that it is proper.

**We** have the right to investigate any **claim** and, with **your** written consent, which consent shall not be unreasonably withheld, the right to settle any **claim** if **we** believe that it is proper.

**Your** refusal to consent to a settlement may impact **our** obligations under this policy as stated in Section IV. D.

**2. Claim expense(s)** are part of and subject to **our** Limit of Liability.  **Our** duty to defend ends after the applicable Limit of Liability has been exhausted by payment of **claim expenses** or **damages**.

**3. You** may settle any **claim(s)** or **suit(s)** on behalf of all **insureds** to which this insurance applies and which are subject to one retention, where the total incurred **loss** does not exceed the retention.

**II.   DEFINITIONS**

**A.    Bodily injury** means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

**B.    Claim** means a demand for money or services, including a **suit**, arising from **your wrongful act**.

**C.    Claim expenses** means all reasonable and necessary fees charged by an attorney appointed by **us** in connection with any **suit** brought against **you** alleging a **wrongful act**, as well as all other reasonable and necessary fees, costs and expenses incurred in the defense or investigation of a **claim** by **us** or by **you** with **our** written consent. **Claim expenses** shall also include premiums for appeal bonds, or bonds to release property used to secure a legal obligation, if required in a **claim**; however, **we** shall have no obligation to appeal or to obtain these bonds.  **Claim expenses** does not include salary charges or expenses of **you** or **your** employees.

® All rights reserved.

**D.** **Damages** means any amount that **you** shall be legally required to pay because of judgments, arbitration awards or the like rendered against **you**, or for settlements negotiated by **us** with **your** written consent; provided that **damages** shall not include any amounts for which **you** are not financially liable or for which there is no legal recourse against **you**, the costs and expenses of complying with any injunctive or other form of equitable relief, or matters that may be deemed uninsurable under the law.  **Damages** shall include:

1.  punitive, exemplary and multiple damages (where insurable by law);

2.  pre- judgment interest; and

3.  post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

**E.** **First inception date** means the inception date of the first Miscellaneous Professional Liability policy issued by **us** or any other member company of Chartis Inc. ("Chartis") to the **named insured** and continually renewed by **us** or any other Chartis member company until the inception date of this current policy.

**F.** **Loss** means the total sum of **damages** and **claim expenses**.

**Loss** shall not mean and this policy shall not cover:

1.  fines, penalties, or taxes;

2.  non- pecuniary relief; or

3.  matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**G.** **Named insured** means the individual, entity, partnership, or corporation designated as such in Item 1 of the Declarations.

**H.** **Over- redemption** means price discounts, prizes, awards or other valuable consideration given in excess of the total contracted or expected amount.

**I.** **Policy period** means the period commencing on the effective date set forth in Item 2 of the Declarations and ending on the earlier of either the expiration date set forth in Item 2 of the Declarations or the effective date of cancellation of this policy.  If **you** become an **insured** under this policy after the effective date, the **policy period** begins on the date **you** became an **insured**.

**J.** **Pollutants** include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

**K.** **Professional services** means those services as described and set forth in Item 6 of the Declarations.

**L.** **Property damage** means (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed.

**M.** **Retroactive date** means the date set forth in Item 7 of the Declarations.

**N.** **Subsidiary** shall mean any corporation of which the **named insured** owns on the inception date of the **policy period** more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through a **subsidiary**.

 © All rights reserved.

**Subsidiary** shall also mean any corporation which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a ten percent (10%) increase in the total assets and/or gross revenue of the **named insured** as of the date of the acquisition. Where such corporation represents an increase in the total assets and/or gross revenue of the **named insured** of more than ten percent (10%), such corporation shall be deemed a **subsidiary** under the policy, but only upon the condition that within ninety (90) days of its becoming a **subsidiary**, **you** shall have provided **us** with full particulars of the new **subsidiary** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**. A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its **subsidiaries**, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

This policy does not cover any **claim** against a **subsidiary** or any partner, director, officer or employee thereof for any **wrongful act** that occurred when the **named insured** did not own more than fifty percent (50%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**.

O. **Suit** means a civil proceeding for monetary, non- monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** consent.

P. **We**, **us** or **our** means the insurer issuing this policy.

Q. **Wrongful act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed solely in **your** performance of **professional services**.

R. **You**, **your** or **insured** means:

   1. the **named insured**;

   2. any **subsidiary** of the **named insured**, but only with respect to **wrongful acts** which occur while it is a **subsidiary** and is otherwise covered by this policy;

   3. any past, present or future officer, director, trustee or employee of the **named insured** or **subsidiary** thereof (and in the event the **named insured** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof), but only while acting within the scope of their duties as such; and

   4. any entity whom the **named insured** is required by contract to add as an **insured** under this policy, but only for the **wrongful acts** of the **named insured**.

## III.   EXCLUSIONS - CLAIMS NOT COVERED

**We** shall not cover **claims**:

A. arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; however, **we** will defend **suits** alleging any of

the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you** as to such conduct at which time **you** shall reimburse **us** for **claim expenses**; **we** shall not cover any **claim** if **you** plead *nolo contendere* or no contest to a criminal proceeding against **you** arising out of the same, or essentially the same, material facts as such **claim**;

B.   arising out of the presence of or the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, or in any way respond to or assess the effects of **pollutants**;

C.   arising out of **bodily injury** or **property damage**;

D.   arising out of:

    1. any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

    2. any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

    3. any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

E.   arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

F.   arising out of any employment practices liability or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

G.   arising out of the same **wrongful act** or series of continuous, repeated or related **wrongful acts,** alleging the same or similar facts, alleged or contained in any **claim** which has been reported, or any **wrongful act** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time;

H.   arising out of any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

I.   arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

J.   against **you** that are brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **claim** is alleging a **wrongful act** in **your** rendering **professional services** to such entity;

K.   arising out of liability **you** assume under any contract or agreement, including but not limited to, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

 Ⓒ All rights reserved.

L.  against **you** that is brought by or on behalf of:

    1.  any **insured** except as described in clause 4. of the definition of "**you**, **your** or **insured**" in Section II. DEFINITIONS;

    2.  any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**;

    3.  any parent company, **subsidiary**, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

    4.  any independent contractor supplying material or services to **you**, but, as regards such independent contractor, only with respect to **claims** involving disputes over the ownership or exercise of rights in material or services supplied;

M.  arising out of any **wrongful act** committed prior to the **first inception date** if, as of the **first inception date**, **you** knew or could have reasonably foreseen that such **wrongful act** did or would result in a **claim** against **you**;

N.  first made against **you** prior to, or pending as of, the **first inception date**, or relating to the essential facts, circumstances or situation underlying such **claim**;

O.  arising out of disputes involving:

    1.  **your** fees or charges, including over-charges, or cost over-runs;

    2.  collecting **your** fees from third parties;

    3.  the return of fees or other compensation paid to **you**; or

    4.  **your** cost of correcting or re-performing or completing any **professional services**;

P.  arising out of any **wrongful act** committed with the knowledge that it was a **wrongful act**;

Q.  arising out of **over-redemption** of coupons, awards, or prizes from advertisements, promotions, games, sweepstakes, contests, and games of chance;

R.  arising out of any **wrongful act** which occurred prior to the **retroactive date**;

S.  arising out of:

    1.  false arrest, detention or imprisonment;

    2.  libel, slander or defamation of character; or

    3.  wrongful entry or eviction, or invasion of any right of privacy; or

T.  arising out of **your** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance.

## IV.  LIMITS OF LIABILITY

A.  The Limits of Liability set forth in the Declarations of this policy are the most **we** shall pay for **loss** regardless of the number of persons or entities covered by this policy or claimants or **claims** brought.

B.  **Our** total liability for all **loss** arising from any and all **claims** made against **you** and reported to **us** during the **policy period** or any applicable Extended Reporting Period, alleging any **wrongful act** or series of continuous, repeated or related **wrongful acts** shall not exceed the Limit of Liability set forth in the Declarations as applicable to "each **wrongful act**".

C. **Our** total liability for all **loss** arising from all **claims** made against **you** and reported to **us** during the **policy period** or any applicable Extended Reporting Period shall not exceed the Limit of Liability set forth in the Declarations as "aggregate." The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

D. **Our** duty to defend ends if **you** refuse to consent to a settlement **we** recommend and the claimant will accept. **You** must then defend the **claim** at **your** own expense. As a consequence of **your** refusal, **our** liability shall not exceed the amount for which **we** could have settled such **claim** had **you** consented, plus **claim expenses** incurred prior to the date of such refusal. This clause shall not apply to any settlement where the total incurred for **damages** and **claims expenses** does not exceed the retention.

E. **Multiple Professional Liability Policies**

  1. Two or more policies may be issued by **us** or other member companies of Chartis Inc. (Chartis) to **you**. These policies may provide coverage for:

     a. **claims** arising from the same **wrongful act** or series of continuous, repeated, or related **wrongful acts**; or

     b. **claims** for which persons or organizations covered in those policies are jointly and severally liable.

  2. In such case, **we** shall not be liable under this policy for an amount greater than the proportion of the **loss** that this policy's applicable limit of liability bears to the total applicable limit of liability under all such policies.

  3. In addition, the total amount payable under all such policies combined shall not be greater than the highest applicable limit of liability among all such policies.

**V. RETENTION**

**You** shall be responsible for the retention amount set forth in Item 4 of the Declarations. The retention applies to each **wrongful act**, and **you** may not insure it. All **claims** arising from a **wrongful act** or series of continuous, repeated, or related **wrongful acts** shall be subject to one retention. In **our** sole discretion, **we** may pay all or part of the retention to settle a **claim**, in which case **you** agree to repay **us** promptly after **we** notify **you** of the settlement.

If **you** shall, at **our** written request, submit a **claim** to alternative dispute resolution in accordance with the rules of the American Arbitration Association or the Defense Research Institute, and such **claim** is settled through this process, the retention obligation shall be deemed to be fifty percent (50%) of the retention stated in Item 4 of the Declarations.

**VI. OTHER PROVISIONS AFFECTING COVERAGE**

A. **What You Must Do in the Event of a Claim**

  Before coverage will apply, **you** must notify **us** in writing of any **claim** against **you** as soon as practicable during the **policy period** or Extended Reporting Period (if applicable). **You** must also:

  1. immediately record the specifics of the **claim** and the date **you** received it; and

  2. send copies of all demands, suit papers, or other legal documents **you** receive, as soon as possible to **us** in c/o Chartis Claims Inc., at **our** address indicated in the Declarations.

**B.    Your Assistance and Cooperation**

1. **You** agree to cooperate with and help **us**:
   a.  in making settlements, subject to sub-paragraph 3 herein;
   b.  in enforcing any legal rights **you** or **we** may have against anyone who may be liable to **you**;
   c.  by attending depositions, hearings and trials; and
   d.  by securing and giving evidence, and obtaining the attendance of witnesses.

2. **You** shall take such actions which, in **your** judgment, are deemed necessary and practicable to prevent or limit **loss** arising from **your wrongful acts**.

3. **You** shall not admit any liability, assume any financial obligation or pay out any money without **our** prior written consent.  If **you** do, it shall be at **your** own expense.  In addition, **you** shall not take any action, or fail to take any required action, without **our** written consent, which prejudices **our** rights under this policy.

**C.    Where Coverage Applies**

This policy applies to **wrongful acts** committed anywhere in the world, provided that any **claim** must be brought against **you** in the United States of America, its territories or possessions or Canada.

**D.    Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance available to **you**.

**E.    Subrogation**

**You** may be able to recover all or part of a loss from someone other than **us**.  **You** therefore must do all that is possible after a loss to preserve any such right of recovery.  If **we** make a payment under this policy, that right of recovery shall belong to **us**.  **You** shall do whatever is necessary, including signing documents, to help **us** obtain that recovery.

**F.    Policy Changes**

This policy contains all the agreements between **you** and **us** concerning this insurance.  This policy can only be changed by a written endorsement **we** issue and make a part of this policy.

**G.    Assignment**

**You** cannot assign or transfer **your** interest in this policy.  If **you** die or are declared legally incompetent, **your** rights and duties will be transferred to **your** legal representative; but only while acting within the scope of his or her duties as such, and only with respect to **your wrongful acts** which took place prior to **your** death or incompetence.

**H.    Special Rights and Duties of Named Insured**

**You** agree that when there is more than one person or organization covered under this policy, the **named insured** first named in Item 1 of the Declarations shall act on behalf of all of **you** as to:

1. giving and receiving notice of cancellation;
2. payment of premiums and receipt of return premiums;

Page 7                              Ⓒ All rights reserved.

3. acceptance of any changes to this policy; and

4. acceptance or refusal of any applicable Extended Reporting Period.

**I.  Cancellation**

This policy may be canceled by the **named insured** by surrender of this policy to **us** or by giving written notice to **us** stating when thereafter such cancellation shall be effective. This policy may also be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class mail sent to the **named insured's** address set forth in Item 1 of the Declarations, or by delivering to the **named insured**, written notice, stating when, not less than thirty (30) days thereafter, or ten (10) days thereafter in the event of nonpayment of premium, the cancellation shall be effective. The mailing of such notice, as aforesaid, shall be sufficient proof of notice.  This policy shall be deemed canceled at the date and hour specified in such notice.  If this policy shall be canceled by the **named insured**, **we** shall retain the customary short rate proportion of the premium herein.  If this policy shall be canceled by **us**, **we** shall retain the pro rata proportion of the premium herein.  Payment or tender of the unearned premium by **us** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.  If the period of limitation relating to the giving of notice for cancellation by **us**, as set forth above, is also set forth in any controlling law, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in such controlling law if it is a longer period.

**J.  Extended Reporting Provisions**

**1.  Automatic Extended Reporting Period**

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right following the effective date of such cancellation or nonrenewal to a period of sixty (60) days (herein referred to as the "Automatic Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Automatic Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

The Automatic Extended Reporting Period shall not apply to **claims** that are covered under any subsequent insurance **you** purchase or which is purchased for **your** benefit, or that would be covered by such subsequent insurance but for (1) the exhaustion of the amount of insurance applicable to such **claims**, or (2) any applicable retention or deductible.

**2.  Optional Extended Reporting Period**

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right, upon payment of an additional premium of up to 100% of the full annual premium, to a period of up to one (1) year following the effective date of such cancellation or nonrenewal (herein referred to as the "Optional Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Optional Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **policy period**.

The rights contained in this clause shall terminate, however, unless the **named insured** provides written notice of such election together with the additional

77011 (4/02)                              Page 8                    Ⓡ All rights reserved.

premium due to **us** within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. **Our** offer of renewal terms, conditions, limits of liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

If the **named insured** exercises its right to purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period shall be deemed void *ab initio*.

**K. Notice of Circumstance**

If during the **policy period** or the Extended Reporting Period, if applicable, **you** become aware of any facts or circumstances that may reasonably be expected to give rise to a **claim** against **you** for a **wrongful act** that occurs on or after the **retroactive date** and prior to the end of the **policy period**, and provided **you** give written notice to **us** during the **policy period** or the Extended Reporting Period, if applicable, of the circumstances and the reasons for anticipating such a **claim**, with full particulars as to the **wrongful act(s)**, dates, persons and entities involved, then any **claim** that is subsequently made against **you** arising out of such **wrongful act** or the same **wrongful act** or series of continuous, repeated or related **wrongful acts**, shall, for the purposes of this policy, be treated as a **claim** made against **you** and reported to **us** during the **policy period**.

**L. Organizational Changes**

If during the **policy period**:

1. the **named insured** merges into or consolidates with another entity such that the **named insured** is not the surviving entity; or

2. another entity, person, or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the rights to vote for the election of the **named insured's** directors;

(either of the above events hereinafter referred to as the "Transaction") then coverage shall continue until the later of the termination of the **policy period** or such other date to which **we** may agree, but only with respect to **wrongful acts** which occurred prior to the Transaction and are otherwise covered by this policy. No coverage shall be provided after the Transaction unless the **named insured** notifies **us** of the Transaction in writing within thirty (30) days of the Transaction.

**M. Section Titles**

The titling of sections and paragraphs within this policy is for convenience only and shall not be interpreted as a term or condition of this policy.

**N. Declarations**

By accepting this policy, **you** agree that the statements in the application and Declarations are true, and they are **your** agreements and representations. This policy is issued in reliance upon the truth of those representations.

**O.  Bankruptcy**

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this policy.

**P.  Alternative Dispute Resolution**

Any controversy arising out of or relating to this policy or its breach shall first be submitted to alternative dispute resolution ("ADR") in accordance with the rules of the American Arbitration Association or the Defense Research Institute.  The ADR may be held in New York, New York unless otherwise agreed to by both parties.  Each party shall jointly and equally bear with the other party the expense of the alternative dispute resolution.  Either **we** or **you** may elect the type of ADR, either non-binding mediation or binding arbitration.  However, **you** shall have the right to reject **our** choice of the type of ADR process at any time prior to its commencement, in which case **your** choice of the type of ADR process shall control.

**Q.  Action Against Us**

No one may bring an action against **us** unless there has been full compliance with all the terms of this policy and the amount of the **insured's** obligation to pay has been finally determined either by judgment against the **insured** after actual trial, or by written agreement of the **insured**, the claimant and **us**.

Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  **We** may not be impleaded by the **insured** or its legal representative in any legal action brought against the **insured** by any person or organization.

◊ All rights reserved.

ENDORSEMENT# *1*

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to     *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ITEM 6 "PROFESSIONAL SERVICES" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood that Item 6 of the
Declarations, " **Professional services** ," is amended to read as follows:

      Item 6.      **Professional services** means:

                Including but not limited to:

              1.      Title Insurance and Escrow Related Services
              2.      Insurance Company and Brokerage Services
              3.      Lender and Real Estate Related Services
              4.      Information Services
              5.      Technology Products and Professional Services

      ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

                                      AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 1*

**ENDORSEMENT#** *2*

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.    The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

   B.1.   Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   (a)    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   (b)    Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

   1.    A material misstatement or misrepresentation; or
   2.    A failure to comply with underwriting requirements established by the Insurer.

   B.2.   Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

   (a)    Nonpayment of premium;

   (b)    The policy was obtained by a material misstatement;

   (c)    There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

   (d)    There has been a substantial change in the risk covered by the policy; or

   (e)    The cancellation is for all insureds under such policies for a given class of insureds.

If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

© All rights reserved.
*END 002*

**ENDORSEMENT#** *2*    (continued)

    1.    Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

    2.    Forty-five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B2 (b), (c), (d) or (e) above.

B.3.    If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.

The following is added:

C.1.    Non-Renewal

    (a)    If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

    (b)    Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.    Renewal

    The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
**END 002**

ENDORSEMENT# 3

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of policy number *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PUNITIVE DAMAGES COVERAGE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause II. **DEFINITIONS**, paragraph D., " **damages**," is deleted in its entirety and replaced with the following:

D.    **Damages** means any amount that **you** shall be legally required to pay because of judgments, arbitration awards or the like rendered against **you**, or for settlements negotiated by **us** with **your** written consent; provided that **damages** shall not include any amounts for which **you** are not financially liable or for which there is no legal recourse against **you**, the costs and expenses of complying with any injunctive or other form of equitable relief, or matters that may be deemed uninsurable under the law. **Damages** shall include:

1.    punitive, exemplary and multiple damages where insurable by applicable law; the enforceability of such coverage for punitive damages shall be governed by such applicable law which most favors coverage for punitive damages;

2.    pre-judgment interest; and

3.    post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 3*

**ENDORSEMENT# 4**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURANCE COMPANY PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to coverage afforded by this endorsement the policy is amended as follows:

1.  For purposes of this endorsement, Insurance Company Professional "services" as designated in Item 6. means those services rendered or required to be rendered by **you** for or on behalf of a policyholder or a customer or client of **yours** pursuant to a contract with such policyholder or customer or client, for a fee, commission or other remuneration or financial consideration which inures to **your** benefit.

2.  "**Securities broker/dealer**" means a person or entity acting as a "broker" or "dealer" in securities, as such terms are defined in Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, as amended.

3.  With respect to coverage under this policy afforded solely by this endorsement:

    (a)  Exclusion III.A. is hereby deleted and replaced with the following:

        (a) arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; however, **we** will defend **suits** alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you** as to such conduct at which time **you** shall reimburse **us** for **claim expenses**; **we** shall not cover any **claim** if **you** plead *nolo contendere* or no contest to a criminal proceeding against **you** arising out of the same, or essentially the same, material facts as such **claim**; and this exclusion shall not apply to any **claim** alleging bad faith in the rendering or failing to render insurance **professional services**;

    **(b)**  **We** shall not cover **claims**:

        (1)  brought by or on behalf of any of **you**, or a receiver, liquidator, rehabilitator, trustee in bankruptcy or successor to the rights of any of **you** under this policy, against **you** under this policy; provided, however, this exclusion shall not apply to a **claim** by any of **you** in **your** capacity as a policyholder, customer or client of any other **insured** against such other **insured**;

*END 4*

**ENDORSEMENT# 4**   (Continued)

This endorsement, effective *12:01 am*   *November 18, 2009*   forms a part of
policy number *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2)   for premiums, return premiums, tax monies, fees or commissions, or
that portion of any settlement or award in an amount equal to such
fees, commissions or other compensation, or arising out of any
commingling of funds;

(3)   arising from, based upon, attributable to, or in any way involving the
failure to establish or the inadequacy or inaccuracy of insurance
company reserves;

(4)   by any reinsurer of **yours**;

(5)   arising from, based upon, attributable to, or in any way involving the
insolvency, conservatorship, receivership, bankruptcy, liquidation or
inability of the Insured to pay claims;

(6)   arising from, based upon, attributable to, or in any way involving any
express warranties or guaranties, estimates of probable construction
costs, or costs exceeding estimates made in connection with
**professional services**;

(7)   arising from, based upon, attributable to, or in any way involving any
**claim** by, or on behalf of, or for the benefit of, or with the solicitation
or assistance of:

(i)   any pool, association or syndicate (including any officer,
director or employee thereof) in which any of **you** are a
participant; or

(ii)   any participant (including any officer, director or employee
thereof) in any pool, association or syndicate in which any of
**you** are a participant;

(8)   for any obligation for which **you**, or any carrier as its insurer, may be
held liable under any workers' compensation, unemployment
compensation, disability benefits law, or under any similar law;

*END 4*

**ENDORSEMENT# *4*    (Continued)**

This endorsement, effective  *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

      (9)    arising from, based upon, attributable to, or in any way involving the ownership, maintenance, operation, use, loading or unloading of any automobile, aircraft or watercraft, by the Insured or by any other person for whose actions the Insured is legally responsible;

     (10)    arising from, based upon, attributable to, or in any way involving the underwriting of any insurance policy, or any other insurance product;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 4*

**ENDORSEMENT#** *5*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
    Claim Reporting under this policy, such notice may also be given in writing pursuant
    to the policy's other terms and conditions to the Insurer by email at the following
    email address:

    c-claim@chartisinsurance.com

    Your email must reference the policy number for this policy. The date of the
    Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the
    Insurer by mailing such notice to: c-Claim for Financial Lines, Chartis Claims, Inc.,
    175 Water Street, 9th Floor, New York, New York 10038 or faxing such notice to
    (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
          specifically ascribed in this policy as the insurance company or underwriter for
          this policy.

    (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
          loss" or other reference in the policy designated for reporting of claims, loss
          or occurrences or situations that may give rise or result in loss under this
          policy.

    (c)   "Policy" means the policy, bond or other insurance product to which this
          endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
    Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

✆ All rights reserved.
**END 005**

ENDORSEMENT# *6*

This endorsement, effective  *12:01 am*   *November 18, 2009*   forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CANCELLATION AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
VI. **OTHER PROVISIONS EFFECTING COVERAGE**, paragraph I. **Cancellation**, is deleted in
its entirety and replaced with the following:

I.  **Cancellation**

This policy may be cancelled by the **named insured** by surrender of this
policy to **us** or by giving written notice to **us** stating when thereafter such
cancellation shall be effective. This policy may also be canceled by **us** by
mailing to the **named insured** by registered, certified, or other first class mail
sent to the **named insured's** address set forth in Item 1. of the Declarations,
or by delivering to the **named insured**, written notice, stating when, not less
than ninety (90) days thereafter, or ten (10) days thereafter in the event of
nonpayment of premium, the cancellation shall be effective. The mailing of
such notice, as aforesaid, shall be sufficient proof of notice. This policy shall
be deemed canceled at the date and hour specified in such notice. If this
policy shall be canceled by the **named insured**, **we** shall retain the pro rata
proportion of the premium herein and shall return the remaining pro rata
proportion of the premium to the **named insured**. If this policy shall be
canceled by **us**, **we** shall retain the pro rata proportion of the premium
herein. Payment or tender of the unearned premium by **us** shall not be a
condition precedent to the effectiveness of cancellation, but such payment
shall be made as soon as practicable. If the period of limitation relating to
the giving of notice for cancellation by **us**, as set forth above, is also set
forth in any controlling law, the period set forth above shall be deemed to be
amended so as to be equal to the minimum period of limitation set forth in
such controlling law if it is a longer period.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 6*

ENDORSEMENT# 7

This endorsement, effective  12:01 am      November 18, 2009      forms a part of
policy number   01-351-34-64
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    In the event that there is an inconsistency between any: (a) state amendatory
attached to this policy, or any other wording attached to this policy to comply with
applicable law; and (b) any other term, condition or limitation of this policy; then, to
the extent permitted by law, subject to the limitations below, the Insurer will
resolve the inconsistency by applying the terms, conditions or limitations that are
more favorable to the policyholder.

2.    This endorsement shall not apply to the extent that: (a) any state amendatory or
other wording expressly limits coverage in order to comply with applicable law, or
(b) any such amendatory or other compliance wording amends language applicable
to premium. In such events, the state amendatory or other compliance wording will
govern over any other term, condition or limitation of the policy.

3.    "Policyholder" means the first Named Entity, Named Organization, Named
Corporation, Named Sponsor, Named Insured or other policyholder designated in
Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 7*

ENDORSEMENT# *8*

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**FAILURE TO INSURE EXCLUSION AMENDATORY ENDORSEMENT**

In consideration of the premium charged it is  hereby understood and agreed that in Clause
III. EXCLUSIONS - CLAIMS  NOT COVERED, paragraph T. is deleted  in  its entirety  and
replaced with the following:

> T.    arising out of  **your** advising, requiring,  obtaining or failing  to advise, require
> or obtain any  bond, suretyship or  other form of  insurance; provided,
> however, this  exclusion  shall  not  apply to any  **claim** arising out of  **your**
> performance of **professional services** .

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 8*

**ENDORSEMENT# 9**

This endorsement, effective  *12:01 am     November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**MUTUAL CHOICE OF COUNSEL ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed as follows:

A.    With regard to any **claim** for which an **insured** seeks coverage and elects not to use a panel counsel firm provided by **us**, **we** and the **insured** shall consult and jointly agree upon such defense counsel who will defend the **insured** in such matter (hereafter referred to as " **chosen counsel** ") at an agreed hourly rate of $350 per partner, $190 per associate and $90 per paralegal; provided, however, that any and all **claim expenses** of **chosen counsel** shall be paid and satisfied on an ongoing basis by the **insured** until all applicable retention amounts have been satisfied. The foregoing permission and **our** obligation to pay **claim expenses** to such counsel pursuant to this endorsement are expressly conditioned on the following:

    1.    **we** shall be reasonably satisfied that such counsel is able and competent to handle any **claim** for which such counsel is engaged to provide legal services;

    2.    **we** shall pay such counsel at an hourly rate which is equivalent to the rate that **we** customarily pay for counsel in the same, or in a comparable, geographic location; and

    3.    such counsel maintains an office in the judicial jurisdiction where the litigation is filed.

If **we** are unable to agree with the **insured** upon selection of defense counsel, **we** shall select defense counsel.

B.    With regard to any **claim** for which the **insured** seeks coverage, such **insured** agrees that as a condition precedent to coverage for **claim expenses** incurred through **chosen counsel** in excess of the applicable retention amount hereunder, the **insured** or **chosen counsel** must keep **us** apprised of the status of the litigation, in accordance with **our** AIG Companies Litigation Management Guidelines (the " **guidelines** "). The **insured** and **chosen counsel** also understand, agree and acknowledge, that for any services rendered by and expenses through **chosen counsel** to constitute **claim expenses** , **chosen counsel** must comply with all other applicable provisions of **our** current **guidelines** . The responsibility for ensuring that the **guidelines** are adhered to rests with the **insured** rather than **us** or **chosen counsel** . **Our guidelines** are attached to the policy as an addendum hereto and it forms a part of this policy. The **insured** understands and agrees with **us** that the **guidelines** contain reasonable and necessary reporting and billing procedures to be followed by **chosen counsel** , including, but not limited to:

    1.    development of a litigation plan and litigation budget;

**END 9**

**ENDORSEMENT#** *9*     **(Continued)**

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

      2.      acceptable rates for services;

      3.      pre-approval by **us** before designated legal services are provided; and

      4.      **our** required format for submitting fees and charges to  **us**.

The **guidelines**  also require that **chosen counsel**  work closely and  communicate regularly with the assigned  claims professional in  coordinating defense efforts  and that **chosen counsel**  apprise **us**  on a regular and  timely basis as to significant  case developments.

C.    **Claim expenses** incurred through any law firm or other service provider, other than a panel counsel firm, **chosen counsel**  or a firm that **we** selected or consented to, shall not be recoverable under this policy as  **claim expenses**  or otherwise.

D.    The **insured**  shall not admit or assume any liability, enter into any settlement agreement, stipulate to any  judgment or incur any   **claim expense** without **our**  prior written  consent,  except  as  expressly  provided  in Clause I.   **INSURING AGREEMENTS**, subparagraph  3.  of  paragraph  B.,  " **DEFENSE**."   Only those settlements, stipulated judgments and  **claim expenses** which **we** have consented  to shall be recoverable as  **loss**  under the terms of this policy.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 9*

**ENDORSEMENT# 10**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAIM REPORTING AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
VI. **OTHER PROVISIONS  AFFECTING COVERAGE**, paragraph A., " **What You Must Do  in
the Event of a Claim** " is deleted in its entirety and replaced with the following:

A.    **What You Must Do in the Event of a Claim**

1.    A **claim** shall  be considered as  being "first  made" at such  time that
the **claim** is  known by **your**  General Counsel,  Risk Manager or  Chief
Financial Officer.

2.    Before coverage will apply for any **claim** first made against **you** during
the **policy period**  or the  Extended Reporting Period  (if applicable)  for
which total **damages** and **claim  expenses** incurred in connection with
any such  **claim** exceed,  or are  reasonably  estimated by  any of  the
individuals  referenced  in  subparagraph  (1) above,  to  exceed
$2,500,000, **you** shall, as  a  condition precedent  to  **our** obligations
under this policy, give  **us** written notice as soon as  practicable of any
such **claim** with full particulars.    **You** must also:

a.    immediately record  the  specifics of  any such  **claim** and  the
date **you** received it; and

b.    send  copies  of  all demands,  suit papers,  or other  legal
documents **you** receive,  as soon as  possible to   **us** in c/o  AIG
Domestic Claims, Inc, Financial Lines, at  **our**  address indicated
in the Declarations.

3.    Before coverage will apply for any  **claim** first made against  **you** during
the **policy period**  or the  Extended Reporting Period  (if applicable)  for
which total **damages** and **claim  expenses** incurred in connection with
any such  **claim**  are  reasonably  estimated by any  of  the individuals
referenced in subparagraph  (1) above  to be in  excess of  $500,000,
but not more than $2,500,000, **you** shall provide written notice  to  **us**
of such **claim(s)** on a quarterly basis in  the form of a bordereau.    **You**
shall provide us with such bordereau  within thirty (30) days after  the
end  of each  calendar   quarter and such  bordereau  shall contain
information including, but  not limited  to, the  full particulars of each
**claim**, the  date  on which notice  of the  **claim**  was first  received, the
date the **wrongful  act** occurred, a  description of  the allegations, the
identity of the claimants and involved  **insureds**, the damages incurred,

*END 10*

**ENDORSEMENT#** *10*   **(Continued)**

This endorsement, effective  *12:01 am*      *November 18, 2009*      forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

the defense incurred and the status of any litigation.   **You** further agree that **we**, in **our** sole discretion, may elect to conduct audits of any and all such **claims** on a quarterly basis.

4.   Notice of the **claims** described in subparagraphs (2) and (3) above can be made either:

   a.   anytime during the **policy period**, or during the Extended Reporting Period (if applicable); or

   b.   within sixty (60) days after the end of the  **policy period**, as long as such **claim**(s) is reported no later than sixty (60) days after the date of such **claim** was first made against **you** (referred to herein as the "Post Policy Reporting Period").

Any **claim** reported pursuant to subparagraph 5(b) above shall be subject to and shall not increase the Limits of Liability of this policy.

5.   Notice is not required within the time periods set forth in subparagraph (4) above and coverage shall not be available under this policy for any other **claims** for which the total **damages** and **claim expenses** are not reasonably estimated by any of the individuals referenced in subparagraph (1) above to exceed $500,000.

Notwithstanding the foregoing, if **we** determine that **your** failure to comply with any of the notice requirements described in subparagraphs (2), (3) or (4) above in connection with any **claim** is due solely to the fact that **damages** and **claim expenses** are not reasonably estimated by any of those individuals to exceed $500,000, and **you** subsequently provide written notice to **us**, coverage may be available under this policy subject to all other terms, conditions and exclusions to this policy provided that:

   a.   there is at the time such **claim** is noticed to **us** an effective Miscellaneous Professional Liability Policy issued by **us** to the **named insured** providing the same or similar coverage; and

   b.   there has not been, in **our** opinion acting in good faith, any prejudice to **us** in connection with such **claim** by reason of **your** late notification.

**END 10**

**ENDORSEMENT#** *10*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**We** may in our sole discretion, however, deem any such **claim** as being properly submitted under either this policy or any policy in place that satisfies the condition in subparagraph 5(a) above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 10**

ENDORSEMENT# *11*

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph H. is deleted in its entirety and
replaced with the following:

> H.    arising out of any misappropriation of trade secret or infringement of patent,
> copyright, trademark, trade dress or any other intellectual property right;
> provided, however, this exclusion shall not apply to any  **claim** arising out of
> infringement of copyright or trademark of software and software technology
> in connection with the rendering or failure to render **technology professional
> services**;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 11*

ENDORSEMENT# *12*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**TECHNOLOGY SERVICES AND PRODUCTS DEFINITION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that:

1.    Clause II. **DEFINITIONS** is amended to include the following terms at the end of that
Clause:

TP-A.    **"Technology product"** means any computer hardware, firmware,
software, or any related electronic product, equipment or device,
that is created, manufactured, developed, distributed, licensed,
leased or sold (i) by (i) by **you**, or (ii) for **you** by others acting under
**your** trade name to others for compensation which are specifically
designed or intended for use in connection with any **technology
service**.

TP-B    **"Technology Professional Services"** means:

(1)    the rendering or failure to render **your technology services**;
or

(2)    the creation, manufacture, development, distribution,
license, lease or sale of **your technology products**.

TP-C.    **"Technology service**" means any computer or electronic information
technology service performed (i) by **you**, or (ii) for **you** by others
acting under **your** trade name, for others; including, but not limited
to:

(1)    systems analysis,

(2)    systems programming,

(3)    data processing,

(4)    system integration,

(5)    outsourcing development and design,

(6)    management, repair and maintenance of computer products,
networks and systems,

(7)    training in the use of any **technology product**, and

(8)    technology consulting services.

**END 12**

ENDORSEMENT# *12*    **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

2.    Clause III.  **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the
following paragraph at the end of that Clause:

**We** shall not cover **claims**:

TS-A.    arising out of electrical or mechanical failures, including those arising
from any electrical power interruption, surge, brownout or blackout;
provided, however, , this exclusion  shall not apply to  electrical or
mechanical failures, other than  satellite failures, where  such failure was
the result of  **your wrongful act** in connection with  **your** rendering or
failure to render **technology professional services.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 12*

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXTENDED REPORTING PERIOD AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause VI. OTHER PROVISIONS AFFECTING COVERAGE, paragraph J., "Extended Reporting Provisions," is deleted in its entirety and replaced with the following:

J.    Extended Reporting Provisions

1.    **Automatic Extended Reporting Period**

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right following the effective date of such cancellation or nonrenewal to a period of sixty (60) days (herein referred to as the "Automatic Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Automatic Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

The Automatic Extended Reporting Period shall not apply to **claims** that are covered under any subsequent insurance **you** purchase or which is purchased for **your** benefit, or that would be covered by such subsequent insurance but for (1) the exhaustion of the amount of insurance applicable to such claims, or (2) any applicable retention or deductible.

2.    **Optional Extended Reporting Period**

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right, upon payment of an additional premium amount of

(i)    one-hundred percent (100%) of the full annual premium, for a period of one (1) year,

(ii)    one hundred and fifty percent (150%) of the full annual premium, for a period of two (2) years, or

(iii)    one hundred and seventy-five percent (175%) of the full annual premium, for a period of three (3) years, following the effective date of such cancellation or nonrenewal (herein referred to as the "Optional Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Optional Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

**END 13**

ENDORSEMENT# *13*   **(Continued)**

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **policy period**.

The rights contained in this clause shall terminate, however, unless the **named insured** provides written notice of such election together with the additional premium due to **us** within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. **Our** offer of renewal terms, conditions, limits of liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

If the **named insured** exercises its right to purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period shall be deemed void ab initio.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 13*

ENDORSEMENT# *14*

This endorsement, effective  *12:01 am     November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**REAL ESTATE RELATED SERVICES ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  In Clause II. **DEFINITIONS**, paragraph  J. is deleted in  its entirety and replaced with
the following:

**J.**  **Pollutants** means, but are not limited to, any solid, liquid, gaseous, biological,
radiological or thermal irritant or  contaminant, including smoke, vapor,  dust,
fibers, mold,  spores, fungi, germs, soot, fumes, asbestos, acids, alkalis,
chemicals and waste.   "Waste" includes,  but is not  limited to, materials  to
be recycled, reconditioned or reclaimed and nuclear materials.

2.  Solely with respect  to the  coverage afforded  by this  endorsement for  real estate
related services, Clause III.  **EXCLUSIONS - CLAIMS NOT COVERED** is amended to
include the following paragraph at the end of that Clause:

**We** shall not cover **claims**:

RE-A.  arising out  of or  connected with  the performance  of  or failure  to perform
services as a mortgage banker, mortgage broker,  property developer, builder
or construction manager;

RE-B.  arising out of  or  connected  with the  formulation,  promotion, syndication,
offer, sale  or management  of any  limited  partnership, general  partnership,
real estate investment trust or other security, including any interest therein;

RE-C.  arising out of any **insured** advising  others by making promises, warranties or
guarantees as to the future value of any property;

RE-D.  arising out of or connected with any transaction in which  **you** or any  affiliate
of **yours** has a  direct or  indirect  beneficial ownership  interest as  a  buyer,
owner or seller of  real property; provided,  however, this exclusion does  not
apply to:

(i)  real property to which  **you** have taken legal  title solely for
immediate resale and have  entered into a  written contract
to sell  not  later than  one  hundred and eighty (90)  days
after taking legal title;

**END 14**

**ENDORSEMENT# *14*    (Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (ii)    real property to which **you** have taken legal title on behalf of a client in order to facilitate a "like-in-kind" exchange pursuant to 26 U.S.C.S. §1031 as part of **your professional services** ;

RE-E. arising out of any actual or alleged commingling of funds or monies;

RE-F. arising out of any defect in title (1) not disclosed of public record, or (2) of which **you** had actual or constructive knowledge at the date of issuance of insurance of such title;

RE-G. alleging, arising out of, based upon or in connection with the breach of underwriting authority by **you** in **your** capacity as a title insurance agent;

RE-H. arising out of the handling or disbursement of funds, including, but not limited to, closing activities or insurance placement; provided, however, this exclusion shall not apply to any **claim** arising out of **your** performance of **professional services** ;

RE-I. arising out of or alleging **your** payment in connection with building constructions without prior receipt of an architect's certificate, where such certificate is required as a condition of payment;

RE-J. arising out of or alleging having made a payment without prior receipt of appropriate waivers or release of lien from the subcontractors involved, where work or materials have been supplied by subcontractors;

RE-K. arising out of or alleging making a payment without prior receipt of appropriate waivers or releases of lien from the general contractor;

RE-L. arising out of any willful or intentional failure on the part of any **insured** to comply with escrow instructions;

RE-M. arising out of the appraisal of property that is wholly or partially owned by **you** or by any company of which **you** are a director, officer, partner or principal stockholder or in which **you** may have any contemplated future interest; or

**END 14**

ENDORSEMENT# *14*    **(Continued)**

This endorsement, effective   *12:01 am*      *November 18, 2009*      forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

RE-N   alleging, arising out of, based upon, connected with or in any way involving
the rendering of, or any failure to render, any legal services or advice;
provided, however, this exclusion shall not apply to the **professional services**
performed by a lawyer in his/her capacity as a title agent.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 14*

**ENDORSEMENT# *15***

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause II. **DEFINITIONS**, paragraph N., " **subsidiary**," is deleted in its entirety and replaced with the following:

**N.**    **Subsidiary** shall mean:

1.    Any corporation of which the **named insured** owns on the inception date of the **policy period** more than fifty percent (50%) of the issued outstanding voting stock either directly or indirectly through a **subsidiary.**    A corporation ceases being a **subsidiary** under this subparagraph at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

2.    Any corporation of which the **named insured** owns on the inception date of the **policy period** more than thirty percent (30%) of the issued and outstanding voting stock either directly or indirectly through a **subsidiary,** provided that William P. Foley, II contemporaneously serves as the Chairman of the Board of such corporation.   A corporation ceases being a **subsidiary** under this subparagraph, when (i) the **named insured** ceases to own more than thirty (30%) of the issued and outstanding voting stock; or (ii) William P. Foley, II ceases to serve as the Chairman of the Board of such corporation.

3.    Any corporation which becomes a **subsidiary** during the **policy period**; provided that such corporation does not represent more than $600,000,000 in the total assets and/or gross revenue of the **named insured** as of the date of the acquisition.   Notwithstanding the foregoing sentence, in the event that any such acquired **subsidiary** performs zone determination services or natural hazard disclosure reports, no coverage will be available under this policy for any **wrongful act** of such newly-acquired **subsidiary** arising out of the performance of such services unless and until **you** have provided **us** with full particulars of such services and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to such services, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded for such services is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to coverage for such services.

*END 15*

**ENDORSEMENT# *15*    (Continued)**

This endorsement, effective  *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.    Any corporation with becomes a **subsidiary** during the **policy period** where such corporation represents an increase in the total assets and/or gross revenue of the **named insured** of more than $600,000,000; provided, however, such corporation shall be deemed a **subsidiary** under the policy only upon the condition that within ninety (90) days of its becoming a **subsidiary, you** shall have provided **us** with full particulars of the new **subsidiary** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**.

Provided, however, that with respect to subparagraph 1 above, this policy does not cover any **claim** against or **loss** of a **subsidiary** or any partner, director, officer or employee thereof for any **wrongful act** that occurred when the **named insured** did not own more than fifty percent (50%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**. In addition, with respect to subparagraph 2 above, this policy does not cover any **claim** against or **loss** of a **subsidiary** or any partner, director, officer or employee thereof for any **wrongful act** that occurred when the **named insured** (i) did not own more than thirty percent (30%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**; or (ii) William P. Foley, II was not the Chairman of the Board of such **subsidiary.**

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 15**

ENDORSEMENT# *16*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "YOU, YOUR OR INSURED" DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
II. **DEFINITIONS**, paragraph R., " **you**, **your** or **insured**," is deleted in its entirety and is
replaced with the following:

> **You**, **your** or **insured** means:
>
> 1.  the **named insured**;
>
> 2.  any **subsidiary** of the **named insured**, but only with respect to **wrongful acts**
>     which occur while it is a **subsidiary** and is otherwise covered by this policy;
>
> 3.  any past, present or future officer, director, trustee or employee of the **named
>     insured** or **subsidiary** thereof (and in the event the **named insured** is a
>     partnership, limited liability partnership or limited liability company, then any
>     general or managing partner or principal thereof), but only while acting within
>     the scope of their duties as such;
>
> 4.  any entity whom the **named insured** or a **subsidiary** is required by contract to
>     add as an **insured** under this policy, but only for the **wrongful acts** of the
>     **named insured** or that **subsidiary**;
>
> 5.  Fidelity National Information Solutions f/k/a Vista Information Solutions; and
>
> 6.  any independent contractor, but only for **wrongful acts**, committed or
>     allegedly committed, in the performance of **professional services** for, on
>     behalf of, at the direction of or at the request of the **named insured** or a
>     **subsidiary.**

Notwithstanding anything to the contrary, the **insured** under subparagraph 5. of this
endorsement shall be subject to the **retroactive date** set forth in Item 7. of the Declarations
to this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 16**

ENDORSEMENT# *17*

This endorsement, effective *12:01 am      November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## COOPERATION CLAUSE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
IV. **LIMITS OF LIABILITY**, paragraph D. is deleted in its entirety and replaced with the
following:

> D.    **Our** duty to defend ends if **you** refuse to consent to a settlement **we**
> recommend and the claimant will accept.   **You** must then defend the **claim** at
> your own expense. As a consequence of **your** refusal, **our** liability shall not
> exceed the amount for which **we** could have settled such **claim** had **you**
> consented, plus **claim expenses** incurred prior to the date of such refusal,
> plus fifty percent (50%) of **claim expenses** incurred with **our** consent after
> the date of such refusal.   This clause shall not apply to any settlement
> where the total incurred for **damages** and **claim expenses** does not exceed
> the retention.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 17*

ENDORSEMENT# *18*

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### WHERE COVERAGE APPLIES AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the VI,
OTHER PROVISIONS AFFECTING COVERAGE, paragraph C, "Where Coverage Applies" is
deleted in its entirety and is replaced with the following:

**C.     WHERE COVERAGE APPLIES**

> **We** cover **wrongful acts** that occur, **claims** that are brought and **losses** suffered
> anywhere in the world.

All other terms, conditions and exclusions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 18*

ENDORSEMENT# *19*

This endorsement, effective *12:01 am   November 18, 2009*   forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CRISIS MANAGEMENT FUND COVERAGE ENDORSEMENT
### (with Identity Event Services)

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.   Unless otherwise set forth herein, the terms, conditions and exclusions contained in
     this endorsement shall apply only to the coverage afforded under this endorsement.

2.   In Clause I. **INSURING AGREEMENTS**, paragraph A. is deleted in its entirety and
     replaced with the following:

   **A.   CRISIS MANAGEMENT COVERAGE**

   **We** shall pay on behalf of the **named insured** those **crisis management
   expenses** and **identity event service expenses** in excess of the applicable
   Retention incurred in connection with a **crisis management event** first
   occurring during the **policy period**, but solely up to the amount of the **crisis
   management fund**. **Our** obligation to pay **crisis management expenses** and
   **identity event service expenses** ends upon the exhaustion of the **crisis
   management fund**.

3.   In Clause II. **DEFINITIONS**, paragraph F., "**loss**," is amended to include the following
     paragraph at the end thereof:

   **Claim expenses**, **damages** and **loss** also shall not mean **crisis management
   expenses**.

4.   Clause II. **DEFINITIONS** is amended to include the following definitions at the end of
     that Clause:

   **CM-A.   Crisis management event** means one of the following events:

      (1)   **Management crisis**: The death, incapacity or criminal indictment of
            any directors, trustees or officers, including, but not limited to, the
            executive director, or any employee on whom the **named insured**
            maintains key person life insurance.

      (2)   **Bankruptcy**: The public announcement that the **named insured**
            intends to file for bankruptcy protection under the bankruptcy laws
            or that third parties are seeking to file for involuntary bankruptcy on
            behalf of the **named insured**.

*END 19*

**ENDORSEMENT#** *19*   **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**(3)**    **Contribution  revocation**:  The   withdrawal   or   return  of  any
non-governmental grant,  contribution  or  bequest  in  excess of
$500,000.

**(4)**    **Regulatory crisis**:  The public  announcement of the commencement
or threat of commencement of litigation or governmental, regulatory
or criminal proceedings against the  **named insured**.

**(5)**    **Mass tort**:  The public announcement  or accusation that the  **named
insured**, in the conduct of its  business, has caused the  **bodily  injury**
of a group of  persons, or damage  to or destruction  of any tangible
group of properties, including the loss of use thereof.

**(6)**    **Failure of  security**:  An otherwise  covered " **failure of security"** as
defined in  Endorsement  No. 22,  entitled  "AIG NetAdvantage
Complete® Extension Endorsement," of this policy; or

(7)    **Privacy Peril**:  An otherwise covered  " **privacy peril"** as defined in
Endorsement  No. 22,  entitled  "AIG  NetAdvantage  Complete®
Extension Endorsement," of this policy.

(8)    **Personal identity event**.

**(9)**    **Other**:  Any other event previously consented to by  **us** which, in the
good faith opinion of the   **named insured**, did cause or  is reasonably
likely to cause a **material effect**, but only if such event is specifically
scheduled by written endorsement to this policy.

provided, however, **crisis management event** shall  not include  any event
involving:

(i)    any **claim** which has been  reported, or any circumstances  of which
notice has been given, under any policy of which this policy is a

(ii)    renewal or replacement or which it may succeed in time, whether or
not such policy affords coverage for such  **crisis  management event**;
or

(iii)    the actual,  alleged or  threatened  discharge,  dispersal, release  or
escape of **pollutants**; or any direction or request to test for, monitor,
clean up, remove, contain, treat detoxify or neutralize  **pollutants**.

**END 19**

ENDORSEMENT# *19*  (Continued)

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of policy number  *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CM-B.**  **Crisis management firm** means any public relations firm, crisis management firm or law firm hired or appointed by **us**, or by **you** with **our** prior written consent, to perform **crisis management services** in connection with a **crisis management event**.

**CM-C.**  **Crisis management fund** means $1,000,000.

**CM-D.**  " **Crisis management expenses** " means the following amounts incurred within six (6) months of a **crisis management event**, regardless of whether a **claim** is ever made against an **insured** arising from such **crisis management event** and, in the case where a **claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **claim**:

(1)  amounts incurred within 180 days of an **insured's** discovery of a **crisis management event** for which an **organization** is legally liable for the reasonable and necessary fees and expenses incurred by a **crisis management firm** in the performance of **crisis management services** for an **organization** arising from a **crisis management event**;

(2)  amounts incurred, within 180 days of an **insured's** discovery of a **crisis management event** for which an **organization** is legally liable, for the reasonable and necessary printing, advertising, mailing of materials, expenses for travel by directors, officers, partners, **employees** or agents of the **organization** or the **crisis management firm**, in connection with the **crisis management event**; and

(3)  amounts incurred by an **organization,** within 180 days of an **insured's** discovery of a **crisis management event,** for the reasonable and necessary printing, advertising, mailing of materials or other costs to provide notice to consumers of a **personal identity event** for the purposes of maintaining goodwill or in compliance with any consumer notification requirements imposed by law, including but not limited to, the statute known as California SB 1386 (§1798.82, *et. al.* of the California Civil Code).

provided, however, **crisis management expenses** shall not include compensation, fees, benefits, overhead, charges or expenses of any **insured** or any **employee**.

**END 19**

**ENDORSEMENT#** *19*    **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

This definition is subject to the limitations set forth in the Definition of  **loss.**

**CM-E.** **Crisis management services** means those services performed by a  **crisis management firm** in advising the **named insured**  or any of its **subsidiaries,** directors, officers, partners or  employees, on minimizing potential  harm to the **named insured** or **subsidiary** arising  from the **crisis management event** , including, without limitation, maintaining and restoring public confidence  in the **named insured** or **subsidiary** .

CM-F. **Identity event service expenses**  means reasonable fees and  expenses incurred by the **named  insured** or **subsidiary** , within  one (1) year following **your** discovery  of an  otherwise covered  **personal identity event** that first occurred during  the  **policy  period** , for identity  theft  education and assistance, credit file monitoring services,  or any other service  specifically approved by **us** in writing.  Such services shall be provided to any individual whose **personal identification**  is the subject of a  **personal identity event** and shall be for the primary  purpose of mitigating  the  effects of such  **personal identity event.**

**CM-G.** **Material Effect** means  the publication of unfavorable  information regarding the **named  insured** which can reasonably  be  considered to  lessen public confidence in the competence, integrity or viability of the   **named insured** to conduct business.  Such publication must occur in either:

(1)    a daily newspaper of general circulation; or

(2)    a radio or television news report about an  **insured**.

CM-H    **Personal identification**  means any information from which an individual may be uniquely  and  reliably  identified, including without  limitation,  an individual's name, address, telephone number, social  security  number, account relationships,  account  numbers,  account  balances,  account histories and passwords.

CM-I    **Personal identity  event** means  any event  involving the  **named  insured** or **subsidiary** that has  or  could  reasonably  result  in the  disclosure  and fraudulent use of **personal identification,**  that is or was in the  care, custody or control of an  **insured** .

**END 19**

**ENDORSEMENT#** *19*   **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2009*   forms a part of policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

5.  Clause III.  **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the following paragraph at the beginning of that Clause:

This **EXCLUSIONS** section shall not be applicable to **crisis management expenses** and **identity event services** which are subject to all relevant terms and conditions of this policy, including the limitations set forth in Clause II(CM-A) set forth above in this endorsement and in Clause VII(CM-A), " **CRISIS MANAGEMENT PROVISIONS**," as set forth in this endorsement below.

6.  Clause IV. **LIMITS OF LIABILITY** is amended to include the following paragraph at the end of that Clause:

CM-A.  **Our** total liability for all **crisis management expenses** and **identity event service expenses** arising from any and all **crisis management events** occurring during the **policy period**, in the aggregate, shall be the **crisis management fund**.  This limit shall be **our** maximum liability under this policy regardless of the number of **crisis management events** reported during the **policy period**. The **crisis management fund** shall be part of, and not in addition to, the Limit of Liability set forth in the Declarations as "aggregate."

7.  Clause VII. **OTHER PROVISIONS AFFECTING COVERAGE** is amended to include the following provision at the end of that Clause:

CM-A.  **CRISIS MANAGEMENT COVERAGE PROVISIONS**

1.  Subject to the **crisis management fund** limits, exclusions and other terms of this endorsement, **we** shall only be liable for those **crisis management expenses** and **identity event service expenses** that are in excess of the Retention amount of $250,000 + 10% coinsurance.  The Retention amount stated in Item 4 of the Declarations shall not apply to **crisis management expenses** or **identity event service expenses**.

2.  **You** shall also bear uninsured at **your** own risk and pay the Coinsurance percentage proportion of **crisis management expenses** and **identity event services expenses** in excess of the Retention amount set forth in paragraph 1. above.  The Coinsurance percentage to be applied shall be ten percent (10%).  **Our** liability hereunder with respect to **crisis management expenses** and **identity event service expenses** shall only apply to the remaining percentage

**END 19**

ENDORSEMENT# *19*    (Continued)

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

of such **crisis management expenses** and **identity event service expenses**. **We** shall have no obligation to pay to the extent that **you** do not pay the applicable Coinsurance percentage. In **our** sole and absolute discretion, **we** may advance all or part of the applicable Coinsurance, in which case **you** agree to repay **us** immediately after **we** notify **you** of that payment. Payments of Coinsurance shall not be subject to and do not reduce any limits of liability under this policy.

3.   An actual or anticipated **crisis management event** shall be reported to **us** as soon as practicable, but in no event later than thirty (30) days after the **named insured** first incurs **crisis management expenses** or **identity event services expenses** for which coverage will be requested under this policy.

4.   There shall be no requirement for the **named insured** to obtain **our** prior written approval before incurring any **crisis management expenses** or **identity event service expenses** , provided that the **crisis management firm** selected by the **named insured** to perform the **crisis management services** has been approved by **us**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 19**

ENDORSEMENT# 20

This endorsement, effective 12:01 am    November 18, 2009    forms a part of policy number  01-351-34-64
issued to   FIDELITY NATIONAL FINANCIAL INC

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### EXCLUSION K. AND O. AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause III, EXCLUSIONS - CLAIMS NOT COVERED, paragraphs K and O are deleted in their entirety and replaced with the following:

K.   alleging, arising out of or resulting, directly or indirectly, from any liability or obligation under any contract or agreement or out of any breach of contract; however, this exclusion does not apply to any:

(1)   liability or obligation **you** would have in the absence of such contract or agreement; or

(2)   liability or obligation under a contract for  **professional services** from a **wrongful act**; …

O.   alleging, arising out of or resulting, directly or indirectly, from any guarantee or express warranty; inaccurate, inadequate, or incomplete description of the price of goods, products or services; or any failure of goods, products or services to conform with an advertised quality or performance; or liquidated damages; or any failure to provide goods or products, or perform services within a specified time period, by a deadline or according to specified milestones; or the collection of or seeking the return of fees or royalties or other compensation paid to an  **insured**; or **your** cost of providing, correcting or re-performing or completing any  **professional services**; or any **insured's** fees, cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 20**

ENDORSEMENT# *21*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### LOSS DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause II, DEFINITIONS, paragraph F, "**Loss**" is deleted in its entirety and replaced with the following:

**F.**     **Loss** means the total sum of **damages** and **claim expenses**.

    **Loss** shall not mean and this policy shall not cover:

    1.     fines, penalties, or taxes levied against an **insured**;

    2.     non-pecuniary relief;

    3.     matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; or

    4.     the monetary value of any electronic fund transfer or transaction by an **insured** or on **your** behalf, which is lost or diminished during transfer into, out of or between an **insured's** accounts.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 21*

**ENDORSEMENT# 22**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AIG netAdvantage Complete®Extension Endorsement

In consideration of the premium charged, and in reliance upon the statements in the application(s) attached hereto and made a part of the policy, it is understood and agreed that the terms, conditions, exclusions and other limitations set forth in this Endorsement are solely applicable to coverage afforded by this Endorsement. COVERAGES NAC-A, NAC-B, NAC-C AND NAC-D OF THIS ENDORSEMENT ARE WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS. The policy is amended as follows:

1.    Solely with respect to the coverage afforded under this endorsement, Item 3B, Sublimits of Liability, is amended by appending the following to the end of that section:

    G.    **Regulatory Action Sublimit of Liability** (in the aggregate for the policy): the lesser of:

        (1)    $250,000, or
        (2)    fifty percent (50%) of all the **claims expenses** incurred by the **insured** in the defense of all covered **regulatory actions**

2.    Clause I. **INSURING AGREEMENTS**, is deleted in its entirety and replaced with the following:

    **NAC-A    Internet Media Liability Coverage**
        **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, including liability **assumed under contract**, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)** in the display of **Internet media**. Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**.

    **NAC-B    Internet Professional Services Liability Coverage**
        **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)**. Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**, and be in **your** performance of **Internet professional services.**

**END 22**

**ENDORSEMENT#** *22*     **(Continued)**

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NAC-C**     **Security and Privacy Liability Coverage**

    **1.**     **Security Liability Coverage**

        **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)**.  Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**.

    **2.**     **Privacy Liability Coverage**

        **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for your **wrongful act(s)**.  Such **wrongful act(s)** must occur on or after the **Retroactive Date**.

**NAC-D**     **Cyber-Extortion Coverage**

    **We** shall indemnify **you** for those amounts, in excess of the applicable Retention, **you** pay as **extortion monies** resulting from an **extortion claim** first made against **you** and reported to **us** in writing during the **policy period**.

**NAC-E**     **Information Asset Coverage**

    **We** shall pay **you** the actual **information asset loss**, in excess of the applicable Retention, which you sustain, resulting directly from **injury** to **information assets** first occurring during the **policy period**.  Such **information asset loss** must first occur during the **policy period** and result from a **failure of security** of **your computer system** that also first occurs during the **policy period**.

**END 22**

**ENDORSEMENT# *22*   (Continued)**

This endorsement, effective  *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NAC-F    Business Interruption Coverage**

**We** shall pay  **you** the actual  **business interruption loss** ,  in excess of  the
applicable Retention, which  **you** sustain during  the  **period of recovery** (or
the **extended  interruption period**  if applicable),  resulting directly  from a
**material interruption** .    The **failure of security**  causing  the  **material
interruption** and  the  **business interruption loss**  must each first occur
during the **policy period.**

3.    Clause I, INSURING AGREEMENTS,  paragraph B, DEFENSE,  is hereby amended  by
appending the following paragraph to the end thereof:

4.    We  **have the right,** but not the duty, to defend any  **regulatory action.  We**
shall pay  for **claim  expenses**  any **insured**  incurs with  **our**  prior written
consent in the defense of a  **regulatory action**  for covered  **wrongful acts.**

4.    Solely with  respect to  the  coverage afforded  under this endorsement, Clause II.
**DEFINITIONS**, paragraphs  B. (" **claim** )," F. (" **loss**)," O. ("suit")  and Q.  (" **wrongful
act**)," are deleted in their entirety and replaced with the following:

B.    **"Claim"** means:   1.    a written  or oral  demand  for money,  services,
non-monetary relief  or injunctive relief;    2. a  **suit;** 3.  with respect to
coverage NAC-C.2 only, a  **regulatory action;** or 4.  with respect to coverage
NAC-D only, an  **extortion claim** .

F.    **"Loss"** means  the  total  sum  of any  **damages** ,  **claim  expenses** ,  **extortion
monies** , **information  asset loss**  and **business  interruption loss.** ,  However, "
**loss**," " **damages**," " **claim expenses** ," " **extortion monies**," " **information asset
loss**," and " **business interruption loss** " shall  not mean,  and this policy  shall
not cover:

1.    except as with respect to  **business interruption loss** ,  production costs
or **your**  loss  of profits, or  the cost of  recall, reproduction, reprinting,
or correction of  **material**  by any person or entity;

2.    except as  with respect  to  **business interruption loss** ,  compensation,
benefits, overhead, charges or expenses of  **you** or  **your** employees;

3.    any costs or expenses incurred by any person or entity to withdraw or
recall **your material,**  media,  medium (including without limitation
**Internet media** ) or professional services from the marketplace, or from
loss of use arising out of such withdrawal or recall;

***END 22***

ENDORSEMENT# *22*   (Continued)

This endorsement, effective  *12:01 am*   *November 18, 2009*   forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.    any fines, penalties, or taxes levied against an  **insured**;

5.    the monetary value of any electronic fund transfers or transactions by
**you** or on  **your** behalf,  which is  lost, diminished  or damaged  during
transfer from, into or between  **your** accounts;

6.    with respect to  **damages** and **claim  expenses** only,  any amounts for
which **you**  are  not  financially liable  or  for  which there is  no  legal
recourse against  **you**;

7.    the costs  and  expenses of  complying  with  any injunctive  or  other
form of equitable relief;  or

8.    matters that may  be deemed  uninsurable under the  law pursuant  to
which this policy shall be construed.

O.    **"Suit"** means  a civil  proceeding  for  monetary, non-monetary  or  injunctive
relief, which  is commenced  by  service of  a complaint  or  similar pleading;
provided, however, **suit**  shall not  include a  **regulatory action**.   **Suit** shall also
include a binding arbitration proceeding in which  **damages**  are  alleged and to
which **you** must submit or do submit with  **our**  prior written consent.

Q.    **"Wrongful act"** means:

1.    with respect  to  coverage NAC-A,  and  coverage NAC-B  when
rendering or  failing to  render  **Internet  media services** ,  any actual  or
alleged breach of  duty, neglect, act,  error, misstatement, misleading
statement, or omission that results in:

a.    any form of defamation or  other tort related to  disparagement
or  harm  to  character,  including  libel,  slander,  product
disparagement or  trade libel;  or  the infliction of emotional
distress, outrage or outrageous conduct directly  resulting from
the foregoing;

b.    an infringement of copyright,  domain name, title,  slogan,
trademark, trade name, trade  dress, mark or service  name, or
any form  of  improper deep-linking  or  framing; plagiarism,  or
misappropriation of ideas  under implied contract  or  other
misappropriation of property rights, ideas or information; or

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      c.    any form of  invasion, infringement  or interference with  rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial  appropriation of name, persona or likeness;

    2.    with respect to coverage NAC-B only, any actual or  alleged breach of duty,  neglect,  act, error,  misstatement,  misleading  statement,  or omission in the rendering  of or failure  to render **Internet professional services** to others, including  any of  the foregoing that results in  a **computer attack** to others; and

    3.    with respect to:

        a.    coverage NAC-C.1 only,  any actual  or alleged  breach of duty, neglect, act, error or omission that results in:

            (1)    a **failure of security** as provided in  subparagraphs (1) or (2) of the definition of  **failure of security** ; or

            (2)    **your** failure to disclose a  **failure of security** as defined in subparagraph (1), (2) or (4) of the definition of  **failure of security**, in violation of any  **security breach notice law;**

        b.    coverage NAC-C.2 only, any  actual or alleged breach  of duty, neglect, act, error or omission that results in a  **privacy peril.**

5.    Solely with respect to the coverage afforded under this endorsement, Clause II.

    **DEFINITIONS**:

A.    The  last  paragraph  in Clause II.N,  " **subsidiary** ," as  set forth  in  the SUBSIDIARY DEFINITION  AMENDATORY ENDORSEMENT  to this policy, is deleted in its entirety and replaced with the following:

    Provided, however, that  with respect  to subparagraph  1 above,  this policy does not cover  any **loss** of a  **subsidiary** or  any partner,  director, officer or employee thereof  for any  **extortion claim, failure of security** or **loss** that occurred when the  **named insured** did  not own  more than fifty  percent (50%) of the issued  and outstanding voting stock  of such  **subsidiary**, either directly or indirectly through one or more of its  **subsidiaries** .  In addition, with respect to subparagraph  2 above, this policy does  not cover any  **loss** of a **subsidiary** or

**END 22**

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

any partner, director, officer or employee thereof for any **claim, failure of security,** or **loss** that occurred when the **named insured** (i) did not own more than thirty percent (30%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**; or (ii) William P. Foley, II was not the Chairman of the Board of such **subsidiary.**

B.   Paragraph R., **"You, your**, **insured"** is amended to include the following at the end thereof:

5.   any person provided by an employment contractor or agency under an agreement between the **named insured** and the employment contractor or agency to perform duties related to the conduct of the **named insured's Internet**-related business; and

6.   with respect to coverage NAC-A and coverage NAC-B for **Internet media services** only, any agent or independent contractor, including distributors, licensees and sub-licensees, in their provision of **material** for **Internet media** on behalf or at the direction of the **named insured**, but only in the event that a **claim** has also been brought against an **insured** as defined in subparagraphs 1. through 3. of this definition, and only while such **claim** is pending against such **insured;**

6.   Solely with respect to the coverage afforded under this endorsement, the following terms shall have the following meanings and Clause II. **DEFINITIONS** shall be deemed amended to include such terms:

NAC-A.   **Advertising** means material on the **Internet** in any publicity or promotion, including branding, co-branding, sponsorships or endorsements, on **your** own behalf or for others.

NAC-B.   **Assumed under contract** means liability assumed by **you** in the form of hold harmless or indemnity agreements executed with any party, but only for **Internet media** displayed on **your Internet** site under coverage NAC-A, or **material** published or displayed by **you** in the rendering of **Internet media services** under coverage NAC-B.

NAC-C.   **Business** means **your** operations that are dependent upon or make use of **your computer system.**

**END 22**

**ENDORSEMENT#** *22* **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2009*   forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-D.   **Business interruption loss**  means the sum of:

1.   **income loss**;

2.   **extra expense**;

3.   **dependent business interruption loss** ;  and

4.   **extended business interruption loss** , but only in the event the amount of **extra expense** and **income loss** during the **period of recovery** together exceed the applicable Retention.

Provided, however, **business interruption loss**  shall not mean,  and there shall be no coverage under coverage NAC-F for:

1.   loss arising out of any liability to third-parties for whatever reason;

2.   legal costs or legal expenses of any type;

3.   costs or expenses **you** incur to update, upgrade, enhance, or replace **your computer system** to a  level beyond that which existed prior to sustaining **loss**;

4.   loss incurred as a result of unfavorable business conditions; or

5.   costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

**Business interruption loss**  shall be  calculated based on  the actual **business interruption loss you** sustain per hour.

NAC.E.   **Class action claim** means any  **claim** arising out  of a **wrongful act**  which resulted in a **privacy peril**:

1.   brought on behalf  of a class or  putative class of plaintiffs  (whether or not certified as such);

2.   otherwise brought on a representative basis; or

3.   alleging or arising from  the same  **wrongful act** or a series  of continuous, repeated or related  **wrongful acts** as any  **claim** described in the preceding subparagraphs NAC.E.1 or NAC.E.2.

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-F.    **Computer    attack**    means    **unauthorized    access**,    **unauthorized    use**,
transmission of a **malicious code,** or a **denial of service attack** that:

1.    alters, copies, misappropriates, corrupts, destroys, disrupts,
deletes, damages, or prevents, restricts, or hinders access to, a
**computer system**;

2.    results in the disclosure of private or confidential information; or

3.    results in **identity theft**;

whether any of the foregoing is intentional or unintentional, malicious or
accidental, fraudulent or innocent, specifically targeted at **you** or
generally distributed, and regardless of whether the perpetrator is
motivated for profit.

For purposes of this definition, the terms referenced above are defined as
follows:

1.    **Unauthorized access** means the gaining of access to a **computer
system** by an unauthorized person or persons.

2.    **Unauthorized use** means the use of a **computer system** by an
unauthorized person or persons or an authorized person or persons
in an unauthorized manner.

3.    **Malicious code** means an unauthorized corrupting or harmful piece
of code. **Malicious code** includes, but is not limited to, computer
viruses, "Trojan horses," "worms," and "time or logic bombs."

4.    **Denial of service attack** means an attack launched by a person(s)
that sends an excessive volume of electronic data to a **computer
system** in order to deplete such **computer system's** capacity, and
prevents those who are authorized to do so from gaining access
to such **computer system** in a manner in which they are legally
entitled.    Provided, however a depletion in **your computer
system's** capacity shall not be considered a **denial of service
attack** if caused by a mistake in determining capacity needs.

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

     5.    **Identity theft** means:

        a.    with respect to all coverages except NAC-C.2 of paragraph 1 of this endorsement, the misappropriation of personal identity information in **your** care, custody or control, of **your** customers, members, or employees that is stored on **your computer system**, including without limitation, social security numbers, account numbers, passwords, credit card numbers, addresses, or phone numbers, and that has resulted in, or could reasonably result in the wrongful or fraudulent use of such information; and

        b.    with respect to coverage NAC-C.2, the misappropriation of **private information** that has resulted in, or could result in the wrongful or fraudulent use of such information, including without limitation, fraudulently emulating the identity of an individual or corporation.

NAC-G.    **Computer system** means computer hardware, software, firmware, and components thereof, including electronic data stored thereon, which are linked together through a network of two or more computers, including such networks accessible through the **Internet**, intranets, extranets, or virtual private networks.

NAC-H.    **Confidential corporate information** means any **trade secret**, data, design, interpretation, forecast, formula, method, practice, process, record, report or other item of information of a non-**insured** third party, and which is (i) in **your** care, custody or control; or (ii) not available to the general public.

NAC-I.    **Dependent business** means an entity that **you** do not own, operate or control, but that **you** depend on to conduct **your business**.

NAC-J.    **Dependent business interruption loss** means **your income loss** incurred as a direct result of a **material interruption** caused directly by a **failure of security** of a **dependent business**, but only if such **failure of security** would have been covered under this policy if such **dependent business** had been the **named insured**, applying the same terms and conditions herein.

*END 22*

**ENDORSEMENT# *22*  (Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-K.    **Extended business interruption loss** means **your income loss** during the
**extended interruption period** .

NAC-L.    **Extended interruption period** means the period of time that:

(1)    begins on the date and time that the **period of recovery** ends; and

(2)    ends on the date and time **you** restore, or would have restored if
**you** had exercised due diligence and dispatch, the net profit (or
loss) before income taxes that would have been earned by **you**
directly through **your business** had there not been a **material
interruption**.

Provided, however, any **extended interruption period** shall end no later
than thirty (30) consecutive days after the date and time the **period of
recovery** ends.

NAC-M.    **Extra expense** means the expenses **you** incur that are both reasonable
and necessary during the **period of recovery**:

1.    to reduce **your income loss**, provided that such expenses:

a.    are over and above the total reasonable and necessary
expenses that **you** would have incurred had no **material
interruption** occurred; and

b.    do not exceed the amount by which the **income loss**
covered under this policy is thereby reduced;

2.    to minimize or avoid the **material interruption** and continue **your
business**, which would not have been incurred had no **material
interruption** occurred;    provided, however, that such expenses
shall not include **forensic expenses** ; or

3.    as **forensic expenses** , which would not have been incurred had no
**material interruption** occurred.

Provided, however, that with respect to any **material interruption** caused
by a **failure of security** of **your dependent business** , **extra expense** shall
be limited to those expenses described in above subparagraph 1. of this
paragraph.

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-N.    **Extortion claim** means any **claim** in the form of a threat or connected series of threats to commit an intentional **computer attack** against **you** for the purpose of demanding **extortion monies** from **you**.

NAC-O.    **Extortion monies** means any monies paid by **you** with **our** prior written consent to a person(s) whom **we** reasonably believe to be responsible for an **extortion claim**, solely where such payment is made to terminate or end such **extortion claim**; provided, however, that such monies shall not exceed the amount **we** reasonably believe to be the **loss** that would have been covered under this policy had the **extortion monies** not been paid. This definition is subject to the limitations set forth in the Definition of **loss**.

NAC-P.    **Failure(s) of security** means:

1.    the actual failure and inability of the **security** of **your computer system** to mitigate loss from or prevent a **computer attack**, including without limitation a **computer attack** that results in the acquisition by an unauthorized person of **personally identifiable information** owned or licensed by **you**;

2.    with respect to coverage NAC-C.1 only, physical theft of hardware or firmware controlled by **you** (or components thereof) on which electronic data is stored, by a person other than an **insured**, from a premises occupied and controlled by **you**;

3.    with respect to **dependent business interruption** only, the actual failure and inability of the **security** of **your dependent business' computer system** to prevent a **computer attack;**

4.    with respect to **information holders** only, the actual failure and inability of the **security** of an **information holder's computer system** to prevent a **computer attack** that results in the acquisition by an unauthorized person of **personally identifiable information** owned or licensed by **you**.

**Failure(s) of security** shall also include such actual failure and inability above, resulting from the theft of a password or access code by non-electronic means in direct violation of **your** specific written **security** policies or procedures.

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective  *12:01 am*     *November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-Q.    **Forensic expenses** means those additional expenses **you** incur to conduct an investigation of **your computer system** to determine the source or cause of the **failure of security** that caused the **material interruption.**

NAC-R.    **Income loss** means the:

1.    net profit (or loss) before income taxes that is prevented from being earned by **you** through **your business** directly because of a **material interruption**; and

2.    normal operating expenses incurred by **you** (including payroll), but only to the extent that such operating expenses must necessarily continue during the **period of recovery** (or **extended interruption period**, if applicable), and only to the extent that such expenses would have been incurred by **you** had no **material interruption** occurred.

**Income loss** shall be calculated on an hourly basis based on **your** actual net profit (or loss) and actual and normal operating expenses, as described above. For purposes of this policy, "net profit (or loss)" shall be calculated in accordance with paragraph VII.U as endorsed herein.

However, **income loss** shall be reduced to the extent **you** are able to, or should have been able to with the exercise of due diligence and dispatch, in whole or in part, end, reduce or limit the **material interruption** of **your computer system**, or conduct **your business** by other means.

NAC-S.    **Information assets** means the:

1.    software or electronic data, including without limitation, customer lists and information, financial, credit card or competitive information, and confidential or private information, stored electronically on **your computer system**, which is subject to regular back-up procedures; or

2.    capacity of **your computer system**, including without limitation, memory, bandwidth, or processor time, use of communication facilities and any other computer-connected equipment.

**END 22**

**ENDORSEMENT# 22** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-T.  **Information asset loss**  means:

1.  with respect to **information assets** described in subparagraph II.NAC-S.1. that are altered, corrupted, destroyed, disrupted, deleted or damaged, the actual and necessary costs **you** incur to **restore your information assets** ; provided, however:

    a.  if **you** cannot **restore** such **information assets** , but can **recollect** such **information assets** , then **information asset loss** shall mean only the actual cost **you** incur to **recollect** such **information assets** ; and

    b.  if **you** cannot **restore** or **recollect** such **information assets** , then **information asset loss** shall mean only the actual cost **you** incur to reach this determination;

2.  with respect to **information assets** described in subparagraph II.NAC-S.1.( that are copied, misappropriated, or stolen, including without limitation any **information assets** that are **trade secrets** , **information asset loss** means the stated value set forth for each scheduled **information asset** as endorsed to this policy (if applicable); or

3.  with respect to **information assets** described in subparagraph II.NAC-S.2. that are misappropriated or stolen, the actual cash value **you** paid for such lost capacity of **your computer system** , which would not have been paid for by **you**, but for such misappropriation or theft.

For purposes of subparagraph 1. above, the following definitions apply:

1.  **Restore** shall mean costs or expenses to restore **information assets** from any collection of partially or fully matching electronic data or software, or through electronic data or disaster recovery methods.

2.  **Recollect** shall mean costs or expenses to: a. recollect the information making up the **information asset** , including without limitation, information from non-electronic sources; and b. organize and transcribe such information into the same or substantially similar form as the original **information asset** .

*END 22*

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective  *12:01 am*      *November 18, 2009*      forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

However, **information asset loss** shall not mean, and there shall be no coverage under coverage NAC-E for:

1.  loss arising out of any liability to third-parties for whatever reason;

2.  legal costs or legal expenses of any type;

3.  costs or expenses **you** incur to update, upgrade, enhance or replace **your information assets** to a level beyond that which existed prior to sustaining **loss**;

4.  loss arising out of any physical damage to or destruction of the computer hardware, firmware or any other property except **information assets**;

5.  that part of any **information asset loss**, for which the proof as to its existence or amount is solely dependent on: a. an inventory computation or comparison; or b. a profit and loss computation or comparison; provided, however, where the **insured** establishes wholly apart from such comparison that it has sustained a **information asset loss**, then it may offer its inventory records and actual physical count of inventory in support of the amount of such **information asset loss** claimed;

6.  the cost or expenses **you** incur for researching or developing **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable);

7.  the economic or market value of, or the monetary value of lost market share, profits, or royalties related to, any **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable); or

8.  costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective    *12:01 am*      *November 18, 2009*      forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-U.    **Information holder** means a third party that **you** have provided **personally identifiable information** to and with whom **you** have entered into a contract that requires such party to protect such **personally identifiable information**.

NAC-V.    **Injury** means: 1. alteration, corruption, destruction, disruption, deletion, or damage; or 2. copying, misappropriation or theft **.**

NAC-W.    **Internet** means the worldwide public network of computers commonly known as the Internet, as it currently exists or may be manifested in the future.

NAC-X.    **Internet media** means any **material**, including **advertising**, on **your Internet** site.

NAC-Y.    **Internet professional services** means any of the following services defined and selected below (by indication of a check marked box - there shall be no coverage for any of the services unless checked), which **you** provide to others:

    **(X)** <u>**Application service provider (ASP services)**</u> , which means providing access to computer applications controlled by **you** for use by others through the **Internet**;

    **(X)** <u>**Domain name registration services**</u> , which means the following services provided in order to facilitate navigation of the **Internet**: collecting, processing or maintaining information provided to **you** which is necessary for registering a domain name; registering a domain name; or accepting or maintaining a record of domain names in a database;

    **(X)** <u>**e-Commerce transaction services**</u> , which means the following services provided on behalf of others through the **Internet**: processing electronic transactions; registering **Internet** users; or collecting or organizing information provided by **Internet** users, including demographic and transactional data;

    **( )** <u>**Electronic exchange and auction services**</u> , which means: the electronic matching of third-party buyers and third-party sellers of goods or services through the **Internet**; and providing **e-commerce transactions services** with respect to such buyers and sellers;

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(x)  **Internet hosting services** , which means:  housing or maintaining physical control over others' computer file servers connected  to the **Internet**; or providing storage of others' electronic data on  **your computer systems** connected to the **Internet**, for the purpose of transmitting electronic data through the  **Internet**;

(x)  **Internet media services,** which means:  the electronic publishing or display of material (including **advertising**) on an **Internet** site; or providing or  maintaining of: instant messaging, web-conferencing, webcasting, **Internet**- based electronic  mail, online forums, bulletin boards, list-serves, or chat rooms;

( )  **Internet service provider (ISP  services)** , which means providing direct access to the  **Internet**;

(x)  **Managed  and network  security services** ,  which means: reviewing, analyzing, or consulting with respect to written security  policies intended to prevent a **computer attack** ;  analyzing, testing, or monitoring the **security**  infrastructure or vulnerabilities of **computer systems**; implementing, managing or maintaining **security**; providing content filtering **security**; providing **security**  patch administration; providing security audits; or preparing security  assessment reports;

( )  **Public  Key Infrastructure  Services** , which means: developing, implementing, or managing public key infrastructure; registering, authenticating or  validating  the identities of users of public key infrastructure;  issuing or managing electronic security credentials or digital  certificates for message  encryption;  monitoring  or maintaining  the  integrity or  security  of electronic  information transmitted using public key infrastructure;

(X)  **Search engine services** ,  which means providing  search or navigational computer  applications  to allow  others to  locate electronic data through the  **Internet**; or

(x)  **Web portal services** , which means organizing,  aggregating, or providing access  to  electronic data,  material  or any service described above (that  has been selected  and checked in  Item 6 of the Declarations) in  this definition,  through an  **Internet**  site commonly known as a "web portal."

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective  *12:01 am*     *November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-Z.    **Material** means content in any form, including written, printed, video, electronic, digital, or digitized content:

    1.    in broadcasts, including, but not limited to, television, motion picture, cable, satellite television and radio broadcasts;

    2.    in publications, including, but not limited to, newspaper, newsletter, magazine, book and other literary, monograph, brochure, directory, screen play, film script, playwright and video publications;

    3.    in **advertising**; or

    4.    displayed on an Internet site.

NAC-AA.    **Material interruption** means the actual and measurable interruption or suspension of **your computer system**, which is directly caused by a **failure of security**.

NAC-BB.    **Period of recovery** means the time period that:

    1.    begins on the date and time that a **material interruption** first occurs; and

    2.    ends on the date and time that the **material interruption** ends, or would have ended if **you** had exercised due diligence and dispatch.

Provided, however, the **period of recovery** shall end no later than thirty (30) consecutive days after the date and time that the **material interruption** first occurred.

NAC-EE.    **Personally identifiable information** means any of the following in **your** care, custody or control: (1) information from which an individual may be uniquely and reliably identified or contacted, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords; (2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations; and (3) information concerning an individual that would be considered "protected health information" within Health Insurance Portability and Accountability Act of 1996 (as amended) and its implementing regulations.

*END 22*

ENDORSEMENT# *22*    **(Continued)**

This endorsement, effective  *12:01 am*     *November 18, 2009*      forms a part of
policy number  *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-FF.  **Privacy peril** means any actual or alleged:

    1.   unauthorized disclosure by **you** of **private information** or failure by **you** to protect **private information** from misappropriation, including, without limitation, any unintentional violation of **your privacy policy** or misappropriation that results in **identity theft**;

    2.   failure by an **information holder** to protect **personally identifiable information** from misappropriation, provided that any failure to protect such information shall not include any intentional, dishonest, fraudulent, criminal or malicious act, error or omission if committed by:

        (i)   the **information holder**;

        (ii)   any elected or appointed officer, or director of the **information holder**; or

        (iii)   any employee (other than officers) or independent contractors employed by an **information holder** if any elected or appointed officer of an **information holder** possessed, at any time, knowledge of the intentional, dishonest, fraudulent, criminal or malicious act committed by such employee or independent contractor that caused a direct loss to an **insured** or any other person.

    3.   failure by **you** to disclose or warn of an actual or potential **identity theft**, but only if such **identity theft** resulted directly from NAC-FF.1. or NAC-FF.2. above;

    4.   violation of any federal, state, foreign or local privacy statute alleged in connection with a **claim** for **damages** from NAC-FF.1, NAC-FF.2. or NAC-FF.3. above.

NAC-GG. **Privacy policy** means:

    a.   with respect to all coverages except NAC-C.2. in paragraph 1 of this endorsement, any policy in any form regarding the collection, dissemination, storage, or treatment of information regarding customers, visitors to an Internet site, or other persons.

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective   *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

    b.   with respect to coverage NAC-C.2., the **named insured's** policies and practices intended to protect the confidentiality of **private information**, including without limitation, statements in written or electronic form regarding the collection, dissemination or treatment of **personally identifiable information** .

NAC-HH.  **Private information** means:

    1.   **personally identifiable information** ; or

    2.   **confidential corporate information** .

NAC-II.  **Regulatory action** means a request for information, civil investigative demand or civil proceeding commenced by service of a complaint or similar pleading, brought by, or on behalf of, a governmental agency that alleges a **privacy peril** as defined in sub-paragraph NAC-FF.4. of the definition of **privacy peril**, which may reasonably be expected to give rise to a covered **suit.**

NAC-JJ.  **Security** means hardware, software or firmware whose function or purpose is to mitigate loss from or prevent a **computer attack** . **Security** includes, without limitation, firewalls, filters, DMZ's, computer virus protection software, intrusion detection, the electronic use of passwords or similar identification of authorized users. **Security** also means **your** specific written policies or procedures intended to directly prevent the theft of a password or access code by non-electronic means.

NAC-KK.  **Security breach notice law** means any statute or regulation that requires an entity storing **personally identifiable information** on its **computer system**, or any entity that has provided **personally identifiable information** to an **information holder** for storage on such **information holder's computer system**, to provide notice of any actual or potential unauthorized access by others to **personally identifiable information** stored on such **computer system**, including but not limited to, the statute known as California SB 1386 (§1798.82, *et. al.* of the California Civil Code).

**END 22**

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-LL. **Trade secret** means information (including any idea) that has been reduced to a written or electronic form, including a formula, compilation, pattern, program, device, method, process, or technique that:

1. derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable through proper means by other persons who can obtain economic advantage from its disclosure or use;

2. is the subject of reasonable efforts to maintain its secrecy; and

3. is used, capable of being used, or intended to be used in commerce.

NAC-MM. **Waiting hours period** means the number of hours set forth in subsection NAC-F of Item 4 of the Declarations and shall apply to each **period of recovery**.

NAC-NN. **Waiting hours retention** means the dollar amount of **business interruption loss you** incur during a **waiting hours period**.

NAC-OO. **Your computer system** means a **computer system** under the ownership, operation or control of the **named insured** or its **subsidiaries**.

7. Solely with respect to the coverage afforded under this endorsement, Clause III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraphs H., I., J., K., M., N. and S. shall not apply to any coverage that may be afforded under this endorsement.

8. Solely with respect to the coverage afforded under this endorsement, Paragraph A. of Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** shall not apply to INSURING AGREEMENTS NAC-C., NAC-D, NAC-E and NAC-F.

9. Solely with respect to the coverage afforded under this endorsement, Paragraph L. of Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** shall not apply to INSURING AGREEMENTS NAC-C.

10. Solely with respect to the coverage that is afforded under this endorsement, Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the following paragraphs at the end of that Clause:

**We** shall not cover any **claim** or **loss**:

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-A.   arising out of any of the following:

    1.   fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, an act of God or any other physical event, however caused;

    2.   strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, committed by a person or persons whether acting on their own behalf or on behalf of or in connection with any organization, or any action taken to hinder or defend against these actions; or

    3.   electrical or mechanical failures, including any electrical power interruption, surge, brownout or blackout; a failure of telephone lines, data transmission lines, satellites or other infrastructure comprising or supporting the **Internet**, unless such lines or infrastructure were under **your** operational control;

NAC-B.   arising out of any infringement of any patent;

NAC-C.   arising out of any antitrust violations, restraint of trade or unfair competition, including, without limitation, violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act, or any other federal, state, local or foreign laws regulating the same or similar conduct;

NAC-D.   arising out of any misappropriation, theft, copying, display or publication of any **trade secret** by, or with active cooperation, participation, or assistance of, any **Insured**, any of **your** former employees, subsidiaries, directors, officers, partners, trustees, or any of **your** successors or assignees;

NAC-E.   arising out of any **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation, prior to or pending as of the **first inception date**; or alleging or arising out of or relating to any fact, circumstance, situation or **wrongful act** alleged in such **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation;

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-F.    arising out of any liability or obligation under any contract or agreement, including, without limitation, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to:

1.    liability **you** would have in the absence of such contract or agreement; or

2.    with respect to coverage NAC-A or NAC-B for **Internet media services** only, liability **assumed under contract** ;

3.    with respect to coverage NAC-B only, liability or obligation under a contract for **internet professional services** from a **wrongful act**; or

4.    with respect to coverage NAC-C.2., liability or obligation under a confidentiality or non-disclosure agreement.

NAC-G.    arising out of any of the following:

1.    any warranty, representation or guarantee; inaccurate, inadequate, or incomplete description of the price of goods, products or services; or any failure of goods, products or services to conform with an advertised quality or performance; or liquidated damages; or any failure to provide goods or products, or perform services within a specified time period, by a deadline or according to specified milestones; or the cost of providing, correcting, re-performing, or completing any services, including without limitation **Internet professional services** ; or the cost of providing, repairing, or replacing any product; cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded;

2.    any intentional violation of **your privacy policy**; however, this subparagraph NAC-G.2. shall not apply to a covered **wrongful act** under coverage NAC-C; or

3.    intentional, knowing or reckless misrepresentation in **advertising**, false **advertising**, or unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection or privacy laws; however, with respect to coverage NAC-A only, **we** will defend **suits** alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you**, as to such conduct, at which time **you** shall reimburse **us** for **claim**

*END 22*

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

        **expenses**;  provided, however,  **we** will  not defend such  **suits** if they allege any of the foregoing conduct that has been the subject of a criminal  proceeding in which  **you** have been  found guilty, or pleaded *nolo contendere* or no contest;

NAC-H.   any **wrongful act**, **failure of security**, circumstance or event committed or occurring prior to the **first inception date** if on or before the **first inception date**, **you** knew or could have  reasonably foreseen  that such  **wrongful act**, **failure of security**,  circumstance or event  could give rise  to a  **claim** against **you** or **loss**; provided,  however, with  respect coverage NAC-A and coverage NAC-B for **Internet media services** only, if the  **wrongful act** arises out of material which  was initially disseminated or broadcast  prior to the **first inception date**, and  is disseminated or  broadcast again  after the **first inception date** and prior  to the  policy termination date,  then in such event, **our**  maximum liability shall  be limited to  that portion of the total **loss** which  the number  of disseminations or  broadcasts during  the period of time on  or after the  **first inception date** and  prior to  the policy termination date  bears  to the  total number of  disseminations  or broadcasts upon which the  **claim** is made;

NAC-I.   against **you** that is brought, directly or indirectly, by or on behalf of:

    1.   the Federal Trade Commission  ("FTC"), the Department of  Health and Human Services ("HHS"),  the Office of  Civil Rights, ("OCR") the Federal Communications  Commission ("FCC")  or any  other federal, state or  local government  agency; provided, however,  in accordance with Paragraph II.F. of  the policy but notwithstanding Clause II., DEFINITIONS, subparagraph F(4) of  the policy, this exclusion shall not  apply to any  **claims expenses** arising  out of a covered **regulatory action**; or

    2.   the American Society of  Composers, Authors  and  Publishers, the Society of European Stage  Authors  and  Composers, Broadcast Music, Inc., or  any other licensing  or rights organizations  in such entity's regulatory, quasi-regulatory  or official capacity,  functions or duties;

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Under coverages NAC-C., NAC-D, NAC-E and NAC-F, **we** will not cover any **claim**, **wrongful act**, or **loss** alleging, arising out of or resulting, directly or indirectly, from:

NAC-J.    any of the following:

1.    any shortcoming in **security** that **you** knew about prior to the inception of this policy;

2.    **your** failure to take reasonable steps, to use, design, maintain and upgrade **your security** in accordance with **your** written **security** policy; or

3.    the inability to use, or lack of performance of, software:

a.    due to expiration, cancellation, or withdrawal of such software;

b.    that has not yet been released from its development stage; or

c.    that has not passed all test runs or proven successful in applicable daily operations;

Under coverages NAC-D, NAC-E, NAC-F, **we** will not cover any **claim, wrongful act,** or **loss** alleging, arising out of or resulting, directly or indirectly, from:

NAC-K.    any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled, if committed by any of **your**:

1.    directors, officers, trustees, governors, management committee members, members of the management board or partners (or the equivalent positions), whether acting alone or in collusion with other persons; or

2.    employees (other than officers) or independent contractors employed by **you** if any of **your** elected or appointed officers possessed, at any time, knowledge of any dishonest, fraudulent, malicious, or criminal acts committed by such employee or independent contractor that caused a direct loss to an **insured** or any other person.

**END 22**

**ENDORSEMENT#** *22*     **(Continued)**

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number     *01-351-34-64*
issued to     *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

Under coverage NAC-C only **, we** will not cover  any **claim, wrongful  act,** or **loss** alleging, arising out of or resulting, directly or indirectly, from:

NAC-L.   any dishonest,  fraudulent, criminal or malicious act,  error or omission, or any intentional or knowing violation  of the law or   **your privacy policy**, or gaining of any profit or advantage to which  **you** are not legally  entitled, if committed by any of **your**:

1.   directors, officers,  trustees, governors,  management  committee members, members of the  management board or partners  (or the equivalent positions),  whether  acting  alone or  in collusion  with other persons; or

2.   employees (other  than officers)  or  independent  contractors employed by  **you** if any of **your** elected or  appointed officers possessed, at any  time, knowledge of  any dishonest,  fraudulent, malicious, or criminal  acts  committed  by  such  employee  or independent contractor that caused  a direct loss  to an insured  or any other person.

NAC-M   against **you** that is brought, directly or indirectly, by or on behalf of:

1.   any **insured** except one that is an  **additional  insured** ; provided, however, this sub-paragraph  (1) shall not  apply to any  otherwise covered **claim** made  by any  past, present  or future  employee of the  **named insured**  or **subsidiary**  as described  in II.R(3)  for **wrongful act(s)** resulting in **privacy peril**, but only if such employee did not commit,  participate in or contribute to such  **wrongful act(s)** or **privacy peril**;

2.   any entity that  is owned, managed  or operated, directly  or indirectly, in whole or in part, by  **you**; or

3.   any parent company, subsidiary, director, officer, partner,  trustee, successor or assignee  of **yours**,  or anyone  affiliated with  **you** or such business  entity through  common majority ownership  or control.

4.   any independent contractor supplying materials or services to  **you**, but, as regards such independent contractor,  only with respect to **claims** involving disputes over the  ownership or exercise of  rights in materials or services supplied.

*END 22*

**ENDORSEMENT#** *22*   (Continued)

This endorsement, effective *12:01 am*   *November 18, 2009*   forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*


Under coverages NAC-A. and NAC-B., **we** will not cover any **claim** alleging, arising out of or resulting, directly or indirectly, from:

NAC-N.   any **failure of security** of **your computer system**.

Under coverages NAC-E. and NAC-F., **we** will not cover any **claim** alleging, arising out of or resulting, directly or indirectly, from:

NAC-O.   any seizure, confiscation, nationalization, or destruction of **your computer system** or **information assets** by order of any governmental or public authority; or

NAC-P.   any wear and tear or gradual deterioration of **your computer system** or **information assets**.

Under coverage NAC-C.2. only, **we** will not cover any **claim**, **wrongful act** or **loss** alleging, arising out of or resulting from:

NAC-Q.   the collection of **private information**, including, without limitation:

1.   such collection by means of electronic "cookies", "spiders", spybots, spambots, spyware, adware, wire-tapping, **malicious code**, key-stroke logging, tracking devices, radio frequency identification tags (RFID tags), bugging or video camera; or

2.   the failure to provide adequate notice regarding: (i) the purposes for which the **private information** is collected and used; (ii) contact information for inquiries or complaints; (iii) those parties to which the **private information** could be disclosed to; (iv) "opt out" choices of the individual or entity from whom **you** are collecting the **private information**; and (v) the means **you** offer for limiting use or disclosure of the **private information**;

provided, however, that this exclusion shall not apply to any otherwise covered **claim** for a **wrongful act** that resulted in a **privacy peril**.

NAC-R.   **your** distribution of unsolicited marketing, e-mail or **advertising**, including without limitation unsolicited electronic messages, chat room postings, bulletin board postings, newsgroup postings, "pop-up" or "pop-under" Internet advertising or fax-blasting, direct mailing or telemarketing; provided, however, this exclusion shall not apply to any **claim** for a **wrongful act** that resulted in a **privacy peril**;

**END 22**

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-S.    **your** distribution, creation, exhibition, performance, preparation, printing,
production, publication, release, display, research or serialization of any
**material**, including without limitation, any such **claim** covered under
coverage NAC-A in paragraph 1 of this endorsement; or

NAC-T.    any **loss**, **claim**, **damages** or **suit** covered by coverage NAC-C.1 in
paragraph 1 of this endorsement.

11.    Solely with respect to the coverage afforded under this endorsement, in Clause IV.
**LIMITS OF LIABILITY**:

a.    Paragraph B., is deleted in its entirety and replaced with the following:

B.    **Our** total liability for all **loss** for each coverage section shall not
exceed the applicable sublimit of liability set forth in Item 3B the
Declarations.

b.    Paragraph C., is deleted in its entirety and replaced with the following:

C.    **Our** total liability for all **loss** arising from all **claims** made against **you,
failures of security** or **extortion claims** shall not exceed the Limit of
Liability set forth in Item 3A of the Declarations as "aggregate." The
aggregate Limit of Liability for any Extended Reporting Period shall be
part of and not in addition to the aggregate Limit of Liability for the
**policy period**.

c.    Paragraph E., " **Multiple Professional Liability Policies** ," is deleted in its
entirety and replaced with the following:

E.    **Multiple Policies**
Two or more policies may be issued by **us** or other member
companies of American International Group, Inc. (AIG) to **you**. These
policies may provide coverage for:

1.    **loss** arising from the same **claim**, **wrongful act**, **extortion claim,
failure of security** , or events or circumstances, or series of
continuous, repeated or related **claims**, **wrongful acts**, **failures
of security** , or events or circumstances; or

*END 22*

ENDORSEMENT# *22*    (Continued)

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

2.    **loss** for which persons or organizations covered in those policies are jointly and severally liable.

In such case, **we** will not be liable under this policy for an amount greater than the proportion of the **loss** that this policy's applicable limits of liability bears to the total applicable limits of liability under all such policies. In addition, the total limit of liability under all such policies combined shall not be greater than the highest applicable limit of liability among all such policies.

d.    The following paragraphs are deemed to be added to the end of that Clause:

G.    With respect to coverage NAC-E, o **ur** total liability for all covered **information asset loss** resulting in the theft, misappropriation, or copying of any **information asset**, shall be the amount set forth by specific endorsement, if applicable, for each such **information asset**. Such **information asset loss** shall be part of and subject to the Limits of Liability for coverage NAC-E set forth in Item 3B of the Declarations. In the event no such endorsement is attached, the limit of liability for such **information asset loss** shall be zero.

H.    With respect to coverage NAC-F, **our** total liability for:

1.    covered **business interruption loss** per hour during the **period of recovery** (or **extended interruption period** if applicable) from any and all covered **failures of security** is ten percent (10%) of the applicable Limit of Liability set forth in Item 3B-Column(1) of the Declarations;

2.    the sum of covered **dependent business interruption loss** and any **extra expense** related thereto, arising from any and all covered **failures of security**, in the aggregate for this policy, shall be two hundred and fifty thousand dollars ($250,000); and

3.    covered **forensic expenses** arising from each covered **failure of security** shall be two hundred and fifty thousand dollars ($250,000).

I.    Any **failure(s) of security** arising from the same **failure of security** or a series of continuous, repeated or related **failures of security** shall be treated as one **failure of security**.

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

    J.    **Damages**, **claim expenses**, **extortion monies**, **information asset loss** and **business interruption loss** are all part of and subject to the policy aggregate Limit of Liability and applicable sublimits of liability in this policy.

    K.    **Regulatory Action Sublimit of Liability**

        The **regulatory action limit of liability** set forth in Item 3.B of the Declarations is the most **we** will pay as **claims expenses** under this policy, in the aggregate, for all **regulatory actions** combined, regardless of the number of persons, occurrences, **regulatory actions** or entities covered by this policy, or claimants or **regulatory actions** brought against any **insured**. The **regulatory action limit of liability** is part of and subject to the **policy limit of liability** and the **sublimit of liability** for Coverage NAC-C.

12.    Solely with respect to the coverage afforded under this endorsement, in Clause V. **RETENTION:**

    a.    The first paragraph is deleted in its entirety and replaced with the following:

        **You** shall be responsible for the applicable Retention amount set forth in Item 4. of the Declarations. With respect to coverages A, B, NAC-A, NAC-B, NAC-C and NAC-D, the Retention applies to each **wrongful act**, **failure of security**, **extortion claim** and **you** may not insure it; provided, however, you may insure it with any policy in the Schedule of Policies set forth in paragraph 3. of the RETENTION PROVISION AMENDATORY ENDORSEMENT, or any renewal thereof. In the event a **claim** triggers more than one Retention amount, then, as to that **claim,** the highest of such Retention amounts shall be deemed the Retention amount applicable to loss arising from such **claim.** All **claims** arising from a **wrongful act** or series of continuous, repeated, or related **wrongful acts** shall be subject to one Retention. In **our** sole discretion, **we** may pay all or part of any applicable Retention to settle a **claim**, in which case **you** agree to repay **us** promptly after **we** notify **you** of the settlement.

    b.    The following paragraphs are deemed to be added to the end of that Clause: With respect to coverage NAC-E, the Retention applies to each **failure of security** or series of continuous, repeated or related **failures of security** and **you** may not insure it.

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

With respect to **business interruption loss** under Coverage NAC-F, the applicable Retention is the greater of: (1) the dollar Retention amount set forth in Item 4 of the Declarations or (2) the **waiting hours retention. You** are responsible for the Retention whether based on the dollar Retention or **waiting hours retention** amount, and **you** may not insure it. The dollar Retention amount applies to each **failure of security** or series of continuous, repeated or related **failures of security.** The **waiting period retention** applies to each **period of recovery**. In the event a **failure of security** or series of continuous, repeated or related **failures of security** results in more than one **period of recovery**, a **waiting hour retention** shall apply to each **period of recovery**.

Provided, however, in the event a **failure of security** or series of continuous, repeated or related **failures of security** results in coverage under both coverages NAC-E and NAC-F, for purposes of determining the applicable Retention for coverage NAC-F, the dollar Retention amount set forth in Item 4 of the Declarations shall be reduced by the actual amount **you** pay as a Retention under coverage NAC-E.

Notwithstanding the foregoing, however, in the event a **failure of security** or series of continuous, repeated or related **failures of security** results in coverage under coverages NAC-C, NAC-E and NAC-F, a $2,000,000 Retention shall apply.

c.    With respect to coverage NAC-C.2. only, for each **class action claim**, **we** shall only be liable for the amount of **loss** arising from such **class action claim** that exceeds $2,000,000.

13.    Solely with respect to the coverage afforded under this endorsement, in Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**:

a.    Paragraph A., **What You Must Do in the Event of a Claim**, is amended by appending the following to the end of the paragraph beginning "**You** must also:"

3.    immediately record the specifics of any **loss** or **failure of security** and the date **you** first became aware of such **loss** or **failure of security**;

4.    take prompt steps to minimize the **loss** and take reasonable steps to prevent further **loss**;

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am*　　*November 18, 2009*　　forms a part of
policy number　*01-351-34-64*
issued to　*FIDELITY NATIONAL FINANCIAL INC*

by　*National Union Fire Insurance Company of Pittsburgh, Pa.*

5.　at **our** request report such **loss** or **failure of security** to the FBI, CERT, ISAC or any other central reporting or investigative organization that **we** may designate;

6.　upon **our** request, furnish to **us** any and all documentation within **your** possession; and

7.　send **us** copies of all demands, suit papers, or other legal documents **you** receive, as soon as possible.

b.　The following paragraphs shall be deemed to be included at the end of that Clause:

S.　**Coverage NAC-E and NAC-F Extended Reporting Period**

If **we** or the **named insured** shall cancel this policy or refuse to replace this policy, **you** shall have up to one (1) year following the effective date of such cancellation or refusal to discover and report any covered **loss** under coverages NAC-E and NAC-F.

T.　**Inspection Rights**

**We** may make audits, inspections or surveys at any time, and **we** may give you reports on the conditions **we** find, and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability, terms, conditions, and the premiums to be charged; such inspections, surveys, reports or recommendations will be treated as confidential by **you**. **We** do not make safety inspections or undertake to perform the duty of any person or organization to provide for the safety of workers or the public. **We** do not warrant conditions or warrant that conditions comply with laws, regulations, codes, or standards. **We** do not warrant the effectiveness of any security applicable to **your computer system.** This paragraph applies not only to **us**, but also to any outside consultant who makes inspections, surveys, reports, or recommendations for the purpose of underwriting and offering insurance.

U.　**Net profit calculations**

In determining the amount of net profit (or loss) and charges and expenses covered hereunder for the purpose of ascertaining the amount of **income loss** (and otherwise) sustained under coverage NAC-F, due consideration shall be given to the prior experience of **your business** before the beginning of the **period of recovery** and to

**END 22**

ENDORSEMENT# *22*    **(Continued)**

This endorsement, effective  *12:01 am*      *November 18, 2009*      forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

the probable **business you** could have performed had no **material interruption** occurred. Provided, however, that such net profit (or loss) calculations shall not include, and this policy shall not cover, net income that would likely have been earned as a result of an increase in volume of **business** due to favorable business conditions caused by the impact of **computer attacks** on other businesses. All such net profit (or loss) and charges and expenses shall be calculated on an hourly basis and based on **your** actual net profit (or loss) and charges and expenses.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 22**

ENDORSEMENT# *23*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FUNGUS AND MOLD EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following amendments to the policy shall apply:

1.  Clause II. **DEFINITIONS** is amended to include the following at the end thereof:

    **FM-A.**  **Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group **fungi**, lacking chlorophyll, and including **molds**, rusts, mildews, smuts and mushrooms.

    **FM-B.**  **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **fungi** that produce **molds**.

    **FM-C.**  **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms or microorganisms.

2.  Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the following at the end thereof:

    **We** shall not cover **claims**:

    FM-A.  alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

    **1.**  **fungus(i)**, **mold(s)**, mildew or yeast;

    **2.**  **spore(s)** or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast;

    3.  substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **fungus(i)**, **mold(s)**, mildew or yeast; or

    4.  material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **fungus(i)**, **mold(s)**, mildew, yeast, or **spore(s)** or toxins emanating therefrom;

**END 23**

ENDORSEMENT# *23*  **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*


regardless of any other cause, event, material, product or building
component that contributed concurrently or in any sequence to such  **claim.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 23*

ENDORSEMENT# *24*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONTINGENT BODILY INJURY/PROPERTY DAMAGE COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that, as of the effective date of July 1, 2005, and  solely with respect to  **claims** made and  reported to  **us** after July 1, 2005:

1.   In Clause III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph C. is deleted in its entirety and replaced with the following:

    C.   arising out  of **bodily injury** or **property damage**; provided, however, this exclusion shall not  preclude coverage for   **contingent bodily injury/property damage**;

2.   Clause II. **DEFINITIONS** is amended to include  the following definition at the end  of that Clause:

    CB-A.   **Contingent bodily injury/property damage** means those **claim** situations wherein the  **damages** sought by the claimant are for indirect (not the direct or immediate  cause)  **bodily injury** or **property damage** (including, but not limited  to, property in the  care, custody and control of **you** or  **your** agent, or in transit)  (i) arising out of  any **wrongful act** committed or allegedly committed by an  **insured**  in the performance of **professional services**, and (ii) not covered under  any other policy of insurance available to  **you.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

<br/>

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 24**

ENDORSEMENT# 25

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of policy number *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PERSONAL INJURY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  In Clause II. DEFINITIONS, paragraph Q., " **wrongful act**," is amended to include the following:

    **Wrongful act** also  means, solely in  the performance  of  **your professional  services** , any actual or alleged:

    1.  false arrest, detention or imprisonment or malicious prosecution;

    2.  form of  invasion, infringement or interference  with  rights of  privacy or publicity, including, but  not limited to,  false light, public  disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

    3.  form of  defamation or  other  tort related  to  disparagement or  harm  to character, reputation or  the feelings of  any person,  including, but not  limited to, libel,  slander,  product disparagement, trade  libel,  infliction of emotional distress, outrage or outrageous conduct; or

    4.  wrongful entry or  eviction, trespass,  eavesdropping or  other invasion of  the right to private occupancy.

2.  In Clause  III. EXCLUSIONS -  CLAIMS NOT  COVERED, paragraph S., relating to personal injury, is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 25*

ENDORSEMENT# 26

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SPECIFIC ENTITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that
notwithstanding any provision in the policy to the contrary, **we** will not cover any **claim,** or
any **loss** in connection with any such **claim:** (1) that is made against or brought by or on
behalf of Fidelity Sedgwick Holdings, Inc. or any subsidiaries thereof, or (2) alleging,
arising out of, based upon or in connection with any act, error or omission committed or
allegedly committed by Sedgwick Claims Management Services, Inc. or any subsidiaries
thereof, or any present or past director, officer, partner or employee thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 26**

ENDORSEMENT# 27

This endorsement, effective  12:01 am     November 18, 2009     forms a part of
policy number   01-351-34-64
issued to   FIDELITY NATIONAL FINANCIAL INC

by   National Union Fire Insurance Company of Pittsburgh, Pa.

**LISTED SUBSIDIARY ENDORSEMENT**
**(Separate First Inception Date and Retroactive Date)**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
II. **DEFINITIONS**, paragraph N., " **subsidiary**," shall also mean the entities listed in the table
as such.  For each such entity, the terms "  **first inception date** " and " **retroactive date** " shall
mean the dates set forth as such in the table  below and not the dates set forth as such  in
the Declarations.

| Subsidiaries | First Inception Date | Retroactive Date |
|---|---|---|
| Stecroft | 01/31/2007 | 02/14/2004 |

2.     Notwithstanding  the  foregoing,  it  is  understood  and  agreed  that  in  all  events,
       coverage as is afforded under this  policy with respect to a    **claim** made against any
       **subsidiary** or any partner, director,  officer or employee thereof,  shall only apply for
       **wrongful act** committed  or allegedly  committed (1) in the  case  of a    **subsidiary** (i)
       after the respective  **subsidiary's retroactive date**  as listed above, and (ii) prior to the
       effective time  that  the   **named  insured** no  longer  owns  more  than fifty  percent
       (50%) of the issued and outstanding voting stock of  such   **subsidiary**, either directly
       or indirectly  through one  or  more  of  its  **subsidiaries**; and  (2) in the  case of  any
       partner, director,  officer  or employee  of  a   **subsidiary**,  solely while such  partner,
       director, officer or employee is employed by the   **named  insured** or a **subsidiary** over
       which the  **named  insured** owns  more  than  fifty percent  (50%) of  the  issued  and
       outstanding voting stock of such  **subsidiary**, either directly or indirectly  through one
       or more of its **subsidiaries.**

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE
© Chartis Inc. All rights reserved.
*END 27*

ENDORSEMENT# *28*

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXCLUSION A AMENDATORY ENDORSEMENT
### (ONTARIO)

In consideration of the premium charged, it is hereby understood and agreed that, solely
for purposes of **claims** involving **wrongful acts** in connection with documents that are
electronically registered in the Province of Ontario, Clause III. **EXCLUSIONS - CLAIMS
NOT COVERED**, paragraph A. is deleted in its entirety and replaced with the following:

A.     arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or
any intentional or knowing violation of the law, or gaining of any profit or advantage
to which **you** are not legally entitled;

provided, however,

1.     **we** will defend **suits** alleging any of the foregoing conduct until there is a
judgment, final adjudication, adverse admission or finding of fact against **you**
as to such conduct at which time **you** shall reimburse **us** for **claim expenses**;
however, **we** shall not cover any **claim** if **you** plead *nolo contendere* or no
contest to a criminal proceeding against **you** arising out of the same, or
essentially the same, material facts as such **claim**; and

2.     this exclusion shall not apply to the first  C$500,000 of **loss**, in excess of the
applicable retention, per **claim** (C$1,000,000 in the aggregate) of any natural
person **insured** if such **insured** did not know or have reason to know or have
reason to know of, participate in, approve or acquiesce to the foregoing
fraudulent, criminal or illegal conduct, and did not gain an advantage to which
such **insured** was not entitled.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 28*

ENDORSEMENT# 29

This endorsement, effective 12:01 am    November 18, 2009    forms a part of
policy number  01-351-34-64
issued to   FIDELITY NATIONAL FINANCIAL INC

by    National Union Fire Insurance Company of Pittsburgh, Pa.

## COVERAGE B AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
I. **INSURING AGREEMENTS**, subparagraph B(2) is deleted in its entirety and replaced with
the following:

2.      **We** shall pay **claim expenses,** in excess of the retention, any **insured** incurs with our
        prior written consent in connection with a **claim** for covered **wrongful acts**. **Claim
        expense(s)** are part of and subject to **our** Limit of Liability. **Our** duty to defend ends
        after the applicable Limit of Liability has been exhausted by payment of **claim
        expenses** or **damages.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 29*

**ENDORSEMENT# *30***

This endorsement, effective *12:01 am      November 18, 2009*      forms a part of policy number  *01-351-34-64*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALTERNATIVE DISPUTE RESOLUTION PROVISION AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph 17. is deleted in its entirety and replaced with the following:

**17.    Alternative Dispute Resolution**

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **loss**, shall be submitted to the alternative dispute resolution (" **ADR**") process set forth in this clause.

Either the **insurer** or an i **nsured** may elect the type of **ADR** process discussed below; provided, however, that such i **nsured** shall have the right to reject the **insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **insured's** choice of **ADR** process shall control.

The **insurer** and each and every **insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **insurer** and any such **insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **named insured** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

*END 30*

ENDORSEMENT# *30*    **(Continued)**

This endorsement, effective    *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated  in Item 1(a) of the Declarations as the  mailing address for the   **named insured**. The **named  insured** shall act on behalf  of each and  every  **insured** in  deciding to proceed  with an **ADR** process under this clause.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 30*

ENDORSEMENT# *31*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "SUBSIDIARY" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    In Clause II. **DEFINITIONS**, paragraph N., " **subsidiary**," is amended to include the
following at the end thereof:

" **Subsidiary**" shall also mean Commonwealth Land Title Insurance Company,
Lawyers Title Insurance Company and United Capital Insurance Company.

Notwithstanding the foregoing, it is understood and agreed that this policy does not
cover any **claim** against the above listed **subsidiary** or any partner, director, officer
or employee thereof for any **wrongful act** that occurred when the **named insured** did
not own more than fifty percent (50%) of the issued and outstanding voting stock
of such **subsidiary**, either directly or indirectly through one or more of its
**subsidiaries**.

2.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement,
Item 3. of the Declarations, "Limits of Liability," is deleted in its entirety and
replaced with the following:

Item 3. Limits of Liability (inclusive of **claim expenses**)

$15,000,000     each **wrongful act**
$15,000,000     aggregate

3.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement,
Item 4. of the Declarations, "Retention," is deleted in its entirety and replaced with
the following:

Item 4. Retention: $ 10,000,000 each **wrongful act**.

4.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement,
Item 7. of the Declarations, " **Retroactive Date**," is deleted in its entirety and
replaced with the following:

Item 7. **Retroactive Date**:    January 22, 2000

*END 31*

ENDORSEMENT# *31*    (Continued)

This endorsement, effective  *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

5.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement, in
Clause III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph A. is deleted in its
entirety and replaced with the following:

A.    arising out of a dishonest, fraudulent, criminal or malicious act, error or
omission, or any intentional or knowing violation of the law, or gaining of any
profit or advantage to which **you** are not legally entitled; however, **we** will
defend **suits** alleging any of the foregoing conduct, and that are not
otherwise excluded, until there is a judgment, final adjudication, adverse
admission or finding of fact against **you** as to such conduct at which time
**you** shall reimburse **us** for **claim expenses**; **we** shall not cover any **claim** if
**you** plead *nolo contendere* or no contest to a criminal proceeding against **you**
arising out of the same, or essentially the same, material facts as such
**claim**;

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 31**

**ENDORSEMENT# _32_**

This endorsement, effective _12:01 am_    _November 18, 2009_    forms a part of
policy number   _01-351-34-64_
issued to   _FIDELITY NATIONAL FINANCIAL INC_

by    _National Union Fire Insurance Company of Pittsburgh, Pa._

### RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  Clause V. RETENTION is deleted in its entirety and replaced with the following:

**V.    RETENTION**

1.  You shall be responsible for the retention amount set forth in Item 4 of the Declarations. The retention applies to each wrongful act, and you may not insure it; provided, however, you may insure it with any policy in the Schedule of Policies set forth below, or any renewal thereof (hereinafter referred to as "Other AIG Policy(ies)"). All claims arising from a wrongful act or series of continuous, repeated, or related wrongful acts shall be subject to one retention. In our sole discretion, we may pay all or part of the retention to settle a claim, in which case you agree to repay us promptly after we notify you of the settlement.

2.  If you shall, at our written request, submit a claim to alternative dispute resolution in accordance with the rules of the American Arbitration Association or the Defense Research Institute, and such claim is settled through this process, the retention obligation shall be deemed to be fifty percent (50%) of the retention stated in Item 4 of the Declarations.

**SCHEDULE OF POLICIES:**

| INSURED | POLICY NO. | COMPANY |
|---|---|---|
| CHICAGO TITLE LAND TRUST COMPANY | V15KNB08PNPM | Beazley Insurance Co. |
| HOMESOLD, INC. | V15IEI07PNPM | Beazley Insurance Co. |
| FIDELITY NATIONAL INSURANCE SERVICES INC., AND FIDELITY NATIONAL INSURANCE COMPANY INC | 014238762 | American International Specialty Lines Ins. Co. |

**END 32**

**ENDORSEMENT#** *32*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

| FIDELITY NATIONAL TITLE AND ESCROW OF HAWAII | 9945558843 | National Union Fire Insurance Company |
|---|---|---|
| FIDELITY NATIONAL INSURANCE COMPANY INC AND AGENTS OF FIDELITY NATIONAL | 014238773 | American International Specialty Lines Insurance Co. |
| FIDELITY INSPECTION AND CONSULTING SERVICES | 0608-00065906D | Underwriters at Lloyd's London |
| J ROCKCLIFF INC. | 3302031 | American International Specialty Lines Ins. Co. |
| FUENTES & KREISCHER | 572-99-14 | National Union Fire Insurance Company |
| J ROCKCLIFF REALTORS | REP0028139 | Indian Harbor Insurance Company |

2.    In Clause VI. OTHER PROVISIONS AFFECTING COVERAGE, paragraph D.   **Other
Insurance**, is deleted in its entirety and replaced with the following:

    **D.    Other Insurance**

        Such insurance as is provided by this policy shall be excess of any other
        valid and collectible insurance available to  **you,** including any insurance
        available under any other AIG policy.  In the event coverage is available
        under both this policy and any other AIG Policy, we shall have no liability
        under this policy until all applicable retentions and limits of liability of such
        other AIG Policy(ies) have been fully paid.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                    AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 32**

ENDORSEMENT# 33

This endorsement, effective  *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that, effective
February 10, 2009 (the " **Effective Date** "), the policy is amended as follows:

1.    Notwithstanding anything in the policy to the contrary, Investment Property
      Exchanges Services, Inc. ("IPEX") is a **subsidiary** of the **named insured** . With
      respect to IPEX, this policy provides full prior acts coverage (i.e., no **retroactive
      date**) with respect to any **claim** made on or after the **Effective Date** .

2.    Notwithstanding anything in the policy to the contrary, Fidelity National Real Estate
      Solutions LLC ("FINRES") is not a **subsidiary** of the **named insured** . Solely with
      respect to FINRES, this policy shall provide no coverage for any **claim** made on or
      after the **Effective Date** .

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 33**

## ENDORSEMENT# *34*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number    *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

◈ All rights reserved.
*END 034*

89644 (7/05)                              Page 1 of 1

**ENDORSEMENT#** *35*


This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 77008 | 04/02 | MISCELLANEOUS PROFESSIONAL LIABILITY POLICY - DEC-PAGE |
| 74825 | 02/01 | FLORIDA ADDENDUM TO THE DECLARATIONS |
| 77011 | 04/02 | MISCELLANEOUS PROFESSIONAL LIABILITY POLICY |
|  |  | ITEM 6 "PROFESSIONAL SERVICES" DEFINITION ENDORSEMENT |
| 76105 | 02/09 | FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT |
|  |  | PUNITIVE DAMAGES COVERAGE AMENDATORY ENDORSEMENT |
|  |  | INSURANCE COMPANY PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
|  |  | CANCELLATION AMENDATORY ENDORSEMENT |
|  |  | STATE AMENDATORY INCONSISTENT |
|  |  | FAILURE TO INSURE EXCLUSION AMENDATORY ENDORSEMENT |
|  |  | MUTUAL CHOICE OF COUNSEL ENDORSEMENT |
|  |  | CLAIM REPORTING AMENDATORY ENDORSEMENT |
|  |  | INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT |
|  |  | TECHNOLOGY SERVICES AND PRODUCTS DEFINITION ENDORSEMENT |
|  |  | EXTENDED REPORTING PERIOD AMENDATORY ENDORSEMENT |
|  |  | REAL ESTATE RELATED SERVICES ENDORSEMENT |
|  |  | SUBSIDIARY DEFINITION AMENDATORY ENDORSEMENT |
|  |  | "YOU, YOUR OR INSURED" DEFINITION AMENDATORY ENDORSEMENT |
|  |  | COOPERATION CLAUSE AMENDATORY ENDORSEMENT |
|  |  | WHERE COVERAGE APPLIES AMENDATORY ENDORSEMENT |
|  |  | CRISIS MANAGEMENT FUND COVERAGE ENDORSEMENT |
|  |  | EXCLUSION K. AND O. AMENDATORY ENDORSEMENT |


*END 035*

**ENDORSEMENT#** *35*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| | | LOSS DEFINITION AMENDATORY ENDORSEMENT |
| | | AIG netAdvantage Complete® Extension Endorsement |
| | | FUNGUS AND MOLD EXCLUSION ENDORSEMENT |
| | | CONTINGENT BODILY INJURY/PROPERTY DAMAGE COVERAGE |
| | | PERSONAL INJURY ENDORSEMENT |
| | | SPECIFIC ENTITY EXCLUSION ENDORSEMENT |
| | | LISTED SUBSIDIARY ENDORSEMENT |
| | | EXCLUSION A AMENDATORY ENDORSEMENT |
| | | COVERAGE B AMENDATORY ENDORSEMENT |
| | | ALTERNATIVE DISPUTE RESOLUTION PROVISION AMENDATORY ENDORSEMENT |
| | | "SUBSIDIARY" DEFINITION ENDORSEMENT |
| | | RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT |
| | | SUBSIDIARY AMENDATORY ENDORSEMENT |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 035*

*National Union Fire Insurance Company of Pittsburgh, Pa.*
**CLAIM REPORTING INFORMATION SHEET**

Reported Under Policy/Bond Number: _01-351-34-64_     Date: _____

Type of Coverage: _MPL0402_ _____

Insured's Name, As Given On Policy Declarations (Face Page):

*FIDELITY NATIONAL FINANCIAL INC* _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext_____

Case Or Claimant Name:

_____

_____

If The Party Involved Is Different From "Insured" Name (As Given On Policy Declarations)
State Relationship:_____

Insurance Broker/Agent: *WILLIS OF NEW YORK INC* _____

Address: *200 LIBERTY STREET, 7TH FL* _____
*1 WORLD FINANCIAL CENTER* _____
*NEW YORK, NY 10281* _____

Contact: *GEOFF ALLEN* _____

Phone:_____

Please Provide The Information Requested Above So That We May Expedite Our Service
To You.

Send Notice Of Claims To:     Chartis              Phone: (888) 602-5246
                              Financial Lines Claims   Fax:   (866) 227-1750
                              P.O. Box 25947          Email: c-Claim@chartisinsurance.com
                              Shawnee Mission, KS 66225

*centralized Customer Link and Information Management*

ENDORSEMENT# 36

This endorsement, effective 12:01 am     November 18, 2009     forms a part of
policy number  01-351-34-64
issued to   FIDELITY NATIONAL FINANCIAL INC

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### DELETION OF ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
following endorsements is deleted in its entirety:

Endorsement # 32:  Retention And Other Insurance Provisions Amendatory Endorsement


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 36**

ENDORSEMENT# 37

This endorsement, effective 12:01 am    November 18, 2009    forms a part of
policy number  01-351-34-64
issued to   FIDELITY NATIONAL FINANCIAL INC

by    National Union Fire Insurance Company of Pittsburgh, Pa.

**RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    Clause V. RETENTION is deleted in its entirety and replaced with the following:

**V.    RETENTION**

1.    You shall be responsible  for the retention amount  set forth in Item  4
of the Declarations.  The  retention applies to each  wrongful act, and
you may not insure it; provided, however,  you may insure it with any
policy in  the  Schedule of Policies set forth below,  or any renewal
thereof (hereinafter referred to as "Other AIG Policy(ies)").  All  claims
arising from  a  wrongful  act  or  series  of  continuous, repeated,  or
related wrongful acts  shall be  subject to  one retention.  In our  sole
discretion, we may pay all or part of the retention to settle a claim,  in
which case you agree to repay us promptly after we notify you of the
settlement.

2.    If you  shall, at our  written request,  submit a claim to alternative
dispute resolution in accordance  with the rules of the American
Arbitration Association  or the  Defense Research  Institute, and  such
claim is settled through this  process, the retention obligation shall  be
deemed to be fifty percent (50%) of the  retention stated in Item 4 of
the Declarations.

**END 37**

**ENDORSEMENT# *37*    (Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SCHEDULE OF POLICIES:

| INSURED | POLICY NO. | COMPANY |
|---|---|---|
| CHICAGO TITLE LAND TRUST COMPANY | V15R16100301 | Beazley Insurance Co. |
| FIDELITY NATIONAL INSURANCE SERVICES INC., AND FIDELITY NATIONAL INSURANCE COMPANY INC | 01-464-71-10 | Chartis Specialty Insurance Company |
| FIDELITY NATIONAL TITLE AND ESCROW OF HAWAII | 01-361-33-47 | Illinois National Insurance Company |
| FIDELITY NATIONAL INSURANCE COMPANY INC AND AGENTS OF FIDELITY NATIONAL | 01-460-50-39 | Chartis Specialty Insurance Company |
| J ROCKCLIFF INC. | 3302031 | American International Specialty Lines Ins. Co. |
| FUENTES & KREISCHER | B1234S2USE009 | Hiscox - Lloyd's Syndicate 3624 |
| J ROCKCLIFF REALTORS | REP0028139-01 | Indian Harbor Insurance Co. |

**END 37**

ENDORSEMENT# *37*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

2.    In Clause  VI.  OTHER  PROVISIONS  AFFECTING  COVERAGE,  paragraph D.  **Other Insurance**, is deleted in its entirety and replaced with the following:

   **D.    Other Insurance**

   Such insurance  as is  provided by  this policy  shall be  excess  of any  other valid  and  collectible  insurance  available  to  **you,**  including  any  insurance available  under  any  other  AIG  policy.   In  the event coverage  is  available under  both this  policy and  any other  AIG Policy,  we shall  have no  liability under this policy  until all applicable  retentions and limits  of liability of  such other AIG Policy(ies) have been fully paid.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 37**

**ENDORSEMENT#** *38*

This endorsement, effective *12:01 am*    *November 18, 2009*         forms a part of
policy number   *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| | | DELETION OF ENDORSEMENT |
| | | RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 038*

**ENDORSEMENT# 39**

This endorsement, effective  *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ADDITIONAL INSURED ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause II. DEFINITIONS, paragraph R., the definition of " **you, your** or **insured**", is amended to include:

Vanguard Law Group and any partner or employee thereof, but only for **claims** arising out of the performance of title insurance related services by FNF Canada Company or its employees.

Notwithstanding the provision above, **we** shall not cover any **claim** against Vanguard Law Group, or any partner or employee thereof, alleging or arising out of the provision of, or failure to provide, legal advice to any person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**BROKER**          **END 39**
   **Archive Copy**

**ENDORSEMENT# *40***

This endorsement, effective *12:01 am*      *November 18, 2009*      forms a part of
policy number    *01-351-34-64*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADDITIONAL SUBSIDIARY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that policy is amended as follows:

1.      In Clause II, Paragraph N., the definition of " **subsidiary**" is amended to include the following entity, subject to the **retroactive date** set forth below:

   **SUBSIDIARY**                                **RETROACTIVE DATE**

   FNF Servicing, Inc.                         December 31, 2004

2.      With respect to the **subsidiary** set forth above, the **retroactive date** set forth in Item 7. of the Declarations shall not apply and this policy only provides coverage for **loss** arising from any **claim** for any alleged **wrongful act** which occurred on or after the **retroactive date** set forth in paragraph 1. of this endorsement and prior to the end of the **policy period** which is otherwise covered by this policy. **Loss** arising out of the same or related **wrongful acts** shall be deemed to arise from the first such same or related **wrongful act.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*BROKER*          *END 40*
*Archive Copy*

**ENDORSEMENT#** *41*

This endorsement, effective *12:01 am*      *November 18, 2009*           forms a part of
policy number   *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| | | ADDITIONAL INSURED ENDORSEMENT |
| | | ADDITIONAL SUBSIDIARY ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*Archive Copy*      **END 041**
(1/05)     **BROKER**      Page 1 of 1

**ENDORSEMENT# *42***

This endorsement, effective  *12:01 am    November 18, 2009*     forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "SUBSIDIARY" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    In Clause II. **DEFINITIONS**, paragraph N., " **subsidiary**," is amended  to include  the
following at the end thereof:

" **Subsidiary**" shall also  mean Commonwealth  Land Title Insurance  Company,
Lawyers Title Insurance Corporation and United Capital Title Insurance Company.

2.    Solely with respect to the **subsidiary** listed in paragraph  1. of this Endorsement,
Item 3. of the Declarations, "Limits of Liability," is deleted in its entirety and
replaced with the following:

Item 3. Limits of Liability (inclusive of **claim expenses**)

$15,000,000 each **wrongful act**
$15,000,000 aggregate

3.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement, and
solely with respect  to **wrongful  acts** first  occurring after the  **retroactive date**  and
before the effective  date  of  this Endorsement, Item  4. of the  Declarations,
"Retention," is deleted in its entirety and replaced with the following:

Item 4. Retention: $10,000,000 each **wrongful act**.

4.    Notwithstanding anything to the  contrary  in the  definition of  " **subsidiary**," solely
with respect to the **subsidiary** listed in paragraph 1. of this Endorsement,  Item 7. of
the Declarations, " **Retroactive Date**," is deleted in its entirety and replaced with the
following:

Item 7. **Retroactive Date**:  January 22, 2000

5.    Solely with respect to the **subsidiary** listed in paragraph 1. of this Endorsement, and
solely with respect  to **wrongful  acts** first  occurring after the  **retroactive date**  and
before  the  effective  date  of  this Endorsement, in  Clause III. **EXCLUSIONS -
CLAIMS NOT COVERED**,  paragraph A. is deleted in  its entirety  and  replaced with
the following:

ENDORSEMENT# *42*    (Continued)

This endorsement, effective  *12:01 am*    *November 18, 2009*    forms a part of
policy number  *01-351-34-64*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


   A.    arising out of a dishonest, fraudulent, criminal or malicious act, error or
         omission, or any intentional or knowing violation of the law, or gaining of any
         profit or advantage to which **you** are not legally entitled; however, **we** will
         defend **suits** alleging any of the foregoing conduct, and that are not
         otherwise excluded, until there is a judgment, final adjudication, adverse
         admission or finding of fact against **you** as to such conduct at which time
         **you** shall reimburse **us** for **claim expenses**; **we** shall not cover any **claim** if
         **you** plead *nolo contendere* or no contest to a criminal proceeding against **you**
         arising out of the same, or essentially the same, material facts as such
         **claim**;


All other terms, conditions and exclusions remain unchanged.


AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                              *END 42*

**ENDORSEMENT#** *43*

This endorsement, effective *12:01 am     November 18, 2009*     forms a part of
policy number   *01-351-34-64*
issued to *FIDELITY NATIONAL FINANCIAL INC*


by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | "SUBSIDIARY" DEFINITION ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 043*

EXHIBIT B

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# CONTRACT OF INSURANCE

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

**Unique Market Reference (UMR):**   B080113851P09

**ASSURED:**   Fidelity National Financial, Inc and as more fully defined in the Contract Wording.

**PRINCIPAL ADDRESS:**   Corporate Risk Management Department
c/o Fidelity National Information Services
4905 Belfort Road, Unit 110
Jacksonville, FL 32256
United States of America

**TYPE:**   Excess Professional Liability Insurance

**PERIOD OF INSURANCE:**   18 November 2009 to 18 November 2010 both days at 12:01 am local standard time at the above Principal Address of the Assured

Willis Limited.  A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number  GB 334 1389 70

13851P09

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

# Willis

## 1. RISK DETAILS

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **TYPE:** | Insurance of:<br>Excess Professional Liability Insurance, |
| **ASSURED:** | Fidelity National Financial, Inc and as more fully defined in the Contract Wording. |
| **PRINCIPAL ADDRESS:** | Corporate Risk Management Department<br>c/o Fidelity National Information Services<br>4905 Belfort Road, Unit 110,<br>Jacksonville, FL 32256<br>United States of America |
| **PERIOD OF INSURANCE:** | 18 November 2009 to 18 November 2010 Both Days at 00:01 local standard time at the above address of the Assured. |
| **INTEREST:** | As defined in the attached Contract Wording. |

**LIMIT OF LIABILITY:**    USD 15,000,000    each and every claim and in the aggregate, including costs and expenses, over all coverages combined.

IN EXCESS OF

USD 15,000,000    each and every claim and in the aggregate, including costs and expenses, over all coverages combined

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



**PRIMARY POLICY
DEDUCTIBLE:**

USD 2,000,000    each and every claim including Costs and
                 Expenses for net Advantage coverage and

USD 5,000,000    each and every claim including Costs and
                 Expenses as more fully set forth in the
                 underlying contract.

**TERRITORIAL LIMITS:**    As provided for by the Contract Wording.

**CONDITIONS:**    All terms and conditions as set forth in the wording, such wording
being Excess Media, Internet, Security, Cyber Extortion and
Miscellaneous Professional Liability Wording, as attached and
incorporating the following:

Retroactive Date: None other than in respect of Stecroft Holdings,
Inc: 31 January 2004.

NMA 2918 War and Terrorism Exclusion Endorsement as attached.

NMA 1256 Nuclear Incident Exclusion Clause – Liability - Direct
(Broad) (17/3/60) as attached

NMA 1477 Radioactive Contamination Exclusion Clause – Liability
– Direct (13/02/64) as attached

623AFB00115 All amendments to the Primary to be agreed Clause
as attached.

623AFB00089 AFB Short Rate Table Endorsement (30% minimum
earned premium at inception) as attached

623AFB00116 Non Follow Endorsement as attached.

623AFB00132 Excess Claims Notification Clause (50% of
Underlying threshold) as attached

Tie in Limits Endorsement as attached

Mailing Address for notices Corporate Risk Management
Department, c/o Fidelity National Information Services, 4905 Belfort
Road, Unit 110, Jacksonville, FL 32256, United States of America

**CONDITIONS PRECEDENT
LIABILITY:**    1. Satisfactory signed and dated application
2. Refreshed AFB / FNF agreement

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70



**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

The above information is required within 7 days of inception. If this information has not been received within the stated timescale the Underwriters have the right to amend terms and conditions.

**NOTICE OF CLAIM:**   Beth Diamond
AFB623/2623
400 Madison Avenue
Suite 6C
New York
New York 10017
United States of America
tmbclaims@beazley.com

And

Willis Limited
FINEX Claims Department
The Willis Building,
51 Lime Street
London EC3M 7DQ
United Kingdom

**CHOICE OF LAW AND
JURISDICTION:**   This contract shall be governed by, and construed in accordance with, the laws of the State of New York.

Any dispute between the parties over the terms of this contract shall be submitted to the jurisdiction of a Court of Competent jurisdiction in the United States of America per NMA 1998 Service of Suit Clause (U.S.A.) as attached

Service of Suit Nominee:
Mendes & Mount LLP
750 Seventh Avenue
New York
New York 10019-6829
United States of America

**PREMIUM:**   USD 2,042,262.00 per annum for 100%.

Page 3 of 22

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

**Willis**

| | |
|---|---|
| **PREMIUM PAYMENT TERMS:** | Premium Payment Condition as follows: |
| | Premium Payment Clause LSW3001 (amended) - 60 days, as attached due to Insurers on or before 16 January 2010. |
| | Where any date on which the Premium is due to be paid falls on a weekend or Public Holiday, presentation to Insurers or their agents on the next working day will be deemed to comply with the relevant premium payment requirement. For the purposes of this clause, Public Holiday shall mean any public or statutory holiday in any territory through which the Premium must pass between the Assured and Insurers or their agents. |
| **TAXES PAYABLE BY ASSURED AND ADMINISTERED BY INSURERS:** | As per Tax Schedule attached. |
| **RECORDING, TRANSMITTING AND STORING INFORMATION:** | Where Willis Limited maintains risk and claims data/information/ documents Willis Limited may hold data/information/documents electronically. |
| **INSURER CONTRACT DOCUMENTATION:** | This contract document details the contract terms entered into by (re)insurer(s) and constitutes the contract documentation. |
| | This contract is subject to US State Surplus Lines requirements. It is the responsibility of the Surplus Lines Broker to affix a Surplus Lines Notice to the contract document before it is provided to the insured. In the event that the Surplus Lines Notice is not affixed to the contract document the insured should contact the Surplus Lines Broker. |

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000 Fax: +44 (0)2031248223 Website: www.willis.com



# THE SCHEDULE

**Policy Number:**        B080113851P09

**Name of the Assured:**    Fidelity National Financial, Inc.

**Address of the Assured:** Corporate Risk Management Department
c/o Fidelity National Information Services
4905 Belfort Road, Unit 110,
Jacksonville, FL 32256
United States of America

**Period of Insurance:**    From:   18 November 2009
To:      18 November 2010
Both days at 00:01 Local Standard Time at the Address of the Assured

**Limit(s) of Liability:**   As set out herein

**Interest:**              Excess Professional Liability Insurance

**Premium:**               USD 2,042,262.00 per annum for 100%

**Claims Nominee:**        Beth Diamond
AFB623/2623
400 Madison Avenue
Suite 6C
New York
New York 10017
United States of America
tmbclaims@beazley.com
And
Willis Limited
FINEX Claims Department
The Willis Building,
51 Lime Street
London EC3M 7DQ
United Kingdom

**Dated in London this        day of**

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70



**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

# EXCESS MEDIA, INTERNET, SECURITY, CYBER EXTORTION AND MISCELLANEOUS PROFESSIONAL LIABILITY WORDING

(a)   To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under Insuring Agreement I (Miscellaneous Professional Liability) of the Policy of the Primary Insurers; and

(b)   To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-A (Internet Media Liability Coverage) of the Policy of the Primary

(c)   To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-B (Internet Professional Services Liability Coverage) of the Policy of the Primary Insurers; and

(d)   To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-C (Security and Privacy Liability Coverage) of the Policy of the Primary Insurers; and

(e)   To indemnify the Assured for amounts paid as extortion monies by the Named Assured resulting from an extortion claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under Coverage NAC-D (Cyber Extortion Coverage) of the Policy of the Primary Insurers; and

(f)   To indemnify the Assured for actual information asset loss sustained by the Named Assured during the Period of Insurance hereon in the manner provided under Coverage NAC-E (Information Asset Coverage) of the Policy of the Primary Insurers provided such loss is reported to the Underwriters during the Period of Insurance hereon; and

(g)   To indemnify the Assured for actual business interruption loss sustained by the Named Assured during the period of recovery in the manner provided under Coverage NAC-F (Business Interruption Coverage) of the Policy of the Primary Insurers provided such loss is reported to the Underwriters during the Period of Insurance hereon;

up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

# Willis

| | | |
|---|---|---|
| **This Policy's amount of liability:** | USD 15,000,000 | each and every claim and in the aggregate, including costs and expenses, over all coverages combined. |
| **Underlying Policy(ies) limits:** | USD 15,000,000 | each and every claim and in the aggregate, including costs and expenses, over all coverages combined. |
| **Underlying Policy(ies) Number(s):** | 01-351-34-64 | |

1. Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2. It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or losses or of legal costs and expenses incurred in defence or settlement of such claims.

3. If by reason of the payment of any claim or claims or loss or losses or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this Insurance, the amount of indemnity provided by such Underlying Policy(ies) is:

   (a) Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

   (b) Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4. In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld).  No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5. Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6. All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

**Willis**

7. Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers, except the terms and conditions of the CM Module (Crisis Management Expenses).

   No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

8. If the Assured shall profer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# RETROACTIVE DATE CLAUSE

In respect of Stecroft Holdings only, this Policy shall not indemnify the Assured in respect of any claim involving or arising out of a fact, circumstance or event which occurred or is discovered prior to the Retroactive Date hereof.

Retroactive Date: 31 January, 2004

# WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)     war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)     any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

NMA2918
08/10/2001

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

# Willis

<u>U.S.A.</u>

# NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD)

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:-*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability), not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.*

<u>This policy*</u> does not apply:-

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a)    with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect of bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)    the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

Willis Limited  A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



IV.   As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; **"nuclear facility"** means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:- As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**17/3/60**
**N.M.A. 1256**
**U.S.A.**

Willis Limited   A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70


**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

**Willis**

# RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT
### *(Approved by Lloyd's Underwriters' Non-Marine Association)*

**For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause - Liability -Direct) to liability insurances affording worldwide coverage.**

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

**13/2/64**
**N.M.A. 1477**


## 'ALL AMENDMENTS TO THE POLICY OF THE PRIMARY INSURERS TO BE AGREED' ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause 7. of the Policy is deleted in its entirety and replaced with the following:

7.    Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers.  No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

623AFB00115

Willis Limited. A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## BEAZLEY
## AFB SHORT RATE CANCELLATION TABLE ENDORSEMENT

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Assured the Earned Premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

A.   For insurances written for one year:

| Days Insurance in Force | | Per cent. of One Year Premium | Days Insurance in Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | .................................. | 30 | 206 - 209 | .................................. | 66 |
| 74 - 76 | .................................. | 31 | 210 - 214 | (7 months) ...................... | 67 |
| 77 - 80 | .................................. | 32 | 215 - 218 | .................................. | 68 |
| 81 - 83 | .................................. | 33 | 219 - 223 | .................................. | 69 |
| 84 - 87 | .................................. | 34 | 224 - 228 | .................................. | 70 |
| 88 - 91 | (3 months).................. | 35 | 229 - 232 | .................................. | 71 |
| 92 - 94 | .................................. | 36 | 233 - 237 | .................................. | 72 |
| 95 - 98 | .................................. | 37 | 238 - 241 | .................................. | 73 |
| 99 - 102 | .................................. | 38 | 242 - 246 | (8 months) ...................... | 74 |
| 103 - 105 | .................................. | 39 | 247 - 250 | .................................. | 75 |
| 106 - 109 | .................................. | 40 | 251 - 255 | .................................. | 76 |
| 110 - 113 | .................................. | 41 | 256 - 260 | .................................. | 77 |
| 114 - 116 | .................................. | 42 | 261 - 264 | .................................. | 78 |
| 117 - 120 | .................................. | 43 | 265 - 269 | .................................. | 79 |
| 121 - 124 | (4 months) .................. | 44 | 270 - 273 | (9 months) ...................... | 80 |
| 125 - 127 | .................................. | 45 | 274 - 278 | .................................. | 81 |
| 128 - 131 | .................................. | 46 | 279 - 282 | .................................. | 82 |
| 132 - 135 | .................................. | 47 | 283 - 287 | .................................. | 83 |
| 136 - 138 | .................................. | 48 | 288 - 291 | .................................. | 84 |
| 139 - 142 | .................................. | 49 | 292 - 296 | .................................. | 85 |
| 143 - 146 | .................................. | 50 | 297 - 301 | .................................. | 86 |
| 147 - 149 | .................................. | 51 | 302 - 305 | (10 months)..................... | 87 |
| 150 - 153 | (5 months)................. | 52 | 306 - 310 | .................................. | 88 |
| 154 - 156 | .................................. | 53 | 311 - 314 | .................................. | 89 |
| 157 - 160 | .................................. | 54 | 315 - 319 | .................................. | 90 |
| 161 - 164 | .................................. | 55 | 320 - 323 | .................................. | 91 |
| 165 - 167 | .................................. | 56 | 324 - 328 | .................................. | 92 |

Willis Limited.  A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



| | | | | | |
|---|---|---|---|---|---|
| 168 – 171 | ................................ | 57 | 329 – 332 | ................................ | 93 |
| 172 – 175 | ................................ | 58 | 333 – 337 | (11 months).................... | 94 |
| 176 – 178 | ................................ | 59 | 338 – 342 | ................................ | 95 |
| 179 – 182 | (6 months).................. | 60 | 343 – 346 | ................................ | 96 |
| 183 – 187 | ................................ | 61 | 347 – 351 | ................................ | 97 |
| 188 – 191 | ................................ | 62 | 352 – 355 | ................................ | 98 |
| 192 – 196 | ................................ | 63 | 356 – 360 | ................................ | 99 |
| 197 – 200 | ................................ | 64 | 361 – 365 | (12 months) .................... | 100 |
| 201 – 205 | ................................ | 65 | | | |

B.  For Insurances written for more or less than one year:

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    (a)  Determine full annual premium as for an insurance written for a term of one year.

    (b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    (c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Policy, such total premium to be deemed earned upon inception of the Policy if any claim or any circumstance that could reasonably be the basis for a claim is reported to Underwriters under this Policy on or before such date of cancellation.

623AFB00089

Willis Limited.  A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## NON FOLLOW FORM ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that this Policy is not subject to the terms and conditions of any 'non-renewal' provision or 'conditional renewal' provision (or any other similar provision) as may be contained in the Policy of the Primary Insurers or any other Underlying Policy, regardless of whether or not such provision forms part of a State Amendatory Endorsement.

623AFB00116

## EXCESS CLAIMS NOTIFICATION CLAUSE

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause 5. of the Policy is deleted in its entirety and replaced with the following:

5.  Any claim(s) made against the Assured or any circumstances of which the Assured becomes aware during the Period of Insurance which are likely to give rise to such a claim where the Assured or the Assured's defense counsel evaluate the potential liability of the claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) at 50% or more of the limits available under the Policy(ies) of the Primary and Underlying Excess Insurers, must be notified immediately by the Assured in writing to the Underwriters hereon.

623AFB00132

## TIE IN LIMITS ENDORSEMENT

It is hereby understood and agreed that the combined total aggregate Limit of Liability that the Underwriters shall be liable for all losses, arising out of all claims made against all underwriters under all insurance covers combined involving both this Policy and also Policy Number 13667P09 shall be USD 30,000,000

It is further understood and agreed that this endorsement shall not be construed to increase the Limit of Liability as shown in the Schedule.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## SERVICE OF SUIT CLAUSE (U.S.A)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

> Mendes & Mount LLP
> 750 Seventh Avenue
> New York
> NY10019-6829
> United States of America

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86) Form approved by Lloyd's Underwriters' Non-Marine Association.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

The (Re)Insured undertakes that premium will be paid in full to (Re)Insurers within 60 days of inception of this contract.

If the premium due under this contract has not been so paid to (Re)Insurers by the 60th day from the inception of this contract (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

30/09/08
LSW3001

## WILLIS ADDENDUM TO PREMIUM PAYMENT CLAUSE LSW 3001

Notice of Cancellation in writing for the purposes of the Premium Payment Clause (LSW3001) shall be notice in writing to the Group's Compliance Officer at the Willis Building, 51 Lime Street, London EC3M 7DQ, and delivered by registered post or received and acknowledged personally by the Compliance Officer. The notice will only be accepted if the risk is properly identified, and includes at least the name of the Insured, the Willis slip reference number, the class of business and any other information which will enable the risk to be clearly identified. Further, for the avoidance of doubt, a notice of cancellation sent by e-mail to the Company shall not constitute notice in writing for the purposes of the application of the Premium Payment Clause (LSW3001).

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com

# NMA LINES CLAUSE

This Insurance, being signed for 100% of 100% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated herein.

NMA 2419

Willis Limited. A Willis Group Company, A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## 2. INFORMATION

**INFORMATION:**        Primary Policy: Insurer: AIG
Limit USD 15,000,000.00 Aggregate
Unique Market Reference: 01-351-34-64

FNF sub list – 06/30/09

FNF sub list – 09/30/09

FNF E&O Slide Deck Underwriting Call 16/10/2009

FNF Organisation Chart

LoanCare Legal Matters Chart Updated 2004-2009

LoanCare Overview

LoanCare-Mortgage Protection Policy Zurich 09-10

Chronology List1

Willis Limited. A Willis Group Company. A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## 3. SECURITY DETAILS

**(RE)INSURER'S
LIABILITY:**

### (RE)INSURERS LIABILITY CLAUSE

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the

Page 20 of 22

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333

**ORDER HEREON:** 100% of 100%.

**BASIS OF WRITTEN LINES:**

Percentage of Whole.

NMA 2419 Lines Clause, as attached.

**SIGNING PROVISIONS:**

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

a)    in the event that the placement of the order is not completed by the commencement date of the period of (re)insurance then all lines written by that date will be signed in full;

b)    the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of (re)insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied.  The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**LINE CONDITIONS:** None.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



**ORDER HEREON:** 100% of premium and limits herein


**EFFECTED WITH:**

    100.0000000%   Lloyd's Underwriters
                       81.0000000%    Syndicate 2623, pseudonym AFB
                       19.0000000%    Syndicate 0623, pseudonym AFB
                       Reference: JM227N09APPJ
    ━━━━━━━━━━━
    100.0000000%
    ━━━━━━━━━━━


Yours faithfully
Willis Limited

*(signature)*

Authorised Signatory
FINEX

Yours faithfully
Willis Limited

*(signature)*

Authorised Signatory
FINEX

Willis Limited.  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

| | |
|---|---|
| **INSURED:** | Fidelity National Financial, Inc<br>and as more fully defined in the contract |
| **PERIOD:** | 18 November 2009 to 18 November 2010 |
| **TYPE:** | Insurance of<br>NA PI Generic Primary |
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **ENDORSEMENT REFERENCE:** | 0001 |

---

**EFFECTIVE DATE:**    18 November 2009 both days at 00:01 local standard time at the above address of the Assured.

It is hereby understood and agreed from the effective date above that the Conditions Precedent to Liability are extended to 30 days from inception.

All other terms and conditions remain unaltered.



**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

| | |
|---|---|
| **INSURED:** | Fidelity National Financial, Inc<br>and as more fully defined in the contract |
| **PERIOD:** | 18 November 2009 to 18 November 2010 |
| **TYPE:** | Insurance of<br>NA PI Generic Primary |
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **ENDORSEMENT REFERENCE:** | 0002 |

---

**EFFECTIVE DATE:**     18 November 2009 at 00:01 local standard time at the above
address of the Assured.

It is hereby understood and agreed from the effective date above that the Conditions
Precedent to Liability are amended to read as follows:

**CONDITIONS PRECEDENT**
**TO LIABILITY**                1. Refreshed AFB/FNF agreement

The above information is required within 60 days of inception. If this information has not been
received within the stated timescale the Underwriters have the right to amend terms and
conditions.

All other terms and conditions remain unaltered.

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

**UNIQUE MARKET REFERENCE:**     B080113851P09

**ENDORSEMENT REFERENCE:**     0002

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) Each Underwriter's proportion is several not joint | | |
|---|---|---|
| Slip Leader Only | Slip Leader And Agreement Parties | All Underwriters |
| | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |



**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

| | |
|---|---|
| **INSURED:** | Fidelity National Financial, Inc<br>and as more fully defined in the contract |
| **PERIOD:** | 18 November 2009 to 18 November 2010 |
| **TYPE:** | Insurance of<br>NA PI Generic Primary |
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **ENDORSEMENT REFERENCE:** | 0003 |

---

**EFFECTIVE DATE:**       18 November 2009 00:01 local standard time at the above address
of the Assured

It is hereby understood and agreed from the effective date above that the Conditions
Precedent to Liability are amended to read as follows:

**CONDITIONS PRECEDENT**
**TO LIABILITY**       1. Refreshed AFB/FNF agreement

The above information is required within 90 days of inception. If this information has not been
received within the stated timescale the Underwriters have the right to amend terms and
conditions.

All other terms and conditions remain unaltered.

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

**UNIQUE MARKET REFERENCE:**     B080113851P09

**ENDORSEMENT REFERENCE:**     0003

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) Each Underwriter's proportion is several not joint | | |
|---|---|---|
| Slip Leader Only | Slip Leader And Agreement Parties | All Underwriters |
| | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

RR-10·
15-02-

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

**INSURED:**                            Fidelity National Financial, Inc
                                        and as more fully defined in the contract

**PERIOD:**                             18 November 2009 to 18 November 2010

**TYPE:**                               Insurance of
                                        Excess Professional Indemnity Insurance

**UNIQUE MARKET REFERENCE:**            B080113851P09

**ENDORSEMENT REFERENCE:**              0004

---

**EFFECTIVE DATE:**          18 November 2009 00:01 local standard time at the above
                             address of the Assured

It is hereby understood and agreed from the effective date above that the Conditions
Precedent to Liability are amended to read as follows:

**CONDITIONS PRECEDENT**
**TO LIABILITY**                1. Refreshed AFB/FNF agreement

The above information is required within 100 days of inception. If this information has not been
received within the stated timescale the Underwriters have the right to amend terms and
conditions.

All other terms and conditions remain unaltered.

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

**UNIQUE MARKET REFERENCE:**    B080113851P09

**ENDORSEMENT REFERENCE:**    0004

---

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) | | |
|---|---|---|
| Each Underwriter's proportion is several not joint | | |
| Slip Leader Only | Slip Leader And Agreement Parties | All Underwriters |
| | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |



**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

| | |
|---|---|
| **INSURED:** | Fidelity National Financial, Inc<br>and as more fully defined in the contract |
| **PERIOD:** | 18 November 2009 to 18 November 2010 |
| **TYPE:** | Insurance of<br>Excess Professional Indemnity Insurance |
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **ENDORSEMENT REFERENCE:** | 0005 |

---

**EFFECTIVE DATE:**    18 November 2009 00:01 local standard time at the above address of the Assured

It is hereby understood and agreed from the effective date above that the Conditions Precedent to Liability are amended to read as follows:

**CONDITIONS PRECEDENT**
**TO LIABILITY**    1. Refreshed AFB/FNF agreement

The above information is required within 115 days of inception. If this information has not been received within the stated timescale the Underwriters have the right to amend terms and conditions.

All other terms and conditions remain unaltered.

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

**UNIQUE MARKET REFERENCE:**    B080113851P09

**ENDORSEMENT REFERENCE:**    0005

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) Each Underwriter's proportion is several not joint | | |
|---|---|---|
| Slip Leader Only | Slip Leader And Agreement Parties | All Underwriters |
| | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**Willis Limited**
**FINEX**



# CONTRACT ENDORSEMENT

| | |
|---|---|
| **INSURED:** | Fidelity National Financial, Inc<br>and as more fully defined in the contract |
| **PERIOD:** | 18 November 2009 to 18 November 2010 |
| **TYPE:** | Insurance of<br>Excess Professional Indemnity Insurance |
| **UNIQUE MARKET REFERENCE:** | B080113851P09 |
| **ENDORSEMENT REFERENCE:** | 0006 |

---

**EFFECTIVE DATE:**     18 November 2009 local standard time at the above address of the Assured

It is hereby agreed and understood that the Conditions Precedent to Liability are satisfied and removed from the policy.

All other terms and conditions remain unaltered.

EXHIBIT C

**Policy Number:**     **ELU114673-09**        **Indian Harbor Insurance Company**
**Renewal of Number**    ELU108145-08

                                         Members of the XL America Companies

---

| | |
|---|---|
| **EXCESS POLICY DECLARATIONS** | Executive Offices<br>70 Seaview Avenue<br>Stamford, CT 06902-6040<br>Telephone 877-953-2636 |

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.** SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

---

**Item 1.**     **Name and Mailing Address of Insured Entity:**

         Fidelity National Financial Inc
         601 Riverside Avenue
         Jacksonville, FL  32204-2901

---

**Item 2.**     **Policy Period:**     **From:**     November 18, 2009     **To:**     November 18, 2010

                            **At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**     **Limit of Liability:**

         $10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**     **Schedule of Underlying Insurance:**

| | | **Insurer** | **Policy No** | **Limit of Liability** |
|---|---|---|---|---|
| (a) | Primary Policy | National Union Fire Insurance Company of Pittsburgh, PA | 01-351-34-64 | $15,000,000 |
| (b) | Underlying Excess Policy | Lloyds of London | B080113851P09 | $15,000,000 |

---

**Item 5.**     **Notices required to be given to the Insurer must be addressed to:**

         XL Professional Insurance
         100 Constitution Plaza, 17th Floor
         Hartford, CT  06103
         Toll Free Telephone: 877-953-2636

---

**Item 6.**     **Premium:**

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $828,750.00 |

---

EX 70 01 09 99                                                   Page 1 of 2

## EXCESS POLICY DECLARATIONS

| Item 7. | **Policy Forms and Endorsements Attached at Issuance:** |
|---|---|
| | EX 71 01 09 99   XL 82 01 07 07   XL-FLSOP (12/08)   EX 80 75 09 02   EX 83 22 11 01   EX 83 27 01 02 |
| | EX 80 153 07 05   EX 80 19 09 00 |

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

David B. Duclos
President

Kenneth P. Meagher
Secretary

**Indian Harbor Insurance Company**

# COUNTERSIGNATURE ENDORSEMENT

Policy Number:          ELU114673-09
Company:                Indian Harbor Insurance Company
Named Insured:          Fidelity National Financial Inc.

| State | Premium |
|-------|---------|
| **Florida** | **$828,750.00** |

The signature shown on this endorsement complies with the countersignature laws and regulations of the State shown.

Date of Countersignature      _1/26/2010_
                              (month, day and year)

_Kevin J. McF____t_
Licensed Producer

# IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY

ADMINISTRATIVE OFFICE:    SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040

STATUTORY HOME OFFICE:    CT CORPORATION SYSTEMS
314 EAST THAYER AVENUE
BISMARCK, ND  58501-4018

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

Dennis P. Kane
President

Toni Ann Perkins
Secretary

LAD 400-IHIC 12 08

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

XL 82 01 07 07

**Endorsement No.: 1**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU114673-09**

**Effective: November 18, 2009**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 2**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU114673-09**

**Effective: November 18, 2009**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# SERVICE OF PROCESS ENDORSEMENT

The Commissioner of Insurance of the State of Florida is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Toni Ann Perkins
> Secretary
> Seaview House
> 70 Seaview Avenue
> Stamford, CT 06902-6040

as its agent in Florida to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

XL-FLSOP (12/08)

EX 80 75 09 02

**Endorsement No.: 3**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU114673-09**

**Effective: November 18, 2009**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)   It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)   It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration.  Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 83 22 11 01

**Endorsement No.: 4**                **Effective: November 18, 2009**
**Named Insured: Fidelity National Financial Inc**     **12:01 A.M. Standard Time**
**Policy No.: ELU114673-09**              **Insurer: Indian Harbor Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to November 18, 2002.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 83 27 01 02

**Endorsement No.: 5**                                  **Effective: November 18, 2009**
**Named Insured: Fidelity National Financial Inc**      **12:01 A.M. Standard Time**
**Policy No.: ELU114673-09**                            **Insurer: Indian Harbor Insurance Company**

# PRIOR NOTICE EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, which, before the Inception Date of this Policy, was the subject of any notice given under any errors and omissions insurance policy or any similar insurance policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 153 07 05

**Endorsement No.: 6**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU114673-09**

**Effective: November 18, 2009**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND SECTION VIII (B) ENDORSEMENT

In consideration of the premium charged, Section VIII Policy Termination (B) of the Policy is amended to read in its entirety as follows:

"(B)     The Insurer will refund the unearned premium computed pro rata if the Policy is canceled by the Insured Entity, or if the Policy is canceled under any other circumstances."

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 19 09 00

**Endorsement No.: 7**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU114673-09**

**Effective: November 18, 2009**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# AMEND DEFINITION OF INSURED

In consideration of the additional/return premium of $0.00 the term "Insured" is deemed to include the following:

Commonwealth Land Title Insurance Co.
Lawyers Title Insurance Co.
United Capital Title Insurance Co.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

## I. INSURING AGREEMENT

The Insurer will provide the **Insured** with insurance coverage for claims first made against the **Insured** during the **Policy Period** excess of the **Underlying Insurance** stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the **Primary Policy** together with the terms, conditions, endorsements and warranties of any other **Underlying Insurance**. The coverage hereunder will attach only after all of the **Underlying Insurance** has been exhausted by the actual payment of loss by the applicable insurers thereunder and in no event will the coverage under this Policy be broader than the coverage under any **Underlying Insurance**.

## II. DEFINITIONS

(A)     "**Insured**" means, either in the singular or plural, those persons or organizations designated as insureds in the **Underlying Insurance**.

(B)     "**Policy Period**" means the period designated in ITEM 2 of the Declarations, or to any earlier cancellation date.

(C)     "**Primary Policy**" means the policy designated in ITEM 4 (A) of the Declarations.

(D)     "**Underlying Insurance**" means all policy(s) designated in ITEM 4 of the Declarations.

## III. DEPLETION OF UNDERLYING LIMITS OF LIABILITY

(A)     This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue to apply to loss as excess insurance remaining under such **Underlying Insurance**, in the event of the reduction or exhaustion of the limits of liability of the **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(B)     This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(C)     Any risk of uncollectibility with respect to the **Underlying Insurance** will be expressly retained by the **Insured** and will not be assumed by the **Insurer**.

**EXCESS POLICY COVERAGE FORM**
**EX 71 01 09 99**

This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the **Underlying Insurance** or for any other reason except for the actual payment of loss by the applicable Insurer thereunder.


## IV.    MAINTENANCE OF UNDERLYING INSURANCE

(A)    The limit(s) of liability of the **Underlying Insurance** designated in ITEM 4 of the Declarations shall be maintained during the Policy Period in full effect except for any reduction or exhaustion of the aggregate limits of liability available under the **Underlying Insurance** solely by reason of actual payment of loss thereunder. Failure to comply with the foregoing will not invalidate this Policy but the Insurer will not be liable to a greater extent than if this condition had been complied with. If for any reason the **Underlying Insurance** is not maintained, then the **Insured** will be deemed to be self-insured for that amount of the limit(s) of liability of such **Underlying Insurance**.

(B)    In the event of a change of any kind to any **Underlying Insurance** by endorsement, rewrite or otherwise, the coverage under this Policy will become subject to such change only if and to the extent that the Insurer consents to such change by written endorsement to this Policy.

(C)    The Insurer will not be liable under this Policy earlier or to any greater extent than it would have been as a result of the actual or alleged failure by the **Insureds** to give notice or to exercise any extensions under any **Underlying Insurance**, or misrepresentation or breach of warranty with respect to any **Underlying Insurance**.


## V.    CLAIM PARTICIPATION

The Insurer may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the **Insured** even if the **Underlying Insurance** has not been exhausted and the **Insured** will provide such information and cooperation as is reasonably requested.


## VI.    LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including Defense Expenses, by the Insurer under this Policy. Defense Expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.


## VII.    NOTICE

The **Insured** will, as a condition precedent to the coverage available under this Policy, give written notice as soon as practicable to the Insurer of:

(A)    any claim under any **Underlying Insurance**, or any situation that is required to be reported under any **Underlying Insurance** that could give rise to a claim under any **Underlying Insurance**;

(B)    the cancellation of any **Underlying Insurance**;

(C)    any change to the **Underlying Insurance** by rewrite, endorsement or otherwise; or

(D)    any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

**EXCESS POLICY COVERAGE FORM**
**EX 71 01 09 99**

The Insured Entity will be the sole agent for and will act on behalf, of the **Insured** with respect to all matters under this Policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notice of cancellation of this Policy, paying premium and receipt of any return premiums.

Notice given to any underlying insurer of any claim or any situation that could give rise to a claim under any **Underlying Insurance** scheduled in ITEM 4 of the Declarations will not be deemed notice to the Insurer. Notice of any claim or situation that could give rise to a claim must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

## VIII.    POLICY TERMINATION

(A)    The **Insured Entity** may cancel this Policy by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations.

(B)    The Insurer will refund the unearned premium computed at the customary short rate if the Policy is canceled by the **Insured Entity**. Under all other circumstances, any unearned premium will be computed pro rata.

(C)    This Policy will terminate immediately upon the termination of any of the policies scheduled in ITEM 4 of the Declarations, whether canceled by the **Insured Entity** or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.

## IX.    ALTERATION

No change in or modification of this Policy shall be effective unless made by endorsement signed by an authorized employee of the Insurer.

EXHIBIT D



## National Union Fire Insurance Company of Pittsburgh, Pa.

A capital stock company

POLICY NUMBER: 01-363-54-80          REPLACEMENT OF POLICY NUMBER: 94-555-76-88

### EXCESS INSURANCE POLICY

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

### DECLARATIONS

ITEM 1.      NAMED INSURED:        FIDELITY NATIONAL FINANCIAL INC

              MAILING ADDRESS:      CORPORATE RISK MANAGEMENT DEPARTMENT
                                    C/O FIDELITY NATIONAL INFORMATION SERVICES
                                    405 BELFORT RD, UNIT 110
                                    JACKSONVILLE, FL 32256

              STATE OF INCORPORATION/FORMATION OF THE NAMED INSURED:
                    Delaware

ITEM 2. (a)  FOLLOWED POLICY shall be the following:

              INSURER:          National Union Fire Insurance Company
              POLICY NO.:       01-351-34-64

        (b)  FOLLOWED POLICY SECTION
             This policy shall follow the terms and conditions of the following coverage
             sections of the Followed Policy only:

             <u>COVERAGE SECTION</u>                    <u>Form Number</u>

             Miscellaneous Professional                77011 (4/02)

© Chartis Inc. All rights reserved.

ITEM 3.    POLICY PERIOD:  From:  November 18, 2009    To:  November 18, 2010
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.    (a)    LIMIT OF LIABILITY: $10,000,000    aggregate for all coverages and
all Insured(s) afforded coverage under this policy combined and
excess of Total Underlying Limits in Item 4(b) (including Defense
Costs),

           (b)    TOTAL UNDERLYING LIMITS:        $40,000,000

ITEM 5.    SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

|  | Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| Primary Policy: | National Union Fire Insurance Company | 01-351-34-64 | $15,000,000 | 11/18/2009 - 11/18/2010 |
| Underlying Excess Policy: | Beazley | B080113851P09 | $15,000,000 Excess of $15,000,000 | 11/18/2009 - 11/18/2010 |
|  | XL Insurance | ELU114673-09 | $10,000,000 Excess of $30,000,000 | 11/18/2009 - 11/18/2010 |

ITEM 6.    PREMIUM:    $780,000  +  $7,700 FL Surcharge

ITEM 7.    NAME AND ADDRESS OF INSURER ("Insurer")

           National Union Fire Insurance Company of Pittsburgh, Pa.
           175 Water Street
           New York, NY 10038-4969

© Chartis Inc. All rights reserved.

**IN WITNESS WHEREOF,** the **Insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and its duly authorized representative.

| | |
|---|---|
| **PRESIDENT** | **SECRETARY** |
| National Union Fire Insurance Company of Pittsburgh, Pa. | National Union Fire Insurance Company of Pittsburgh, Pa. |

**AUTHORIZED REPRESENTATIVE**

| | | |
|---|---|---|
| **COUNTERSIGNED AT** | **DATE** | **COUNTERSIGNATURE** |

*WILLIS OF NEW YORK INC*
*200 LIBERTY STREET, 7TH FL*
*1 WORLD FINANCIAL CENTER*
*NEW YORK, NY 10281*

*1037330*

74674 (11/99)                    3

© Chartis Inc. All rights reserved.

**FLORIDA ADDENDUM TO THE DECLARATIONS**

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

Chartis
175 Water Street
New York, NY 10038
(212) 458-5000

74825 (8/09)



**National Union Fire Insurance Company of Pittsburgh, Pa.®**

A capital stock company

### EXCESS INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the Insurer, agrees as follows:

**I.   INSURING AGREEMENTS**

This policy shall provide the Insureds and the Company with coverage in accordance with the same terms, conditions, exclusions and limitations of the Followed Policy as listed in Item 2 of the Declarations as they were in existence on the inception date of this policy as described in Item 3 of the Declarations (except as regards the premium, limits of liability and the policy period) subject to:

(a)   the warranties, terms, conditions, exclusions and limitations of this policy, including any endorsement attached hereto, and

(b)   the provision that, notwithstanding any other provision of this policy, in no event shall this policy provide coverage broader than that provided by the Followed Policy, unless such broader coverage is specifically agreed to by the Insurer and identified as broader coverage in a written endorsement attached hereto.

**II.   DEFINITIONS**

**Unless otherwise indicated below, the Definitions of the Followed Policy shall have the same meaning in this policy.**

(a)   "Claim", "Discovery Clause", "Insured(s)", "Loss", "Subsidiary" and "Wrongful Act" shall have the same meaning in this policy as is attributed to it in the Followed Policy.

(b)   "Company" shall mean the Named Insured and any Subsidiary thereof.

(c)   "Followed Policy" shall mean the policy listed in Item 2 of the Declarations.

(d)   "Insurer" shall mean the entity listed in Item 7 of the Declarations.

(e)   "Policy Period" shall mean the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(f)   "Total Underlying Limits" shall mean the amount set forth in Item 4(b) of the Declarations, which is the aggregate sum of the limit of liability of all Underlying Policies.

(g)   "Underlying Insurers" means the insurer(s) of each respective Underlying Policy.

(h)   "Underlying Policy(ies)" means any policy set forth in Item 5 of the Declarations.

**III.   LIMIT OF LIABILITY**

The Limit of Liability stated in Item 4(a) of the Declarations is the limit of the Insurer's liability for all Loss in excess of the Total Underlying Limit, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy; however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit

74675 (2/01)                              Page 1 of 5                    ® All rights reserved.

of Liability for the Policy Period. Further, any Claim that is made subsequent to the Policy Period or Discovery Period (if applicable), which, pursuant to Clause V(b), is considered made during the Policy Period or Discovery Period, shall also be subject to the one aggregate Limit of Liability stated in Item 4(a). of the Declarations.

It is expressly agreed that liability for any covered Loss with respect to Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy shall attach to the Insurer only after the Underlying Insurers and/or the Insureds or the Company shall have paid the full amount of the Total Underlying Limits, and the Company or the Insureds shall have paid the full amount of the applicable Retention amount under any Underlying Policy. In the event, and only in the event, of exhaustion of the Total Underlying Limits by reason of the Underlying Insurers and/or the Insured or the Company paying Loss covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Total Underlying Limits, and (ii) in the event of exhaustion, continue in force as primary insurance.

This policy shall "drop down" (continue in force as primary insurance) only in the event of exhaustion of the Total Underlying Limits as described above and shall not drop down for any other reason, including, but not limited to, uncollectability (in whole or in part) of any limit of liability of any Underlying Policy, existence of a sub-limit of liability in any Underlying Policy, or any Underlying Policy containing terms and conditions different from the Followed Policy.

## IV.  UNDERLYING LIMITS

It is a condition of this policy that each Underlying Policy shall be maintained in full effect with solvent insurers during the Policy Period, except for any reduction or exhaustion of each Underlying Policy's respective part of the Total Underlying Limits contained therein by reason of Loss(es) paid, for which the Underlying Insurer has agreed to pay or for which the Underlying Insurer been held liable to pay under their respective Underlying Policy (as provided for in Clause III above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Insurer shall be liable only to the extent that it would have been liable had the Insureds and the Company complied with such condition.

Unless the Insurer otherwise agrees in writing, this policy shall immediately and automatically terminate if the Company fails to notify the Insurer as set forth in Clause V(c) of this policy that any Underlying Policy has ceased to be in full effect. If such notification is made, then this policy shall continue in effect, but the Company, the Insured(s) or an insurer providing replacement coverage (if such replacement coverage is obtained) shall be liable for the amount of the underlying limit of such ceased Underlying Policy, and the Insurer shall be liable only to the extent that it would have been liable had the Underlying Policy not ceased. Unless the Insurer otherwise agrees in writing, this policy shall automatically terminate 30 days following the date any Underlying Insurer becomes subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or is taken over by any regulatory authority, unless the Named Insured obtains replacement coverage for such Underlying Policy within such 30 day period.  The risk of uncollectability of (in whole or in part) of any limit of liability of any Underlying Policy, whether because of financial impairment or insolvency of an Underlying Insurer, or for any other reason, is expressly retained by the Insureds and the Company and is not in any way or under any circumstances insured or assumed by the Insurer.

If, during the Policy Period or any Discovery Period (if applicable), the terms, conditions, exclusions or limitations of  the Followed Policy are changed in any manner, the Company or the Insureds shall, as a condition precedent to their rights under this policy, give to the

74675 (2/01)                           Page 2 of 5                    Ⓡ All rights reserved.

Insurer, as soon as practicable, written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, but only upon the condition that the Insurer agrees to follow such changes by written endorsement attached hereto, and the Named Insured agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such changes. Further, such new coverage is conditioned upon the Named Insured paying, when due, any additional premium required by the Insurer relating to such changes.

## V.   NOTICES AND CLAIM REPORTING PROVISIONS

(a)   The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer at the address indicated in Item 7 of the Declarations page in the same manner and to the extent permitted by the terms and conditions of the Followed Policy, of any Claim made against the Insureds.

(b)   If during the Policy Period or during the Discovery Period (if applicable), (i) written notice of a Claim has been given to the Insurer pursuant to Clause V(a) above, or ( ii) to the extent permitted by the terms and conditions of the Followed Policy, written notice of circumstances that might reasonably be expected to give rise to a Claim has been given to the Insurer, then any Claim that is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim or circumstances of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim or circumstances of which such notice has been given, shall be considered made at the time such Claim or circumstances has been given to the Insurer.

(c)   The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of the following events as soon as practicable, but in no event later than 30 days after an Insured or the Company becoming aware of the following:

(i)   The cancellation or nonrenewal of any Underlying Policy or any Underlying Policy otherwise ceasing to be in effect or any part of the Total Underlying Limits being uncollectible (in part or in whole); or

(ii)   Any Underlying Insurer becoming subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding, or being taken over by any regulatory authority.

(iii)   The Named Insured consolidating with or merging into, or selling all or substantially all of its assets to, any other person or entity or group of persons or entities acting in concert; or

(iv)   Any person or entity or group of persons or entities acting in concert acquiring an amount of the outstanding securities representing more than 50% of the voting power for the election of Directors of the Named Insured, or acquiring the voting rights of such an amount of such securities.

## VI.   CLAIM PARTICIPATION

The Insurer shall have the right, in its sole discretion, but not the obligation, to associate effectively with the Company and the Insureds in the defense and settlement of any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, including, but not limited to effectively associating in the negotiation of a settlement. The Insureds shall defend and contest any such Claim. The Company and the Insureds shall give the Insurer

full cooperation and such information as it may reasonably require. The failure of the Insurer to exercise any right under this paragraph at any point in the handling of the defense and settlement of a Claim shall not act as a waiver of or limit the right of the Insurer to exercise such rights at any other point in the handling of the defense and settlement of a Claim, including the right to associate effectively in the negotiation of a settlement.

The Insurer does not assume any duty to defend any Claim, unless the terms and conditions of the Followed Policy state otherwise, and in such event only to the extent permitted or required by the terms and conditions of the Followed Policy. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs, in regard to any Claim that appears to the Insurer to be reasonably likely to involve the Insurer, without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs that have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to associate effectively in the defense and the negotiation of any settlement of any Claim in order to reach a decision as to reasonableness.

## VII.  CANCELLATION CLAUSE

This policy may be canceled by the Named Insured by mailing prior written notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent at the address set forth in Item 7 of the Declarations and within the time period and in the manner set forth in the Followed Policy. This policy may also be canceled by or on behalf of the Insurer by delivering to the Named Insured or by mailing to the Named Insured, by registered, certified, or other first class mail, at the Named Insured's address set forth in the Declarations, written notice stating when, not less than the time period set forth in the Followed Policy (15 days for cancellation due to failure to pay premium) the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Insured, the Insurer shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## VIII.  OTHER  CONDITIONS

The Insurer shall be entitled to all the rights, privileges and protections afforded to the insurer of the Followed Policy in accordance with all the terms and conditions of the Followed Policy, specifically including, but not limited to, the right of subrogation, other insurance, notice and authority, assignment and action against the insurer.

## IX.  PREMIUM

The premium under this policy is a flat premium and is not subject to adjustment except as otherwise provided herein.

## X.  CHANGES

Notice to or knowledge possessed by any person shall not effect a waiver of or a change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

## XI.  DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the dispute resolution process ("ADR") set forth in this clause.

Either the Insurer and the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in  the state indicated in Item 1 of the Declarations page as the mailing address for the Named Insured. The Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

## XII.  HEADINGS

The descriptions in the headings and any subheadings of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

⊕ All rights reserved.

ENDORSEMENT# *1*

This endorsement, effective *12:01 am*    *November 18, 2009*    forms a part of policy number   *01-363-54-80*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.    The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

B.1.    Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a)    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

(b)    Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

1.    A material misstatement or misrepresentation; or
2.    A failure to comply with underwriting requirements established by the Insurer.

B.2.    Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

(a)    Nonpayment of premium;

(b)    The policy was obtained by a material misstatement;

(c)    There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

(d)    There has been a substantial change in the risk covered by the policy; or

(e)    The cancellation is for all insureds under such policies for a given class of insureds.

If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

⊕ All rights reserved.
*END 001*

## ENDORSEMENT# *1*    (continued)

    1.    Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

    2.    Forty-five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B2 (b), (c), (d) or (e) above.

B.3.    If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.

The following is added:

C.1.    Non-Renewal

    (a)    If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

    (b)    Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.    Renewal

    The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

&#9672; All rights reserved.

*END 001*

ENDORSEMENT# 2

This endorsement, effective *12:01 am      November 18, 2009*      forms a part of
policy number  *01-363-54-80*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CANCELLATION AMENDATORY

### (PRO RATA)

Wherever used herein: (1) "Policy" means the policy or bond to  which this endorsement or
rider is made part of; (2)"Insurer" means the "Insurer," "Underwriter," "Company" or other
name specifically ascribed in  this Policy as the  insurance company or  underwriter for this
Policy; (3)  "Company"  means the  "Named  Entity," "Named  Corporation,"  Named
Organization," "Named Sponsor," "Named Insured," "First Named Insured," "Insured's
Representative," "Policyholder"  or equivalent term stated in Item 1 of  the Declarations;
and (4) "Period" means the "Policy Period," "Bond Period" or  equivalent term stated in the
Declarations.

In consideration of the premium  charged, it is hereby  understood and agreed  that
notwithstanding anything to the contrary  in any CANCELLATION or TERMINATION  clause
of this Policy (and any endorsement  or rider amending  such cancellation or  termination
clause, including but  not limited  to any state  cancellation/non-renewal amendatory
attached to this policy),  if this Policy shall  be canceled by the  Company, the Insurer shall
retain the right to the premium amount for the portion of the Period during which the Policy
was in effect.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 2*

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 am    November 18, 2009*    forms a part of
policy number   *01-363-54-80*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE OF CLAIM
### (REPORTING BY E-MAIL)

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
Claim Reporting under this policy, such notice may also be given in writing pursuant
to the policy's other terms and conditions to the Insurer by email at the following
email address:

   c-claim@chartisinsurance.com

   Your email must reference the policy number for this policy. The date of the
Insurer's receipt of the emailed notice shall constitute the date of notice.

   In addition to Notice of Claim Reporting via email, notice may also be given to the
Insurer by mailing such notice to: c-Claim for Financial Lines, Chartis Claims, Inc.,
175 Water Street, 9th Floor, New York, New York 10038 or faxing such notice to
(866) 227-1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

   (a)    "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
specifically ascribed in this policy as the insurance company or underwriter for
this policy.

   (b)    "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
loss" or other reference in the policy designated for reporting of claims, loss
or occurrences or situations that may give rise or result in loss under this
policy.

   (c)    "Policy" means the policy, bond or other insurance product to which this
endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
**END 003**

## ENDORSEMENT# *4*

This endorsement, effective *12:01 am*     *November 18, 2009*     forms a part of
policy number   *01-363-54-80*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____

AUTHORIZED REPRESENTATIVE

✦ All rights reserved.
***END 004***

89644 (7/05)                              Page 1 of 1

**ENDORSEMENT#** *5*

This endorsement, effective *12:01 am    November 18, 2009*                 forms a part of
policy number *01-363-54-80*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 74674 | 11/99 | EXCESS INSURANCE POLICY DEC PAGE |
| 74825 | 08/09 | FLORIDA ADDENDUM TO THE DECLARATIONS |
| 74675 | 02/01 | EXCESS INSURANCE POLICY NU |
| 76105 | 02/09 | FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT |
|  |  | CANCELLATION AMENDATORY |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 005*

*National Union Fire Insurance Company of Pittsburgh, Pa.*
**CLAIM REPORTING INFORMATION SHEET**

Reporting Under Policy/Bond Number: _01-363-54-80_    Date: _____

Type of Coverage: _XS1199_ _____

Insured's Name, As Given On Policy Declarations (Face Page):

_FIDELITY NATIONAL FINANCIAL INC_ _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext_____

Case Or Claimant Name:

_____

_____

If The Party Involved Is Different From "Insured" Name (As Given On Policy Declarations)
State Relationship:_____

Insurance Broker/Agent: _WILLIS OF NEW YORK INC_ _____

Address:_200 LIBERTY STREET, 7TH FL_____
_1 WORLD FINANCIAL CENTER_____
_NEW YORK, NY 10281_____

Contact: _GEOFF ALLEN_____

Phone:_____

Please Provide The Information Requested Above So That We May Expedite Our Service
To You.

Send Notice Of Claims To:    c-Claim for Financial Lines    Phone: (888) 602-5246
                             Chartis Claims, Inc.            Fax:   (866) 227-1750
                             175 Water Street                Email: c-Claim@chartisinsurance.com
                             9th Floor
                             New York, NY 10038

*centralized Customer Link and Information Management*

EXHIBIT E



IRONSHORE
*your safe harbour*

## IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY 10004
Toll Free: (877) IRON411

---

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

---

This Policy is issued by the stock insurance company listed above (herein "Insurer").

## EXCESS LIABILITY INSURANCE POLICY DECLARATIONS

**UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS POLICY IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.**

**Policy No.** 000014500

**ITEM 1.** **INSURED COMPANY PRINCIPAL ADDRESS:**

Fidelity National Financial
c/o Fidelity National Information Services
4905 Belfort Road, Unit 110
Jacksonville, FL 32256

**ITEM 2.** **COVERAGE PROVIDED:** Excess Micellaneous Professional Liability

**ITEM 3.** **FOLLOWED POLICY:** Micellaneous Professional Liability
**INSURER:** Chartis
**POLICY NUMBER:** 01-351-34-64

**ITEM 4.** **POLICY PERIOD**

From November 18, 2009 12:01 A.M.            To November 18, 2010 12:01 A.M.
(Local time at the address shown in ITEM 1.)

**ITEM 5.** **PREMIUM** $675,000

**ITEM 6.** **LIMIT OF LIABILITY/AGGREGATE LIMIT:** $10,000,000        for all Loss under all Coverages combined.

**ITEM 7.** **UNDERLYING POLICY LIMITS/ATTACHMENT POINT:** $50,000,000

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

Form: EXC.003 Edited (03.14.08)

**ITEM 8.**    **PENDING & PRIOR LITIGATION DATE:**  N/A

**ITEM 9.**    **NOTICE TO INSURER**

      A.    Notice of Claim, Wrongful Act or Loss:

            Send to Company Indicated Above
            c/o Ironshore Insurance Services, LLC
            One State Street Plaza
            8th Floor
            New York, NY 10004

      B.    All other notices:

            Send to Company Indicated Above
            c/o Ironshore Insurance Services, LLC
            One State Street Plaza
            8th Floor
            New York, NY 10004

**ITEM 10.**    **BROKER**
      Eileen Reingold
      Willis of New York, Inc.

      **ADDRESS:**
      One World Financial Center
      200 Liberty Street 6th Floor
      New York, NY    10281

      **LICENSE #:** P168350

**ITEM 11.**    **FORMS AND ENDORSEMENTS**

      1.  Known Circumstanse or Claim Exclusion
      2.  Specific Litigation Exclusion

**ITEM 12.**    **SURPLUS LINES BROKER**
      Donna Schramer
      Willis of Florida

      **MAILING ADDRESS**
      3000 Bayport Drive, Suite 300
      Tampa, FL 33607

      **LICENSE:**  A235233

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, FOR THIS POLICY AND THE FOLLOWED POLICY, INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH WHETHER DIRECTLY OR THROUGH PUBLIC FILING,  AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

Date: <u>March 5, 2010</u>
     MO/DAY/YR.                        Authorized Representative



## IRONSHORE SPECIALTY INSURANCE COMPANY

One State Street Plaza
7th Floor
New York, NY  10004
Toll Free: (877) IRON411

**Insured Name:** Fidelity National Financial
**Policy Number:**  000014500

# EXCESS LIABILITY INSURANCE POLICY

**I.    INSURING AGREEMENT**

In consideration of the payment of the premium and in reliance upon all statements made in the application for this Policy and the Followed Policy, including the information furnished in connection therewith, whether directly or through public filing, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the Followed Policy, except as may be otherwise provided in this Policy.

**II.    LOSS PAYABLE PROVISION**

It is agreed the Insurer shall pay the Insured as defined in the Followed Policy for Loss by reason of exhaustion by payments of all Underlying Policy Limits of all underlying policies by the underlying insurers issuing such underlying policies and/or the Insureds, subject to i) the terms and conditions of the Followed Policy as that form is submitted to the Insurer; ii) the Limit of Liability as stated in Item 6 of the Declarations; and iii) the terms and conditions of, and the endorsements attached to, this Policy. In no event shall this policy grant broader coverage than would be provided by the Followed Policy.

**III.    DEFINITIONS**

A.    The Terms "Insurer" and "Followed Policy" shall have the meanings attributed to them in the Declarations.

B.    The term "Insureds" means those individuals and entities insured by the Followed Policy.
C.    The term "Policy Period" means the period set forth in Item 4 of the Declarations.

D.    The term "Underlying Policy Limits/Attachment Point" means an amount equal to the aggregate of all limits of liability as set forth in Item 7 of the Declarations for all Underlying Policies, plus the uninsured retention, if any, applicable to the Underlying Policies.

**IV.    POLICY TERMS**

A.    This policy is subject to the same representations contained in the Application for the Followed Policy and has the same terms, definitions, conditions, exclusions and limitations (except as regards the premium, the limits of liability, the policy period and as may be otherwise in this Policy) as are contained in the Followed Policy.

B.    If during the Policy Period or any Discovery Period the terms, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Insureds shall as a condition precedent to their rights to coverage under this policy give to the Insurer written notice of the full particulars thereof and secure the Insurers affirmative consent to such modification before coverage will be effective.

Form: EXC.004; Edited (07.12.07)

C.      As a condition precedent to their rights under this policy, the Insureds shall give to the Insurer as soon as practicable written notice in accordance with the terms, conditions, definitions, exclusions and limitations of the Followed Policy.

D.      Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the Underlying Limit and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Limits. The risk of uncollectibility of such Underlying Limits (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the carrier.

Ironshore Specialty Insurance Company by:

Secretary

President

**IRONSHORE INSURANCE COMPANIES**



One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

**Endorsement Number: 1**

**Policy Number:**                    **Endorsement Effective Date:**  November 18, 2009
**000014500**                                                          12:01 A.M. standard time at the address
                                                                       of the **Named Insured.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## Known Circumstance or Claim Exclusion

The Insurer shall not be liable to make any payments in connection with any Claim made against any Insured alleging, arising out of, based upon or attributable to any prior civil, criminal or administrative proceeding or investigative proceeding involving the Insured prior to November 18, 2007, or any fact, circumstance or situation underlying or alleged in such proceedings.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____                    March 5, 2010
Authorized Representative                           Date

Manuscript

**IRONSHORE INSURANCE COMPANIES**



One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

**Endorsement Number: 2**

**Policy Number:**
**000014500**

**Endorsement Effective Date:** November 18, 2009

12:01 A.M. standard time at the address
of the **Named Insured.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**SPECIFIC LITIGATION EXCLUSION**

This endorsement modifies insurance provided under the following:

# Excess Liability Insurance Policy

It is agreed that in addition to any EXCLUSIONS made part of the Followed Policy or any Underlying Insurance, the following exclusion shall apply to this policy:

It is understood and agreed that the Limit of Liability shall not apply to claims for, based upon, arising from, or in any way related to the following proceedings:

**Form 10-K December 31, 2006**

Several class actions are pending in Alabama (Wooley v Fidelity National Title Insurance Company and Williams v Ticor Title Insurance Company of Florida, filed on November 28, 2006 and December 19, 2006, respectively, in the U.S. District Court for the Southern District of Alabama, Southern Division), Connecticut (Lentini v. Fidelity National Title Insurance Company of New York, filed on April 13, 2006 in the U.S. District Court for the District of Connecticut), Florida (Turner v. Chicago Title Insurance Company, filed September 20, 2004 in the Circuit Court, Fourth Judicial District, in and for Nassau County, Florida), Ohio (Randleman v. Fidelity National Title Insurance Company, filed on February 15, 2006 in the U.S. District Court for the Northern District of Ohio, Western Division and Dubin v. Security Union Title Insurance Company, filed on March 12, 2003, in the Court of Common Pleas, Cuyahoga County, Ohio), New Mexico (Woodard v. Fidelity National Financial, Inc., filed on December 6, 2006 in the U.S. District Court for the District of New Mexico), New Hampshire (Anderson v. Fidelity National Title Insurance Company, filed on September 25, 2006, in New Hampshire State Court, County of Hillsborough, Northern District), Pennsylvania, (Patterson v. Fidelity National Title Insurance Company of New York, filed on October 27, 2003 in the Court of Common Pleas of Allegheny County, Pennsylvania; O'Day v. Ticor Title Insurance Company of Florida, filed on October 18, 2006 in the U.S. District Court for the Eastern District of Pennsylvania; Cohen v. Chicago Title Insurance Company, filed on January 27, 2006 in the Court of Common Pleas of Philadelphia County, Pennsylvania; and Guizarri v. Ticor Title Insurance Company, filed on October 17, 2006 in the U.S. District Court for the Eastern District of Pennsylvania) and Washington (Jepson v. Ticor Title Insurance Company, filed on November 29, 2006 in the U.S. District Court for the Western District of Washington and Braunstein v. Chicago Title Insurance Company, filed on November 22, 2006 in the U.S. District Court for the Western District of

Manuscript

**IRONSHORE INSURANCE COMPANIES**

One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

Washington at Seattle) alleging improper premiums were charged for title insurance. The cases allege that the named defendant companies failed to provide notice of premium discounts to consumers refinancing their mortgages, and failed to give discounts in refinancing transactions in violation of the filed rates. The actions seek refunds of the premiums charged and punitive damages. The Company intends to vigorously defend these actions.

A class action in California (Lane v. Chicago Title Insurance Company, filed on November 4, 1999 in the Superior Court of the State of California, County of San Francisco) alleges that the Company violated the Real Estate Settlement Procedures Act and state law by giving favorable discounts or rates to builders and developers for escrow fees and requiring purchasers to use Chicago Title Insurance Company for escrow services. The action seeks refunds of the premiums charged and additional damages. The Company intends to vigorously defend this action.

A class action in Texas (Alevaro v. Chicago Title Insurance Company and Ticor Title Insurance Company, filed on March 24, 2006 in the U.S. District Court for the Western District of Texas, San Antonio Division) alleges that the Company overcharged for recording fees in Arizona, California, Colorado, Oklahoma and Texas. The suit seeks to recover the recording fees for the class that was overcharged, interest and attorney's fees. Similar suits are pending in Indiana (Roark v. Ticor Title Insurance Company and Gresh v. Chicago Title Insurance Company, each filed on April 29, 2003 in the Superior Court of Indiana, Lake County), Kansas (Doll v. Chicago Title Insurance Company, filed on September 28, 2006 in the U.S. District Court for the District of Kansas) and Missouri (Krause v. Chicago Title Insurance Company, filed on September 2, 2005 in the Circuit Court of Jackson County, Missouri). The Company intends to vigorously defend these actions.

A class action in New Mexico (Murphy v. Chicago Title Insurance Company and Fidelity National Title Insurance Company, filed on April 27, 2005 in the First Judicial District Court, County of Santa Fe, State of New Mexico) alleges the Company has engaged in anti-competitive price fixing in New Mexico. The suit seeks an injunction against price fixing and writs issued to the State regulators mandating the law be interpreted to provide a competitive market, compensatory damages, punitive damages, statutory damages, interest and attorney's fees for the injured class. The Company intends to vigorously defend this action.

Two class actions filed in Illinois (Chultum v. Fidelity National Financial, Inc., Chicago Title and Trust Company and Ticor Title Insurance Company and Collella v. Fidelity National Financial, Inc., Chicago Title and Trust Company and Ticor Title Insurance Company, each filed on May 11, 2006 in the Circuit Court of Cook County, Illinois, County Department, Chancery Division) allege the Company has paid attorneys to refer business to the Company by paying them for core title services in conjunction with orders when the attorneys, in fact, did not perform any core title services and the payments were to steer business to the Company. The suits seek compensatory damages, attorney's fees and injunctive relief to terminate the practice. The Company intends to vigorously defend these actions.

A class action in Connecticut (Gale v. Chicago Title Insurance Company, filed on October 16, 2006 in the U.S. District Court for the District of Connecticut) alleges that the Company uses unauthorized agents in violation of state law. The suit seeks compensatory damages, attorney's fees and injunctive relief to terminate the practice. The Company intends to vigorously defend this action.

A class action in California (Garcia v. Ticor Title Insurance Company, filed on October 31, 2006 in the Superior Court of the State of California in and for the County of Alameda) alleges that the Company participated in a fraudulent loan scheme with mortgage brokers. The suit seeks compensatory damages, and attorney's fees. The Company intends to vigorously defend this action.

Two class actions, one in Michigan (Egerer v. Woodland Title Agency LLC, filed on September 29, 2006 in the Circuit Court for the County of Muskegon, Michigan) and one in Ohio (Carter v. Chicago Title Insurance Company, filed on November 9, 2005 in the U.S. District Court for the Northern District of Ohio, Western Division) allege the Company has violated RESPA by engaging in affiliated business arrangements in violation of RESPA. The suits seek to recover three times the title charges, interest and attorney's fees. The Company intends to vigorously defend these actions.

Manuscript

**IRONSHORE INSURANCE COMPANIES**

One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411



A class action in Washington (Braunstein v. Chicago Title Insurance Company, filed on November 22, 2006 in the U.S. District Court for the Western District of Washington at Seattle) alleges that the Company has violated state law by making prohibited payments for the referral of business increasing the cost of title insurance to consumers. The suit seeks compensatory damages, and attorney's fees. The Company intends to vigorously defend this action.

Canadian lawyers who have traditionally played a role in real property transactions in Canada allege that the Company's practices in processing residential mortgages are the unauthorized practice of law. Their Law Societies have demanded an end to the practice, and have begun investigations into those practices. In several provinces, bills have been filed that ostensibly would affect the way we do business. The Company is unable to predict the outcome of this inquiry or whether it will adversely affect the Company's business or results of operations. In Missouri, a class action is pending alleging that certain acts performed by the Company in closing real estate transactions are the unlawful practice of law. The Company intends to vigorously defend this action.

None of the cases described above includes a statement as to the dollar amount of damages demanded. Instead, each of the cases includes a demand in an amount to be proved at trial. Two of the Ohio cases state that the damages per class member are less than the jurisdictional limit for removal to federal court.

The Company receives inquiries and requests for information from state insurance departments, attorneys general and other regulatory agencies from time to time about various matters relating to its business. Sometimes these take the form of civil investigative subpoenas. The Company attempts to cooperate with all such inquiries. From time to time, the Company is assessed fines for violations of regulations or other matters or enters into settlements with such authorities which require the Company to pay money or take other actions.

On February 16, 2007, CTIC received a letter from the United States Attorney's Office in the Southern District of Texas advising the company that it is the target of a federal grand jury investigation in Houston, Texas concerning possible violations of law involving loans made by three banks in Texas. CTIC believes that the investigation relates to certain mortgage loan transactions that were closed in 2000 and 2001 by a branch office of CTIC located in the Houston Metropolitan area. As previously disclosed, in February 2005, without any admission of fault or liability, CTIC entered into an Order with the U.S. Office of the Comptroller of the Currency and certain other regulators including the Office of Thrift Supervision and the Texas Department of Insurance in connection with their investigations of matters relating to these loans. Under the Order, the Company agreed to, among other things, pay a civil money penalty, provide training to current and prospective employees, and audit branch offices at least every two years to ensure compliance with applicable rules and regulations. In addition, without admitting any liability, CTIC concurrently entered into a settlement agreement with the U.S. Department of Housing and Urban Development with respect to any violations of the Real Estate Settlement Procedures Act in connection with these loans following HUD's investigation of the matter. The U.S. Attorney's Office now is investigating possible violations of the bank fraud laws in connection with the same loans. CTIC is fully cooperating with the U.S. Attorney's investigation. To date, we are not aware of any violations of the bank fraud laws on the part of CTIC or any of its employees. CTIC has agreed to launch an internal investigation, and to report thereon to the U.S. Attorney's office. In the event that CTIC were to be indicted, the consequences to us could materially adversely affect our business.

The National Association of Insurance Commissioners and various state insurance regulators have been investigating so called "captive reinsurance" agreements since 2004. The investigations have focused on arrangements in which title insurers would write title insurance generated by realtors, developers and lenders and cede a portion of the premiums to a reinsurance company affiliate of the entity that generated the business. The U.S. Department of Housing and Urban Development ("HUD") also has made formal or informal inquiries of the Company regarding these matters. The Company has been cooperating and intends to continue to cooperate with all ongoing investigations. The Company has discontinued all captive reinsurance arrangements. The total amount of premiums the Company ceded to reinsurers was approximately $10 million over the existence of these agreements. The Company has settled most of the accusations

Manuscript

**IRONSHORE INSURANCE COMPANIES**



One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

of wrongdoing that arose from these investigations by discontinuing the practice and paying fines. Some investigations are continuing. The Company anticipates they will be settled in a similar manner.

Additionally, the Company has received inquiries from regulators about its business involvement with title insurance agencies affiliated with builders, realtors and other traditional sources of title insurance business, some of which the Company participated in forming as joint ventures with its subsidiaries. These inquiries have focused on whether the placement of title insurance with the Company through these affiliated agencies is proper or an improper form of referral payment. Like most other title insurers, the Company participates in these affiliated business arrangements in a number of states. The Company has settled the accusations of wrongdoing that arose from some of these investigations by discontinuing the practice and paying fines. Other investigations are continuing. The Company anticipates they will be settled in a similar manner.

In 2006, we and our subsidiaries settled all allegations of wrongdoing arising from a wide-ranging review of the title insurance industry by the New York State Attorney General (the "NYAG"). Under the terms of the settlement, we paid a $2 million fine and were required to reduce premiums by 15% on owner's policies under $1 million. Rate hearings will be conducted by the New York State Insurance Department (the "NYSID") in 2007 where all rates will be considered industry-wide. The settlement clarifies practices considered wrongful under New York law by the NYAG and the NYSID, and we have agreed not to engage in those practices. We will take steps to assure that consumers are aware of the filed rates for premiums on title insurance products and that the products are correctly rated. The settlement also resolves all issues raised by the market conduct investigation of us and our subsidiaries by the NYSID except the issues of rating errors found by the NYSID. As part of the settlement, we and our subsidiaries denied any wrongdoing. Neither the fines nor the 15% rate reduction are expected to have a material impact on our earnings. We cooperated fully with the NYAG and NYSID inquiries into these matters and will continue to cooperate with the NYSID.

Further, in 2006, U.S. Representative Oxley, the Chairman of the House Financial Services Committee, asked the Government Accountability Office (the GAO) to investigate the title insurance industry. Representative Oxley stated that the Committee is concerned about payments that certain title insurers have made to developers, lenders and real estate agents for referrals of title insurance business. Representative Oxley asked the GAO to examine, among other things, the foregoing relationships and the levels of pricing and competition in the title insurance industry. A congressional hearing was held regarding title insurance practices on April 27, 2006. The GAO's report is expected in the spring of 2007. We are unable to predict the outcome of this inquiry or whether it will adversely affect our business or results of operations.

In January 2007, the California Insurance Commissioner submitted to the California Office of Administrative Law ("OAL") proposed regulations that would have significant effects on the title insurance industry in California. Among other things, these regulations would set "maximum" rates, effective as of October 1, 2009, for title and escrow using industry data to be reported through the statistical plan described below and published by the California Department of Insurance (the "CDI"). In addition, the new regulations would establish an interim reduction of all title and escrow rates effective October 1, 2009 if the CDI is unable to publish the data necessary for the calculation of the maximum rates by August 1, 2009. These interim rate reductions are intended to roll rates back so that in effect, premiums are charged on the basis of real property values from the year 2000. Title insurers would be required to reduce their rates to a level below their 2000 rates, with the amount of the reduction determined by a formula adjusting for real estate appreciation and inflation. Although FNF is continuing to evaluate the effect that these regulations would have on its business and its financial results, FNF is concerned that the reduced rates and maximum rate caps set by the California Regulations will significantly reduce the title and escrow rates that are charged in California, while precluding title insurers from seeking relief from those reduced or maximum rates. In addition, the proposed California regulations contemplate the creation of a detailed statistical plan, requiring data to be collected by each title insurer, underwritten title company, and controlled escrow company at the individual transaction level beginning on January 1, 2008. The statistical plan would also require that all expenses be allocated among 18 "activities," such as title search/examination, preliminary report issuance, general management, customer support, sales, recording of documents, and escrow document production. The data



## IRONSHORE INSURANCE COMPANIES

One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

collected under the statistical plan would be submitted annually to the CDI beginning on April 30, 2009. Compliance with the data collection and reporting requirements of the California Regulations, if adopted, would necessitate a significant revision and augmentation of our existing data collection and accounting systems before January 1, 2008, and would require a significant expenditure to comply with the April 30, 2009 deadline. The proposed required rate reductions and maximum rates would significantly reduce the title insurance rates that our subsidiaries can charge, and would likely have a significant negative impact on our California revenues. In addition, the increased cost of compliance with the statistical data collection and reporting requirements would negatively impact our cost of doing business in California. California is the largest source of revenue for the title insurance industry, including for us. On February 21, 2007, the OAL disapproved the proposed California Regulations and requested certain clarifications from the CDI. On February 22, 2007, the CDI announced its intention to move forward expeditiously to satisfy the OAL's request in consultation with consumer groups and the title industry and resubmit the regulations for approval.

In addition, the Florida Office of Insurance Regulation (the "OIR") has recently released three studies of the title insurance industry which purport to demonstrate that title insurance rates in Florida are too high and that the Florida title insurance industry is overwhelmingly dominated by five firms, which includes us. The studies recommend tying premium rates to loss ratios thereby making the rates a reflection of the actual risks born by the insurer. The OIR is presently developing a rule to establish and govern the annual collection of statistical data and has said that it will use the information gathered to begin a full review of the title insurance rates charged in Florida.

**Form 10-Q June 30, 2007**

Several additional class actions have been filed and now are pending in Maryland (Arthur v. Ticor of Florida filed July 2, 2007 in the United States District Court for the District of Maryland), Michigan (Tharia v. CTIC filed May 14, 2007 in the United States District Court for the Eastern District of Michigan), and Texas, (McGee v. FNTIC filed June 18, 2007 in the United States District Court for the Northern District of Texas (Dallas), alleging improper premiums were charged for title insurance. The cases, like those previously reported, allege that the named defendant companies failed to provide notice of premium discounts to consumers refinancing their mortgages, and failed to give discounts in refinancing transactions in violation of the filed rates. The actions seek refunds of the premiums charged and punitive damages. The Alabama class actions previously reported were dismissed by the District Court. However, the plaintiffs announced their intention to appeal. A second action was filed recently in Florida (Bleich v CTIC filed June 1, 2007 in the Circuit Court of the 11 th Judicial Circuit in and for Miami Dade County, Florida). One of the New Hampshire actions has settled. (Terry v CTIC) We intend to vigorously defend all of these actions.

A recently filed class action in Massachusetts (Katin v ServiceLink filed May 9, 2007 in the United States District Court for the District of Massachusetts) alleges that we use unauthorized agents in violation of state law. The suit seeks compensatory damages, attorney's fees and injunctive relief to terminate the practice. We intend to vigorously defend this action.

The District Court dismissed a class action in Ohio (Carter v. Chicago Title Insurance Company, filed on November 9, 2005 in the U.S. District Court for the Northern District of Ohio, Western Division) alleging that we have violated RESPA by engaging in affiliated business arrangements in violation of RESPA. The plaintiffs appealed. The suit seeks to recover three times the title charges, interest and attorney's fees. We intend to vigorously defend this action.

A class action in Washington (Braunstein v. Chicago Title Insurance Company, filed on November 22, 2006 in the U.S. District Court for the Western District of Washington at Seattle) alleges that we have violated state law by making prohibited payments for the referral of business increasing the cost of title insurance to consumers. Ticor Title Insurance Company and Fidelity National Title Insurance Company were added as defendants in this suit in March 2007. The suit seeks compensatory damages, and attorney's fees. We intend to vigorously defend this action.

None of the cases described above includes a statement as to the dollar amount of damages demanded. Instead, each of the cases includes a demand in an amount to be proved at trial. Two cases in Ohio state that the damages per class member are less than the jurisdictional limit for removal to federal court.

Manuscript



**IRONSHORE INSURANCE COMPANIES**
One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

We receive inquiries and requests for information from state insurance departments, attorneys general and other regulatory agencies from time to time about various matters relating to our business. Sometimes these take the form of civil investigative subpoenas. We attempt to cooperate with all such inquiries. From time to time, we are assessed fines for violations of regulations or other matters or enter into settlements with such authorities which require us to pay money or take other actions.

As previously disclosed, CTIC received a target letter on February 16, 2007 from the United States Attorney's office in the Southern District of Texas advising CTIC that it was the target of a federal grand jury investigation in Houston, Texas concerning possible violations of law involving loans made by three banks in Texas. The United States Attorney's office subsequently advised CTIC that it will not be indicted in connection with the matters set forth in the target letter. CTIC is continuing to cooperate with the United States Attorney's office.

In January 2007, the California Insurance Commissioner submitted to the California Office of Administrative Law (the "OAL") proposed regulations (the "Proposed Regulations") that would have significant effects on the title insurance industry in California. On February 21, 2007, the OAL disapproved the Proposed Regulations. On June 28, 2007, the California Department of Insurance (the "CDI") submitted a modified version of the Proposed Regulations to the OAL. The only substantive change in this modified version of the Proposed Regulations was to delay the implementation dates by approximately one year. The OAL approved the modified version of the Proposed Regulations on July 26, 2007 (as approved, the "Regulations") and filed them with the California Secretary of State. Notwithstanding the promulgation of the Regulations, we, as well as others, have been engaged in discussions with the CDI regarding possible industry reforms that may result in the CDI's decision to modify or repeal the Regulations prior to their implementation. In the event that the CDI does not modify or repeal the Regulations prior to their implementation, the Regulations are expected to have significant effects on the title insurance industry in California. Among other things, the Regulations set "maximum" rates, effective as of October 1, 2010, for title and escrow using industry data to be reported through the statistical plan described below and published by the CDI. In addition, the Regulations establish an interim reduction of all title and escrow rates effective October 1, 2010 if the CDI is unable to publish the data necessary for the calculation of the maximum rates by August 1, 2010. These interim rate reductions are intended to roll rates back so that, in effect, premiums would be charged on the basis of real property values from the year 2000. Title insurers would be required to reduce their rates to a level below their 2000 rates, with the amount of the reduction determined by a formula adjusting for real estate appreciation and inflation. We are concerned that the reduced rates set by the Regulations will significantly reduce the title and escrow rates that are charged in California, while precluding title insurers from seeking relief from those reduced or maximum rates. In addition, the Regulations create a detailed statistical plan, and require each title insurer, underwritten title company, and controlled escrow company to collect data at the individual transaction level beginning on January 1, 2009, and to report such data to the CDI on an annual basis beginning April 30, 2010. Compliance with the data collection and reporting requirements of the Regulations would necessitate a significant revision and augmentation of our existing data collection and accounting systems before January 1, 2009, and would require a significant expenditure to comply with the April 30, 2010 reporting deadline. The required rate reductions and maximum rates would significantly reduce the title insurance rates that our subsidiaries can charge, and would likely have a significant negative impact on our California revenues. In addition, the increased cost of compliance with the statistical data collection and reporting requirements would negatively impact our cost of doing business in California. California is the largest source of revenue for the title insurance industry, including for us. We continue to meet with the CDI to discuss possible modifications to the Regulations and alternatives that could result in the repeal of the Regulations prior to their initial implementation. In addition, we are exploring litigation alternatives in the event that the CDI does not modify or repeal the Regulations, including a possible lawsuit challenging the CDI's authority to promulgate rate regulations and statistical plan regulations related thereto.

In addition, the Florida Office of Insurance Regulation (the "OIR") has released three studies of the title insurance industry which purport to demonstrate that title insurance rates in Florida are too high and that the Florida title insurance industry is overwhelmingly dominated by five firms, which includes us. The studies recommend tying premium

Manuscript



**IRONSHORE INSURANCE COMPANIES**

One State Street Plaza, 7th Floor
New York, New York 10004
Tel: 646-826-6600
Toll Free: 877-IRON411

rates to loss ratios thereby making the rates a reflection of the actual risks born by the insurer. The OIR has noticed a hearing to be held on August 23, 2007 at which it will seek information on title insurance operations in Florida.

The Washington Insurance Commissioner has issued a report concluding that the title insurance industry has engaged in illegal referral fees. The Commissioner has appointed a panel to recommend title industry reforms. Additionally, the New Mexico Public Regulation Commission has established a task force to investigate the title insurance business in New Mexico and make recommendations to improve consumer protection, education and awareness. Their findings and recommendations are expected to be presented by October 30, 2007.

The CDI recently served the Fidelity National Property & Casualty Insurance Company ("FNPAC"), a wholly owned subsidiary of the Company, with a cease and desist order alleging that it had knowingly issued immigration bonds in California without proper authority. FNPAC has proposed a stipulated settlement agreement providing for the dismissal of the order.

or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such proceeding.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____          March 5, 2010
Authorized Representative                 Date

Manuscript