EXHIBIT F



**National Union Fire Insurance Company of Pittsburgh, Pa.**

A capital stock company

POLICY NUMBER: 01-318-41-31          REPLACEMENT OF POLICY NUMBER: 01-351-34-64

## MISCELLANEOUS PROFESSIONAL LIABILITY POLICY

NOTICE: This is a claims made policy.  Except to such extent as may otherwise be provided herein, the coverage of this policy is limited to liability for only those claims that are first made against you and reported in writIng to us during the policy period.  Please read the Policy Carefully and discuss the coverage thereunder with your insurance agent or broker.

The Limit of Liability available to pay judgments or settlements shall be reduced by claim expenses. further note that amounts incurred for claim expenses shall be applied against the retention.

### DECLARATIONS

Item 1.  Named Insured:  **FIDELITY NATIONAL FINANCIAL INC**

Address:  **CORPORATE RISK MANAGEMENT DEPARTMENT**

**C/O FIDELITY NATIONAL INSURANCE SERVICES**

**4905 BELFORT RD, UNIT 110**

**JACKSONVILLE, FL 32256**

Item 2.  Policy Period:  From: **November 18, 2010** To: **November 18, 2011**
at 12:01 A.M. standard time at the address of the insured as stated above.

Item 3.  Limits of Liability (inclusive of claim expenses)

**$15,000,000**    each wrongful act
**$15,000,000**    aggregate

Item 4.  Retention:  **$5,000,000**    each wrongful act

Item 5.  Premium:  **$2,480,000 + $74,400 Florida Surcharge**

Item 6.  Professional services:    **SEE ENDORSEMENT #1**

Item 7.  Retroactive date:    **Full Prior Acts**

© Chartis Inc. All rights reserved.

Item 8.    Name and Address of Insurer (in the box checked above)

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
**175 WATER STREET**
**NEW YORK, NY 10038**

© Chartis Inc. All rights reserved.

**IN WITNESS WHEREOF,** the **Insurer** has caused this policy to be signed on the Declarations by its President, a Secretary and its duly authorized representative.

_____              _____
**PRESIDENT**                                                **SECRETARY**

National Union Fire Insurance               National Union Fire Insurance
Company of Pittsburgh, Pa.                   Company of Pittsburgh, Pa.

_____
**AUTHORIZED REPRESENTATIVE**

_____    _____    _____
**COUNTERSIGNED AT**          **DATE**          **COUNTERSIGNATURE**

*WILLIS OF NEW YORK INC*
*200 LIBERTY STREET, 7TH FL*
*ONE WORLD FINANCIAL CENTER*
*NEW YORK, NY 10281-1003*

*7224954*

77008 (04/02)                      3

© Chartis Inc. All rights reserved.

## FLORIDA ADDENDUM TO THE DECLARATIONS

**If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:**

**Chartis**
**175 Water Street**
**New York, NY 10038**
**(212) 458- 5000**

74825 (8/09)



**National Union Fire Insurance Company of Pittsburgh, Pa.**®

A capital stock company

# Miscellaneous Professional Liability Policy

In consideration of the premium charged, and in reliance upon the statements in the application(s) attached hereto and made a part hereof, and subject to the Limits of Liability set forth in the Declarations and the terms and conditions contained herein, **we** agree as follows:

**I.    INSURING AGREEMENTS**

    **A.    ERRORS AND OMISSIONS**

        **We** shall pay on **your** behalf those amounts, in excess of the retention, **you** are legally obligated to pay as **damages** resulting from a **claim** first made against **you** and reported to **us** during the **policy period** or Extended Reporting Period (if applicable) for **your wrongful act** in rendering or failing to render **professional services** for others, but only if such **wrongful act** first occurs on or after the **retroactive date** and prior to the end of the **policy period.**

    **B.    DEFENSE**

        **1.** **We** have the right and duty to defend a **suit** brought against **you** alleging a **wrongful act** even if the **suit** is groundless, false or fraudulent.  **We** have the right, with **your** written consent, which consent shall not be unreasonably withheld, to settle any **suit** if **we** believe that it is proper.

        **We** have the right to investigate any **claim** and, with **your** written consent, which consent shall not be unreasonably withheld, the right to settle any **claim** if **we** believe that it is proper.

        **Your** refusal to consent to a settlement may impact **our** obligations under this policy as stated in Section IV. D.

        **2.** **Claim expense(s)** are part of and subject to **our** Limit of Liability.  **Our** duty to defend ends after the applicable Limit of Liability has been exhausted by payment of **claim expenses** or **damages.**

        **3.** **You** may settle any **claim(s)** or **suit(s)** on behalf of all **insureds** to which this insurance applies and which are subject to one retention, where the total incurred **loss** does not exceed the retention.

**II.   DEFINITIONS**

    **A.    Bodily injury** means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

    **B.** **Claim** means a demand for money or services, including a **suit**, arising from **your wrongful act**.

    **C.    Claim expenses** means all reasonable and necessary fees charged by an attorney appointed by **us** in connection with any **suit** brought against **you** alleging a **wrongful act**, as well as all other reasonable and necessary fees, costs and expenses incurred in the defense or investigation of a **claim** by **us** or by **you** with **our** written consent.  **Claim expenses** shall also include premiums for appeal bonds, or bonds to release property used to secure a legal obligation, if required in a **claim**; however, **we** shall have no obligation to appeal or to obtain these bonds.  **Claim expenses** does not include salary charges or expenses of **you** or **your** employees.

© All rights reserved.

**D.** **Damages** means any amount that **you** shall be legally required to pay because of judgments, arbitration awards or the like rendered against **you**, or for settlements negotiated by **us** with **your** written consent; provided that **damages** shall not include any amounts for which **you** are not financially liable or for which there is no legal recourse against **you**, the costs and expenses of complying with any injunctive or other form of equitable relief, or matters that may be deemed uninsurable under the law.  **Damages** shall include:

1. punitive, exemplary and multiple damages (where insurable by law);

2. pre-judgment interest; and

3. post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable Limit of Liability.

**E.** **First inception date** means the inception date of the first Miscellaneous Professional Liability policy issued by **us** or any other member company of Chartis Inc. ("Chartis") to the **named insured** and continually renewed by **us** or any other Chartis member company until the inception date of this current policy.

**F.** **Loss** means the total sum of **damages** and **claim expenses**.

**Loss** shall not mean and this policy shall not cover:

1. fines, penalties, or taxes;

2. non-pecuniary relief; or

3. matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**G.** **Named insured** means the individual, entity, partnership, or corporation designated as such in Item 1 of the Declarations.

**H.** **Over-redemption** means price discounts, prizes, awards or other valuable consideration given in excess of the total contracted or expected amount.

**I.** **Policy period** means the period commencing on the effective date set forth in Item 2 of the Declarations and ending on the earlier of either the expiration date set forth in Item 2 of the Declarations or the effective date of cancellation of this policy.  If **you** become an **insured** under this policy after the effective date, the **policy period** begins on the date **you** became an **insured**.

**J.** **Pollutants** include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

**K.** **Professional services** means those services as described and set forth in Item 6 of the Declarations.

**L.** **Property damage** means (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed.

**M.** **Retroactive date** means the date set forth in Item 7 of the Declarations.

**N.** **Subsidiary** shall mean any corporation of which the **named insured** owns on the inception date of the **policy period** more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through a **subsidiary**.

**Subsidiary** shall also mean any corporation which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a ten percent (10%) increase in the total assets and/or gross revenue of the **named insured** as of the date of the acquisition. Where such corporation represents an increase in the total assets and/or gross revenue of the **named insured** of more than ten percent (10%), such corporation shall be deemed a **subsidiary** under the policy, but only upon the condition that within ninety (90) days of its becoming a **subsidiary**, **you** shall have provided **us** with full particulars of the new **subsidiary** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**. A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly through one or more of its **subsidiaries**, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

This policy does not cover any **claim** against a **subsidiary** or any partner, director, officer or employee thereof for any **wrongful act** that occurred when the **named insured** did not own more than fifty percent (50%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**.

O. **Suit** means a civil proceeding for monetary, non- monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** consent.

P. **We**, **us** or **our** means the insurer issuing this policy.

Q. **Wrongful act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed solely in **your** performance of **professional services**.

R. **You**, **your** or **insured** means:

   1. the **named insured**;

   2. any **subsidiary** of the **named insured**, but only with respect to **wrongful acts** which occur while it is a **subsidiary** and is otherwise covered by this policy;

   3. any past, present or future officer, director, trustee or employee of the **named insured** or **subsidiary** thereof (and in the event the **named insured** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof), but only while acting within the scope of their duties as such; and

   4. any entity whom the **named insured** is required by contract to add as an **insured** under this policy, but only for the **wrongful acts** of the **named insured**.

### III. EXCLUSIONS - CLAIMS NOT COVERED

**We** shall not cover **claims**:

A. arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; however, **we** will defend **suits** alleging any of

    Ⓒ All rights reserved.

the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against **you** as to such conduct at which time **you** shall reimburse **us** for **claim expenses**; **we** shall not cover any **claim** if **you** plead *nolo contendere* or no contest to a criminal proceeding against **you** arising out of the same, or essentially the same, material facts as such **claim**;

B.   arising out of the presence of or the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, or in any way respond to or assess the effects of **pollutants**;

C.   arising out of **bodily injury** or **property damage**;

D.   arising out of:

    1. any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

    2. any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

    3. any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

E.   arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

F.   arising out of any employment practices liability or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

G.   arising out of the same **wrongful act** or series of continuous, repeated or related **wrongful acts,** alleging the same or similar facts, alleged or contained in any **claim** which has been reported, or any **wrongful act** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time;

H.   arising out of any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

I.   arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

J.   against **you** that are brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **claim** is alleging a **wrongful act** in **your** rendering **professional services** to such entity;

K.   arising out of liability **you** assume under any contract or agreement, including but not limited to, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

L.   against **you** that is brought by or on behalf of:

    1.  any **insured** except as described in clause 4. of the definition of "**you**, **your** or **insured**" in Section II. DEFINITIONS;

    2.  any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**;

    3.  any parent company, **subsidiary**, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

    4.  any independent contractor supplying material or services to **you**, but, as regards such independent contractor, only with respect to **claims** involving disputes over the ownership or exercise of rights in material or services supplied;

M.  arising out of any **wrongful act** committed prior to the **first inception date** if, as of the **first inception date**, **you** knew or could have reasonably foreseen that such **wrongful act** did or would result in a **claim** against **you**;

N.  first made against **you** prior to, or pending as of, the **first inception date**, or relating to the essential facts, circumstances or situation underlying such **claim**;

O.  arising out of disputes involving:

    1.  **your** fees or charges, including over-charges, or cost over-runs;

    2.  collecting **your** fees from third parties;

    3.  the return of fees or other compensation paid to **you**; or

    4.  **your** cost of correcting or re-performing or completing any **professional services**;

P.  arising out of any **wrongful act** committed with the knowledge that it was a **wrongful act**;

Q.  arising out of **over-redemption** of coupons, awards, or prizes from advertisements, promotions, games, sweepstakes, contests, and games of chance;

R.  arising out of any **wrongful act** which occurred prior to the **retroactive date**;

S.  arising out of:

    1.  false arrest, detention or imprisonment;

    2.  libel, slander or defamation of character; or

    3.  wrongful entry or eviction, or invasion of any right of privacy; or

T.  arising out of **your** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance.

## IV.  LIMITS OF LIABILITY

A.  The Limits of Liability set forth in the Declarations of this policy are the most **we** shall pay for **loss** regardless of the number of persons or entities covered by this policy or claimants or **claims** brought.

B.  **Our** total liability for all **loss** arising from any and all **claims** made against **you** and reported to **us** during the **policy period** or any applicable Extended Reporting Period, alleging any **wrongful act** or series of continuous, repeated or related **wrongful acts** shall not exceed the Limit of Liability set forth in the Declarations as applicable to "each **wrongful act**".

77011 (4/02)          Page 5          © All rights reserved.

C.   **Our** total liability for all **loss** arising from all **claims** made against **you** and reported to **us** during the **policy period** or any applicable Extended Reporting Period shall not exceed the Limit of Liability set forth in the Declarations as "aggregate." The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

D.   **Our** duty to defend ends if **you** refuse to consent to a settlement **we** recommend and the claimant will accept.  **You** must then defend the **claim** at **your** own expense. As a consequence of **your** refusal,  **our** liability shall not exceed the amount for which **we** could have settled such **claim** had **you** consented, plus **claim expenses** incurred prior to the date of such refusal.  This clause shall not apply to any settlement where the total incurred for **damages** and **claims expenses** does not exceed the retention.

E.   **Multiple Professional Liability Policies**

1.   Two or more policies may be issued by **us** or other member companies of Chartis Inc. (Chartis) to **you**.  These policies may provide coverage for:

a.   **claims** arising from the same **wrongful act** or series of continuous, repeated, or related **wrongful acts**; or

b.   **claims** for which persons or organizations covered in those policies are jointly and severally liable.

2.   In such case, **we** shall not be liable under this policy for an amount greater than the proportion of the **loss** that this policy's applicable limit of liability bears to the total applicable limit of liability under all such policies.

3.   In addition, the total amount payable under all such policies combined shall not be greater than the highest applicable limit of liability among all such policies.

**V.   RETENTION**

**You** shall be responsible for the retention amount set forth in Item 4 of the Declarations. The retention applies to each **wrongful act**, and **you** may not insure it.  All **claims** arising from a **wrongful act** or series of continuous, repeated, or related **wrongful acts** shall be subject to one retention.  In **our** sole discretion, **we** may pay all or part of the retention to settle a  **claim**, in which case **you** agree to repay **us** promptly after **we** notify **you** of the settlement.

If **you** shall, at **our** written request, submit a **claim** to alternative dispute resolution in accordance with the rules of the American Arbitration Association or the Defense Research Institute, and such **claim** is settled through this process, the retention obligation shall be deemed to be fifty percent (50%) of the retention stated in Item 4 of the Declarations.

**VI.   OTHER PROVISIONS AFFECTING COVERAGE**

A.   **What You Must Do in the Event of a Claim**

Before coverage will apply, **you** must notify **us** in writing of any **claim** against **you** as soon as practicable during the **policy period** or Extended Reporting Period (if applicable). **You** must also:

1.   immediately record the specifics of the **claim** and the date **you** received it; and

2.   send copies of all demands, suit papers, or other legal documents **you** receive, as soon as possible to **us** in c/o Chartis Claims Inc., at **our** address indicated in the Declarations.

**B.    Your Assistance and Cooperation**

    1.  **You** agree to cooperate with and help **us**:

        a.  in making settlements, subject to sub- paragraph 3 herein;

        b.  in enforcing any legal rights **you** or **we** may have against anyone who may be liable to **you**;

        c.  by attending depositions, hearings and trials; and

        d.  by securing and giving evidence, and obtaining the attendance of witnesses.

    2.  **You** shall take such actions which, in **your** judgment, are deemed necessary and practicable to prevent or limit **loss** arising from **your wrongful acts**.

    3.  **You** shall not admit any liability, assume any financial obligation or pay out any money without **our** prior written consent.  If **you** do, it shall be at **your** own expense.  In addition, **you** shall not take any action, or fail to take any required action, without **our** written consent, which prejudices **our** rights under this policy.

**C.    Where Coverage Applies**

This policy applies to **wrongful acts** committed anywhere in the world, provided that any **claim** must be brought against **you** in the United States of America, its territories or possessions or Canada.

**D.    Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance available to **you**.

**E.    Subrogation**

**You** may be able to recover all or part of a loss from someone other than **us**.  **You** therefore must do all that is possible after a loss to preserve any such right of recovery.  If **we** make a payment under this policy, that right of recovery shall belong to **us**.  **You** shall do whatever is necessary, including signing documents, to help **us** obtain that recovery.

**F.    Policy Changes**

This policy contains all the agreements between **you** and **us** concerning this insurance.  This policy can only be changed by a written endorsement **we** issue and make a part of this policy.

**G.    Assignment**

**You** cannot assign or transfer **your** interest in this policy.  If **you** die or are declared legally incompetent, **your** rights and duties will be transferred to **your** legal representative; but only while acting within the scope of his or her duties as such, and only with respect to **your wrongful acts** which took place prior to **your** death or incompetence.

**H.    Special Rights and Duties of Named Insured**

**You** agree that when there is more than one person or organization covered under this policy, the **named insured** first named in Item 1 of the Declarations shall act on behalf of all of **you** as to:

1.  giving and receiving notice of cancellation;

2.  payment of premiums and receipt of return premiums;

Ⓒ All rights reserved.

3. acceptance of any changes to this policy; and

4. acceptance or refusal of any applicable Extended Reporting Period.

## I. Cancellation

This policy may be canceled by the **named insured** by surrender of this policy to **us** or by giving written notice to **us** stating when thereafter such cancellation shall be effective. This policy may also be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class mail sent to the **named insured's** address set forth in Item 1 of the Declarations, or by delivering to the **named insured**, written notice, stating when, not less than thirty (30) days thereafter, or ten (10) days thereafter in the event of nonpayment of premium, the cancellation shall be effective. The mailing of such notice, as aforesaid, shall be sufficient proof of notice. This policy shall be deemed canceled at the date and hour specified in such notice. If this policy shall be canceled by the **named insured**, **we** shall retain the customary short rate proportion of the premium herein. If this policy shall be canceled by **us**, **we** shall retain the pro rata proportion of the premium herein. Payment or tender of the unearned premium by **us** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice for cancellation by **us**, as set forth above, is also set forth in any controlling law, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in such controlling law if it is a longer period.

## J. Extended Reporting Provisions

### 1. Automatic Extended Reporting Period

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right following the effective date of such cancellation or nonrenewal to a period of sixty (60) days (herein referred to as the "Automatic Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Automatic Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

The Automatic Extended Reporting Period shall not apply to **claims** that are covered under any subsequent insurance **you** purchase or which is purchased for **your** benefit, or that would be covered by such subsequent insurance but for (1) the exhaustion of the amount of insurance applicable to such **claims**, or (2) any applicable retention or deductible.

### 2. Optional Extended Reporting Period

If **we** or the **named insured** shall cancel or elect not to renew this policy, **you** shall have the right, upon payment of an additional premium of up to 100% of the full annual premium, to a period of up to one (1) year following the effective date of such cancellation or nonrenewal (herein referred to as the "Optional Extended Reporting Period") in which to give written notice to **us** of **claims** first made against **you** during the Optional Extended Reporting Period for any **wrongful act** occurring prior to the end of the **policy period** and otherwise covered by this policy.

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **policy period**.

The rights contained in this clause shall terminate, however, unless the **named insured** provides written notice of such election together with the additional

Ⓒ All rights reserved.

premium due to **us** within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. **Our** offer of renewal terms, conditions, limits of liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

If the **named insured** exercises its right to purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period shall be deemed void *ab initio*.

**K.  Notice of Circumstance**

If during the **policy period** or the Extended Reporting Period, if applicable, **you** become aware of any facts or circumstances that may reasonably be expected to give rise to a **claim** against **you** for a **wrongful act** that occurs on or after the **retroactive date** and prior to the end of the **policy period**, and provided **you** give written notice to **us** during the **policy period** or the Extended Reporting Period, if applicable, of the circumstances and the reasons for anticipating such a **claim**, with full particulars as to the **wrongful act(s)**, dates, persons and entities involved, then any **claim** that is subsequently made against **you** arising out of such **wrongful act** or the same **wrongful act** or series of continuous, repeated or related **wrongful acts**, shall, for the purposes of this policy, be treated as a **claim** made against **you** and reported to **us** during the **policy period**.

**L.  Organizational Changes**

If during the **policy period**:

1. the **named insured** merges into or consolidates with another entity such that the **named insured** is not the surviving entity; or

2. another entity, person, or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the rights to vote for the election of the **named insured's** directors;

(either of the above events hereinafter referred to as the "Transaction") then coverage shall continue until the later of the termination of the **policy period** or such other date to which **we** may agree, but only with respect to **wrongful acts** which occurred prior to the Transaction and are otherwise covered by this policy. No coverage shall be provided after the Transaction unless the **named insured** notifies **us** of the Transaction in writing within thirty (30) days of the Transaction.

**M.  Section Titles**

The titling of sections and paragraphs within this policy is for convenience only and shall not be interpreted as a term or condition of this policy.

**N.  Declarations**

By accepting this policy, **you** agree that the statements in the application and Declarations are true, and they are **your** agreements and representations. This policy is issued in reliance upon the truth of those representations.

**O.   Bankruptcy**

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this policy.

**P.   Alternative Dispute Resolution**

Any controversy arising out of or relating to this policy or its breach shall first be submitted to alternative dispute resolution ("ADR") in accordance with the rules of the American Arbitration Association or the Defense Research Institute.  The ADR may be held in New York, New York unless otherwise agreed to by both parties.  Each party shall jointly and equally bear with the other party the expense of the alternative dispute resolution.  Either **we** or **you** may elect the type of ADR, either non-binding mediation or binding arbitration.  However, **you** shall have the right to reject **our** choice of the type of ADR process at any time prior to its commencement, in which case **your** choice of the type of ADR process shall control.

**Q.   Action Against Us**

No one may bring an action against **us** unless there has been full compliance with all the terms of this policy and the amount of the **insured's** obligation to pay has been finally determined either by judgment against the **insured** after actual trial, or by written agreement of the **insured**, the claimant and **us**.

Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  **We** may not be impleaded by the **insured** or its legal representative in any legal action brought against the **insured** by any person or organization.

Ⓡ All rights reserved.

**ENDORSEMENT# *1***

This endorsement, effective *12:01 am*        *November 18, 2010*        forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ITEM 6 "PROFESSIONAL SERVICES" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood that Item 6 of the
Declarations, " **Professional services**," is amended to read as follows:

Item 6.        **Professional services** means:

Including but not limited to:

1.    Title Insurance and Escrow Related Services
2.    Insurance Company and Brokerage Services
3.    Lender and Real Estate Related Services
4.    Information Services
5.    Technology Products and Professional Services

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 1*

**ENDORSEMENT#** *2*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured" and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.    The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

    B.1.    Cancellation for Policies in Effect Ninety (90) Days or Less

        If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

        (a)    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

        (b)    Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

            1.    A material misstatement or misrepresentation; or
            2.    A failure to comply with underwriting requirements established by the Insurer.

    B.2.    Cancellation for Policies in Effect for More Than Ninety (90) Days

        If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

        (a)    Nonpayment of premium;

        (b)    The policy was obtained by a material misstatement;

        (c)    There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

        (d)    There has been a substantial change in the risk covered by the policy; or

        (e)    The cancellation is for all insureds under such policies for a given class of insureds.

        If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

⊕ All rights reserved.
*END 002*

**ENDORSEMENT#** *2*    (continued)

1.  Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2.  Forty-five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B2 (b), (c), (d) or (e) above.

B.3.  If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect.

The following is added:

C.1.  Non-Renewal

(a)  If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

(b)  Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.  Renewal

The Insurer shall give the named insured at least forty-five (45) days advance written notice of the renewal premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

All rights reserved.
*END 002*

ENDORSEMENT# *3*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUNITIVE DAMAGES COVERAGE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
II. **DEFINITIONS**, paragraph D., " **damages**," is deleted in its entirety and replaced  with the
following:

> **D.**  **Damages** means any amount that  **you** shall be legally required to pay
> because of judgments, arbitration awards or the like rendered against   **you**, or
> for settlements  negotiated by   **us** with  **your** written consent; provided  that
> **damages** shall  not include any amounts for which   **you** are not financially
> liable or  for which there is no legal recourse against   **you**, the costs and
> expenses of complying with  any injunctive or  other form of equitable  relief,
> or matters that  may be deemed  uninsurable under  the  law.    **Damages** shall
> include:
>
> 1.  punitive, exemplary and multiple damages where insurable  by
>     applicable law; the enforceability of such  coverage for punitive
>     damages shall be governed by such applicable law  which most favors
>     coverage for punitive damages;
>
> 2.  pre-judgment interest; and
>
> 3.  post judgment interest that accrues after entry of judgment and
>     before **we** have paid, offered to pay or deposited  in court that part of
>     judgment within the applicable Limit of Liability.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 3*

**ENDORSEMENT# 4**

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INSURANCE COMPANY PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that solely
with respect to coverage afforded by this endorsement the policy is amended as follows:

1.  For purposes of this endorsement, "Insurance Company Professional Services" as
    designated in Item 6. means those services rendered or required to be rendered by
    **you** for or on behalf of a policyholder or a customer or client of **yours** pursuant to
    a contract with such policyholder or customer or client, for a fee, commission or
    other remuneration or financial consideration which inures to **your** benefit.

2.  " **Securities broker/dealer** " means a person or entity acting as a "broker" or "dealer"
    in securities, as such terms are defined in Sections 3(a)(4) and 3(a)(5) of the
    Securities Exchange Act of 1934, as amended.

3.  With respect to coverage under this policy for Insurance Company Professional
    Services:

    (a)  Exclusion III.A. is hereby deleted and replaced with the following:

         (a) arising out of a dishonest, fraudulent, criminal or malicious act, error
         or omission, or any intentional or knowing violation of the law, or
         gaining of any profit or advantage to which **you** are not legally
         entitled; however, **we** will defend **suits** alleging any of the foregoing
         conduct until there is a judgment, final adjudication, adverse
         admission or finding of fact against **you** as to such conduct at which
         time **you** shall reimburse **us** for **claim expenses**; **we** shall not cover
         any **claim** if **you** plead *nolo contendere* or no contest to a criminal
         proceeding against **you** arising out of the same, or essentially the
         same, material facts as such **claim**; and this exclusion shall not apply
         to any **claim** alleging bad faith in the rendering or failing to render
         insurance **professional services**;

    **(b)**  **We** shall not cover **claims**:

         (1)  brought by or on behalf of any of **you**, or a receiver, liquidator,
              rehabilitator, trustee in bankruptcy or successor to the rights of any
              of **you** under this policy, against **you** under this policy; provided,
              however, this exclusion shall not apply to a **claim** by any of **you** in
              **your** capacity as a policyholder, customer or client of any other
              **insured** against such other **insured**;

*END 4*

**ENDORSEMENT#** *4*   **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

> (2)   for premiums, return premiums,  tax monies, fees  or commissions, or
> that portion of  any settlement or  award in an  amount equal to  such
> fees,  commissions  or  other  compensation,  or  arising  out  of  any
> commingling of funds;
>
> (3)   arising from, based upon, attributable  to, or in any  way involving the
> failure  to  establish  or  the  inadequacy  or  inaccuracy  of  insurance
> company reserves;
>
> (4)   by any reinsurer of **yours**;
>
> (5)   arising from, based upon, attributable  to, or in any  way involving the
> insolvency,  conservatorship,  receivership,  bankruptcy,  liquidation  or
> inability of the Insured to pay claims;
>
> (6)   arising from, based upon, attributable to,  or in any way involving  any
> express warranties or  guaranties, estimates of  probable construction
> costs,  or  costs  exceeding  estimates  made  in  connection  with
> **professional services**;
>
> (7)   arising from, based upon, attributable to,  or in any way involving  any
> **claim** by, or on behalf of, or for the benefit  of, or with the solicitation
> or assistance of:
>
>> (i)    any  pool,  association  or  syndicate  (including  any  officer,
>> director  or  employee  thereof)  in  which  any  of  **you**  are  a
>> participant; or
>> (ii)   any  participant  (including  any officer, director  or employee
>> thereof) in any pool,  association or syndicate  in which any  of
>> **you** are a participant;
>
> (8)   for any obligation for which **you**,  or any carrier as its  insurer, may be
> held  liable  under  any   workers'  compensation,  unemployment
> compensation, disability benefits law, or under any similar law;

*END 4*

ENDORSEMENT# *4*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      (9)    arising from, based upon, attributable to, or in any way involving the
               ownership, maintenance, operation, use, loading or unloading of any
               automobile, aircraft or watercraft, by the Insured or by any other
               person for whose actions the Insured is legally responsible;

      (10)   arising from, based upon, attributable to, or in any way involving the
               underwriting of any insurance policy, or any other insurance product;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 4**

**ENDORSEMENT#** *5*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
    Claim Reporting under this policy, such notice may also be given in writing pursuant
    to the policy's other terms and conditions to the Insurer by email at the following
    email address:

    c-claim@chartisinsurance.com

    Your email must reference the policy number for this policy. The date of the
    Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the
    Insurer by mailing such notice to: Chartis, Financial Lines Claims, P.O. Box 25947,
    Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
          specifically ascribed in this policy as the insurance company or underwriter for
          this policy.

    (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
          loss" or other reference in the policy designated for reporting of claims, loss
          or occurrences or situations that may give rise or result in loss under this
          policy.

    (c)   "Policy" means the policy, bond or other insurance product to which this
          endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
    Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

⊕ All rights reserved.
**END 005**

ENDORSEMENT# *6*

This endorsement, effective  *12:01 am      November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CANCELLATION AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
VI. **OTHER PROVISIONS EFFECTING COVERAGE**, paragraph I. **Cancellation**, is deleted in
its entirety and replaced with the following:

     **I.**     **Cancellation**

     This policy may be cancelled by the **named insured** by surrender of this
policy to **us** or by giving written notice to **us** stating when thereafter such
cancellation shall be effective. This policy may also be canceled by **us** by
mailing to the **named insured** by registered, certified, or other first class mail
sent to the **named insured's** address set forth in Item 1. of the Declarations,
or by delivering to the **named insured**, written notice, stating when, not less
than ninety (90) days thereafter, or ten (10) days thereafter in the event of
nonpayment of premium, the cancellation shall be effective. The mailing of
such notice, as aforesaid, shall be sufficient proof of notice. This policy shall
be deemed canceled at the date and hour specified in such notice. If this
policy shall be canceled by the **named insured**, **we** shall retain the pro rata
proportion of the premium herein and shall return the remaining pro rata
proportion of the premium to the **named insured**. If this policy shall be
canceled by **us**, **we** shall retain the pro rata proportion of the premium
herein. Payment or tender of the unearned premium by **us** shall not be a
condition precedent to the effectiveness of cancellation, but such payment
shall be made as soon as practicable. If the period of limitation relating to
the giving of notice for cancellation by **us**, as set forth above, is also set
forth in any controlling law, the period set forth above shall be deemed to be
amended so as to be equal to the minimum period of limitation set forth in
such controlling law if it is a longer period.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 6*

ENDORSEMENT# 7

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    In the event that there is an inconsistency between any: (a) state amendatory
attached to this policy, or any other wording attached to this policy to comply with
applicable law; and (b) any other term, condition or limitation of this policy; then, to
the extent permitted by law, subject to the limitations below, the Insurer will
resolve the inconsistency by applying the terms, conditions or limitations that are
more favorable to the policyholder.

2.    This endorsement shall not apply to the extent that: (a) any state amendatory or
other wording expressly limits coverage in order to comply with applicable law, or
(b) any such amendatory or other compliance wording amends language applicable
to premium. In such events, the state amendatory or other compliance wording will
govern over any other term, condition or limitation of the policy.

3.    "Policyholder" means the first Named Entity, Named Organization, Named
Corporation, Named Sponsor, Named Insured or other policyholder designated in
Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 7*

ENDORSEMENT# *8*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FAILURE TO INSURE EXCLUSION AMENDATORY ENDORSEMENT

In consideration of the premium charged it is hereby understood and agreed that in Clause
III. EXCLUSIONS - CLAIMS NOT COVERED, paragraph T. is deleted in its entirety and
replaced with the following:

> T.    arising out of **your** advising, requiring, obtaining or failing to advise, require
> or obtain any bond, suretyship or other form of insurance; provided,
> however, this exclusion shall not apply to any **claim** arising out of **your**
> performance of **professional services**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 8*

## ENDORSEMENT# *9*

This endorsement, effective *12:01 am      November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## MUTUAL CHOICE OF COUNSEL ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

A.  With regard to any **claim** for which an **insured** seeks coverage and elects not to use a panel counsel firm provided by **us**, **we** and the **insured** shall consult and jointly agree upon such defense counsel who will defend the **insured** in such matter (hereafter referred to as "**chosen counsel**") at an agreed hourly rate of $350 per partner, $190 per associate and $90 per paralegal; provided, however, that any and all **claim expenses** of **chosen counsel** shall be paid and satisfied on an ongoing basis by the **insured** until all applicable retention amounts have been satisfied. The foregoing permission and **our** obligation to pay **claim expenses** to such counsel pursuant to this endorsement are expressly conditioned on the following:

1.  **we** shall be reasonably satisfied that such counsel is able and competent to handle any **claim** for which such counsel is engaged to provide legal services;

2.  **we** shall pay such counsel at an hourly rate which is equivalent to the rate that **we** customarily pay for counsel in the same, or in a comparable, geographic location; and

3.  such counsel maintains an office in the judicial jurisdiction where the litigation is filed.

If **we** are unable to agree with the **insured** upon selection of defense counsel, **we** shall select defense counsel.

B.  With regard to any **claim** for which the **insured** seeks coverage, such **insured** agrees that as a condition precedent to coverage for **claim expenses** incurred through **chosen counsel** in excess of the applicable retention amount hereunder, the **insured** or **chosen counsel** must keep **us** apprised of the status of the litigation, in accordance with **our** AIG Companies Litigation Management Guidelines (the "**guidelines**"). The **insured** and **chosen counsel** also understand, agree and acknowledge, that for any services rendered by and expenses through **chosen counsel** to constitute **claim expenses**, **chosen counsel** must comply with all other applicable provisions of **our** current **guidelines**. The responsibility for ensuring that the **guidelines** are adhered to rests with the **insured** rather than **us** or **chosen counsel**. **Our guidelines** are attached to the policy as an addendum hereto and it forms a part of this policy. The **insured** understands and agrees with **us** that the **guidelines** contain reasonable and necessary reporting and billing procedures to be followed by **chosen counsel**, including, but not limited to:

1.  development of a litigation plan and litigation budget;

2.  acceptable rates for services;

*END 9*

**ENDORSEMENT#** *9*    **(Continued)**

This endorsement, effective    *12:01 am*        *November 18, 2010*        forms a part of
policy number    *01-318-41-31*
issued to      *FIDELITY NATIONAL FINANCIAL INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

3.      pre-approval by **us** before designated legal services are provided; and

4.      **our** required format for submitting fees and charges to  **us**.

The **guidelines** also require that **chosen counsel** work closely and communicate regularly with the assigned claims professional in coordinating defense efforts and that **chosen counsel** apprise **us** on a regular and timely basis as to significant case developments.

C.    **Claim expenses** incurred through any law firm or other service provider, other than a panel counsel firm, **chosen counsel** or a firm that **we** selected or consented to, shall not be recoverable under this policy as  **claim expenses** or otherwise.

D.    The **insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any  **claim expense** without **our** prior written consent, except as expressly provided in Clause I. **INSURING AGREEMENTS**, subparagraph 3. of paragraph B., " **DEFENSE**."  Only those settlements, stipulated judgments and  **claim expenses** which **we** have consented to shall be recoverable as  **loss** under the terms of this policy.

All other terms, conditions and exclusions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
***END 9***

*ENDORSEMENT# 10*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLAIM REPORTING AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph A., " **What You Must Do in
the Event of a Claim**" is deleted in its entirety and replaced with the following:

**A.**     **What You Must Do in the Event of a Claim**

1.     A **claim** shall be considered as being "first made" at such time that
the **claim** is known by **your** General Counsel, Risk Manager or Chief
Financial Officer.

2.     Before coverage will apply for any **claim** first made against **you** during
the **policy period** or the Extended Reporting Period (if applicable) for
which total **damages** and **claim expenses** incurred in connection with
any such **claim** exceed, or are reasonably estimated by any of the
individuals referenced in subparagraph (1) above, to exceed
$2,500,000, **you** shall, as a condition precedent to **our** obligations
under this policy, give **us** written notice as soon as practicable of any
such **claim** with full particulars.   **You** must also:

a.     immediately record the specifics of any such **claim** and the
date **you** received it; and

b.     send copies of all demands, suit papers, or other legal
documents **you** receive, as soon as possible to **us** in c/o AIG
Domestic Claims, Inc, Financial Lines, at **our** address indicated
in the Declarations.

3.     Before coverage will apply for any **claim** first made against **you** during
the **policy period** or the Extended Reporting Period (if applicable) for
which total **damages** and **claim expenses** incurred in connection with
any such **claim** are reasonably estimated by any of the individuals
referenced in subparagraph (1) above to be in excess of $500,000,
but not more than $2,500,000, **you** shall provide written notice to **us**
of such **claim(s)** on a quarterly basis in the form of a bordereau.   **You**
shall provide us with such bordereau within thirty (30) days after the
end of each calendar quarter and such bordereau shall contain
information including, but not limited to, the full particulars of each
**claim**, the date on which notice of the **claim** was first received, the
date the **wrongful act** occurred, a description of the allegations, the
identity of the claimants and involved **insureds**, the damages incurred,
the defense incurred and the status of any litigation.   **You** further
agree that **we**, in **our** sole discretion, may elect to conduct audits of
any and all such **claims** on a quarterly basis.

*END 10*

**ENDORSEMENT#** *10*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.    Notice of the **claims** described in subparagraphs (2) and (3) above can be made either:

    a.    anytime during the **policy period**, or during the Extended Reporting Period (if applicable); or

    b.    within sixty (60) days after the end of the **policy period**.

Any **claim** reported pursuant to subparagraph 5(b) above shall be subject to and shall not increase the Limits of Liability of this policy.

5.    Notice is not required within the time periods set forth in subparagraph (4) above and coverage shall not be available under this policy for any other **claims** for which the total **damages** and **claim expenses** are not reasonably estimated by any of the individuals referenced in subparagraph (1) above to exceed $500,000.

Notwithstanding the foregoing, if **we** determine that **your** failure to comply with any of the notice requirements described in subparagraphs (2), (3) or (4) above in connection with any **claim** is due solely to the fact that **damages** and **claim expenses** are not reasonably estimated by any of those individuals to exceed $500,000, and **you** subsequently provide written notice to **us**, coverage may be available under this policy subject to all other terms, conditions and exclusions to this policy provided that:

    a.    there is at the time such **claim** is noticed to **us** an effective Miscellaneous Professional Liability Policy issued by **us** to the **named insured** providing the same or similar coverage; and

    b.    there has not been, in **our** opinion acting in good faith, any prejudice to **us** in connection with such **claim** by reason of **your** late notification.

**We** may in our sole discretion, however, deem any such **claim** as being properly submitted under either this policy or any policy in place that satisfies the condition in subparagraph 5(a) above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
***END 10***

ENDORSEMENT# *11*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph H. is deleted in its entirety and
replaced with the following:

> H.    arising out of any misappropriation of trade secret or infringement of patent,
> copyright, trademark, trade dress or any other intellectual property right;
> provided, however, this exclusion shall not apply to any **claim** arising out of
> infringement of copyright or trademark of software and software technology
> in connection with the rendering or failure to render **technology professional
> services**;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 11**

ENDORSEMENT# *12*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TECHNOLOGY SERVICES AND PRODUCTS DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that:

1.    Clause II. **DEFINITIONS** is amended to include the following terms at the end of that
Clause:

> **TP-A.**   **"Technology product"** means any computer hardware, firmware,
> software, or any related electronic product, equipment or device,
> that is created, manufactured, developed, distributed, licensed,
> leased or sold (i) by (i) by **you**, or (ii) for **you** by others acting under
> **your** trade name to others which are specifically designed or
> intended for use in connection with any **technology service**.

> **TP-B**   **"Technology Professional Services"** means:
>
> (1)    the rendering or failure to render **your technology services**;
> or
>
> (2)    the creation, manufacture, development, distribution,
> license, lease or sale of **your technology products**.

> **TP-C.**   **"Technology service"** means any computer or electronic information
> technology service performed (i) by **you**, or (ii) for **you** by others
> acting under **your** trade name, for others; including, but not limited
> to:
>
> (1)    systems analysis,
> (2)    systems programming,
> (3)    data processing,
> (4)    system integration,
> (5)    outsourcing development and design,
> (6)    management, repair and maintenance of computer products,
> networks and systems,
> (7)    training in the use of any **technology product**, and
> (8)    technology consulting services.

2.    Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the
following paragraph at the end of that Clause:

*END 12*

ENDORSEMENT# *12*    **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


**We** shall not cover **claims**:

TS-A.    arising out of electrical or mechanical failures, including those arising
from any electrical power interruption, surge, brownout or blackout;
provided, however, , this exclusion shall not apply to electrical or
mechanical failures, other than satellite failures, where such failure was
the result of **your wrongful act** in connection with **your** rendering or
failure to render **technology professional services.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 12**

ENDORSEMENT# *13*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXTENDED REPORTING PERIOD AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
VI. OTHER PROVISIONS AFFECTING COVERAGE, paragraph J., "Extended Reporting
Provisions," is deleted in its entirety and replaced with the following:

J.   Extended Reporting Provisions

   1.   **Automatic Extended Reporting Period**

      If **we** or the **named insured** shall cancel or elect not to renew this policy, **you**
      shall have the right following the effective date of such cancellation or
      nonrenewal to a period of sixty (60) days (herein referred to as the "Automatic
      Extended Reporting Period") in which to give written notice to **us** of **claims** first
      made against **you** during the Automatic Extended Reporting Period for any
      **wrongful act** occurring prior to the end of the **policy period** and otherwise
      covered by this policy.

      The Automatic Extended Reporting Period shall not apply to **claims** that are
      covered under any subsequent insurance **you** purchase or which is purchased for
      **your** benefit, or that would be covered by such subsequent insurance but for (1)
      the exhaustion of the amount of insurance applicable to such claims, or (2) any
      applicable retention or deductible.

   2.   **Optional Extended Reporting Period**

      If **we** or the **named insured** shall cancel or elect not to renew this policy, **you**
      shall have the right, upon payment of an additional premium amount of

      (i)   one-hundred percent (100%) of the full annual premium, for a period of
         one (1) year,

      (ii)   one hundred and fifty percent (150%) of the full annual premium, for a
         period of two (2) years, or

      (iii)   one hundred and seventy-five percent (175%) of the full annual premium,
         for a period of three (3) years, following the effective date of such
         cancellation or nonrenewal (herein referred to as the "Optional Extended
         Reporting Period") in which to give written notice to **us** of **claims** first
         made against **you** during the Optional Extended Reporting Period for any
         **wrongful act** occurring prior to the end of the **policy period** and otherwise
         covered by this policy.

**END 13**

ENDORSEMENT# *13*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **policy period**.

The rights contained in this clause shall terminate, however, unless the **named insured** provides written notice of such election together with the additional premium due to **us** within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium. **Our** offer of renewal terms, conditions, limits of liability and/or premiums different from those of the expiring policy shall not constitute a refusal to renew.

The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

If the **named insured** exercises its right to purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period shall be deemed void ab initio.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 13*

ENDORSEMENT# *14*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### REAL ESTATE RELATED SERVICES ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

*1.*    In Clause II. **DEFINITIONS**, paragraph  J. is deleted in  its entirety and replaced with the following:

> **J.**    **Pollutants** means,  but are  not limited  to, any  solid, liquid,  gaseous, biological, radiological  or  thermal irritant  or  contaminant, including smoke, vapor, dust,  fibers, mold, spores,  fungi, germs, soot,  fumes, asbestos, acids, alkalis, chemicals and waste.  "Waste" includes, but is not limited to, materials  to be recycled, reconditioned  or reclaimed and nuclear materials.

2.    Solely with respect to the coverage afforded for real estate related services,  Clause III. **EXCLUSIONS  -  CLAIMS  NOT  COVERED** is amended  to include  the  following paragraph at the end of that Clause:

**We** shall not cover **claims**:

RE-A.  arising out  of or  connected with  the performance  of  or failure  to perform services as a mortgage banker, mortgage broker,  property developer, builder or construction manager;

RE-B.  arising out of  or  connected  with the  formulation,  promotion, syndication, offer, sale  or  management  of any  limited  partnership,  general  partnership, real estate investment trust or other security, including any interest therein;

RE-C.  arising out of any **insured** advising  others by making promises, warranties or guarantees as to the future value of any property;

RE-D.  arising out of or connected with any transaction in which  **you** or any  affiliate of **yours** has a  direct or  indirect  beneficial ownership  interest as  a  buyer, owner or seller of  real property; provided,  however, this exclusion does  not apply to:

> (i)     real property to which  **you** have taken legal  title solely for immediate resale and have  entered into a  written contract to sell  not later than  one hundred and  eighty (90) days after taking legal title;
>
> (ii)    real property to which  **you** have taken legal  title on behalf of a client in  order to  facilitate a  "like-in-kind"  exchange pursuant  to 26  U.S.C.S.  §1031  as  part  of  **your professional services**;

### END 14

**ENDORSEMENT# *14*** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

RE-E.  arising out of any actual or alleged commingling of funds or monies;

RE-F.  arising out of any defect in title (1) not disclosed of public record, or (2) of which **you** had actual or constructive knowledge at the date of issuance of insurance of such title;

RE-G.  alleging, arising out of, based upon or in connection with the breach of underwriting authority by **you** in **your** capacity as a title insurance agent;

RE-H.  arising out of the handling or disbursement of funds, including, but not limited to, closing activities or insurance placement; provided, however, this exclusion shall not apply to any **claim** arising out of **your** performance of **professional services**;

RE-I.  arising out of or alleging **your** payment in connection with building constructions without prior receipt of an architect's certificate, where such certificate is required as a condition of payment;

RE-J.  arising out of or alleging having made a payment without prior receipt of appropriate waivers or release of lien from the subcontractors involved, where work or materials have been supplied by subcontractors;

RE-K.  arising out of or alleging making a payment without prior receipt of appropriate waivers or releases of lien from the general contractor;

RE-L.  arising out of any willful or intentional failure on the part of any **insured** to comply with escrow instructions;

RE-M. arising out of the appraisal of property that is wholly or partially owned by **you** or by any company of which **you** are a director, officer, partner or princpal stockholder or in which **you** may have any contemplated future interest; or

RE-N  alleging, arising out of, based upon, connected with or in any way involving the rendering of, or any failure to render, any legal services or advice; provided, however, this exclusion shall not apply to the **professional services** performed by a lawyer in his/her capacity as a title agent.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 14**

**ENDORSEMENT# *15***

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
II. **DEFINITIONS**, paragraph N., " **subsidiary**," is deleted in its entirety and replaced with the
following:

**N.**    **Subsidiary** shall mean each of the following:

1.   Any corporation of which the **named insured** owns on the inception
date of the **policy period** more than fifty percent (50%) of the issued
outstanding voting stock either directly or indirectly through a
**subsidiary.** A corporation ceases being a **subsidiary** under this
subparagraph at such time when the **named insured** ceases to own
more than fifty percent (50%) of the issued and outstanding voting
stock.

2.   Any corporation which becomes a **subsidiary** during the **policy period**;
provided that neither the total assets nor the annual gross revenue of
such corporation exceeds $600,000,000 as of the date of the
acquisition. Notwithstanding the foregoing sentence, in the event
that any such acquired **subsidiary** performs zone determination
services or natural hazard disclosure reports, no coverage will be
available under this policy for any **wrongful act** of such
newly-acquired **subsidiary** arising out of the performance of such
services unless and until **you** have provided **us** with full particulars of
such services and agreed to any additional premium and/or
amendment of the provisions of this policy required by **us** relating to
such services, subject to the review and acceptance by **us** of full and
complete underwriting information. Further, coverage as shall be
afforded for such services is conditioned upon the **named insured**
paying when due any additional premium required by **us** relating to
coverage for such services.

3.   Any corporation which becomes a **subsidiary** during the **policy period**
where such corporation's total assets or annual gross revenue
exceeds $600,000,000; provided, however, such corporation shall be
deemed a **subsidiary** under the policy only upon the condition that
within ninety (90) days of its becoming a **subsidiary, you** shall have
provided **us** with full particulars of the new **subsidiary** and agreed to
any additional premium and/or amendment of the provisions of this
policy required by **us** relating to such new **subsidiary**, subject to the
review and acceptance by **us** of full and complete underwriting
information. Further, coverage as shall be afforded to the new
**subsidiary** is conditioned upon the **named insured** paying when due
any additional premium required by **us** relating to such new
**subsidiary**.

*END 15*

**ENDORSEMENT#** *15*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

Provided, however, this policy does  not cover any  **claim** against  or **loss** of a **subsidiary**, or  any  partner,  director, officer  or  employee  thereof,  in connection with any  **wrongful act** that occurred when the  **named insured**  did not own more than fifty percent (50%) of  the issued and outstanding voting stock of such **subsidiary**, either  directly or indirectly through  one or more of its **subsidiaries**.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 15*

ENDORSEMENT# *16*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "YOU, YOUR OR INSURED" DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause II. **DEFINITIONS**, paragraph R., " **you**, **your** or **insured**," is deleted in its entirety and is replaced with the following:

**You**, **your** or **insured** means:

1.   the **named insured**;
2.   any **subsidiary** of the **named insured**, but only with respect to **wrongful acts** which occur while it is a **subsidiary** and is otherwise covered by this policy;
3.   any past, present or future officer, director, trustee or employee of the **named insured** or **subsidiary** thereof (and in the event the **named insured** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof), but only while acting within the scope of their duties as such;
4.   any entity whom the **named insured** or a **subsidiary** is required by contract to add as an **insured** under this policy, but only for the **wrongful acts** of the **named insured** or that **subsidiary**;
5.   Fidelity National Information Solutions f/k/a Vista Information Solutions;
6.   any independent contractor, but only for **wrongful acts**, committed or allegedly committed, in the performance of **professional services** for, on behalf of, at the direction of or at the request of the **named insured** or a **subsidiary**;
7.   Power Link Settlement Services L.P., a joint venture with American Home Mortgage Servicing Inc.; and
8.   any other joint venture or partnership in which the **named insured** has an interest on or before the **policy period**, but solely with respect to the **named insured's** ownership interest in such joint venture.

Notwithstanding anything to the contrary, the **insured** under subparagraph 5 of this endorsement shall be subject to the **retroactive date** set forth in Item 7 of the Declarations to this policy.

Notwithstanding anything to the contrary, the limitation on coverage in subparagraph 8, shall not apply to the joint venture named in subparagraphs 7 of this endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 16**

ENDORSEMENT# *17*

This endorsement, effective *12:01 am      November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## COOPERATION CLAUSE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
IV. **LIMITS OF LIABILITY**, paragraph D. is deleted in its entirety and replaced with the
following:

> D.     **Our** duty to defend ends if **you** refuse to consent to a settlement **we**
> recommend and the claimant will accept.   **You** must then defend the **claim** at
> your own expense. As a consequence of **your** refusal, **our** liability shall not
> exceed the amount for which **we** could have settled such **claim** had **you**
> consented, plus **claim expenses** incurred prior to the date of such refusal,
> plus fifty percent (50%) of **claim expenses** incurred with **our** consent after
> the date of such refusal.   This clause shall not apply to any settlement
> where the total incurred for **damages** and **claim expenses** does not exceed
> the retention.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 17*

ENDORSEMENT# *18*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### WHERE COVERAGE APPLIES AMENDATORY ENDORSEMENT

In consideration of the  premium charged, it  is hereby understood  and agreed that the  VI,
OTHER PROVISIONS AFFECTING COVERAGE,  paragraph C, "Where Coverage  Applies" is
deleted in its entirety and is replaced with the following:

### C.    WHERE COVERAGE APPLIES

**We** cover  **wrongful acts**  that occur,  **claims**  that are  brought and  **losses** suffered
anywhere in the world.

All other terms, conditions and exclusions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 18*

**ENDORSEMENT# *19***

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CRISIS MANAGEMENT FUND COVERAGE ENDORSEMENT
### (with Identity Event Services)

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.     Unless otherwise set forth herein, the terms, conditions and exclusions contained in
this endorsement shall apply only to the coverage afforded under this endorsement.

2.     In Clause I. **INSURING AGREEMENTS**, paragraph A. is deleted in its entirety and
replaced with the following:

**A.     CRISIS MANAGEMENT COVERAGE**

**We** shall pay on behalf of the **named insured** those **crisis management
expenses** and **identity event service expenses** in excess of the applicable
Retention incurred in connection with a **crisis management event** first
occurring during the **policy period**, but solely up to the amount of the **crisis
management fund**. **Our** obligation to pay **crisis management expenses** and
**identity event service expenses** ends upon the exhaustion of the **crisis
management fund**.

3.     In Clause II. **DEFINITIONS**, paragraph F., " **loss**," is amended to include the following
paragraph at the end thereof:

**Claim expenses**, **damages** and **loss** also shall not mean **crisis management
expenses**.

4.     Clause II. **DEFINITIONS** is amended to include the following definitions at the end of
that Clause:

**CM-A.    Crisis management event** means one of the following events:

(1)    **Management crisis**:  The death, incapacity or criminal indictment of
any directors, trustees or officers, including, but not limited to, the
executive director, or any employee on whom the **named insured**
maintains key person life insurance.

(2)    **Bankruptcy**:    The public announcement that the **named insured**
intends to file for bankruptcy protection under the bankruptcy laws or
that third parties are seeking to file for involuntary bankruptcy on
behalf of the **named insured**.

(3)    **Contribution revocation**:  The withdrawal or return of any
non-governmental grant, contribution or bequest in excess of
$500,000.

**END 19**

**ENDORSEMENT# *19*** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

    **(4)** **Regulatory crisis**:  The public announcement of the commencement or threat of commencement of litigation or governmental, regulatory or criminal proceedings against the **named insured**.

    **(5)** **Mass tort**:  The public announcement or accusation that the **named insured**, in the conduct of its business, has caused the **bodily injury** of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

    **(6)** **Failure of security**:  An otherwise covered " **failure of security"** as defined in Endorsement No. 22, entitled "AIG NetAdvantage Complete® Extension Endorsement," of this policy; or

    **(7)** **Privacy Peril**:  An otherwise covered " **privacy peril"** as defined in Endorsement No. 22, entitled "AIG NetAdvantage Complete® Extension Endorsement," of this policy.

    **(8)** **Personal identity event**.

    **(9)** **Other**: Any other event previously consented to by **us** which, in the good faith opinion of the **named insured**, did cause or is reasonably likely to cause a **material effect**, but only if such event is specifically scheduled by written endorsement to this policy.

provided, however, **crisis management event** shall not include any event involving:

    (i)    any **claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time, whether or not such policy affords coverage for such **crisis management event**; or

    (ii)    the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat detoxify or neutralize **pollutants**.

**CM-B.** **Crisis management firm** means any public relations firm, crisis management firm or law firm hired or appointed by **us**, or by **you** with **our** prior written consent, to perform **crisis management services** in connection with a **crisis management event**.

**CM-C.** **Crisis management fund** means $3,000,000.

**END 19**

**ENDORSEMENT#** *19*     **(Continued)**

This endorsement, effective  *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CM-D.** **Crisis management expenses** means the  following amounts incurred within
six (6) months of a **crisis management event**, regardless of whether a **claim**
is ever made against an **insured** arising from such **crisis management event**
and, in the case where a **claim** is  made, regardless of whether the amount
is incurred prior to or subsequent to the making of the  **claim**:

(1) amounts incurred  within 180 days of an **insured's** discovery of a **crisis
management event** for  which an **organization** is legally  liable for  the
reasonable and  necessary  fees  and  expenses  incurred by a  **crisis
management firm** in  the performance of **crisis  management services**
for an **organization** arising from a **crisis management event**;

(2) amounts incurred, within 180 days of an **insured's** discovery of a
**crisis management event** for which an **organization** is legally liable, for
the reasonable and  necessary  printing, advertising, mailing  of
materials, expenses  for  travel  by  directors,  officers,  partners,
**employees** or agents of the  **organization** or the **crisis management
firm**, in connection with the  **crisis management event**; and

(3) amounts incurred by an  **organization,** within 180 days of an **insured's**
discovery of a **crisis management event,** for the reasonable and
necessary printing, advertising, mailing  of materials or other  costs to
provide notice  to consumers of a  **personal identity event** for the
purposes of maintaining goodwill or in compliance with any consumer
notification requirements imposed by law, including but not limited to,
the statute  known as  California SB  1386 (§1798.82,  *et. al.* of the
California Civil Code).

provided, however, **crisis  management  expenses** shall not  include
compensation, fees, benefits, overhead, charges or expenses of any
**insured** or any **employee**.

This definition is subject to the limitations set forth in the Definition of  **loss.**

**CM-E.** **Crisis management  services** means those services performed by a  **crisis
management firm** in advising the **named insured** or any of its **subsidiaries,**
directors, officers, partners or  employees, on minimizing potential  harm to
the **named insured** or **subsidiary** arising  from the **crisis management event**,
including, without limitation, maintaining and restoring public confidence  in
the **named insured** or **subsidiary**.

**END 19**

**ENDORSEMENT#** *19*   **(Continued)**

This endorsement, effective  *12:01 am      November 18, 2010*      forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CM-F.   Identity event service expenses** means reasonable fees and expenses incurred by the **named insured** or **subsidiary**, within one (1) year following **your** discovery of an otherwise covered **personal identity event** that first occurred during the **policy period**, for identity theft education and assistance, credit file monitoring services, or any other service specifically approved by **us** in writing.  Such services shall be provided to any individual whose **personal identification** is the subject of a **personal identity event** and shall be for the primary purpose of mitigating the effects of such **personal identity event.**

**CM-G.   Material Effect** means the publication of unfavorable information regarding the **named insured** which can reasonably be considered to lessen public confidence in the competence, integrity or viability of the **named insured** to conduct business.  Such publication must occur in either:

   (1)   a daily newspaper of general circulation; or

   (2)   a radio or television news report about an **insured**.

**CM-H.   Personal identification** means any information from which an individual may be uniquely and reliably identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords.

**CM-I.   Personal identity event** means any event involving the **named insured** or **subsidiary** that has or could reasonably result in the disclosure and fraudulent use of **personal identification,** that is or was in the care, custody or control of an **insured**.

5.   Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the following paragraph at the beginning of that Clause:

This **EXCLUSIONS** section shall not be applicable to **crisis management expenses** and **identity event services** which are subject to all relevant terms and conditions of this policy, including the limitations set forth in Clause II(CM-A) set forth above in this endorsement and in Clause VII(CM-A), " **CRISIS MANAGEMENT PROVISIONS** ," as set forth in this endorsement below.

6.   Clause IV. **LIMITS OF LIABILITY** is amended to include the following paragraph at the end of that Clause:

**END 19**

ENDORSEMENT# *19*   (Continued)

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

CM-A.   **Our** total liability for all **crisis management expenses** and **identity event service expenses** arising from any and all **crisis management events** occurring during the **policy period**, in the aggregate, shall be the **crisis management fund**. This limit shall be **our** maximum liability under this policy regardless of the number of **crisis management events** reported during the **policy period**. The **crisis management fund** shall be part of, and not in addition to, the Limit of Liability set forth in the Declarations as "aggregate."

7.   Clause VII. **OTHER PROVISIONS AFFECTING COVERAGE** is amended to include the following provision at the end of that Clause:

CM-A.   **CRISIS MANAGEMENT COVERAGE PROVISIONS**

1.   Subject to the **crisis management fund** limits, exclusions and other terms of this endorsement, **we** shall only be liable for those **crisis management expenses** and **identity event service expenses** that are in excess of the Retention amount of $1,000,000. The Retention amount stated in Item 4 of the Declarations shall not apply to **crisis management expenses** or **identity event service expenses**.

2.   **You** shall also bear uninsured at **your** own risk and pay the Coinsurance percentage proportion of **crisis management expenses** and **identity event services expenses** in excess of the Retention amount set forth in paragraph 1. above. The Coinsurance percentage to be applied shall be zero percent (0%). **Our** liability hereunder with respect to **crisis management expenses** and **identity event service expenses** shall only apply to the remaining percentage of such **crisis management expenses** and **identity event service expenses**. **We** shall have no obligation to pay to the extent that **you** do not pay the applicable Coinsurance percentage. In **our** sole and absolute discretion, **we** may advance all or part of the applicable Coinsurance, in which case **you** agree to repay **us** immediately after **we** notify **you** of that payment. Payments of Coinsurance shall not be subject to and do not reduce any limits of liability under this policy.

3.   An actual or anticipated **crisis management event** shall be reported to **us** as soon as practicable, but in no event later than thirty (30) days after the **named insured** first incurs **crisis management expenses** or **identity event services expenses** for which coverage will be requested under this policy.

*END 19*

ENDORSEMENT# *19*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.  There shall be no requirement for the **named insured** to obtain **our**
    prior written approval before incurring any **crisis management
    expenses** or **identity event service expenses**, provided that the **crisis
    management firm** selected by the **named insured** to perform the **crisis
    management services** has been approved by **us**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 19*

ENDORSEMENT# *20*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION K. AND O. AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause III, EXCLUSIONS - CLAIMS NOT COVERED, paragraphs K and O are deleted in their entirety and replaced with the following:

K.    alleging, arising out of or resulting, directly or indirectly, from any liability or obligation under any contract or agreement or out of any breach of contract; however, this exclusion does not apply to any:

(1)    liability or obligation **you** would have in the absence of such contract or agreement; or

(2)    liability or obligation under a contract for **professional services** from a **wrongful act**;

O.    alleging, arising out of or resulting, directly or indirectly, from any guarantee or express warranty; inaccurate, inadequate, or incomplete description of the price of goods, products or services; or any failure of goods, products or services to conform with an advertised quality or performance; or liquidated damages; or any failure to provide goods or products, or perform services within a specified time period, by a deadline or according to specified milestones; or the collection of or seeking the return of fees or royalties or other compensation paid to an **insured**; or **your** cost of providing, correcting or re-performing or completing any **professional services**; or any **insured's** fees, cost or profit guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 20*

ENDORSEMENT# 21

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of policy number *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### LOSS DEFINITION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause II, DEFINITIONS, paragraph F, " **Loss**" is deleted in its entirety and replaced with the following:

> **F.**     **Loss** means the total sum of **damages** and **claim expenses**.
>
> **Loss** shall not mean and this policy shall not cover:
>
> 1.     fines, penalties, or taxes levied against an **insured**;
>
> 2.     non-pecuniary relief;
>
> 3.     matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; or
>
> 4.     the monetary value of any electronic fund transfer or transaction by an **insured** or on **your** behalf, which is lost or diminished during transfer into, out of or between an **insured's** accounts.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 21*

ENDORSEMENT# 22

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**MODIFIED NETADVANTAGE COMPLETE EXTENSION ENDORSEMENT**

In consideration of the premium charged, and in reliance upon the statements in the application(s) attached hereto and made a part of the policy, it is understood and agreed that the terms, conditions, exclusions and other limitations set forth in this Endorsement are solely applicable to coverage afforded by this Endorsement. COVERAGES NAC-A, NAC-B, NAC-C AND NAC-D OF THIS ENDORSEMENT ARE WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS. The policy is amended as follows:

1. Solely with respect to the coverage afforded under this endorsement, Item 3B, Sublimits of Liability, is amended by appending the following to the end of that section:
   G. **Regulatory Action Sublimit of Liability** (in the aggregate for the policy): $5,000,000

2. Clause I. **INSURING AGREEMENTS**, is deleted in its entirety and replaced with the following:

   **NAC-A    Media Liability Coverage**
   **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, including liability **assumed under contract**, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)**. Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**.

   **NAC-B    Internet Professional Services Liability Coverage**
   **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)**. Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**, and be in **your** performance of **Internet professional services.**

   **NAC-C    Security and Privacy Liability Coverage**

   **1.    Security Liability Coverage**
   **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to

**END 22**

**ENDORSEMENT# *22*    (Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

> **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for **your wrongful act(s)**. Such **wrongful act(s)** must occur on or after the **retroactive date** and prior to the end of the **policy period**.

> **2.    Privacy Liability Coverage**
>
> **We** shall pay on **your** behalf those amounts, in excess of the applicable Retention, **you** are legally obligated to pay, as **damages**, resulting from any **claim(s)** first made against **you** and reported to **us** in writing during the **policy period** or Extended Reporting Period (if applicable), for your **wrongful act(s)**. Such **wrongful act(s)** must occur on or after the **Retroactive Date**.

**NAC-D    Cyber-Extortion Coverage**

> **We** shall indemnify **you** for those amounts, in excess of the applicable Retention, **you** pay as **extortion monies** resulting from an **extortion claim** first made against **you** and reported to **us** in writing during the **policy period**.

**NAC-E    Information Asset Coverage**

> **We** shall pay **you** the actual **information asset loss**, in excess of the applicable Retention, which you sustain, resulting directly from **injury** to **information assets** first occurring during the **policy period**. Such **information asset loss** must first occur during the **policy period** and result from a **failure of security** of **your computer system** that also first occurs during the **policy period**.

**NAC-F    Business Interruption Coverage**

> **We** shall pay **you** the actual **business interruption loss**, in excess of the applicable Retention, which **you** sustain during the **period of recovery** (or the **extended interruption period** if applicable), resulting directly from a **material interruption**. The **failure of security** or **system failure** causing the **material interruption** and the **business interruption loss** must each first occur during the **policy period**.

3.    Clause I, INSURING AGREEMENTS, paragraph B, DEFENSE, is hereby amended by appending the following paragraph to the end thereof:

> 4.    We **have the right,** but not the duty, to defend any **regulatory action. We** shall pay for **claim expenses** any **insured** incurs with **our** prior written consent in the defense of a **regulatory action** for covered **wrongful acts.**

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.    Solely with respect to the coverage afforded under this endorsement, Clause II.
    **DEFINITIONS**, paragraphs B. (" **claim**)," F. (" **loss**)," O. ("suit") and Q. (" **wrongful
    act**)," are deleted in their entirety and replaced with the following:

B.    **"Claim"** means (1) a written demand for money, services, non-monetary
    relief or injunctive relief; (2) a **suit**; (3) with respect to coverage NAC-C.2
    only, a **regulatory action;** or (4) with respect to coverage NAC-D only, an
    **extortion claim**.

F.    **"Loss"** means the total sum of any **damages**, **claim expenses**, **extortion
    monies**, **information asset loss** and **business interruption loss**, However, "
    **loss**," " **damages**," " **claim expenses**," " **extortion monies**," " **information asset
    loss**," and " **business interruption loss**" shall not mean, and this policy shall
    not cover:

    1.    except as with respect to **business interruption loss**, production costs
        or **your** loss of profits, or the cost of recall, reproduction, reprinting,
        or correction of **material** by any person or entity;
    2.    except as with respect to **business interruption loss**, compensation,
        benefits, overhead, charges or expenses of **you** or **your** employees;
    3.    any costs or expenses incurred by any person or entity to withdraw or
        recall **your material,** media, medium (including without limitation
        **Internet media**) or professional services from the marketplace, or from
        loss of use arising out of such withdrawal or recall;
    4.    any fines, penalties, or taxes levied against an **insured** (except civil
        fines or penalties imposed by a governmental agency in connection
        with a **regulatory action**; provided such civil fines and penalties shall
        only be covered to the extent insurable under the law pursuant to
        which this policy is construed);
    5.    the monetary value of any electronic fund transfers or transactions by
        **you** or on **your** behalf, which is lost, diminished or damaged during
        transfer from, into or between **your** accounts;
    6.    with respect to **damages** and **claim expenses** only, any amounts for
        which **you** are not financially liable or for which there is no legal
        recourse against **you**;
    7.    the costs and expenses of complying with any injunctive or other
        form of equitable relief; or
    8.    matters that may be deemed uninsurable under the law pursuant to
        which this policy shall be construed.

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**O.**    **"Suit"** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading; provided, however, **suit** shall not include a **regulatory action**. **Suit** shall also include a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** prior written consent.

**Q.**    **"Wrongful act"** means:

1.    with respect to coverage NAC-A and, solely with respect to the performance of **internet media services**, coverage NAC-B, solely in the broadcast, creation, distribution, exhibition, performance, preparation, printing, production, publication, release, display, research or serialization of **material** by **you**, any actual or alleged breach of duty, neglect, act, error, misstatement, misleading statement, or omission that results in:

   a.    any form of defamation or other tort related to disparagement or harm to character, including libel, slander, product disparagement or trade libel; or the infliction of emotional distress, outrage or outrageous conduct directly resulting from the foregoing;

   b.    an infringement of copyright, domain name, title, slogan, trademark, trade name, trade dress, mark or service name, or any form of improper deep-linking or framing; plagiarism, or misappropriation of ideas under implied contract or other misappropriation of property rights, ideas or information; or

   c.    any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

2.    with respect to coverage NAC-B only, any actual or alleged breach of duty, neglect, act, error, misstatement, misleading statement, or omission in the rendering of or failure to render **Internet professional services** to others, including any of the foregoing that results in a **computer attack** to others; and

3.    with respect to:

   a.    coverage NAC-C.1 only, any actual or alleged breach of duty, neglect, act, error or omission that results in:

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

       (1)  a **failure of security** as provided in subparagraphs (1) or (2) of the definition of **failure of security**; or

       (2)  **your** failure to disclose a **failure of security** as defined in subparagraph (1), (2) or (4) of the definition of **failure of security**, in violation of any **security breach notice law;**

  b.  coverage NAC-C.2 only, any actual or alleged breach of duty, neglect, act, error or omission that results in a **privacy peril.**

5.    Solely with respect to the coverage afforded under this endorsement, in Clause II. **DEFINITIONS:**

   A.  The last paragraph in Clause II.N, " **subsidiary**," as set forth in the SUBSIDIARY DEFINITION AMENDATORY ENDORSEMENT to this policy, is deleted in its entirety and replaced with the following:

      Provided, however, that with respect to subparagraph 1 above, this policy does not cover any **loss** of a **subsidiary** or any partner, director, officer or employee thereof for any **extortion claim, failure of security** or **loss** that occurred when the **named insured** did not own more than fifty percent (50%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**. In addition, with respect to subparagraph 2 above, this policy does not cover any **loss** of a **subsidiary** or any partner, director, officer or employee thereof for any **claim, failure of security,** or **loss** that occurred when the **named insured** (i) did not own more than thirty percent (30%) of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**; or (ii) William P. Foley, II was not the Chairman of the Board of such **subsidiary.**

   B.  Paragraph R., **"You, your**, **insured"** is amended to include the following at the end thereof:

     5.  any person provided by an employment contractor or agency under an agreement between the **named insured** or a **subsidiary** and the employment contractor or agency to perform duties related to the conduct of the **named insured's** or such **subsidiary's Internet**-related business; and

     6.  with respect to coverage NAC-A and coverage NAC-B for **Internet media services** only, any agent or independent contractor, including distributors, licensees and sub-licensees, in their provision of **material** on behalf or at the direction of the **named insured** or a **subsidiary**, but

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

only in the event that a **claim** has also been brought against an **insured** as defined in subparagraphs 1. through 3. of this definition, and only while such **claim** is pending against such **insured;**

6. Solely with respect to the coverage afforded under this endorsement, the following terms shall have the following meanings and Clause II. **DEFINITIONS** shall be deemed amended to include such terms:

NAC-A.  **Advertising** means material on the **Internet** in any publicity or promotion, including branding, co-branding, sponsorships or endorsements, on **your** own behalf or for others.

NAC-B.  **Assumed under contract** means liability assumed by **you** in the form of hold harmless or indemnity agreements executed with any party, but only for **your material** under coverage NAC-A, or **material** published or displayed by **you** in the rendering of **Internet media services** under coverage NAC-B.

NAC-C.  **Business** means **your** operations that are dependent upon or make use of **your computer system.**

NAC-D.  **Business interruption loss** means the sum of:

    1.  **income loss**;

    2.  **extra expense**;

    3.  **dependent business interruption loss**;  and

    4.  **extended business interruption loss**, but only in the event the amount of **extra expense** and **income loss** during the **period of recovery** together exceed the applicable Retention.

Provided, however, **business interruption loss** shall not mean, and there shall be no coverage under coverage NAC-F for:

    1.  loss arising out of any liability to third-parties for whatever reason;

    2.  legal costs or legal expenses of any type;

    3.  costs or expenses **you** incur to update, upgrade, enhance, or replace **your computer system** to a level beyond that which existed prior to sustaining **loss**;

    4.  loss incurred as a result of unfavorable business conditions; or

    5.  costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*   forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

 

      **Business interruption loss** shall be calculated based on the actual **business interruption loss you** sustain per hour.

NAC.E.  **Class action claim** means any **claim** arising out of a **wrongful act** which resulted in a **privacy peril**:

    1. brought on behalf of a class or putative class of plaintiffs (whether or not certified as such);

    2. otherwise brought on a representative basis; or

    3. alleging or arising from the same **wrongful act** or a series of continuous, repeated or related **wrongful acts** as any **claim** described in subparagraph 1 or 2 of this definition.

NAC-F.  **Computer attack** means **unauthorized access**, **unauthorized use**, transmission of a **malicious code,** or a **denial of service attack** that:

    1. alters, copies, misappropriates, corrupts, destroys, disrupts, deletes, damages, or prevents, restricts, or hinders access to, a **computer system**;

    2. results in the disclosure of private or confidential information; or

    3. results in **identity theft**;

whether any of the foregoing is intentional or unintentional, malicious or accidental, fraudulent or innocent, specifically targeted at **you** or generally distributed, and regardless of whether the perpetrator is motivated for profit.

For purposes of this definition, the terms referenced above are defined as follows:

    1. **Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

    2. **Unauthorized use** means the use of a **computer system** by an unauthorized person or persons or an authorized person or persons in an unauthorized manner.

    3. **Malicious code** means an unauthorized corrupting or harmful piece of code. **Malicious code** includes, but is not limited to, computer viruses, "Trojan horses," "worms," and "time or logic bombs."

 

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective  *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

4. **Denial of service attack** means an attack launched by a person(s) that sends an excessive volume of electronic data to a **computer system** in order to deplete such **computer system's** capacity, and prevents those who are authorized to do so from gaining access to such **computer system** in a manner in which they are legally entitled. Provided, however a depletion in **your computer system's** capacity shall not be considered a **denial of service attack** if caused by a mistake in determining capacity needs.

5. **Identity theft** means:

   a. with respect to all coverages except NAC-C.2 of Clause I of this endorsement, the misappropriation of personal identity information of **your** customers, members, or employees including without limitation, social security numbers, account numbers, passwords, credit card numbers, addresses, or phone numbers, and that has resulted in, or could reasonably result in the wrongful or fraudulent use of such information; and

   b. with respect to coverage NAC-C.2, the misappropriation of **private information** that has resulted in, or could result in the wrongful or fraudulent use of such information, including without limitation, fraudulently emulating the identity of an individual or corporation.

NAC-G. **Computer system** means computer hardware, software, firmware, and components thereof, including electronic data stored thereon, which are linked together through a network of two or more computers, including such networks accessible through the **Internet**, intranets, extranets, or virtual private networks.

NAC-H. **Confidential corporate information** means any **trade secret**, data, design, interpretation, forecast, formula, method, practice, process, record, report or other item of information of a non- **insured** third party, and which is (i) in **your** care, custody or control; or (ii) not available to the general public.

NAC-I. **Cyberterrorism** means the premeditated use of disruptive activities against any computer system or network, or the explicit threat to use

*END 22*

ENDORSEMENT# *22*  (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

such activities, with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives.

NAC-J.    **Dependent business** means an entity that **you** do not own, operate or control, but that **you** depend on to conduct **your business**.

NAC-K.    **Dependent business interruption loss** means **your income loss** incurred as a direct result of a **material interruption** caused directly by a **failure of security** of a **dependent business**, but only if such **failure of security** would have been covered under this policy if such **dependent business** had been the **named insured**, applying the same terms and conditions herein.

NAC-L.    **Extended business interruption loss** means **your income loss** during the **extended interruption period**.

NAC-M.    **Extended interruption period** means the period of time that:

(1) begins on the date and time that the **period of recovery** ends; and

(2) ends on the date and time **you** restore, or would have restored if **you** had exercised due diligence and dispatch, the net profit (or loss) before income taxes that would have been earned by **you** directly through **your business** had there not been a **material interruption**.

Provided, however, any **extended interruption period** shall end no later than sixty (60) consecutive days after the date and time the **period of recovery** ends.

NAC-N.    **Extra expense** means the expenses **you** incur that are both reasonable and necessary during the **period of recovery**:

1.    to reduce **your income loss**, provided that such expenses:

a.    are over and above the total reasonable and necessary expenses that **you** would have incurred had no **material interruption** occurred; and

b.    do not exceed the amount by which the **income loss** covered under this policy is thereby reduced;

2.    to minimize or avoid the **material interruption** and continue **your business**, which would not have been incurred had no **material interruption** occurred;  provided, however, that such expenses shall not include **forensic expenses**; or

*END 22*

ENDORSEMENT# *22*    (Continued)

This endorsement, effective *12:01 am     November 18, 2010*    forms a part of policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

    3.     as **forensic expenses**, which would not have been incurred had no **material interruption** occurred.

    Provided, however, that with respect to any **material interruption** caused by a **failure of security** of **your dependent business**, **extra expense** shall be limited to those expenses described in above subparagraph 1. of this paragraph.

NAC-O.    **Extortion claim** means any **claim** in the form of a threat or connected series of threats to commit an intentional **computer attack** against **you** for the purpose of demanding **extortion monies** from **you**.

NAC-P.    **Extortion monies** means any monies paid by **you** with **our** prior written consent to a person(s) whom **we** reasonably believe to be responsible for an **extortion claim**, solely where such payment is made to terminate or end such **extortion claim**; provided, however, that such monies shall not exceed the amount **we** reasonably believe to be the **loss** that would have been covered under this policy had the **extortion monies** not been paid. This definition is subject to the limitations set forth in the Definition of **loss**.

NAC-Q.    **Failure(s) of security** means:

    1.    the actual failure and inability of the **security** of **your computer system** to mitigate loss from or prevent a **computer attack**, including without limitation a **computer attack** that results in the acquisition by an unauthorized person of **personally identifiable information** owned or licensed by **you**;

    2.    with respect to coverage NAC-C.1 only, physical theft of hardware or firmware controlled by **you** (or components thereof) on which electronic data is stored, by a person other than an **insured**, from a premises occupied and controlled by **you**;

    3.    with respect to **dependent business interruption** only, the actual failure and inability of the **security** of **your dependent business'** **computer system** to prevent a **computer attack**;

**END 22**

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective   *12:01 am*      *November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

    4.    with respect to **information holders** only, the actual failure and inability of the **security** of an **information holder's computer system** to prevent a **computer attack** that results in the acquisition by an unauthorized person of **personally identifiable information** owned or licensed by **you.**

    **Failure(s) of security** shall also include such actual failure and inability above, resulting from the theft of a password or access code by non-electronic means in direct violation of **your** specific written **security** policies or procedures.

NAC-R.    **Forensic expenses** means those additional expenses **you** incur to conduct an investigation of **your computer system** to determine the source or cause of the **failure of security** that caused the **material interruption.**

NAC-S.    **Income loss** means the:

    1.    net profit (or loss) before income taxes that is prevented from being earned by **you** through **your business** directly because of a **material interruption**; and

    2.    normal operating expenses incurred by **you** (including payroll), but only to the extent that such operating expenses must necessarily continue during the **period of recovery** (or **extended interruption period**, if applicable), and only to the extent that such expenses would have been incurred by **you** had no **material interruption** occurred.

    **Income loss** shall be calculated on an hourly basis based on **your** actual net profit (or loss) and actual and normal operating expenses, as described above. For purposes of this policy, "net profit (or loss)" shall be calculated in accordance with paragraph VII.U as endorsed herein.

    However, **income loss** shall be reduced to the extent **you** are able to, or should have been able to with the exercise of due diligence and dispatch, in whole or in part, end, reduce or limit the **material interruption** of **your computer system**, or conduct **your business** by other means.

NAC-T.    **Information assets** means the:

    1.    software or electronic data, including without limitation, customer lists and information, financial, credit card or competitive

*END 22*

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective  *12:01 am*      *November 18, 2010*      forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

information, and confidential or private information, stored electronically on **your computer system**, which is subject to regular back-up procedures; or

2. capacity of **your computer system**, including without limitation, memory, bandwidth, or processor time, use of communication facilities and any other computer-connected equipment.

NAC-U. **Information asset loss** means:

1. with respect to **information assets** described in subparagraph 1 of the definition of **information assets** that are altered, corrupted, destroyed, disrupted, deleted or damaged, the actual and necessary costs **you** incur to **restore your information assets**; provided, however:

    a. if **you** cannot **restore** such **information assets**, but can **recollect** such **information assets**, then **information asset loss** shall mean only the actual cost **you** incur to **recollect** such **information assets**; and

    b. if **you** cannot **restore** or **recollect** such **information assets**, then **information asset loss** shall mean only the actual cost **you** incur to reach this determination;

2. with respect to **information assets** described in subparagraph 1 of the definition of **information assets** that are copied, misappropriated, or stolen, including without limitation any **information assets** that are **trade secrets**, **information asset loss** means the stated value set forth for each scheduled **information asset** as endorsed to this policy (if applicable); or

3. with respect to **information assets** described in subparagraph 2 of the definition of **information assets**. that are misappropriated or stolen, the actual cash value **you** paid for such lost capacity of **your computer system**, which would not have been paid for by **you**, but for such misappropriation or theft.

For purposes of subparagraph 1 above, the following definitions apply:

*END 22*

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

1.    **Restore** shall mean costs or expenses to restore **information assets** from any collection of partially or fully matching electronic data or software, or through electronic data or disaster recovery methods.

2.    **Recollect** shall mean costs or expenses to: a. recollect the information making up the **information asset**, including without limitation, information from non-electronic sources; and b. organize and transcribe such information into the same or substantially similar form as the original **information asset**.

However, **information asset loss** shall not mean, and there shall be no coverage under coverage NAC-E for:

1.  loss arising out of any liability to third-parties for whatever reason;

2.    legal costs or legal expenses of any type;

3.    costs or expenses **you** incur to update, upgrade, enhance or replace **your information assets** to a level beyond that which existed prior to sustaining **loss**;

4.    loss arising out of any physical damage to or destruction of the computer hardware, firmware or any other property except **information assets**;

5.    that part of any **information asset loss**, for which the proof as to its existence or amount is solely dependent on: a. an inventory computation or comparison; or b. a profit and loss computation or comparison; provided, however, where the **insured** establishes wholly apart from such comparison that it has sustained a **information asset loss**, then it may offer its inventory records and actual physical count of inventory in support of the amount of such **information asset loss** claimed;

6.    the cost or expenses **you** incur for researching or developing **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable);

**END 22**

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

    7.   the economic or market value of, or the monetary value of lost market share, profits, or royalties related to, any **information assets**, including without limitation **trade secrets**; provided, however that this subparagraph shall not apply to the stated value of **information assets** scheduled by endorsement (if applicable); or

    8.   costs or expenses **you** incur to identify and remove software program errors or vulnerabilities.

NAC-V.   **Information holder** means a third party that **you** have provided **personally identifiable information** to and with whom **you** have entered into a contract that requires such party to protect such **personally identifiable information**.

NAC-W.   **Injury** means: 1. alteration, corruption, destruction, disruption, deletion, or damage; or 2. copying, misappropriation or theft .

NAC-X.   **Internet** means the worldwide public network of computers commonly known as the Internet, as it currently exists or may be manifested in the future.

NAC-Y.   **Internet media** means any **material**, including **advertising**, on an **Internet** site.

NAC-Z.   **Internet professional services** means any of the following services defined and selected below (by indication of a check marked box - there shall be no coverage for any of the services unless checked), which **you** provide to others:

    **(X)Application service provider (ASP services)**, which means providing access to computer applications controlled by **you** for use by others through the **Internet**;

    **(X)Domain name registration services**, which means the following services provided in order to facilitate navigation of the **Internet**: collecting, processing or maintaining information provided to **you** which is necessary for registering a domain name; registering a domain name; or accepting or maintaining a record of domain names in a database;

    **(X)e-Commerce transaction services**, which means the following services provided on behalf of others through the **Internet**: processing electronic transactions; registering **Internet** users; or collecting or organizing information provided by **Internet** users, including demographic and transactional data;

*END 22*

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**( ) Electronic exchange and auction services**, which means: the electronic matching of third-party buyers and third-party sellers of goods or services through the **Internet**; and providing **e-commerce transactions services** with respect to such buyers and sellers;

**(X)Internet hosting services**, which means: housing or maintaining physical control over others' computer file servers connected to the **Internet**; or providing storage of others' electronic data on **your computer systems** connected to the **Internet**, for the purpose of transmitting electronic data through the **Internet**;

**(X) Internet media services,** which means: the electronic publishing or display of material (including **advertising**) on an **Internet** site; or providing or maintaining of: instant messaging, web-conferencing, webcasting, **Internet**- based electronic mail, online forums, bulletin boards, list-serves, or chat rooms;

**( ) Internet service provider (ISP services)**, which means providing direct access to the **Internet**;

**(X)Managed and network security services,** which means: reviewing, analyzing, or consulting with respect to written security policies intended to prevent a **computer attack**; analyzing, testing, or monitoring the **security** infrastructure or vulnerabilities of **computer systems**; implementing, managing or maintaining **security**; providing content filtering **security**; providing **security** patch administration; providing security audits; or preparing security assessment reports;

**( ) Public Key Infrastructure Services**, which means: developing, implementing, or managing public key infrastructure; registering, authenticating or validating the identities of users of public key infrastructure; issuing or managing electronic security credentials or digital certificates for message encryption; monitoring or maintaining the integrity or security of electronic information transmitted using public key infrastructure;

**(X)Search engine services**, which means providing search or navigational computer applications to allow others to locate electronic data through the **Internet**;

**END 22**

**ENDORSEMENT# *22*   (Continued)**

This endorsement, effective   *12:01 am*      *November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**(X)Web portal services**, which means organizing, aggregating, or providing access to electronic data, material or any service described above (that has been selected and checked in Item 6 of the Declarations) in this definition, through an **Internet** site commonly known as a "web portal"; or

**(X)Cloud computing services.**

NAC-AA.   **Material** means content in any form, including written, printed, video, electronic, digital, or digitized content:

1.   in broadcasts, including, but not limited to, television, motion picture, cable, satellite television and radio broadcasts;

2.   in publications, including, but not limited to, newspaper, newsletter, magazine, book and other literary, monograph, brochure, directory, screen play, film script, playwright and video publications;

3.   in **advertising**; or

4.   displayed on an Internet site.

NAC- BB.   **Material interruption** means the actual and measurable interruption or suspension of **your computer system**, which is directly caused by a **failure of security** or a **system failure**.

NAC-CC.   **Period of recovery** means the time period that:

1.   begins on the date and time that a **material interruption** first occurs; and

2.   ends on the date and time that the **material interruption** ends, or would have ended if **you** had exercised due diligence and dispatch.

Provided, however, the **period of recovery** shall end no later than sixty (60) consecutive days after the date and time that the **material interruption** first occurred.

NAC-DD.   **Personally identifiable information** means any of the following in **your** care, custody or control or in the care, custody or control of an **information holder**: (1) information from which an individual may be uniquely and reliably identified or contacted, including without limitation, an individual's name, address, telephone number, social security number,

**END 22**

ENDORSEMENT# *22*   (Continued)

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

account relationships, account numbers, account balances, account histories and passwords; (2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations; and (3) information concerning an individual that would be considered "protected health information" within Health Insurance Portability and Accountability Act of 1996 (as amended) and its implementing regulations, or "electronic protected health information" (ePHI) within the Health Information Technology for Economic and Clinical Health Act (HITECH ACT) and its implementing regulations.

NAC-EE.     **Privacy peril** means any actual or alleged:

1. unauthorized disclosure by **you** of **private information** or failure by **you** to protect **private information** from misappropriation, including, without limitation, any unintentional violation of **your privacy policy** or misappropriation that results in **identity theft**;

2. failure by an **information holder** to protect **personally identifiable information** from misappropriation, provided that any failure to protect such information shall not include any intentional, dishonest, fraudulent, criminal or malicious act, error or omission if committed by:

   (i) the **information holder**;

   (ii) any elected or appointed officer, or director of the **information holder**; or

   (iii) any employee (other than officers) or independent contractors employed by an **information holder** if any elected or appointed officer of an **information holder** possessed, at any time, knowledge of the intentional, dishonest, fraudulent, criminal or malicious act committed by such employee or independent contractor that caused a direct loss to an **insured** or any other person;

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

3.    failure by **you** to  disclose or warn  of an actual  or potential  **identity theft**, but only if  such **identity theft** resulted  directly from an  event described in subparagraph 1 or 2 of this definition; or

4.    violation of any federal, state,  foreign or local privacy statute alleged in connection with a  **claim** for **damages** from an event described in subparagraph 1, 2 or 3 of this definition..

NAC-FF.    **Privacy policy** means:

1.    with respect to all coverages except Coverage  NAC-C.2. in paragraph 1 of this endorsement, any  policy in any  form regarding the collection,  dissemination, storage,  or treatment  of  information regarding customers, visitors to an Internet site, or other persons.

2.    with respect to Coverage NAC-C.2., the  **named insured's** policies and practices intended to protect  the  confidentiality of  **private information**, including without limitation, statements  in written or electronic form regarding the  collection, dissemination or  treatment of **personally identifiable information**.

NAC-GG.  **Private information** means:

1.    **personally identifiable information**; or

2.    **confidential corporate information**.

NAC-HH.    **Regulatory action** means a  request for information, civil  investigative demand or civil proceeding commenced by service of a complaint or similar pleading, brought by, or on behalf of, a governmental agency that alleges a **privacy peril** as defined in subparagraph 4  of the definition  of **privacy peril**, which may reasonably be expected to give rise to a covered  **suit.**

NAC-II.    **Security** means hardware, software or firmware whose function  or purpose is to mitigate  loss from or  prevent a **computer attack**. **Security** includes, without limitation, firewalls, filters,  DMZ's, computer  virus protection software, intrusion  detection, the  electronic  use of  passwords or  similar identification of authorized users.  **Security** also means **your** specific written policies or procedures intended to directly  prevent the theft of a  password or access code by non-electronic means.

*END 22*

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-JJ.    **Security breach notice law** means any statute or regulation that requires an entity storing **personally identifiable information** on its **computer system**, or any entity that has provided **personally identifiable information** to an **information holder** for storage on such **information holder's computer system**, to provide notice of any actual or potential unauthorized access by others to **personally identifiable information** stored on such **computer system**, including but not limited to, the statute known as California SB 1386 (§1798.82, *et. al.* of the California Civil Code).

NAC-KK.    **System failure** means any unintentional and unplanned outage of **your computer system**.

NAC-LL.    **Trade secret** means information (including any idea) that has been reduced to a written or electronic form, including a formula, compilation, pattern, program, device, method, process, or technique that:

1.    derives independent economic value, actual or potential, from not being generally known and not being readily ascertainable through proper means by other persons who can obtain economic advantage from its disclosure or use;

2.    is the subject of reasonable efforts to maintain its secrecy; and

3.    is used, capable of being used, or intended to be used in commerce.

NAC-MM.    **Waiting hours period** means ten (10) hours and shall apply to each **period of recovery**.

NAC-NN.    **Waiting hours retention** means the dollar amount of **business interruption loss you** incur during a **waiting hours period**.

NAC-OO.    **Your computer system** means a **computer system** under the ownership, operation or control of, or leased by, the **named insured** or its **subsidiaries**. Solely with respect to the coverage afforded by INSURING AGREEMENT NAC-C.1, Security Liability Coverage, **your computer system** also includes any **computer system** under the ownership, operation or control of a third-party vendor of the **named insured** or a **subsidiary**, but only to the extent such system is operated on behalf of, or for the benefit of, the **named insured** or a **subsidiary**.

7.    Solely with respect to the coverage afforded under this endorsement, Clause III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraphs H., I., J., K., M., N. and S. shall not apply to any coverage that may be afforded under this endorsement.

*END 22*

**ENDORSEMENT#** *22*    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

8.      Solely with respect to the coverage afforded under this endorsement, Paragraph A. of Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** shall not apply to INSURING AGREEMENTS NAC-C., NAC-D, NAC-E and NAC-F.

9.      Solely with respect to the coverage afforded under this endorsement, Paragraph L. of Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** shall not apply to INSURING AGREEMENTS NAC-C.

10.     Solely with respect to the coverage afforded under this endorsement, Paragraph E. of Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** shall not apply to the coverage afforded by INSURING AGREEMENT NAC-C.2 for an otherwise covered **privacy peril**.

11.     Solely with respect to the coverage that is afforded under this endorsement, Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the following paragraphs at the end of that Clause:

  **We** shall not cover any **claim** or **loss**:
  NAC-A. arising out of any of the following:

    1.      fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, an act of God or any other physical event, however caused;

    2.      strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, committed by a person or persons whether acting on their own behalf or on behalf of or in connection with any organization, or any action taken to hinder or defend against these actions; provided, however, this exclusion shall not apply to actual, alleged or threatened **Cyberterrorism**; or

    3.      electrical or mechanical failures, including any electrical power interruption, surge, brownout or blackout; a failure of telephone lines, data transmission lines, satellites or other infrastructure comprising or supporting the **Internet**, unless such lines or infrastructure were under **your** operational control;

  NAC-B. arising out of any infringement of any patent;

**END 22**

**ENDORSEMENT# *22*** **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

NAC-C. arising out of any antitrust violations, restraint of trade or unfair competition, including, without limitation, violations of the Sherman Act, the Clayton Act or the Robinson-Patman Act, or any other federal, state, local or foreign laws regulating the same or similar conduct;

NAC-D. arising out of any misappropriation, theft, copying, display or publication of any **trade secret** by, or with active cooperation, participation, or assistance of, any **Insured**, any of **your** former employees, subsidiaries, directors, officers, partners, trustees, or any of **your** successors or assignees;

NAC-E. arising out of any **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation, prior to or pending as of the **first inception date**; or alleging or arising out of or relating to any fact, circumstance, situation or **wrongful act** alleged in such **claim**, demand, **suit**, arbitration, mediation, litigation, or administrative, bankruptcy or regulatory proceeding or investigation;

NAC-F. arising out of any liability or obligation under any contract or agreement, including, without limitation, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to:

1. liability **you** would have in the absence of such contract or agreement; or

2. with respect to coverage NAC-A or NAC-B for **Internet media services** only, liability **assumed under contract**;

3. with respect to coverage NAC-B only, liability or obligation under a contract for **internet professional services** from a **wrongful act**; or

4. with respect to coverage NAC-C.2., liability or obligation under a confidentiality or non-disclosure agreement.

NAC-G. arising out of any of the following:

1. any warranty, representation or guarantee; inaccurate, inadequate, or incomplete description of the price of goods, products or services; or any failure of goods, products or services to conform with an advertised quality or performance; or liquidated damages; or any failure to provide goods or products, or perform services within a specified time period, by a deadline or according to specified milestones; or the cost of providing, correcting, re-performing, or completing any services, including without limitation **Internet professional services**; or the cost of providing, repairing,

**END 22**

ENDORSEMENT# *22*   (Continued)

This endorsement, effective *12:01 am      November 18, 2010*      forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

> or replacing any product; cost or profit guarantees, cost
> representations, contract price, or estimates of probable costs or cost
> estimates being exceeded;
>
> 2.  any intentional violation of **your privacy policy**; however, this
>     subparagraph NAC-G.2. shall not apply to a covered **wrongful act** under
>     coverage NAC-C; or
>
> 3.  intentional, knowing or reckless misrepresentation in **advertising**, false
>     **advertising**, or unfair or deceptive business practices, including, without
>     limitation, violations of any local, state or federal consumer protection
>     or privacy laws; provided however with respect to coverage NAC-A
>     (Media Liability Coverage), NAC-C.2 (Privacy Liability Coverage) and,
>     solely with respect to the performance of **internet media services**,
>     NAC-B, **we** will defend **suits** alleging any of the foregoing conduct until
>     there is a judgment, final adjudication, adverse admission or finding of
>     fact against **you**, as to such conduct, at which time **you** shall reimburse
>     **us** for **claim expenses**; provided, however, **we** will not defend such
>     **suits** if they allege any of the foregoing conduct that has been the
>     subject of a criminal proceeding in which **you** have been found guilty, or
>     pleaded *nolo contendere* or no contest;

NAC-H. any **wrongful act**, **failure of security**, circumstance or event committed or
occurring prior to the **first inception date** if on or before the **first inception
date**, **you** knew or could have reasonably foreseen that such **wrongful act**,
**failure of security**, circumstance or event could give rise to a **claim** against
**you** or **loss**; provided, however, with respect coverage NAC-A and coverage
NAC-B for **Internet media services** only, if the **wrongful act** arises out of
material which was initially disseminated or broadcast prior to the **first
inception date**, and is disseminated or broadcast again after the **first
inception date** and prior to the policy termination date, then in such event,
**our** maximum liability shall be limited to that portion of the total **loss** which
the number of disseminations or broadcasts during the period of time on or
after the **first inception date** and prior to the policy termination date bears to
the total number of disseminations or broadcasts upon which the **claim** is
made;

NAC-I. against **you** that is brought, directly or indirectly, by or on behalf of:

**END 22**

ENDORSEMENT# *22*   (Continued)

This endorsement, effective *12:01 am   November 18, 2010*   forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

1. the Federal Trade Commission ("FTC"), the Department of Health and Human Services ("HHS"), the Office of Civil Rights, ("OCR") the Federal Communications Commission ("FCC") or any other federal, state or local government agency; provided, however, in accordance with Paragraph II.F. of the policy but notwithstanding Clause II., DEFINITIONS, subparagraph F(4) of the policy, this exclusion shall not apply to any **claims expenses**, or civil fines or penalties imposed by a governmental agency, arising out of a covered **regulatory action**; or

2. the American Society of Composers, Authors and Publishers, the Society of European Stage Authors and Composers, Broadcast Music, Inc., or any other licensing or rights organizations in such entity's regulatory, quasi-regulatory or official capacity, functions or duties;

Under coverages NAC-D, NAC-E, NAC-F, **we** will not cover any **claim, wrongful act,** or **loss** alleging, arising out of or resulting, directly or indirectly, from:

NAC-J. any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled, if committed by any of **your**:

1. directors, officers, trustees, governors, management committee members, members of the management board or partners (or the equivalent positions), whether acting alone or in collusion with other persons; or

2. employees (other than officers) or independent contractors employed by **you** if any of **your** elected or appointed officers possessed, at any time, knowledge of any dishonest, fraudulent, malicious, or criminal acts committed by such employee or independent contractor that caused a direct loss to an **insured** or any other person.

Under coverage NAC-C only **, we** will not cover any **claim, wrongful act,** or **loss** alleging, arising out of or resulting, directly or indirectly, from:

NAC-K. any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law or **your privacy policy**, or gaining of any profit or advantage to which **you** are not legally entitled, if committed by any of **your**:

1. directors, officers, trustees, governors, management committee members, members of the management board or partners (or the equivalent positions), whether acting alone or in collusion with other persons; or

**END 22**

**ENDORSEMENT# 22    (Continued)**

This endorsement, effective  *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

     2.   employees (other than officers) or independent contractors employed by **you** if any of **your** elected or appointed officers possessed, at any time, knowledge of any dishonest, fraudulent, malicious, or criminal acts committed by such employee or independent contractor that caused a direct loss to an insured or any other person.

NAC-L. against **you** that is brought, directly or indirectly, by or on behalf of:

     1.   any **insured** except one that is an **additional insured**; provided, however, this sub-paragraph (1) shall not apply to any otherwise covered **claim** made by any past, present or future officer, directory or employee of the **named insured** or **subsidiary** as described in subparagraph II.R(3) of the definition of " **you, your** or **insured**" for **wrongful act(s)** resulting in **privacy peril**, but only if such officer, director or employee did not commit, participate in or contribute to such **wrongful act(s)** or **privacy peril**;

     2.   any entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**; or

     3.   any parent company, subsidiary, director, officer, partner, trustee, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control.

     4.   any independent contractor supplying materials or services to **you**, but, as regards such independent contractor, only with respect to **claims** involving disputes over the ownership or exercise of rights in materials or services supplied.

Under coverages NAC-A. and NAC-B., **we** will not cover any **claim** alleging, arising out of or resulting, directly or indirectly, from:

NAC-M. any **failure of security** of **your computer system**.

Under coverages NAC-E. and NAC-F., **we** will not cover any **claim** alleging, arising out of or resulting, directly or indirectly, from:

NAC-N. any seizure, confiscation, nationalization, or destruction of **your computer system** or **information assets** by order of any governmental or public authority; or

NAC-O. any wear and tear or gradual deterioration of **your computer system** or **information assets**.

*END 22*

ENDORSEMENT# *22*   (Continued)

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of policy number *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Under coverage NAC-C.2. only, **we** will not cover any **claim**, **wrongful act** or **loss** alleging, arising out of or resulting from:

NAC-P.    the collection of **private information**, including, without limitation:

1.    such collection by means of electronic "cookies", "spiders", spybots, spambots, spyware, adware, wire-tapping, **malicious code**, key-stroke logging, tracking devices, radio frequency identification tags (RFID tags), bugging or video camera; or

2.    the failure to provide adequate notice regarding: (i) the purposes for which the **private information** is collected and used; (ii) contact information for inquiries or complaints; (iii) those parties to which the **private information** could be disclosed to; (iv) "opt out" choices of the individual or entity from whom **you** are collecting the **private information**; and (v) the means **you** offer for limiting use or disclosure of the **private information**;

provided, however, that this exclusion shall not apply to any otherwise covered **claim** for a **wrongful act** that resulted in a **privacy peril**;

NAC-Q. **your** distribution, creation, exhibition, performance, preparation, printing, production, publication, release, display, research or serialization of any **material**, including without limitation, any such **claim** covered under coverage NAC-A in paragraph 1 of this endorsement; or

NAC-R. any **loss**, **claim**, **damages** or **suit** covered by coverage NAC-C.1 in paragraph 1 of this endorsement.

Under coverage NAC-F. only, **we** will not cover any **business interruption loss** alleging, arising out of or resulting from:

NAC-Sany contractual penalties or consequential damages.

12.  Solely with respect to the coverage afforded under this endorsement, in Clause IV. **LIMITS OF LIABILITY**:

a.    Paragraph B., is deleted in its entirety and replaced with the following:

B.    **Our** total liability for all **loss** for each coverage section shall not exceed the applicable sublimit of liability set forth in Item 3B the Declarations.

b.    Paragraph C., is deleted in its entirety and replaced with the following:

C.    **Our** total liability for all **loss** arising from all **claims** made against **you, failures of security** or **extortion claims** shall not exceed the Limit of Liability set forth in Item 3A of the Declarations as "aggregate." The aggregate Limit of Liability for any Extended Reporting Period shall be part of and not in addition to the aggregate Limit of Liability for the **policy period**.

*END 22*

**ENDORSEMENT# *22*  (Continued)**

This endorsement, effective  *12:01 am*     *November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

c.    Paragraph E., " **Multiple Professional Liability  Policies**," is deleted in its
      entirety and replaced with the following:

   **E.    Multiple Policies**

   Two or more policies may be  issued by  **us** or other  insurance company
   subsidiaries or  affiliates of Chartis Inc. to  **you**.  These policies  may
   provide coverage for:

   1.    **loss** arising from the same  **claim**, **wrongful act**, **extortion claim**,
         **failure of security**, or events or circumstances, or series of
         continuous, repeated or related  **claims**, **wrongful acts**, **failures of
         security**, or events or circumstances; or

   2.    **loss** for which persons or organizations covered in those policies
         are jointly and severally  liable.

   In such case,  **we** will  not be liable  under this policy  for  an amount
   greater than the proportion of the  **loss** that this policy's applicable limits
   of liability bears  to the total  applicable limits of  liability under all  such
   policies. In  addition,  the total  limit of liability  under  all such  policies
   combined  shall  not  be  greater  than  the  highest  applicable  limit  of
   liability among all such policies.

d.    The following paragraphs are deemed to be added to the end of that Clause:

G.    With respect to coverage NAC-E, o  **ur** total liability for all  covered
      **information asset loss** resulting in  the  theft, misappropriation,  or
      copying of any  **information asset**, shall  be  the  amount set forth  by
      specific endorsement, if  applicable, for each  such  **information asset**.
      Such **information asset loss** shall be part of and subject to the Limits  of
      Liability for coverage NAC-E set forth in Item 3B of the Declarations.  In
      the event no such endorsement is attached, the limit of liability for such
      **information asset loss** shall be zero.

H.    With respect to coverage NAC-F,  **our** total liability for **:**

   1.    covered  **business interruption  loss** per  hour  during the  **period of
         recovery** (or  **extended interruption  period** if  applicable) from  any
         and  all  covered  **failures of  security** or  **system  failures** is  ten
         percent (10%) of the applicable  Limit of Liability set forth  in Item
         3B-Column(1) of the Declarations;

**END 22**

ENDORSEMENT# *22*    (Continued)

This endorsement, effective    *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

> 2. the sum of covered **dependent business interruption loss** and any **extra expense** related thereto, arising from any and all covered **failures of security** or **system failures**, in the aggregate for this policy, shall be one million dollars ($1,000,000); and
>
> 3. covered **forensic expenses** arising from each covered **failure of security** or **system failure** shall be one million dollars ($1,000,000).

I. Any **failure(s) of security** or **system failures** arising from the same **failure of security** or **system failure** or a series of continuous, repeated or related **failures of security** or **system failures** shall be treated as one **failure of security** or **system failure**.

J. **Damages**, **claim expenses**, **extortion monies**, **information asset loss** and **business interruption loss** are all part of and subject to the policy aggregate Limit of Liability and applicable sublimits of liability in this policy.

**K.    Regulatory Action Sublimit of Liability**

The **regulatory action limit of liability** set forth in Item 3.B of the Declarations is the most **we** will pay as **loss** under this policy, in the aggregate, for all **regulatory actions** combined, regardless of the number of persons, occurrences, **regulatory actions** or entities covered by this policy, or claimants or **regulatory actions** brought against any **insured**. The **regulatory action limit of liability** is part of and subject to the **policy limit of liability** and the **sublimit of liability** for Coverage NAC-C.

13.    Solely with respect to the coverage afforded under this endorsement, in Clause V. **RETENTION:**

a.    The first paragraph is deleted in its entirety and replaced with the following:

**You** shall be responsible for the applicable Retention amount set forth in Item 4. of the Declarations. With respect to coverages A, B, NAC-A, NAC-B, NAC-C and NAC-D, the Retention applies to each **wrongful act**, **failure of security** or **extortion claim** and **you** may not insure it; provided, however, you may insure it with any policy in the Schedule of Policies set forth in paragraph 3. of the RETENTION PROVISION AMENDATORY ENDORSEMENT, or any renewal thereof. In the event a **claim** triggers more than one Retention amount, then, as to that **claim,** the highest of such

*END 22*

**ENDORSEMENT#** *22*  **(Continued)**

This endorsement, effective *12:01 am*  *November 18, 2010*  forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

    Retention amounts shall be deemed  the Retention amount applicable to  loss arising from such **claim.**  In **our** sole discretion, **we** may pay all or part of any applicable Retention to settle  a  **claim**, in  which case **you** agree to repay  **us** promptly after **we** notify **you** of the settlement.

b.    The following paragraphs are deemed to be added to the end of that Clause: With respect  to coverage  NAC-E, the Retention  applies to each   **failure of security** or series of  continuous, repeated or related   **failures of security** and **you** may not insure it.

    With respect to **business interruption**  **loss** under Coverage NAC-F, the applicable Retention  is the  greater of:  (1) the  dollar Retention  amount set forth in Item  4 of the  Declarations or  (2)  the  **waiting hours  retention. You** are responsible for  the Retention  whether based on  the dollar  Retention or **waiting hours retention** amount, and  **you**  may not  insure it. The dollar Retention amount applies to each   **failure of security** or series  of continuous, repeated or related **failures of security.**  The **waiting period retention** applies to each  **period of  recovery**. In the  event a  **failure of  security** or series  of continuous, repeated or related  **failures of security** results  in more than  one **period of  recovery**, a  **waiting  hour retention** shall apply  to each **period of recovery**.

    Provided, however, in the event a   **failure of security** or series of  continuous, repeated or related  **failures of security**  results  in coverage  under both coverages NAC-E  and  NAC-F,  for purposes of  determining the  applicable Retention for coverage NAC-F, the dollar  Retention amount set forth in  Item 4 of the  Declarations shall  be reduced by  the actual  amount  **you** pay  as a Retention under coverage NAC-E.

    Notwithstanding the foregoing, however, in the event a   **failure of security** or series  of continuous, repeated or related   **failures of  security** results in coverage  under  coverages  NAC-C,  NAC-E  and  NAC-F, a  $2,000,000 Retention shall apply.

c.    Notwithstanding anything to the  contrary in the policy  or this endorsement, all **loss**, **extortion monies**, **information asset  loss** and **business interruption loss** arising from the same **wrongful act**, **failure of security** or **extortion claim** or series of continuous, repeated, or related  **wrongful acts**, **failures of security** or **extortion  claims** shall  be subject  to one  Retention equal  to the highest applicable Retention amount.

*END 22*

ENDORSEMENT# *22* **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

14.    Solely with respect to the coverage afforded under this endorsement, in Clause VI.
**OTHER PROVISIONS AFFECTING COVERAGE**:

a.    Paragraph A., **What You Must Do in the Event of a Claim**, is amended by
appending the following to the end of the paragraph beginning " **You** must
also:"

3.    immediately record the specifics of any **loss** or **failure of security** and
the date **you** first became aware of such **loss** or **failure of security**;

4.    take prompt steps to minimize the **loss** and take reasonable steps to
prevent further **loss**;

5.    at **our** request report such **loss** or **failure of security** to the FBI, CERT,
ISAC or any other central reporting or investigative organization that
**we** may designate;

6.    upon **our** request, furnish to **us** any and all documentation within **your**
possession; and

7.    send **us** copies of all demands, suit papers, or other legal documents
**you** receive, as soon as possible.

b.    The following paragraphs shall be deemed to be included at the end of that
Clause:

S.    **Coverage NAC-E and NAC-F Extended Reporting Period**

If **we** or the **named insured** shall cancel this policy or refuse to replace
this policy, **you** shall have up to one (1) year following the effective
date of such cancellation or refusal to discover and report any covered
**loss** under coverages NAC-E and NAC-F.

T.    **Inspection Rights**

**We** may make audits, inspections or surveys at any time, and **we** may
give you reports on the conditions **we** find, and recommend changes.
Any inspections, surveys, reports or recommendations relate only to
insurability, terms, conditions, and the premiums to be charged; such
inspections, surveys, reports or recommendations will be treated as
confidential by **you**. **We** do not make safety inspections or undertake
to perform the duty of any person or organization to provide for the
safety of workers or the public. **We** do not warrant conditions or

*END 22*

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

warrant that conditions comply with laws, regulations, codes, or standards. **We** do not warrant the effectiveness of any security applicable to **your computer system.** This paragraph applies not only to **us**, but also to any outside consultant who makes inspections, surveys, reports, or recommendations for the purpose of underwriting and offering insurance.

U.   **Net profit calculations**

In determining the amount of net profit (or loss) and charges and expenses covered hereunder for the purpose of ascertaining the amount of **income loss** (and otherwise) sustained under coverage NAC-F, due consideration shall be given to the prior experience of **your business** before the beginning of the **period of recovery** and to the probable **business you** could have performed had no **material interruption** occurred. Provided, however, that such net profit (or loss) calculations shall not include, and this policy shall not cover, net income that would likely have been earned as a result of an increase in volume of **business** due to favorable business conditions caused by the impact of **computer attacks** on other businesses. All such net profit (or loss) and charges and expenses shall be calculated on an hourly basis and based on **your** actual net profit (or loss) and charges and expenses.

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 22*

ENDORSEMENT# *23*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FUNGUS AND MOLD EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
following amendments to the policy shall apply:

1.  Clause II. **DEFINITIONS** is amended to include the following at the end thereof:

    **FM-A.**  **Fungus(i)** includes, but is not limited to, any of the plants or organisms
    belonging to the major group **fungi**, lacking chlorophyll, and including
    **molds**, rusts, mildews, smuts and mushrooms.

    **FM-B.**  **Mold(s)** includes, but is not limited to, any superficial growth produced on
    damp or decaying organic matter or on living organisms, and **fungi** that
    produce **molds**.

    **FM-C.**  **Spore(s)** means any dormant or reproductive body produced by or arising or
    emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms or
    microorganisms.

2.  Clause III. **EXCLUSIONS - CLAIMS NOT COVERED** is amended to include the
    following at the end thereof:

    **We** shall not cover **claims**:

    FM-A.  alleging, arising out of, based upon, attributable to or in any way involving,
    directly or indirectly:
    1.  **fungus(i)**, **mold(s)**, mildew or yeast;
    2.  **spore(s)** or toxins created or produced by or emanating from such
        **fungus(i)**, **mold(s)**, mildew or yeast;
    3.  substance, vapor, gas, or other emission or organic or inorganic body
        or substance produced by or arising out of any **fungus(i)**, **mold(s)**,
        mildew or yeast; or
    4.  material, product, building component, building or structure, or any
        concentration of moisture, water or other liquid within such material,
        product, building component, building or structure, that contains,
        harbors, nurtures or acts as a medium for any **fungus(i)**, **mold(s)**,
        mildew, yeast, or **spore(s)** or toxins emanating therefrom;

    regardless of any other cause, event, material, product or building
    component that contributed concurrently or in any sequence to such **claim.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 23**

ENDORSEMENT# *24*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONTINGENT BODILY INJURY/PROPERTY DAMAGE COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that, as of the effective date of July 1, 2005, and  solely with respect to  **claims** made and  reported to  **us** after July 1, 2005:

1. In Clause III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph C. is deleted in its entirety and replaced with the following:

    C.    arising out  of **bodily injury** or **property damage**; provided, however, this exclusion shall not  preclude coverage for   **contingent bodily injury/property damage**;

2. Clause II. **DEFINITIONS** is amended to include  the following definition at the end  of that Clause:

    CB-A.    **Contingent bodily injury/property damage** means  those  **claim** situations wherein the  **damages** sought by the claimant are for indirect (not the direct or immediate  cause)  **bodily injury** or **property damage** (including, but not limited  to, property in the  care, custody and control of **you** or  **your** agent, or in transit)  (i) arising out of  any **wrongful act** committed or allegedly committed by an  **insured**  in the performance of **professional services**, and (ii) not covered under  any other policy of insurance available to  **you.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 24*

ENDORSEMENT# 25

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PERSONAL INJURY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  In Clause II. DEFINITIONS, paragraph Q., " **wrongful act**," is amended to include the
    following:

    **Wrongful act** also means, solely in the performance of **your professional services**,
    any actual or alleged:

    1.  false arrest, detention or imprisonment or malicious prosecution;

    2.  form of invasion, infringement or interference with rights of privacy or
        publicity, including, but not limited to, false light, public disclosure of private
        facts, intrusion and commercial appropriation of name, persona or likeness;

    3.  form of defamation or other tort related to disparagement or harm to
        character, reputation or the feelings of any person, including, but not limited
        to, libel, slander, product disparagement, trade libel, infliction of emotional
        distress, outrage or outrageous conduct; or

    4.  wrongful entry or eviction, trespass, eavesdropping or other invasion of the
        right to private occupancy.

2.  In Clause III. EXCLUSIONS - CLAIMS NOT COVERED, paragraph S., relating to
    personal injury, is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 25**

ENDORSEMENT# 26

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### LISTED SUBSIDIARY ENDORSEMENT
### (Separate First Inception Date and Retroactive Date)

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    In Clause II. **DEFINITIONS**, paragraph N., " **subsidiary**," shall also mean the entities
      listed in the table as such.  For each such entity, the terms "   **first inception date**"
      and " **retroactive date**" shall mean the dates set forth as such in the table below and
      not the dates set forth as such in the Declarations.

| Subsidiaries | First Inception Date | Retroactive Date |
|---|---|---|
| Stecroft | 01/31/2007 | 02/14/2004 |
| FNF Servicing, Inc. | 05/15/2009 | 12/31/2004 |
| Heritage companies, Inc. | 09/27/2010 | 02/26/1998 |
| Fidelity National Title of Colorado | 09/27/2010 | 02/26/1998 |
| Ticor Title of Colorado, Inc. | 09/27/2010 | 02/26/1998 |
| USA Digital Solutions, Inc. | 09/27/2010 | 02/26/1998 |

2.    Notwithstanding the foregoing, it is understood and agreed that in all events,
      coverage as is afforded under this policy with respect to a   **claim** made against any
      **subsidiary** or any partner, director, officer or employee thereof,  shall only apply for
      **wrongful act** committed or allegedly committed (1) in the case of a   **subsidiary** (i)
      after the respective **subsidiary's retroactive date** as listed above, and (ii) prior to the
      effective time that the  **named insured** no longer owns more than fifty percent
      (50%) of the issued and outstanding voting stock of such  **subsidiary**, either directly
      or indirectly through one or more of its **subsidiaries**; and (2) in the case of any
      partner, director, officer or employee of a **subsidiary**, solely while such partner,
      director, officer or employee is employed by the  **named insured** or a **subsidiary** over
      which the **named insured** owns more than fifty percent (50%) of the issued and
      outstanding voting stock of such **subsidiary**, either directly or indirectly  through one
      or more of its **subsidiaries.**

All other terms, conditions and exclusions remain unchanged.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 26**

ENDORSEMENT# *27*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXCLUSION A AMENDATORY ENDORSEMENT
### (ONTARIO)

In consideration of the premium charged, it is hereby understood and agreed that, solely
for purposes of **claims** involving **wrongful acts** in connection with mortgages that are
electronically registered in the Province of Ontario, Clause III. **EXCLUSIONS - CLAIMS
NOT COVERED**, paragraph A. is deleted in its entirety and replaced with the following:

A.    arising out of a dishonest, fraudulent, criminal or malicious act, error or omission, or
      any intentional or knowing violation of the law, or gaining of any profit or advantage
      to which **you** are not legally entitled;

   provided, however,

   **1.**    **we** will defend **suits** alleging any of the foregoing conduct until there is a
           judgment, final adjudication, adverse admission or finding of fact against **you**
           as to such conduct at which time **you** shall reimburse **us** for **claim expenses** ;
           however, **we** shall not cover any **claim** if **you** plead *nolo contendere* or no
           contest to a criminal proceeding against **you** arising out of the same, or
           essentially the same, material facts as such **claim**; and

   2.    this exclusion shall not apply to the first  C$500,000 of **loss**, in excess of the
           applicable retention, per **claim** (C$1,000,000 in the aggregate) of any natural
           person **insured** if such **insured** did not know or have reason to know or have
           reason to know of, participate in, approve or acquiesce to the foregoing
           fraudulent, criminal or illegal conduct, and did not gain an advantage to
           which such **insured** was not entitled.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 27*

ENDORSEMENT# *28*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COVERAGE B AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
I. **INSURING AGREEMENTS**, subparagraph B(2) is deleted in its entirety and replaced with
the following:

2.      **We** shall pay **claim expenses,** in excess of the retention, any **insured** incurs with our
         prior written consent in connection with a **claim** for covered **wrongful acts. Claim
         expense(s)** are part of and subject to **our** Limit of Liability. **Our** duty to defend ends
         after the applicable Limit of Liability has been exhausted by payment of **claim
         expenses** or **damages.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 28**

**ENDORSEMENT# 29**

This endorsement, effective  *12:01 am     November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALTERNATIVE DISPUTE RESOLUTION PROVISION AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that in Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph P. is deleted in its entirety and replaced with the following:

**P.      Alternative Dispute Resolution**

It is hereby understood and agreed  that all disputes or differences  which may arise under or in connection  with this policy, whether  arising before or after  termination of this policy, including any determination of the amount of  **loss**, shall be submitted to the alternative dispute resolution ("  **ADR**") process set forth in this clause.

Either the **insurer** or an i **nsured** may elect the type of  **ADR** process discussed below; provided, however,  that such i **nsured** shall have  the right to reject the  **insurer's** choice of the type of  **ADR** process at any time prior to its commencement, in which case such **insured's** choice of  **ADR** process shall control.

The **insurer** and  each and every  **insured** agrees that  there shall be  two choices of **ADR** process: (1) non-binding mediation  administered by  the American  Arbitration Association, in  which the  **insurer** and any such  **insured** shall  try in  good faith  to settle the  dispute by  mediation under  or in  accordance with  its then-prevailing Commercial Mediation  Rules; or (2)  arbitration  submitted to  the American Arbitration  Association in  accordance with  its then-prevailing Commercial Arbitration Rules, in which  the arbitration panel shall  consist of three  disinterested individuals. In either mediation  or arbitration, the  mediator or arbitrators shall  have knowledge of the legal, corporate management,  or insurance issues relevant to  the matters in dispute. The  mediator or arbitrators  shall also give  due consideration to the  general principles of  the law of the  state where the      **named insured** is incorporated in the construction or  interpretation of the provisions of  this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding  and provided to both parties, and the arbitrators'  award shall not include attorneys fees or other  costs. In  the event of  mediation, either  party shall  have the  right to commence  a judicial  proceeding; provided, however,  that no  such judicial proceeding shall be commenced until the  mediation shall have been terminated and at least  120 days shall  have elapsed  from the  date of  the termination of  the mediation. In all events, each  party shall  share equally  the expenses of the      **ADR** process.

*END 29*

ENDORSEMENT# *29*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **named insured**. The **named insured** shall act on behalf of each and every **insured** in deciding to proceed with an **ADR** process under this clause.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 29*

ENDORSEMENT# *30*

This endorsement, effective  *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "SUBSIDIARY" DEFINITION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.      In Clause II.  **DEFINITIONS**, paragraph  N., " **subsidiary**," is amended  to include  the
following at the end thereof:

"  **Subsidiary**" shall also mean each of the following entities and their subsidiaries:

Commonwealth Land Title Insurance Company
Lawyers Title Insurance Company
United Capital Insurance Company

2.      Solely with respect to the  **subsidiary** listed in  paragraph 1 of this Endorsement, and
solely with respect  to **wrongful  acts** first  occurring after the  **retroactive date** and
before 12/22/2008, Item 4. of the Declarations, "Retention," is deleted in its
entirety and replaced with the following:

Item 4. Retention: $ 10,000,000 each **wrongful act**.

3.      Solely with respect  to the  **subsidiary** listed in  paragraph 1  of this Endorsement,
Item 7 of the Declarations, "  **Retroactive Date**," is deleted in  its  entirety and
replaced with the following:

Item 7. **Retroactive Date**:  January 22, 2000

4.      Solely with respect  to the  **subsidiary** listed in paragraph  1 of this  Endorsement, in
Clause III.  **EXCLUSIONS - CLAIMS NOT  COVERED**, paragraph A. is deleted in  its
entirety and replaced with the following:

A.      arising out  of a  dishonest, fraudulent, criminal  or malicious  act, error or
omission, or any  intentional or knowing violation of the law, or gaining of any
profit or advantage  to which  **you** are not  legally entitled; however,   **we** will
defend **suits** alleging  any  of the foregoing conduct,  and that are  not
otherwise excluded,  until  there is a judgment,  final  adjudication, adverse
admission  or finding  of fact against   **you** as to such conduct  at which  time
**you** shall reimburse  **us** for  **claim expenses**; **we**  shall not  cover any  **claim** if
**you** plead *nolo contendere* or no contest to a criminal proceeding against  **you**
arising out  of the same, or  essentially the  same, material  facts as such
**claim**;

All other terms, conditions and exclusions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 30**

ENDORSEMENT# *31*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    Clause V. RETENTION is deleted in its entirety and replaced with the following:

**V.    RETENTION**

1.    You shall be responsible  for the retention amount  set forth in Item  4
of the Declarations.  The  retention applies to each  wrongful act, and
you may not insure it; provided, however,  you may insure it with any
policy in  the  Schedule of Policies  set forth  below,  or any  renewal
thereof (hereinafter  referred  to as  "Other Policy(ies)").   All  claims
arising from  a  wrongful act  or  series of  continuous, repeated,  or
related wrongful acts  shall be  subject to  one retention.   In our  sole
discretion, we may pay all or part of the retention to settle a claim,  in
which case you agree to repay us promptly after we notify you of the
settlement.

2.    If you shall, at our  written request,  submit  a  claim  to  alternative
dispute  resolution  in  accordance  with  the  rules  of  the  American
Arbitration Association  or  the  Defense Research  Institute, and  such
claim is settled through this  process, the retention obligation shall  be
deemed to be fifty percent (50%) of the  retention stated in Item 4 of
the Declarations.

**SCHEDULE OF POLICIES:**

| INSURED | POLICY NO. | COMPANY |
|---|---|---|
| FIDELITY NATIONAL TITLE AND ESCROW OF HAWAII | 013613347 | Illinois Union Insurance Company |
| FIDELITY NATIONAL INSURANCE SERVICES INC., AND FIDELITY NATIONAL INSURANCE COMPANY INC | 04155767 | Chartis Specialty Insurance Company |

**END 31**

ENDORSEMENT# *31*   **(Continued)**

This endorsement, effective  *12:01 am*   *November 18, 2010*   forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

| | | |
|---|---|---|
| FIDELITY NATIONAL INSURANCE COMPANY INC AND AGENTS OF FIDELITY NATIONAL | 014 221121 | Chartis Specialty Insurance Company |
| POWER LINK SETTLEMENT SERVICES L.P. | 01-422-10-86 | National Union Fire Insurance Company of Pittsburgh, Pa. |
| NationalLink | 425286285 | CNA |
| CHICAGO TITLE LAND TRUST COMPANY | V15RI6100301 | Beazley Insurance Co. |
| LOANCARE | MPP000518100 | Zurich |
| SERVICELINK TITLE COMPANY | LHF-8884996-00 | Hanover |
| FNT FLORIDA | LHF 8910108-00 | Hanover |
| J ROCKCLIFF REALTORS | REP0028139 | Indian Harbor Insurance Co. |

2.    In Clause  VI. OTHER PROVISIONS  AFFECTING  COVERAGE,  paragraph D.   **Other
Insurance**, is deleted in its entirety and replaced with the following:

   **D.    Other Insurance**

   Such insurance  as is  provided by  this policy  shall be  excess of any  other
   valid and  collectible insurance available to   **you,** including any insurance
   available under any  Other Policy.  In the  event coverage  is available  under
   both this policy  and any  Other Policy,  we shall  have no liability  under this
   policy until  all applicable  retentions and  limits of liability  of such Other
   Policy(ies) have been fully paid.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 31**

ENDORSEMENT# *32*

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SUBSIDIARY AMENDATORY ENDORSEMENT
## (SPECIFIC ENTITIES)

In consideration of the premium charged, it is hereby understood and agreed that, effective
February 10, 2009 (the " **Effective Date**"), the policy is amended as follows:

1.   Notwithstanding anything in  the policy to  the contrary,  Investment Property
     Exchanges Services, Inc. ("IPEX") is a  **subsidiary** of the  **named insured**.   With
     respect to IPEX, this policy provides full  prior acts  coverage (i.e.,  no  **retroactive
     date**) with respect to any  **claim** made on or after the  **Effective Date**.

2.   Notwithstanding anything in the policy to the contrary,  Fidelity National Real Estate
     Solutions LLC ("FINRES") is not a  **subsidiary** of the  **named insured**.  This policy shall
     provide no coverage  for any  **claim**  made against  FINRES, or any  partner, director,
     officer or employee thereof, on or after the  **Effective Date**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 32*

ENDORSEMENT# *33*

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
II. DEFINITIONS, paragraph R., the definition of " **you**, **your** or **insured**", is amended to
include:

> Vanguard Law Group and any partner or employee thereof, but only for **claims**
> arising out of the performance of title insurance related services by FNF Canada
> Company or its employees.

Notwithstanding the provision above, **we** shall not cover any **claim** against Vanguard Law
Group, or any partner or employee thereof, alleging or arising out of the provision of, or
failure to provide, legal advice to any person or entity.


All other terms, conditions and exclusions remain unchanged.


_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 33*

ENDORSEMENT# *34*

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number  *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION H AMENDATORY ENDORSEMENT

In consideration of the premium charged it is  hereby understood and agreed that in Clause
III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph H.  is deleted  in its  entirety and
replaced with the following:

    H.    alleging, arising out of, based upon or attributable to any  misappropriation of
           trade secret or infringement of patent;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 34*

**ENDORSEMENT# 35**

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of
policy number *01-318-41-31*
issued to     *FIDELITY NATIONAL FINANCIAL INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION F AMENDATORY ENDORSEMENT

In consideration of the premium charged it is hereby understood and agreed that in Clause
III. **EXCLUSIONS - CLAIMS NOT COVERED**, paragraph F. is deleted in its entirety and
replaced with the following:

> F.     arising out of any of **your** employment practices or any discrimination on any
> basis including, but not limited to: race creed, color, religion, ethnic
> background, national origin, age, handicap, disability, gender, sexual
> orientation or pregnancy;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 35**

**ENDORSEMENT# 36**

This endorsement, effective *12:01 am     November 18, 2010*     forms a part of policy number *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CORPORATE COUNSEL PREMIER EXTENSION ENDORSEMENT

In consideration of the premium charged, and in reliance on the statements in the application(s) attached hereto and made part hereof, it is hereby understood and agreed that:

1. **CCP Endorsement Schedule**:

    **Item 1.**     Limit of Liability

         A.     CCP Sublimit of Liability: $15,000,000

         B.     Securities Claim Sublimit of Liability : $5,000,000

    **Item 2.**     Retention:

         A.     **NON-INDEMNIFIABLE LOSS:** $10,000

         B.     ALL OTHER **LOSS**: $250,000

    **Item 3.**     CCP First Inception Date: 11/18/2010

    **Item 4**.     CCP Retroactive Date: 11/18/2010

2. Unless otherwise set forth herein, the terms, conditions and exclusions contained in this endorsement shall apply only with respect to the coverage afforded under this endorsement.

3. Solely with respect to the coverage afforded under this endorsement, Clause I. **INSURING AGREEMENTS** is deleted in its entirety and replaced with the following:

    **I.**     **CORPORATE COUNSEL PREMIER INSURING CLAUSES**

    Solely with respect to **claims** for **wrongful acts** first made against an **insured person** during the **policy period** or any Extended Reporting Period, if applicable, and reported to **us** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of the policy, this policy affords the following coverage:

    **A-1.**     **CORPORATE COUNSEL PROFESSIONAL LIABILITY**

    **We** shall pay amounts, in excess of the applicable Retention, an **insured person** is legally obligated to pay as **damages**, except when and to the extent that an **organization** has indemnified the **insured person** for **damages**.

    **A-2.**     **ORGANIZATION INDEMNIFICATION OF INSURED PERSONS**

    **We** shall pay amounts, in excess of the applicable Retention, an **organization** is legally obligated to pay as **damages**, but only to the extent that an **organization** has indemnified an **insured person** for **damages**.

*END 36*

ENDORSEMENT# *36*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

B.    **DEFENSE OF INSUREDS**

1.    *Our Duty To Defend*:  **We**  have the right and duty to  defend a
**claim** brought against an  **insured person** alleging **wrongful acts**,
even if the  **claim** is groundless,  false or fraudulent.    **We** shall
pay for **claim  expenses** incurred in  the defense of  a  **claim** for
**wrongful acts.**    **We** shall have no duty to  defend a  **claim**
insured by **directors and officers coverage** or a **securities claim**.

2.    *Claim expenses*:    **We**  shall indemnify for    **claim  expenses**
incurred in: (1) any **securities claim;** or (2) any **claim** where the
coverage afforded  by this policy is excess of    **directors and
officers  coverage**, provided that  such  **claim  expenses** are
incurred with **our** prior written consent.

3.    *When Our Duty Ends*:    **Our** duty  to defend  and  any obligation
to indemnify an  **insured  person** shall end if  the **insured person**
or, if applicable, an  **organization**, fails  or refuses to consent to
a settlement that  **we** recommend and the claimant  will accept.
The **insured person**  must then defend the    **claim** at  their own
expense.  As a consequence of such failure or refusal  to
consent, **our** liability for **damages** and **claim expenses** shall  not
exceed the amount  for which  **we** could have settled  such
**claim** had the **insured person**  or, if applicable, an  **organization**,
consented, plus **claim  expenses** incurred prior  to the time  **we**
made such  recommendation, plus seventy  percent (70%) of
**claim expenses**  incurred  with **our** consent after the date  of
such failure or refusal to consent.

Provided, however, this sub-paragraph 3. shall  not apply  to  the
settlement  of  the  following  proceedings  that  are  brought  in
connection  with  a  **securities  claim**  when  such  settlement  would
require an **insured person** to enter into a plea of guilty:

(a)    criminal proceeding commenced by return of indictment, return
of information, notice of charges or similar document; or

(b)    a civil, administrative or  regulatory investigation  of  an  **insured
person** by  the  Securities  and  Exchange  Commission  (SEC),
Department of Justice  or a similar state or foreign government
authority, commenced by  the service  of a  subpoena  on  such
**insured person**.

*END 36*

**ENDORSEMENT# *36***    **(Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.      Solely with respect to  the coverage afforded  under this endorsement, in  Clause II.
**DEFINITIONS**, paragraphs B., C.,  E., F., K.,  M. and Q.  are deleted in  their entirety
and replaced with the following:

**B.**     **Claim** means:

(1)     a written demand for money, non-monetary or injunctive relief;

(2)     a written request  to toll or  waive a statute of limitations relating  to a
potential **claim** against an **insured person**;

(3)     a **suit**;

(4)     an **administrative proceeding claim**; or

(5)     a **securities claim**.

**C.**     **Claim expenses** means  all reasonable and  necessary fees charged  by
attorneys designated  pursuant to  the terms of this policy and all other
reasonable and  necessary fees,  costs and expenses resulting  from the
investigation, adjustment, defense and appeal of a   **claim** if incurred by  **us**, or
by an **insured  person** with **our**  prior written  consent, including the  costs of
appeal, attachment or similar bonds  arising out of a  covered judgment.    **We**
have no obligation to provide such bonds.    **Claim expenses** shall not include:

(1)     compensation, fees, overhead or benefit expenses associated with an
**insured person** or an **executive** or **employee** of any **organization**; or

(2)     fees, costs or expenses incurred prior  to the time that a    **claim** is first
made against an  **insured person**.

**E.**     **First inception date** means  the date  set forth in Item 3.  of the CCP
Endorsement Schedule.

**F.**     **Loss** means the  total sum of  **damages** and  **claim expenses**.    Provided,
however, **loss does** not mean, and this policy shall not cover:

(1)     civil or criminal fines or penalties;

(2)     taxes;

(3)     any amounts for  which an  **insured person**  is not  financially liable  or
which are without legal recourse to an  **insured person**;

(4)     the costs and  expenses of  complying with  any injunctive  or other
form of non-monetary relief; and

(5)     matters which may be deemed uninsurable under the  law pursuant to
which this policy shall be construed.

*END 36*

**ENDORSEMENT# *36*    (Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

 

K.     **Professional services** means **legal services**.

M.     **Retroactive date** means the date set forth in Item 4. of the CCP Endorsement Schedule.

Q.     **Wrongful act** means any actual or alleged:

    (1)    negligent act, error, omission, breach of duty, misstatement or misleading statement; or

    (2)    **personal injury peril** committed or omitted by an insured person in the performance of **legal services**.

5.    Solely with respect to the coverage afforded under this endorsement, Clause II. **DEFINITIONS** is amended to include the following definitions at the end of such clause:

CC-A.    **Administrative proceeding claim** means a judicial, administrative, bar association or other proceeding against a **corporate counsel**, which is concerning either:

    (1) the eligibility or license of such **corporate counsel** to practice law, or

    (2) compliance with the Sarbanes-Oxley Act of 2002 and any rule or regulations promulgated thereunder or pursuant thereto.

CC-B.    **Corporate counsel** means any attorney at law admitted to the bar in or otherwise licensed to practice of law in any of the United States of America or its territories, Canada or any other **foreign jurisdiction**, but solely while an **employee** of an **organization**.

    Notwithstanding the foregoing, **corporate counsel** shall not mean a **secondment attorney**.

CC-C.    **Directors and officers coverage** means any valid and collectible Directors and Officers liability insurance coverage available to an **insured person** (or any excess coverage thereto), including, but not limited to, such coverage as provided under any self insurance program for managerial liability, directors and officers liability, general partner liability, employment practices liability, catastrophe coverage or similar insurance.

CC-D.    **Employee** means any past, present or future employee, including any part-time, seasonal and temporary employee of an **organization**.

*END 36*

**ENDORSEMENT# *36*    (Continued)**

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

 

 

**CC-E.    Executive** means any:

    (1)    past, present and future duly elected or appointed director, officer, trustee or governor of an **organization**, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position) of an **organization**;

    (2)    past, present and future General Counsel and Risk Manager (or equivalent position) of the **named insured**;

    (3)    past, present or future person in a duly elected or appointed position in an entity organized and operated in a **foreign jurisdiction** that is equivalent to an executive position listed in sub-paragraph (1) of this definition.

**CC-F.    Foreign Jurisdiction** means any jurisdiction, other than the United States of America or any of its territories or possessions.

**CC-G.    Indemnifiable loss** means **loss** for which an **organization** has indemnified or is permitted or required to indemnify an **insured person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **organization**, including the advancement of **claim expenses**.

For the purposes of determining whether **loss** constitutes **indemnifiable loss**, unless an **organization** is unable to do so due to **insolvency**, an **organization** shall be conclusively deemed to have indemnified the **insured persons** to the maximum extent that an **organization** is permitted or required to provide such indemnification pursuant to law, common or statutory, or contract, or by the charter or by-laws of an **organization**, which are hereby deemed to incorporate the broadest provisions of the law which determines or defines such rights of indemnity.

**CC-H.    Insolvency** means: (i) the appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an **organization**; (ii) an **organization** becoming a debtor-in-possession pursuant to the bankruptcy law or insolvency laws of the United States of America or Canada; (iii) a bankruptcy petition is filed by or against an **organization**; or (iv) as to (i), (ii) or (iii), the equivalent status or event occurring in a **Foreign Jurisdiction**.

**CC-I.    Insured person** means any past, present or future:

    (1)    **corporate counsel**;

 

**END 36**

ENDORSEMENT# *36*    (Continued)

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2)  **employee** of an **organization** who supports a **corporate counsel** in the performance of **legal services**;

(3)  licensed attorney provided by an employment contractor or agency under a written agreement between the **organization** and the employment contractor or agency to perform **legal services** for or on behalf of the **organization**; and

(4)  any independent contractor that is an attorney at law admitted to the bar in or otherwise licensed to the practice of law in any of the United States of America or its territories, Canada or any other **foreign jurisdiction**, who, pursuant to written agreement with an **organization**, has been retained to provide **legal services** for or on behalf of an **organization**.

CC-J.  **Legal services** means any professional legal services that are rendered by:

(1)  a **corporate counsel** but solely in his or her capacity as an **employee** of an **organization**;

(2)  a **corporate counsel** but solely while a full time, permanent **employee** of an **organization** (including **moonlighting services** and *pro bono* services); and

(3)  any **insured person** but only while acting under the supervision of and at the direction of a **corporate counsel**.

**Legal services** shall also include notarizing, certifying, or acknowledging any signature rendered by (1) through (3) above.

CC-K.  **Moonlighting services** means professional legal services, including, but not limited to, notarizing, certifying or acknowledging any signature, that are rendered by a **corporate counsel** outside the scope of their employment with an **organization**; provided that **moonlighting services** shall not include such services performed by a **corporate counsel** in their capacity as owner, principal, partner or employee of an entity that is not an **organization**.

CC-L.  **Non-indemnifiable loss** means **loss** for which an **organization** has not indemnified an **insured person** either because of insolvency or because such **organization** is not permitted or required to indemnify the **insured person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **organization**.

CC-M.  **Organization** means the **named insured** and any **subsidiaries**.

**END 36**

**ENDORSEMENT# *36*** (Continued)

This endorsement, effective  *12:01 am*  *November 18, 2010*  forms a part of policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CC-N.** **Personal injury peril** means any:

    (1)  false arrest, detention or imprisonment;

    (2)  malicious prosecution;

    (3)  libel or slander or other defamatory or disparaging materials;

    (4)  publication or utterance in violation of an individual's right to privacy;

    (5)  wrongful entry or eviction, or other invasion of the right to private occupancy; and

    (6)  if arising out of (1) through (5) above, mental anguish, mental injury, shock, humiliation or emotional distress.

**CC-O.** **Related wrongful act(s)** means **wrongful act(s)** which are the same, related or continuous, or **wrongful act(s)** which arise from a common nucleus of facts, regardless of whether a **claim** alleging such **related wrongful act(s)** involved the same or different claimants, **insured persons** or legal causes of action. All **related wrongful acts** shall be considered made at the time the first such **wrongful act** occurred.

**CC-P.** **Secondment attorney** means a non- **employee** attorney employed by an outside law firm and temporarily assigned by agreement between such law firm and an **organization** to perform **legal services** at the direction of an **organization**.

**CC-Q.** **Securities claim** means a **claim** made against an **insured person** arising from **legal services** after the **first inception date**:

    (1)  alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including, but not limited to, the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

        (a)  brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **organization**; or

        (b)  brought by a security holder, purchaser or seller of securities of an **organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **organization**; or

**END 36**

**ENDORSEMENT# 36**   **(Continued)**

This endorsement, effective *12:01 am*   *November 18, 2010*   forms a part of policy number   *01-318-41-31*
issued to   *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2) brought derivatively on behalf of an **organization** by a security holder of such **organization**.

**Securities claim** also means the following in connection with (1) or (2) above:

(1) a criminal proceeding which is commenced by indictment, information, notice of charges or similar document; or

(2) a civil, administrative or regulatory investigation of an **insured person** by the Securities and Exchange Commission, Department of Justice or a similar state or foreign government authority, commenced by the service of a subpoena upon such **insured person**.

CC-R.   **Transaction** means the occurrence of any of the following events:

(1) the **named insured's** merger into or consolidation with another entity such that the **named insured** is not the surviving entity;

(2) the acquisition of securities or voting rights by another entity, person, or group of entities and/or persons acting in concert, which result in ownership or voting control by other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of the **named insured's** directors; or

(3) the cancellation or nonrenewal of **directors and officers coverage** where such cancellation or non-renewal results in a lapse of coverage.

6.   Solely with respect to the coverage afforded under this endorsement, exclusions in the following paragraphs of Clause III., **EXCLUSIONS**, are not applicable: Paragraphs A. (fraudulent or criminal acts), B. ( **pollutants**), C. ( **bodily injury** or **property damage**), D. (SEC and RICO), E. (ERISA), F. (employment practices), I. (false advertising), K. (contractual liability), L. ( **insured** versus **insured** liability) and S. (personal injury).

7.   Solely with respect to the coverage afforded under this endorsement, Clause III. **EXCLUSIONS** is amended to include the following exclusions at the end thereof:

We **shall not cover any** claim**:**

CC-A   alleging, arising out of or resulting, directly or indirectly, from:

*END 36*

**ENDORSEMENT# *36*** **(Continued)**

This endorsement, effective  *12:01 am*    *November 18, 2010*     forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

(1)   with respect to all **claims**  other than  **securities claims** , any: (i) dishonest, fraudulent, criminal  or malicious act  (other than malicious prosecution) or  omission; (ii)  intentional or  knowing violation  of  the law; (iii)  profit, remuneration  or pecuniary  advantage  to  which an **insured person**  was  not  legally  entitled;  or  (iv)  commingling, misappropriation, or improper use of funds; however, **we** will defend a **claim** (other than a **securities claim**) against an **insured person** alleging any of the  foregoing conduct until  there is  a final judgment  against, final adjudication against, adverse finding  of fact against in  a binding arbitration proceeding,  or  plea of  guilty or  no contest  by an    **insured person**  as  to  such  conduct, at which time  the   **insured person**   shall reimburse **us** for **claim expenses**; or

(2)   with respect to  **securities  claims** , any: (i) deliberate  criminal or deliberate fraudulent act; or (ii)  profit, remuneration  or pecuniary advantage  to  which an  **insured  person**  was not legally entitled; provided, however, **we** will defend a **securities claim** against an **insured person** alleging  any of the  foregoing conduct  until there is  a final judgment  against, final  adjudication against,  adverse finding  of fact against, or plea of guilty or no contest by an  **insured person** as to such conduct, at which time the  **insured person** shall reimburse **us** for **claim expenses**;

for the purpose of determining the applicability of this exclusion: (i) the  facts pertaining to and  knowledge possessed  by any  **insured  person** shall  not be imputed to  any other  **insured person**;  and  (ii) only  facts pertaining  to and knowledge possessed by any past, present or  future Chairman of the Board, President, Chief  Executive Officer,  Chief Operating  Officer, Chief  Financial Officer or General  Counsel (or equivalent  positions) of an    **organization** shall be imputed to an **organization**;

CC-B  alleging, arising out of or resulting from, directly or indirectly, from any  **bodily injury**  (other than emotional distress or mental anguish) or  **property damage**;

CC-C  alleging, arising  out of or resulting from,  directly or indirectly, any emotional distress or mental anguish  of any person; provided,  however, this exclusion shall not apply to any **personal injury peril**;

*END 36*

**ENDORSEMENT# *36*** **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

CC-D alleging, arising out of or resulting from, directly or indirectly, the employment of any individual or any employment practice (including but not limited to wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim); provided, this exclusion shall not apply to the **legal services** provided by an **insured person** in connection with the employment of any individual or any employment practice, whether such **legal services** are provided to a third party or to the **organization**;

CC-E alleging, arising out of or resulting from, directly or indirectly, any **wrongful act** committed or omitted before the **retroactive date,** or any **related wrongful act** thereto;

CC-F that is brought directly or indirectly, by or on behalf of an **organization**; provided, however, this exclusion shall not apply to **claim expenses** incurred in connection with such **claims**;

CC-G that is brought by a security holder or member of an **organization**, whether directly or derivatively, unless such security holder or member **claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of an **insured person,** an **organization** or any **executive** of an **organization**; provided, however, this exclusion shall not apply to:

(1) any **claim** brought by any past **executive** of an **organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **organization** for at least four (4) years prior to such **claim** being first made against any person; or

(2) any **claim** brought by an **executive** of an **organization** formed and operating in a **foreign jurisdiction** against such **organization** or any **executive** thereof, provided that such **claim** is brought and maintained outside the United States of America, Canada or any other common law country (including any territories thereof);

*END 36*

**ENDORSEMENT# *36*    (Continued)**

This endorsement, effective  *12:01 am     November 18, 2010*     forms a part of
policy number   *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

CC-H  for violation(s) of any of the responsibilities,  obligations or duties imposed by
the Employee Retirement Income  Security Act of 1974;  provided, however,
this exclusion  shall not apply to  **claims** arising out of a  **corporate counsel**
providing **legal services** to an ERISA fiduciary;

CC-I  for violation(s)  of any of the responsibilities, obligations or duties imposed by
the Fair Labor Standards Act  (except the Equal Pay Act),  the National Labor
Relations Act,  the Worker  Adjustment and  Retraining Notification  Act, the
Consolidated Omnibus  Budget Reconciliation  Act,  the Occupational Safety
and Health  Act, any rules or regulations of  the foregoing promulgated
thereunder,  and amendments thereto  or any  similar federal, state, local or
foreign statutory law or common law;

It is acknowledged that   **claims** for violation(s)  of any of  the responsibilities,
obligations or duties imposed by "similar federal, state, local or foreign
statutory law or common law," as such quoted language is used in the
immediately-preceding paragraph, include, without limitation  any and all
**claims** which in whole  or in  part allege,  arise out of, are based upon,  are
attributable to, or are in any way  related to any of the  circumstances
described in any of the following:

(1)  the refusal,  failure or  inability of any   **organization(s)** or **insured
person(s)** to pay  wages or overtime pay  (or amounts representing
such wages or  overtime pay)  for services  rendered or time  spent in
connection with  work related  activities (as opposed  to tort-based
back pay or front pay damages for torts other than conversion);

(2)  improper deductions from pay taken by  any  **organization(s)** or **insured
person(s)** from any **employee(s)** or purported **employee(s);** or

(3)  failure to  provide or enforce  legally required  meal or rest break
periods;

CC-J  alleging,  arising out of or resulting from, directly or indirectly, any  (1)
presence of **pollutants**, (2) actual  or threatened discharge, dispersal,  release
or escape of **pollutants**, or (3) direction or  request to test for, monitor, clean
up, remove, contain,  treat, detoxify  or neutralize pollutants, or in  any way
respond to or assess the effects of  **pollutants**; provided, however, this

***END 36***

ENDORSEMENT# *36*    (Continued)

This endorsement, effective    *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      exclusion shall not apply to **claims** alleging any of the foregoing where the underlying **legal services** performed by an **insured person** giving rise to such **claim** were not the direct immediate cause of the foregoing;

CC-K   alleging, arising out of or resulting from any services performed by any contract, seasonal, part-time or leased lawyer other than **legal services** provided for an **organization** at the direction of **corporate counsel**;

CC-L   alleging, arising out of, based upon or attributable to, directly or indirectly, any **insured person** notarizing, certifying or acknowledging any signature not made in the presence of such **insured person** at the time of such notarization, certification or acknowledgment;

CC-M  for the return or restitution of fees, expenses or costs, or other disgorgement;

CC-N  alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of any entity is inadequate; provided, however, that this exclusion shall not apply to **claim expenses** or to any **non-indemnifiable loss** in connection therewith; or

CC-O  for compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **insured person**, **employee**, **executive** or **organization**.

8.    Solely with respect to the coverage afforded under this endorsement, Clause IV. **LIMITS OF LIABILITY** is amended to include the following paragraphs at the end of such Clause:

CC-A.  **Our** total liability for all **loss** for which coverage is afforded by this endorsement shall not exceed the CCP sublimit of liability set forth in Item 1.A. of the CCP Endorsement Schedule. The CCP sublimit of liability is part of, and not in addition to, the aggregate Limit of Liability set forth in Item 3 of the Declarations.

*END 36*

**ENDORSEMENT# *36*  (Continued)**

This endorsement, effective  *12:01 am*   *November 18, 2010*   forms a part of
policy number  *01-318-41-31*
issued to  *FIDELITY NATIONAL FINANCIAL INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

CC-B.  **Our** total liability for all **loss** arising from any  and all **securities claims** made against an **insured person** and reported to **us** during the **policy period** or any applicable Extended Reporting Period  shall not exceed  the  **securities claim** sublimit of liability set forth in Item 1.B. of the CCP Endorsement Schedule. The **securities claim** sublimit of liability is part of, and not in addition to, the  CCP Sublimit and the aggregate Limit  of Liability set forth in Item  3 of the Declarations.

CC-C.  Any coverage  that may  be provided  under this  endorsement,  shall apply excess of any coverage under  any  **directors and officers  coverage**  and **we** shall have no duty  to defend or  obligation to pay   **claim expenses** or other **loss** until the  applicable limits  of all such  **directors and officers  coverage** has been exhausted.

9.  Solely with respect to the coverage afforded under this  endorsement, Item 4 of the Declarations is  deleted  in its  entirety  and replaced  with the applicable  retention amounts set forth in Item 2 of the CCP Endorsement Schedule.

10.  Solely with  respect to  the coverage  afforded  under this  endorsement, Clause  V. **RETENTION** is deleted in its entirety and replaced with the following:

**V.    RETENTION**

A.  The **insurer** shall only be liable for the  amount of  **loss** arising from each **claim** that exceeds the applicable  retention amount stated in  Item 2 of the CCP Endorsement Schedule.  The  applicable retention amount must be borne by an **insured person** or an **organization** and  remain uninsured. The retention amount stated in:

1.  Item 2.A. of  the  CCP  Endorsement  Schedule  applies  to **non-indemnifiable loss**; and

2.  Item 2.B. of the  CCP Endorsement  Schedule applies  to all  other **loss**.

B.  In the  event a  **claim**  triggers more  than one retention amount, the highest  applicable  retention  amount  shall  be  deemed  the  retention amount applicable to the   **claim**.  A  single retention amount  shall apply to **loss** arising from all **claims** alleging the same **wrongful act** or any

*END 36*

**ENDORSEMENT#** *36*    **(Continued)**

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      **related wrongful acts**.  In **our** sole and absolute discretion, **we** may advance all or part of the applicable retention amount in which case the **insured person** and **organization** agree to repay **us** immediately after **we** notify the **insured person** and **organization** of that payment.

C.    Notwithstanding anything in the policy or this endorsement to the contrary, there shall be no retention for **securities claims** that, pursuant to Clause 12 of this endorsement, this policy applies only as excess.

11    Solely with respect to coverage afforded under this endorsement, in Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph D., " **Other Insurance**," is deleted in its entirety and replaced with the following:

**D.    Other Insurance**

Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance available to any **insured person** unless such other insurance is written only as specific excess insurance over the applicable Limit of Liability provided by this policy.  Further, this policy shall apply specifically as excess with respect to **securities claims** also covered by **directors and officers coverage**.

12    Solely with respect to coverage afforded under this endorsement, Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph L., " **Organizational Changes**," is deleted in its entirety and replaced with the following:

**L.    Organizational Changes**

If there is a **transaction** during the **policy period**, the coverage provided pursuant to this endorsement shall continue in full force and effect as to **wrongful acts** committed or omitted prior to the effective time of such **transaction**, but there shall be no coverage afforded by any provision of this endorsement for any **wrongful act** occurring after the effective time of the **transaction** unless, (i) within thirty (30) days of the **transaction**, we have been provided with full particulars of the **transaction**, the related entities and any other information requested by **us**, and (ii) the **named insured** or its successor, has agreed to any additional premium and amendments to this policy required by **us**.

*END 36*

ENDORSEMENT# *36*    (Continued)

This endorsement, effective *12:01 am    November 18, 2010*    forms a part of policy number *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

13    Solely with respect to the coverage afforded under this endorsement, in Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**, paragraph N., **Declarations**, is amended by appending the following to the end thereof:

For purposes of this paragraph, the word "application" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other employed lawyer (or equivalent) liability policy issued by the **insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **organization** prior to the inception date of this policy with the Securities and Exchange Commission ("SEC") (or any similar federal, state, local or foreign regulatory agency), including, but not limited to, an **organization's** quarterly, annual and other reports to owners of its equity securities, 10Ks, 10Qs, 8Ks proxy statements and certifications relating to the accuracy of the foregoing.

14.    Solely with respect to the coverage afforded under this endorsement, the following paragraph is added to Clause VI. **OTHER PROVISIONS AFFECTING COVERAGE**:

**Application**

(1)    *Coverage A-1 Non-Rescindable*: **We** shall not be entitled, under any circumstances, to rescind the coverage afforded by paragraph I.A-1, as amended by this endorsement, the CORPORATE COUNSEL PROFESSIONAL LIABILITY Insuring Clause.

(2)    *Application Severability*: With respect to the statements, warranties and representations contained in any application for the coverage afforded by this CORPORATE COUNSEL PREMIERSM EXTENSION ENDORSEMENT, no knowledge possessed by any **insured person** shall be imputed to any other **insured person** for the purpose of determining the availability of coverage with respect to any **claim** made against such **insured person**.

15.    We shall have the right to associate fully and effectively with each and every **insured person** and, with respect to Coverage B of this Endorsement, each **organization**, in the defense of any **claim** or any matter that involves, or appears reasonably likely to involve, the **insurer**, including, but not limited to, negotiating a settlement.

*END 36*

ENDORSEMENT# *36*    **(Continued)**

This endorsement, effective    *12:01 am*    *November 18, 2010*    forms a part of
policy number    *01-318-41-31*
issued to    *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

16.    **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION**

   With respect to the coverage afforded under this endorsement only, and subject to
   the terms hereof, this policy shall cover any **claim** arising out of any actual or
   alleged **wrongful act** of an **insured person** and made against: (a) the estates, heirs,
   or legal representatives of a deceased **insured person**, or the legal representatives of
   an **insured person**, in the event of such person's incompetency, insolvency or
   bankruptcy; or (b) the lawful spouse (whether such status is derived by reason of
   statutory law, common law or otherwise of any jurisdiction in the world) or any
   legally-recognized domestic partner of an **insured person** where the **claim** is made
   against such person solely due to his or her status as the spouse or domestic
   partner of an **insured person**, including a **claim** seeking recovery of **loss** from marital
   community property, property jointly held with the **insured person**, or property
   transferred by the **insured person** to the spouse or domestic partner; provided,
   however, this provision shall not afford coverage for any **claim** arising out of or
   alleging a **wrongful act** of the spouse or domestic partner.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
© Chartis Inc. All rights reserved.
*END 36*

### ENDORSEMENT# *37*

This endorsement, effective *12:01 am*    *November 18, 2010*    forms a part of
policy number   *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

All rights reserved.
*END 037*

**ENDORSEMENT#** *38*

This endorsement, effective *12:01 am    November 18, 2010*                forms a part of
policy number  *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 77008 | 04/02 | MISCELLANEOUS PROFESSIONAL LIABILITY DEC PAGE |
| 74825 | 08/09 | FLORIDA ADDENDUM TO THE DECLARATIONS |
| 77011 | 04/02 | MISCELLANEOUS PROFESSIONAL LIABILITY POLICY |
|  |  | ITEM 6 "PROFESSIONAL SERVICES" DEFINITION ENDORSEMENT |
| 76105 | 02/09 | FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT |
|  |  | PUNITIVE DAMAGES COVERAGE AMENDATORY ENDORSEMENT |
|  |  | INSURANCE COMPANY PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
|  |  | CANCELLATION AMENDATORY ENDORSEMENT |
|  |  | STATE AMENDATORY INCONSISTENT |
|  |  | FAILURE TO INSURE EXCLUSION AMENDATORY ENDORSEMENT |
|  |  | MUTUAL CHOICE OF COUNSEL ENDORSEMENT |
|  |  | CLAIM REPORTING AMENDATORY ENDORSEMENT |
|  |  | INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT |
|  |  | TECHNOLOGY SERVICES AND PRODUCTS DEFINITION ENDORSEMENT |
|  |  | EXTENDED REPORTING PERIOD AMENDATORY ENDORSEMENT |
|  |  | REAL ESTATE RELATED SERVICES ENDORSEMENT |
|  |  | SUBSIDIARY DEFINITION AMENDATORY ENDORSEMENT |
|  |  | "YOU, YOUR OR INSURED" DEFINITION AMENDATORY ENDORSEMENT |
|  |  | COOPERATION CLAUSE AMENDATORY ENDORSEMENT |
|  |  | WHERE COVERAGE APPLIES AMENDATORY ENDORSEMENT |
|  |  | CRISIS MANAGEMENT FUND COVERAGE ENDORSEMENT |
|  |  | EXCLUSION K. AND O. AMENDATORY ENDORSEMENT |

*END 038*

**ENDORSEMENT#** *38*

This endorsement, effective *12:01 am    November 18, 2010*        forms a part of
policy number  *01-318-41-31*
issued to *FIDELITY NATIONAL FINANCIAL INC*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
|  |  | LOSS DEFINITION AMENDATORY ENDORSEMENT |
|  |  | MODIFIED NETADVANTAGE COMPLETE EXTENSION ENDORSEMENT |
|  |  | FUNGUS AND MOLD EXCLUSION ENDORSEMENT |
|  |  | CONTINGENT BODILY INJURY/PROPERTY DAMAGE COVERAGE |
|  |  | PERSONAL INJURY ENDORSEMENT |
|  |  | LISTED SUBSIDIARY ENDORSEMENT |
|  |  | EXCLUSION A AMENDATORY ENDORSEMENT |
|  |  | COVERAGE B AMENDATORY ENDORSEMENT |
|  |  | ALTERNATIVE DISPUTE RESOLUTION PROVISION AMENDATORY ENDORSEMENT |
|  |  | "SUBSIDIARY" DEFINITION ENDORSEMENT |
|  |  | RETENTION AND OTHER INSURANCE PROVISIONS AMENDATORY ENDORSEMENT |
|  |  | SUBSIDIARY AMENDATORY ENDORSEMENT |
|  |  | ADDITIONAL INSURED ENDORSEMENT |
|  |  | EXCLUSION H AMENDATORY ENDORSEMENT |
|  |  | EXCLUSION F AMENDATORY ENDORSEMENT |
|  |  | CORPORATE COUNSEL PREMIER EXTENSION ENDORSEMENT |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE


*END 038*

**CHARTIS**

## CLAIM REPORTING FORM

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number: _01-318-41-31_     Date: _____

Type of Coverage: D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*FIDELITY NATIONAL FINANCIAL INC*

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext_____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *WILLIS OF NEW YORK INC*

Address: _200 LIBERTY STREET, 7TH FL, ONE WORLD FINANCIAL CENTER_

Address: _NEW YORK, NY 10281-1003_

Contact: *GEOFF ALLEN*     Phone:_____

eMail: *Geoff.allen@willis.com*

Send Notice of Claims to:    Chartis       Phone: (888) 602-5246
                      Financial Lines Claims   Fax:    (866) 227-1750
                      P.O. Box 25947        Email: c-Claim@chartisinsurance.com
                      Shawnee Mission, KS 66225



# CLAIM REPORTING FORM
# FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number: _01-318-41-31_

Date of Discovery: _____    Estimated Amount of loss: _____

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | _____ | if Other, describe: | _____ |

Send Notice Of Claims To:    Chartis
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone:  (888) 602-5246
Fax:       (866) 227-1750
Email:   c-Claim@chartisinsurance.com

*centralized Customer Link and Information Management*

EXHIBIT G

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# CONTRACT
# OF
# INSURANCE

**Unique Market
Reference (UMR):**       B080113851P10


**Assured:**            **Fidelity National Financial, Inc and as more fully defined in the
                        contract wording**


**Address:**            **Corporate Risk Management Department
                        c/o Fidelity National Information Services
                        4905 Belfort Road, Unit 110
                        Jacksonville
                        Florida
                        FL 32256
                        United States of America**


**Type:**               **Excess Professional Liability Insurance**


**Period:**             **18 November 2010 to 18 November 2011 Both Days at 00:01am local
                        standard time at the above address of the Assured.**


This insurance is issued pursuant to the
Florida Surplus Lines Law. Persons insured
by surplus lines carriers do not have the
protection of the Florida Insurance
Guaranty Act to the extent of any right of
recovery for the obligation of an insolvent
unlicensed insurer.

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London
EC3M 7DQ  Registered number 181116 England and Wales. Registered VAT number  GB 354 1289 70

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



<u>**1. RISK DETAILS**</u>

**UNIQUE MARKET
REFERENCE:**     B080113851P10

**TYPE:**     Insurance of:
Excess Professional Liability Insurance

**ASSURED:**     Fidelity National Financial, Inc and as more fully defined in the
Contract Wording.

**ADDRESS:**     Corporate Risk Management Department
c/o Fidelity National Information Services
4905 Belfort Road, Unit 110,
Jacksonville,
Florida
FL 32256
United States of America

**PERIOD OF
INSURANCE:**     18 November 2010 to 18 November 2011 Both Days at 00:01am
local standard time at the above address of the Assured.

**INTEREST:**     As defined in the attached Contract Wording.

**LIMIT OF LIABILITY:**     USD 15,000,000     each and every claim and in the aggregate,
including costs and expenses, over all
coverages combined.

IN EXCESS OF

USD 15,000,000     each and every claim and in the aggregate,
including costs and expenses, over all
coverages combined

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                  Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



| | | |
|---|---|---|
| **PRIMARY POLICY DEDUCTIBLE:** | USD 2,000,000 | each and every claim including Costs and Expenses for net Advantage coverage |
| | and for all other claims and | |
| | USD 5,000,000 | each and every claim including Costs and Expenses as more fully set forth in the underlying contract. |

**TERRITORIAL LIMITS:**     As provided for by the Contract Wording.

**CONDITIONS:**     All terms and conditions as set forth in the wording, such wording being Excess Media, Internet, Security, Cyber Extortion and Miscellaneous Professional Liability Wording, as attached and incorporating the following:

Retroactive Date: None other than in respect of Stecroft Holdings, Inc. which is: 31 January 2004.

NMA 2918 War and Terrorism Exclusion Endorsement as attached.

NMA 1256 Nuclear Incident Exclusion Clause – Liability - Direct (Broad) (17/3/60) as attached

NMA 1477 Radioactive Contamination Exclusion Clause – Liability – Direct (13/02/64) as attached

623AFB00115 All amendments to the Primary to be agreed Clause as attached.

623AFB00089 AFB Short Rate Table Endorsement (30% minimum earned premium at inception) as attached

623AFB00116 Non Follow Endorsement as attached.

623AFB00132 Excess Claims Notification Clause (50% of Underlying threshold) amended as attached

Exhaustion of Underlying Policy Limits Due to Insured Payment Endorsement as attached

Follow Form and Drop Down Over Underlying Sublimit Endorsement as attached

Special Cancellation Clause Endorsement as attached

Notice:  For the purposes of the Insurance Companies Act (Canada) this document was issued in the course of Lloyd's Insurers, London Insurance Business in Canada.

Page 2 of 23

Willis Limited  A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                                    Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



Mailing Address for notices care of Corporate Risk Management Department, c/o Fidelity National Information Services, 7905 Befort Road, Unit 110, Jacksonville, Florida 32256, United States of America

**NOTICE OF CLAIM:**

Beth Diamond
AFB 623/2623
1220 Avenue of the Americas
12th Floor
New York
New York 10020
United States of America
tmbclaims@beazley.com

And

Willis Limited
FINEX Claims Department
The Willis Building,
51 Lime Street
London EC3M 7DQ
United Kingdom

**CHOICE OF LAW AND JURISDICTION:**

This contract shall be governed by, and construed in accordance with, the laws of the State of New York.

Any dispute between the parties over the terms of this contract shall be submitted to the jurisdiction of a Court of Competent jurisdiction in the United States of America per NMA 1998 Service of Suit Clause (U.S.A.) as attached

Service of Suit Nominee:
Mendes & Mount LLP
750 Seventh Avenue
New York
New York 10019-6829
United States of America

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                    Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



**PREMIUM:**                    USD 2,067,262.00 per annum for 100%.

**PREMIUM PAYMENT
TERMS:**                        Premium Payment Condition as follows:

LSW 3001 (amended) Premium Payment Clause - 60 days, as
attached due to Insurers on or before 16 January 2011.

Where any date on which the Premium is due to be paid falls on a
weekend or Public Holiday, presentation to Insurers or their agents
on the next working day will be deemed to comply with the relevant
premium payment requirement. For the purposes of this clause,
Public Holiday shall mean any public or statutory holiday in any
territory through which the Premium must pass between the Assured
and Insurers or their agents.

**TAXES PAYABLE BY
ASSURED AND
ADMINISTERED BY
INSURERS:**                     As per Tax Schedule attached.

**RECORDING,
TRANSMITTING
AND STORING
INFORMATION:**                  Where Willis Limited maintains risk and claims data/information/
documents Willis Limited may hold data/information/documents
electronically.

**INSURER CONTRACT
DOCUMENTATION:**                This contract document details the contract terms entered into by
(re)insurer(s) and constitutes the contract documentation.

The contract change document(s) signed by (re)insurers shall form
the evidence of the changes agreed.

This insurance is issued pursuant to the Florida surplus lines law.
Persons insured by surplus lines carriers do not have the protection
of the Florida Insurance Guaranty Act to the extent of any right of
recovery for the obligation of an insolvent unlicensed insurer.

Page 4 of 23

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                              Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

## THE SCHEDULE

**Policy Number:**        B080113851P10

**Name of the Assured:**  Fidelity National Financial, Inc.

**Address of the Assured:** Corporate Risk Management Department
c/o Fidelity National Information Services
4905 Belfort Road, Unit 110,
Jacksonville, Florida
FL 32256
United States of America

**Period of Insurance:**  From: 18 November 2010
To:    18 November 2011
Both days at 00:01am Local Standard Time at the Address of the Assured

**Limit(s) of Liability:** As set out herein

**Interest:**             Excess Professional Liability Insurance

**Premium:**              USD 2,067,262.00 per annum for 100%.

**Claims Nominee:**       Beth Diamond
AFB 623/2623
1220 Avenue of the Americas
12th Floor
New York
New York 10020
United States of America
tmbclaims@beazley.com
And
Willis Limited
FINEX Claims Department
The Willis Building,
51 Lime Street
London EC3M 7DQ
United Kingdom

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# EXCESS MEDIA, INTERNET, SECURITY, CYBER EXTORTION AND MISCELLANEOUS PROFESSIONAL LIABILITY WORDING

(a)  To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under Insuring Agreement I (Miscellaneous Professional Liability) of the Policy of the Primary Insurers; and

(b)  To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-A (Internet Media Liability Coverage) of the Policy of the Primary

(c)  To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-B (Internet Professional Services Liability Coverage) of the Policy of the Primary Insurers; and

(d)  To pay on behalf of the Assured claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under coverage NAC-C (Security and Privacy Liability Coverage) of the Policy of the Primary Insurers; and

(e)  To indemnify the Assured for amounts paid as extortion monies by the Named Assured resulting from an extortion claim or claims first made against the Assured and reported to the Underwriters during the Period of Insurance hereon in the manner provided under Coverage NAC-D (Cyber Extortion Coverage) of the Policy of the Primary Insurers; and

(f)  To indemnify the Assured for actual information asset loss sustained by the Named Assured during the Period of Insurance hereon in the manner provided under Coverage NAC-E (Information Asset Coverage) of the Policy of the Primary Insurers provided such loss is reported to the Underwriters during the Period of Insurance hereon; and

(g)  To indemnify the Assured for actual business interruption loss sustained by the Named Assured during the period of recovery in the manner provided under Coverage NAC-F (Business Interruption Coverage) of the Policy of the Primary Insurers provided such loss is reported to the Underwriters during the Period of Insurance hereon;

up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                    Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



|  |  |  |
|---|---|---|
| **This Policy's amount of liability:** | USD 15,000,000 | each and every claim and in the aggregate, including costs and expenses, over all coverages combined. |
| **Underlying Policy(ies) limits:** | USD 15,000,000 | each and every claim and in the aggregate, including costs and expenses, over all coverages combined. |
|  |  | Which in turn is in excess of the deductibles as set out in the Primary Contract |
| **Underlying Policy(ies) Number(s):** |  | As held on file by Willis of New York |

1.  Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.  It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or losses or of legal costs and expenses incurred in defence or settlement of such claims.

3.  If by reason of the payment of any claim or claims or loss or losses or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this Insurance, the amount of indemnity provided by such Underlying Policy(ies) is:

    (a)  Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

    (b)  Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.  In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld).  No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers, except the terms and conditions of the CM Module (Crisis Management Expenses).

No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

8.  If the Assured shall profer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                     Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



# RETROACTIVE DATE CLAUSE

In respect of Stecroft Holdings only, this Policy shall not provide cover to the Assured in respect of any claim involving or arising out of a fact, circumstance or event which occurred or is discovered prior to the Retroactive Date hereof.

Retroactive Date: 31 January 2004

# WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)     war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)     any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

NMA 2918
08/10/2001

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                  Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



<u>U.S.A.</u>

# NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD)

*For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:-*

*Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability), not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.*

<u>This policy\*</u> does not apply:-

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a)    with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect of bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

    (b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c)    the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                                Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



IV.    As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties; "**nuclear material**" means source material, special nuclear  material or byproduct material; "**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "**waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "**nuclear facility**" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:- As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**17/3/60**
**N.M.A. 1256**

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                              Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



<u>U.S.A</u>

# RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT
### *(Approved by Lloyd's Underwriters' Non-Marine Association)*

*For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause - Liability -Direct) to liability insurances affording worldwide coverage.*

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

**13/2/64**
**N.M.A. 1477**

# 'ALL AMENDMENTS TO THE POLICY
# OF THE PRIMARY INSURERS TO BE AGREED' ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause 7. of the Policy is deleted in its entirety and replaced with the following:

7.   Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers.  No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

623AFB00115

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                        Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## BEAZLEY
## AFB SHORT RATE CANCELLATION TABLE ENDORSEMENT

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the Assured the Earned Premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

A.  For insurances written for one year:

| Days Insurance in Force | | Per cent. of One Year Premium | Days Insurance in Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | .................................... | 30 | 206 - 209 | .................................... | 66 |
| 74 - 76 | .................................... | 31 | 210 - 214 | (7 months) ...................... | 67 |
| 77 - 80 | .................................... | 32 | 215 - 218 | .................................... | 68 |
| 81 - 83 | .................................... | 33 | 219 - 223 | .................................... | 69 |
| 84 - 87 | .................................... | 34 | 224 - 228 | .................................... | 70 |
| 88 - 91 | (3 months).................. | 35 | 229 - 232 | .................................... | 71 |
| 92 - 94 | .................................... | 36 | 233 - 237 | .................................... | 72 |
| 95 - 98 | .................................... | 37 | 238 - 241 | .................................... | 73 |
| 99 - 102 | .................................... | 38 | 242 - 246 | (8 months) ...................... | 74 |
| 103 - 105 | .................................... | 39 | 247 - 250 | .................................... | 75 |
| 106 - 109 | .................................... | 40 | 251 - 255 | .................................... | 76 |
| 110 - 113 | .................................... | 41 | 256 - 260 | .................................... | 77 |
| 114 - 116 | .................................... | 42 | 261 - 264 | .................................... | 78 |
| 117 - 120 | .................................... | 43 | 265 - 269 | .................................... | 79 |
| 121 - 124 | (4 months) .................. | 44 | 270 - 273 | (9 months) ...................... | 80 |
| 125 - 127 | .................................... | 45 | 274 - 278 | .................................... | 81 |
| 128 - 131 | .................................... | 46 | 279 - 282 | .................................... | 82 |
| 132 - 135 | .................................... | 47 | 283 - 287 | .................................... | 83 |
| 136 - 138 | .................................... | 48 | 288 - 291 | .................................... | 84 |
| 139 - 142 | .................................... | 49 | 292 - 296 | .................................... | 85 |
| 143 - 146 | .................................... | 50 | 297 - 301 | .................................... | 86 |
| 147 - 149 | .................................... | 51 | 302 - 305 | (10 months).................... | 87 |
| 150 - 153 | (5 months).................. | 52 | 306 - 310 | .................................... | 88 |
| 154 - 156 | .................................... | 53 | 311 - 314 | .................................... | 89 |
| 157 - 160 | .................................... | 54 | 315 - 319 | .................................... | 90 |
| 161 - 164 | .................................... | 55 | 320 - 323 | .................................... | 91 |
| 165 - 167 | .................................... | 56 | 324 - 328 | .................................... | 92 |

Willis Limited   A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                        Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



| 168 – 171 | ............................ | 57 | 329 – 332 | ............................ | 93 |
| 172 – 175 | ............................ | 58 | 333 – 337 | (11 months)...................... | 94 |
| 176 – 178 | ............................ | 59 | 338 – 342 | ............................ | 95 |
| 179 – 182 | (6 months)................. | 60 | 343 – 346 | ............................ | 96 |
| 183 – 187 | ............................ | 61 | 347 – 351 | ............................ | 97 |
| 188 – 191 | ............................ | 62 | 352 – 355 | ............................ | 98 |
| 192 – 196 | ............................ | 63 | 356 – 360 | ............................ | 99 |
| 197 – 200 | ............................ | 64 | 361 – 365 | (12 months) ..................... | 100 |
| 201 – 205 | ............................ | 65 | | | |

B.  For Insurances written for more or less than one year:

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    (a)  Determine full annual premium as for an insurance written for a term of one year.

    (b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    (c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Policy, such total premium to be deemed earned upon inception of the Policy if any claim or any circumstance that could reasonably be the basis for a claim is reported to Underwriters under this Policy on or before such date of cancellation.

623AFB00089

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## NON FOLLOW FORM ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that this Policy is not subject to the terms and conditions of any 'non-renewal' provision or 'conditional renewal' provision (or any other similar provision) as may be contained in the Policy of the Primary Insurers or any other Underlying Policy, regardless of whether or not such provision forms part of a State Amendatory Endorsement.

623AFB00116

## EXCESS CLAIMS NOTIFICATION CLAUSE

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause 5. of the Policy is deleted in its entirety and replaced with the following:

5.    Any claim(s) made against the Assured or any circumstances of which the General Counsel, Risk Manager and Chief Financial Officer becomes aware during the Period of Insurance which are likely to give rise to such a claim where the Assured or the Assured's defense counsel evaluate the potential liability of the claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) at 50% or more of the limits available under the Policy(ies) of the Primary and Underlying Excess Insurers, must be notified immediately by the Assured in writing to the Underwriters hereon.

623AFB00132

## EXHAUSTION OF UNDERLYING POLICY LIMIT DUE TO INSURED PAYMENT

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding Clauses 3, 4 and 5 of this Policy, in the event that the Insureds and the insurer under any of the Underlying Policies reach an agreement whereby the insurer agrees to pay loss in an amount less than the applicable Underlying Policy Limit and the Insureds pay the remainder of the applicable Underlying Policy Limit, such payment by the Insureds will be deemed to apply toward exhaustion of the Underlying Policy Limit.

## SPECIAL CANCELLATION CLAUSE

In consideration of the premium charged for the Policy, it is hereby understood and agreed that, notwithstanding anything to the contrary in this Policy or the Primary Policy including any endorsement or amendatory thereto, in the event the Underwriter:

1.    ceases underwriting; or

2.    is the subject of an order or resolution for winding up or formally propose a scheme of arrangement, or is placed into rehabilitation or liquidation by any state department of insurance; or

3    has its authority or license to carry on insurance business withdrawn; or

Willis Limited  A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                    Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



4      financial strength rating is issued below A- by A.M. Best Co

the **Insured** may cancel this Policy by giving notice within thirty (30) days of such event and the return premium shall be calculated on a pro rata basis to the time on risk.  Any return of premium shall also be subject to a written full release of liability from the **Insured**.  In the event there are any notified, reserved or paid claims, losses or circumstances, return premium shall be calculated on a short rate basis pursuant to the terms of the Policy.


# FOLLOW FORM AND DROP DOWN OVER UNDERLYING SUBLIMIT

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding Clause 3 of the policy wording, upon exhaustion of the USD 3,000,000 **Sublimit** applicable to Crisis Management Fund Coverage of the **Primary Policy** and any applicable **Sublimits** on any **Underlying Policy**, this Policy shall drop down and follow form of the terms, conditions and limitations of the such coverage; provided, that the Underwriters' aggregate limit of liability applicable to such coverage shall be USD 3,000,000 which shall be part of and not in addition to the Underwriters' aggregate limit of liability set forth herein.


In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding Clause 3 of the policy wording, upon exhaustion of the USD 5,000,000 **Sublimit** applicable to Regulatory Actions Coverage of the **Primary Policy** and any applicable **Sublimits** on any **Underlying Policy**, this Policy shall drop down and follow form of the terms, conditions and limitations of the such coverage; provided, that the Underwriters' aggregate limit of liability applicable to such coverage shall be USD 5,000,000 which shall be part of and not in addition to the Underwriters' aggregate limit of liability set forth herein.


In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding 3 of the policy wording, upon exhaustion of the USD 15,000,000 **Sublimit** applicable to Corporate Counsel Coverage Coverage of the **Primary Policy** and any applicable **Sublimits** on any **Underlying Policy**, this Policy shall drop down and follow form of the terms, conditions and limitations of the such coverage; provided, that the Underwriters' aggregate limit of liability applicable to such coverage shall be USD 5,000,000 which shall be part of and not in addition to the Underwriters' aggregate limit of liability set forth herein.

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## SERVICE OF SUIT CLAUSE (U.S.A)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon:

> Mendes & Mount LLP
> 750 Seventh Avenue
> New York
> NY10019-6829
> United States of America

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA 1998 (24/4/86) Form approved by Lloyd's Underwriters' Non-Marine Association.

Willis Limited  A Willis Group Company. A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                    Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000 Fax: +44 (0)2031248223 Website: www.willis.com



# PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

The (Re)Insured undertakes that premium will be paid in full to (Re)Insurers within 60 days of inception of this contract.

If the premium due under this contract has not been so paid to (Re)Insurers by the 60th day from the inception of this contract (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker. If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

30/09/08
LSW 3001

## WILLIS ADDENDUM TO PREMIUM PAYMENT CLAUSE LSW 3001

Notice of Cancellation in writing for the purposes of the Premium Payment Clause (LSW3001) shall be notice in writing to the Group's Compliance Officer at the Willis Building, 51 Lime Street, London EC3M 7DQ, and delivered by registered post or received and acknowledged personally by the Compliance Officer. The notice will only be accepted if the risk is properly identified, and includes at least the name of the Insured, the Willis slip reference number, the class of business and any other information which will enable the risk to be clearly identified. Further, for the avoidance of doubt, a notice of cancellation sent by e-mail to the Company shall not constitute notice in writing for the purposes of the application of the Premium Payment Clause (LSW3001).

Willis Limited   A Willis Group Company.  A Lloyd's broker   Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## NMA LINES CLAUSE

This Insurance, being signed for 100% of 100% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of  100% of the amount(s) of Insurance stated herein.

NMA 2419

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## 2. INFORMATION

**INFORMATION:**

Chronology List 1
September 2010 E&O Insurance Market Meeting Presentation
FNF E&O Submission sent to Robert Wice from Erica Constance 12
November 2010 @ 13:46
Application form signed and dated 01 November 2010

**Underlying Policy Information:**
Primary Policy Insurer: Chartis Insurance Limited
Limit: USD 15,000,000
Unique Market Reference: As held on file by Willis of New York

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 354 1289 70

13851P10
MRCDirectCoverDoc751143386                                                          Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



## 3. SECURITY DETAILS

**(RE)INSURER'S
LIABILITY:**

**(RE)INSURERS LIABILITY CLAUSE**

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp.  This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the

Page 21 of 23

Willis Limited   A Willis Group Company.  A Lloyd's broker  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 354 1289 70

13851P10
MRCDirectCoverDoc751143386                                                                 Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333

**ORDER HEREON:**  100% of 100%.

**BASIS OF WRITTEN LINES:**

Percentage of Whole.

NMA 2419 Lines Clause, as attached.

**SIGNING PROVISIONS:**

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

a)    in the event that the placement of the order is not completed by the commencement date of the period of (re)insurance then all lines written by that date will be signed in full;

b)    the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of (re)insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied.  The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**LINE CONDITIONS:**  None.

Willis Limited   A Willis Group Company.  A Lloyd's broker.  Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street, London EC3M 7DQ.  Registered number 181116 England and Wales. Registered VAT number  GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                         Saved: 15/11/2010 16:14:00

**Willis Limited**
51 Lime Street London EC3M 7DQ United Kingdom
Telephone: +44 (0)2031246000  Fax: +44 (0)2031248223  Website: www.willis.com



**ORDER HEREON:** 100% of premium and limits herein

**EFFECTED WITH:**

100.0000000%    Lloyd's Underwriters
        81.0000000%    Syndicate 2623, pseudonym AFB Ref: JM227N10APPT
        19.0000000%    Syndicate 0623, pseudonym AFB Ref: JM227N10APPT

_____
100.0000000%

Yours faithfully                              Yours faithfully
Willis Limited                                Willis Limited

Authorised Signatory                     Authorised Signatory
FINEX Global                                 FINEX Global

Willis Limited. A Willis Group Company. A Lloyd's broker. Willis Limited is authorised and regulated by the Financial Services Authority. Registered office 51 Lime Street,
London EC3M 7DQ. Registered number 181116 England and Wales. Registered VAT number GB 334 1289 70

13851P10
MRCDirectCoverDoc751143386                                 Saved: 15/11/2010 16:28:00

EXHIBIT H

**Policy Number:**    **ELU119552-10**

**Renewal of Number**   ELU114673-09

**Indian Harbor Insurance Company**

**Members of the XL America Companies**

---

**EXCESS POLICY DECLARATIONS**

---

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

---

**Item 1.**    **Name and Mailing Address of Insured Entity:**

Fidelity National Financial Inc
Corporate Risk Management Department
c/o Fidelity National Insurance Services
PO Box 45126
Jacksonville, FL  32232-5126

---

**Item 2.**    **Policy Period:**    **From:**    November 18, 2010    **To:**    November 18, 2011

**At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**    **Limit of Liability:**

$10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**    **Schedule of Underlying Insurance:**

|  |  | **Insurer** | **Policy No** | **Limit of Liability** |
|---|---|---|---|---|
| (a) | Primary Policy | National Union Fire Insurance Company of Pittsburgh, PA | 01-318-41-31 | $15,000,000 |
| (b) | Underlying Excess Policy | Lloyds of London | B080113851P10 | $15,000,000 |

---

**Item 5.**    **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**Item 6.**    **Premium:**

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $710,000.00 |

EX 70 01 09 99

**EXCESS POLICY DECLARATIONS**

| Item 7. | **Policy Forms and Endorsements Attached at Issuance:** |
|---------|---------|
| | EX 71 01 09 99   XL 82 01 07 07   XL-FLSOP (12/08)   EX 80 75 09 02   EX 83 22 11 01   EX 80 153 07 05 |
| | EX 80 19 09 00   EX 80 131 06 04   Manuscript 11564 01 11 |

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

David B. Duclos
President

Kenneth P. Meagher
Secretary

**Indian Harbor Insurance Company**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*.  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.*  This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

©2010 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-0636
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

Seraina Maag
President

Toni Ann Perkins
Secretary

LAD 400 IHIC 0211

©2011 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claiming with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies. |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Hawaii | For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |
| **New York** | **All Commercial Insurance Forms, Except As Provided for Automobile Insurance:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**Automobile Insurance Forms:**  Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire Insurance:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance Forms:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousands dollars ($5,000), not to exceed ten thousands dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both.  If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years. |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefitor knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

© 2009 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# COUNTERSIGNATURE ENDORSEMENT

Policy Number:     ELU119552-10

Company:     Indian Harbor Insurance Company

Named Insured:     Fidelity National Financial Inc

| State | Premium |
|---|---|
| Florida | $710,000.00 |

The signature shown on this endorsement complies with the countersignature laws and regulations of the State shown.

Date of Countersignature     _____

                       (month, day and year)

                                   _____

                                   Licensed Producer

XL 82 01 07 07

| | |
|---|---|
| **Endorsement No.: 1** | **Effective: November 18, 2010** |
| **Named Insured: Fidelity National Financial Inc** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU119552-10** | **Insurer: Indian Harbor Insurance Company** |

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 2**
**Named Insured: Fidelity National Financial Inc**
**Policy No.: ELU119552-10**

**Effective: November 18, 2010**
**12:01 A.M. Standard Time**
**Insurer: Indian Harbor Insurance Company**

# SERVICE OF PROCESS ENDORSEMENT

The Commissioner of Insurance of the State of Florida is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Toni Ann Perkins
> Secretary
> Seaview House
> 70 Seaview Avenue
> Stamford, CT 06902-6040

as its agent in Florida to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

XL-FLSOP (12/08)

EX 80 75 09 02

**Endorsement No.: 3**                                    **Effective: November 18, 2010**
**Named Insured: Fidelity National Financial Inc**        **12:01 A.M. Standard Time**
**Policy No.: ELU119552-10**                              **Insurer: Indian Harbor Insurance Company**

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)      It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)      It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration.  Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**EX 83 22 11 01**

| | |
|---|---|
| **Endorsement No.: 4** | **Effective: November 18, 2010** |
| **Named Insured: Fidelity National Financial Inc** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU119552-10** | **Insurer: Indian Harbor Insurance Company** |

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to November 18, 2002.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 153 07 05

**Endorsement No.: 5**                                    **Effective: November 18, 2010**
**Named Insured: Fidelity National Financial Inc**       **12:01 A.M. Standard Time**
**Policy No.: ELU119552-10**                             **Insurer: Indian Harbor Insurance Company**

# AMEND SECTION VIII (B) ENDORSEMENT

In consideration of the premium charged, Section VIII Policy Termination (B) of the Policy is amended to read in its entirety as follows:

"(B)    The Insurer will refund the unearned premium computed pro rata if the Policy is canceled by the Insured Entity, or if the Policy is canceled under any other circumstances."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**EX 80 19 09 00**

| | |
|---|---|
| **Endorsement No.: 6** | **Effective: November 18, 2010** |
| **Named Insured: Fidelity National Financial Inc** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU119552-10** | **Insurer: Indian Harbor Insurance Company** |

# AMEND DEFINITION OF INSURED

In consideration of the additional/return premium of $0.00 the term "Insured" is deemed to include the following:

Commonwealth Land Title Insurance Co.
Lawyers Title Insurance Co.
United Capital Title Insurance Co.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 131 06 04

**Endorsement No.: 7**                          **Effective: November 18, 2010**
**Named Insured: Fidelity National Financial Inc**    **12:01 A.M. Standard Time**
**Policy No.: ELU119552-10**                    **Insurer: Indian Harbor Insurance Company**

# AMEND SECTION III ENDORSEMENT

In consideration of the premium charged, Section III Depletion of Underlying Limits of Liability (C) of the Policy is amended to read in its entirety as follows:

"(C)    Any risk of uncollectibility with respect to the Underlying Insurance will be expressly retained by the Insured and will not be assumed by the Insurer.

This Policy, subject to its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the Underlying Insurance or for any other reason except for the actual payment of loss by the applicable Insurer thereunder or the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Manuscript 11564 01 11**

Endorsement No.: 8            Effective: November 18, 2010
Named Insured: Fidelity National Financial Inc      12:01 A.M. Standard Time
Policy No.: ELU119552-10          Insurer: Indian Harbor Insurance Company

# SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium charged:

(1)    Solely with respect to the coverage afforded under the Crisis Management Fund Coverage Insuring Agreement of the Primary Policy, the Insurer will provide the Insured, subject to all of the other terms, conditions and limitations of this Policy, with insurance coverage excess of (a) any Sublimit, as defined below, applicable to such Insuring Agreement, and (b) any retention applicable under any Underlying Insurance to such Insuring Agreement; provided, that the Insurer's maximum aggregate limit of liability under this Policy for all loss, including Claims Expense as defined in the Primary Policy, for all coverage excess over such Insuring Agreement will be $3,000,000 excess of the $6,000,000 Sublimit applicable to such Insuring Agreement, which amount will be part of and not in addition to the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations of this Policy which is applicable to all loss from all claims as to which this Policy affords coverage.

(2)    Solely with respect to the coverage afforded under the Regulatory Activities Coverage Insuring Agreement of the Primary Policy, the Insurer will provide the Insured, subject to all of the other terms, conditions and limitations of this Policy, with insurance coverage excess of (a) any Sublimit, as defined below, applicable to such Insuring Agreement, and (b) any retention applicable under any Underlying Insurance to such Insuring Agreement; provided, that the Insurer's maximum aggregate limit of liability under this Policy for all loss, including Claims Expense as defined in the Primary Policy, for all coverage excess over such Insuring Agreement will be $5,000,000 excess of the $10,000,000 Sublimit applicable to such Insuring Agreement, which amount will be part of and not in addition to the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations of this Policy which is applicable to all loss from all claims as to which this Policy affords coverage.

(3)    Solely with respect to the coverage afforded under the Corporate Counsel Coverage Insuring Agreement of the Primary Policy, the Insurer will provide the Insured, subject to all of the other terms, conditions and limitations of this Policy, with insurance coverage excess of (a) any Sublimit, as defined below, applicable to such Insuring Agreement, and (b) any retention applicable under any Underlying Insurance to such Insuring Agreement; provided, that the Insurer's maximum aggregate limit of liability under this Policy for all loss, including Claims Expense as defined in the Primary Policy, for all coverage excess over such Insuring Agreement will be $5,000,000 excess of the $10,000,000 Sublimit applicable to such Insuring Agreement, which amount will be part of and not in addition to the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations of this Policy which is applicable to all loss from all claims as to which this Policy affords coverage.

(4)    For purposes of this endorsement, the term "Sublimit" means any limit of liability applicable to any coverage afforded under the Primary Policy which:

    (a)    applies only to a particular grant of coverage under such Primary Policy, and

    (b)    is part of, and not in addition to, the otherwise applicable limit or limits of liability of such Primary Policy, as set forth in the Declarations thereof.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will provide the **Insured** with insurance coverage for claims first made against the **Insured** during the **Policy Period** excess of the **Underlying Insurance** stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the **Primary Policy** together with the terms, conditions, endorsements and warranties of any other **Underlying Insurance**.  The coverage hereunder will attach only after all of the **Underlying Insurance** has been exhausted by the actual payment of loss by the applicable insurers thereunder and in no event will the coverage under this Policy be broader than the coverage under any **Underlying Insurance**.

## II.    DEFINITIONS

(A)    "**Insured**" means, either in the singular or plural, those persons or organizations designated as insureds in the **Underlying Insurance**.

(B)    "**Policy Period**" means the period designated in ITEM 2 of the Declarations, or to any earlier cancellation date.

(C)    "**Primary Policy**" means the policy designated in ITEM 4 (A) of the Declarations.

(D)    "**Underlying Insurance**" means all policy(s) designated in ITEM 4 of the Declarations.

## III.    DEPLETION OF UNDERLYING LIMITS OF LIABILITY

(A)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue to apply to loss as excess insurance remaining under such **Underlying Insurance**, in the event of the reduction or exhaustion of the limits of liability of the **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(B)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(C)    Any risk of uncollectibility with respect to the **Underlying Insurance** will be expressly retained by the **Insured** and will not be assumed by the **Insurer**.

This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the **Underlying Insurance** or for any other reason except for the actual payment of loss by the applicable Insurer thereunder.

## IV.    MAINTENANCE OF UNDERLYING INSURANCE

(A)    The limit(s) of liability of the **Underlying Insurance** designated in ITEM 4 of the Declarations shall be maintained during the Policy Period in full effect except for any reduction or exhaustion of the aggregate limits of liability available under the **Underlying Insurance** solely by reason of actual payment of loss thereunder. Failure to comply with the foregoing will not invalidate this Policy but the Insurer will not be liable to a greater extent than if this condition had been complied with. If for any reason the **Underlying Insurance** is not maintained, then the **Insured** will be deemed to be self-insured for that amount of the limit(s) of liability of such **Underlying Insurance**.

(B)    In the event of a change of any kind to any **Underlying Insurance** by endorsement, rewrite or otherwise, the coverage under this Policy will become subject to such change only if and to the extent that the Insurer consents to such change by written endorsement to this Policy.

(C)    The Insurer will not be liable under this Policy earlier or to any greater extent than it would have been as a result of the actual or alleged failure by the **Insureds** to give notice or to exercise any extensions under any **Underlying Insurance**, or misrepresentation or breach of warranty with respect to any **Underlying Insurance**.

## V.    CLAIM PARTICIPATION

The Insurer may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the **Insured** even if the **Underlying Insurance** has not been exhausted and the **Insured** will provide such information and cooperation as is reasonably requested.

## VI.    LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including Defense Expenses, by the Insurer under this Policy. Defense Expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.

## VII.    NOTICE

The **Insured** will, as a condition precedent to the coverage available under this Policy, give written notice as soon as practicable to the Insurer of:

(A)    any claim under any **Underlying Insurance**, or any situation that is required to be reported under any **Underlying Insurance** that could give rise to a claim under any **Underlying Insurance**;

(B)    the cancellation of any **Underlying Insurance**;

(C)    any change to the **Underlying Insurance** by rewrite, endorsement or otherwise; or

(D)    any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

The Insured Entity will be the sole agent for and will act on behalf, of the **Insured** with respect to all matters under this Policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notice of cancellation of this Policy, paying premium and receipt of any return premiums.

Notice given to any underlying insurer of any claim or any situation that could give rise to a claim under any **Underlying Insurance** scheduled in ITEM 4 of the Declarations will not be deemed notice to the Insurer. Notice of any claim or situation that could give rise to a claim must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

## VIII.     POLICY TERMINATION

(A)     The **Insured Entity** may cancel this Policy by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations.

(B)     The Insurer will refund the unearned premium computed at the customary short rate if the Policy is canceled by the **Insured Entity**. Under all other circumstances, any unearned premium will be computed pro rata.

(C)     This Policy will terminate immediately upon the termination of any of the policies scheduled in ITEM 4 of the Declarations, whether canceled by the **Insured Entity** or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.

## IX.     ALTERATION

No change in or modification of this Policy shall be effective unless made by endorsement signed by an authorized employee of the Insurer.

EXHIBIT I



**Illinois National Insurance Company**

A capital stock company

POLICY NUMBER: 01-329-78-71          REPLACEMENT OF POLICY NUMBER: 01-363-54-80

### EXCESS INSURANCE POLICY

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS OF THIS POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

### DECLARATIONS

ITEM 1.       NAMED INSURED:       FIDELITY NATIONAL FINANCIAL INC

               MAILING ADDRESS:       CORPORATE RISK MANAGEMENT DEPARTMENT
                                       C/O FIDELITY NATIONAL INFORMATION SERVICES
                                     405 BELFORT RD, UNIT 110
                                     JACKSONVILLE, FL 32256

               STATE OF INCORPORATION/FORMATION OF THE NAMED INSURED:
                     Delaware

ITEM 2. (a)   FOLLOWED POLICY shall be the following:

               INSURER:       National Union Fire Insurance Company
               POLICY NO.:   01-318-41-31

      (b)   FOLLOWED POLICY SECTION
           This policy shall follow the terms and conditions of the following coverage sections of the Followed Policy only:

| COVERAGE SECTION | Form Number |
|---|---|
| Miscellaneous Professional | 77011 (4/02) |

© Chartis Inc. All rights reserved.